**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM  96910
TELEPHONE: (671) 477-9891/4
FACSIMILE:  (671) 472-2601

**UNPINGCO & ASSOCIATES, LLC**
SUITE 12B, SINAJANA MALL
SINAJANA, GUAM
TELEPHONE: (671) 475-8545
FACSIMILE:  (671) 475-8550

*Attorneys for Plaintiffs*
*Nanya Technology Corp. and*
*Nanya Technology Corp. U.S.A.*

**FILED**
DISTRICT COURT OF GUAM

NOV 17 2006 *nba*

**MARY L.M. MORAN**
**CLERK OF COURT**

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| **NANYA TECHNOLOGY CORP., and**<br>**NANYA TECHNOLOGY CORP. U.S.A.,**<br><br>      **Plaintiffs,**<br><br>      **vs.**<br><br>**FUJITSU LIMITED, FUJITSU**<br>**MICROELECTRONICS AMERICA, INC.,**<br><br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL CASE NO. CV06-00025**<br><br><br>**FIRST AMENDED COMPLAINT**<br>**FOR ANTITRUST LAW**<br>**VIOLATIONS, PATENT**<br>**INFRINGEMENT, AND FOR**<br>**DECLARATORY RELIEF** |

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

1.     ORIGINAL

Plaintiffs, Nanya Technology Corp. ("Plaintiff NTC") and Nanya Technology Corp. U.S.A. ("Plaintiff NTC USA") (collectively, "Plaintiffs") file this Complaint against Defendants Fujitsu Limited ("Fujitsu Ltd.") and Fujitsu Microelectronics America, Inc. ("FMA") (collectively, "Defendants") for claims of violations of the Sherman Antitrust Act and the Clayton Act based on Defendants' coercive misuse of its patent portfolio, for patent infringement, and for declaratory relief against Defendants, and state as follows:

## I.

## THE PARTIES

1.    Plaintiff NTC is a Taiwanese corporation having its principal place of business in Hwa Ya Technology Park, 669, Fu Hsing 3rd Rd., Kueishan, Taoyuan, 333, Taiwan, Republic of China, and is authorized to do business in the Territory of Guam and the District of Guam.

2.    Plaintiff NTC USA is a California corporation and wholly owned subsidiary of Plaintiff NTC.  Plaintiff NTC USA has an address at 5104 Old Ironsides Drive, Suite 113, Santa Clara, California 95054.

3.    Upon information and belief, Fujitsu Ltd. is a Japanese corporation, having its principal place of business at Shiodome City Center, 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo 105-7123, Japan.  Upon information and belief, Fujitsu Ltd. is a nonresident of the Territory of Guam and the District of Guam who engages in business and has

systematic and continuous contacts in the Territory of Guam and the District of Guam. This proceeding arises, in part, out of business done in the Territory of Guam and the District of Guam.

4.     Upon information and belief, FMA is a wholly owned subsidiary of Fujitsu Ltd. and is headquartered and has its principal place of business at 5104 Old Ironsides Drive, Suite 113, Santa Clara, California 95054.  Upon information and belief, Fujitsu America is a nonresident of the Territory of Guam and the District of Guam who engages in business and has systematic and continuous contacts in the Territory of Guam and the District of Guam.  This proceeding arises, in part, out of business done in the Territory of Guam and the District of Guam.

## II.

## SUBJECT MATTER JURISDICTION

5.     This action arises under the antitrust and patent laws of the United States, Title 15 and Title 35 of the United States Code, respectively.   The Court's subject matter jurisdiction over this action is proper under the above statutes and under 35 U.S.C. § 271 *et seq.* and 28 U.S.C. §§ 1331, 1337(a), 1338(a), and 1338(b).

///

///

///

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

## III.

## PERSONAL JURISDICTION

6.      Specific personal jurisdiction exists over Defendants because they have sufficient minimum contacts with the forum as a result of its attempts to illegally extend patent protection and its acts of collusive price discrimination on intellectual property licenses relating to the Double Data Rate Synchronous Dynamic Random Access Memory ("DDR SDRAM").

7.      Personal jurisdiction also exists over Defendants under section 12 of the Clayton Act, 15 U.S.C. § 22, because Defendants transact business of a substantial character within the Territory of Guam.

8.      Specific personal jurisdiction exists over Defendants because each Defendant has sufficient minimum contacts with the forum as a result of acts of infringement that have occurred within the forum and the placement of infringing products into the stream of commerce with the intention that they would be available to people in the United States and the Territory of Guam.

9.      General personal jurisdiction exists over Defendants because each Defendant has sufficient minimum contacts with the forum as a result of business conducted continuously and systematically within the Territory of Guam.

///

///

---

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

## IV.

## VENUE

10.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), 28 U.S.C. § 1400(b), as well as 15 U.S.C. § 22.

## V.

## FACTUAL BACKGROUND

11.    Over the past seven years, Defendants have used threats and coercion in an unlawful attempt to intimidate Plaintiff NTC into paying licensing fees on patents that Plaintiff NTC did not and does not infringe, patents that are expired, and foreign patents that are not entitled to exclusivity or enforcement in the United States. These coercive acts are an illegal attempt to expand Defendants' patent protections beyond their permitted temporal and/or territorial scopes and obtain an unlawful monopoly on intellectual property covering the manufacturing of computer memory chips, specifically, the DDR SDRAM found in desktop and laptop computers and other consumer electronics.

### A.    DEFENDANTS' CONTACTS WITH THE FORUM

12.    Upon information and belief, Defendants Fujitsu Ltd. and FMA each have sufficient contacts with the forum to satisfy federal personal jurisdiction requirements.

#### *1.    Defendants' Contacts Arising Out of Their Anticompetitive Acts*

13.    Upon information and belief, Defendants have attempted to broaden the scope of their patent rights related to the manufacturing of DDR SDRAM by demanding

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

*worldwide* licenses from Plaintiff NTC based on a single Japanese patent and several expired U.S. patents.

14.     Defendants have also engaged in a form of collusive price discrimination to lessen competition from international manufacturers of DDR SDRAM and artificially increase the price received by members of a collusive pool of Japanese and Korean manufacturers.

15.     The memory chips produced as DDR SDRAM are generally considered to be a fungible commodity.  There is a spot market for DDR SDRAM and because it is an interchangeable product, its pricing effects are felt nationwide.  Thus, the anticompetitive acts that form the basis of this suit have adversely impacted the market in the United States and its territories, including the Territory of Guam, namely in reducing the ability of U.S. manufacturers such as Plaintiffs to compete in the relevant market and by artificially increasing the cost of DDR SDRAM in the United States and its territories.

### 2.     *Defendants' Contacts Arising Out of Their Acts of Infringement*

16.     Upon information and belief, Fujitsu Ltd., its subsidiaries, or its affiliates distribute products in the Territory of Guam that infringe NTC's patents.  Upon further information and belief, Fujitsu Ltd. exercises control over the business operations of these subsidiaries or affiliates.

17.     Upon information and belief, Fujitsu Ltd., its subsidiaries, or its affiliates place infringing products in the stream of commerce with the intention that they would be available to people in the United States and the Territory of Guam.  Upon further information and belief, Fujitsu Ltd. exercises control over the business operations of

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

these subsidiaries or affiliates. Through jurisdictional discovery Plaintiffs expect to develop an extensive list of infringing products that are placed into the stream of commerce by Fujitsu Ltd., its subsidiaries, or its affiliates.

18.     Upon information and belief, FMA manufactures electronic components that infringe NTC's patents with the intention that they would be used in a significant number of consumer products sold in the United States and the Territory of Guam.

### 3.     *Defendants' Continuous and Systematic Contacts*

19.     Upon information and belief, Fujitsu Ltd. distributes products manufactured by Fujitsu companies to businesses and legal residents of the Territory of Guam.

20.     Upon information and belief, a number of Fujitsu Ltd.'s subsidiary or affiliate companies regularly conduct business in the Territory of Guam, have offices or distribution centers in the Territory of Guam, and sell products to people and businesses in the Territory of Guam. For example, multiple stores in the Territory of Guam have sold and can order hard drives and notebook computers manufactured by Fujitsu Computing Products of America, a wholly owned subsidiary of Fujitsu Ltd. In addition, air conditioning units produced by Fujitsu General New Zealand Limited and car audio products produced by Fujitsu Ten, which upon information and belief are affiliates of Fujitsu Ltd., are currently distributed in the Territory of Guam. Upon further information and belief, Fujitsu Ltd. exercises control over the business operations of these subsidiaries or affiliates. Plaintiffs expect to confirm the existence of additional products

---

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

in the Territory of Guam pending Freedom of Information Act requests that have been submitted to the U.S. Navy and U.S. Air Force Exchanges in the Territory of Guam.

21.     Upon information and belief, FMA manufactures a broad range of microelectronics with the knowledge that they would be used in a significant number of consumer products sold in the United States and the Territory of Guam. More specifically, FMA manufactures a variety of microcontrollers, dynamic random access memory ("DRAM"), application-specific integrated circuits ("ASICs"), sensors, graphics display controllers, and other microelectronic components that are used in mobile phones, PDAs, power supplies, climate control units, LCD displays, microwaves, washing machines, printers, copiers, and other consumer products. This information is available on FMA's website, *http://www.fma.fujitsu.com*, last visited Nov. 15, 2006. Upon information and belief, FMA microelectronics are present in a variety of these and other products produced by major manufacturers of consumer electronics and extensively distributed throughout the United States and the Territory of Guam.

22.     Upon information and belief, a substantial number of retail outlets in the Territory of Guam regularly carry and sell consumer products containing microelectronics manufactured by FMA..

23.     Upon information and belief, people and businesses in the Territory of Guam can order and purchase electronic products containing components manufactured by FMA.

///

### B.     DEFENDANTS' ALLEGATIONS OF INFRINGEMENT

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

24.     In early 1999, Fujitsu Ltd. contacted Plaintiff NTC accusing Plaintiff NTC of infringing a host of Fujitsu Ltd.'s patents related to DDR SDRAM. Fujitsu Ltd. accused Plaintiff NTC of infringing at least sixteen of its patents, which are a combination of Japanese, United States, Taiwanese, Korean, and German patents covering certain components and processes that are used in the manufacture and operation of DDR SDRAM chips.

25.     At one time or another, Fujitsu Ltd. has explicitly accused Plaintiffs of infringing United States patents including Patent Nos. 4,641,166 ("'166 Patent"); 4,458,336 ("'336 Patent"); 5,688,712 ("'712 Patent"); 5,841,731 ("'731 Patent"); 4,692,689 ("'689 Patent"); 4,527,070 ("'070 Patent"); 4,384,918 ("'918 Patent"); 4,539,068 ("'068 Patent"); 5,397,432 ("'432 Patent"); 5,227,996 ("'996 Patent"); 5,339,273 ("'273 Patent"); 4,801,989 ("'989 Patent"); 6,104,486 ("'486 Patent"); 6,292,428 ("'428 Patent"); and 6,320,819 ("'819 Patent"); Japanese Patent Nos. 3270831, 2063684, and 3253712; Taiwanese Patent Nos. 119,726 and 400,635; German Patent No. 234891; Korean Patent No. 316813; and the inventions thereof.

26.     The U.S. patents that Fujitsu Ltd. is asserting against Plaintiffs are generally related to computer memory chips, specifically, dynamic memory devices and/or processes to create dynamic memory devices. The '166 Patent relates to the structure of a MOS-type capacitor used in dynamic memory. The '336 Patent relates to the circuitry of Dynamic Random Access Memory ("DRAM"). The '712 Patent relates to a process for forming DRAM. The '689 Patent relates to circuitry used in DRAM. The '731 Patent

relates to operation modes of Synchronous Dynamic Random Access Memory ("SDRAM"). The '432 Patent relates to a lithography process for semiconductor circuits (not specific to DRAM). The '068 Patent relates to a CVD method for semiconductors (not specific to DRAM). The '918 Patent relates to an electrostatic device for etching a semiconductor (not specific to DRAM). The '070 Patent relates to a method for inspecting a pattern of a semiconductor (not specific to DRAM). The '996 Patent relates to DRAM circuits. The '273 Patent relates to DRAM circuits. The '989 Patent relates to structures of DRAM. The '486 Patents relates to a fabrication process of a semiconductor devise using ellipsometry. The '428 Patent relates to circuitry of DRAM and DDR SDRAM. The '819 Patent relates to circuitry of DRAM and DDR SDRAM.

27.    Despite more than five meetings between the parties in Taiwan during the period from 1999 to 2005, at which Fujitsu, Ltd. made conclusory and unproven allegations of patent infringement, the two parties failed to resolve matters. At these meetings, Fujitsu Ltd. attempted to assert infringement of several of its U.S. patents against Plaintiff NTC, some of which were expired.

28.    At the above stated meetings, Fujitsu Ltd. also attempted to use the threat of legal action in Japan to effectively expand the scope of its patent grant to cover NTC products that are clearly not covered by the claims in any of Fujitsu's U.S. or foreign patents. Further, Fujitsu Ltd. also used this threat of legal action in Japan to extort a *worldwide* license from Plaintiff NTC on all of Plaintiff NTC's products even though Fujitsu Ltd.'s Japanese patents are not enforceable outside of Japan.

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

29.     Under United States law, such practices constitute not only patent misuse but also antitrust violations.   Such patent misconduct effectively renders all asserted patents unenforceable.

30.     Further evidence of Defendants' bad faith in making these allegations against Plaintiff NTC is Defendants' initiation of a 1997 International Trade Commission ("ITC") investigation against Samsung Electronics, Co., Ltd., Samsung Semiconductor, Inc., and others  (No. 337-TA-402).   While Defendants alleged in their ITC complaint that Samsung was importing into the United States products that infringed one or more claims of '166 patent, or were manufactured by means of processes covered by the '724 patent, there was no mention in this ITC complaint of Plaintiff NTC or its products that Defendants began to accuse Plaintiff NTC of infringement just a few months later.  By failing to include Plaintiff NTC's products in this ITC complaint, Defendants knowingly foreclosed any such ITC complaint in the future.   Nevertheless, Defendants continued over the next six years to harass Plaintiff NTC with accusations of infringement and demands that Plaintif NTC pay Defendants license fees on products that Fujitsu Ltd. had not included in its ITC action as required by law and/or regulation (19 U.S.C. § 1337 and 19 C.F.R. part 210).

### C.     FUJITSU LTD.'S JAPANESE LITIGATION AGAINST PLAINTIFF NTC

31.     After failing to persuade Plaintiff NTC to obtain a license for its patents, Fujitsu Ltd. filed suit in Tokyo District Court on August 25, 2005, Case No. (*wa*) 17182 2005

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

(Heisei 17). In this Japanese suit, Fujitsu, Ltd. alleges that Plaintiff NTC is infringing only one of Fujitsu Ltd.'s Japanese patents.

32.   After the submission of briefs by both parties and conferences with the Tokyo court, the Tokyo court encouraged Plaintiff NTC to consider a settlement and instructed Fujitsu Ltd. to provide terms. Fujitsu Ltd. demanded a settlement of licensing rights consisting of $158,100,000 for damages for past infringement from 1999 to 2005 based on *worldwide* sales, plus a running royalty payment equivalent to 3% of worldwide sales of all Plaintiff NTC's products going forward. Such a worldwide settlement demand would encompass sales in the United States and the Territory of Guam where Fujitsu Ltd. does not have patent protection from its Japanese patent.

33.   The jurisdiction of the Tokyo court is geographically limited to Japan. The Tokyo court cannot legally impose a royalty for products without a nexus to Japan. Fujitsu Ltd. has taken no affirmative steps to enforce its patent portfolio in jurisdictions outside Japan (*e.g.,* Korea, Taiwan, United States) and there is no justification for expanding the royalty basis worldwide.

34.   Fujitsu Ltd.'s attempt to recover past damages from 1999 constitutes patent misuse because Fujitsu Ltd.'s demanded royalty basis includes the United States. Under United States law, there is a six-year limitation on damages. 35 U.S.C. § 286. Moreover, damages can only be recovered after Fujitsu Ltd. put Plaintiff NTC on specific notice of its infringement claims. 35 U.S.C. § 287.

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

35.    Fujitsu Ltd.'s attempt to extract a worldwide license based on its single Japanese patent also constitutes patent misuse.  Fujitsu Ltd.'s assertion of its patent beyond its territorial jurisdiction has an anticompetitive effect not only on Plaintiff NTC but on the entire DDR SDRAM market and is an illegal extension of the patent's statutory scope in violation of Section 2 of the Sherman Antitrust Act, codified at Title 15 of the United States Code.    Fujitsu Ltd.'s effort to impermissibly broaden the scope of its single Japanese patent rights past its geographical limitations constitutes bad faith and unlawful conduct.

36.    Fujitsu Ltd. has improperly asserted several expired patents against Plaintiff NTC. Specifically, the '166 Patent and '689 Patent expired in 2004; the '070 Patent and '068 Patent expired in 2002; the '336 Patent expired in 2001; and the '918 Patent expired in 2000.    Fujitsu Ltd.'s knowing and continuing assertion of these expired patents constitutes bad faith and improper conduct.

37.    Fujitsu Ltd.'s bad faith assertion of expired patents and Fujitsu Ltd.'s attempt to assert its Japanese patents outside of their territorial coverage are completely baseless. Fujitsu Ltd.'s acts stated above are an attempt to exclude Plaintiff NTC, Fujitsu Ltd.'s competitor, from the market for DDR SDRAM using the governmental process as an anticompetitive weapon.    Fujitsu Ltd.'s Japanese lawsuit seeking unlawful worldwide royalties constitutes an abuse of process falling under the "sham" exception to antitrust immunity.    Engaging in "sham" conduct strips Fujitsu Ltd. of antitrust immunity and exposes it to antitrust liability.

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

38.    Fujitsu Ltd., through its Japanese lawsuit, is blatantly attempting to extort hundreds of millions of dollars in past "damages" and future worldwide royalty by threatening Plaintiff NTC's access to a single market (Japan) that accounts for less than three percent (3%) of Plaintiff NTC's worldwide sales.

### D.    DEFENDANTS' SAN JOSE LAWSUIT FILED AFTER INITIATION OF THE PRESENT PROCEEDING

39.    On October 24, 2006, nearly five weeks after the filing of the present action, both Defendants Fujitsu Ltd. and FMA filed an action against NTC and NTC USA in the United States District Court for the Northern District of California, San Jose Division. The action is styled *Fujitsu Limited et al. v. Nanya Technology Corp. et al.*, No. CV-06-06613-EDL (N.D. Cal. Oct. 24, 2006) ("San Jose Lawsuit"). A copy of the San Jose Lawsuit is attached hereto as Exhibit "B".

40.    In the San Jose Lawsuit, Fujitsu Ltd. and FMA accuse NTC and NTC USA of infringing the '989, '486, '428, and '819 Patents, all of which are at issue in the action pending in this Court.

41.    In the San Jose Lawsuit, Defendants seek a declaration of noninfringement of U.S. Patent No. 6,225,187, U.S. Patent No. 6,426,271, and U.S. Patent No. 6,790,764, all of which are at issue in the action pending in this Court.

42.    As of the date of filing this First Amended Complaint, NTC has not been served with process for the San Jose Lawsuit, although both Fujitsu Ltd. and FMA have been served with process in satisfaction of Federal Rule of Civil Procedure 4 in this matter.

### E.   DEFENDANTS' ATTEMPTS TO EXPAND THEIR SHARE OF THE IP MARKET FOR DDR SDRAM COMPUTER MEMORY CHIPS

43.    While Defendants do not manufacture or sell a significant percentage of the DDR SDRAM chips manufactured and sold in the United States, Defendants have license agreements that cover approximately 80 percent of the products sold in the United States and the Territory of Guam.  Defendants' acts discussed above constitute coercive misuse of its patents to extend this market share and essentially capture licensing fees for 100 percent of the DDR SDRAM market in restraint of trade and commerce among the States and the Territories of the United States in violation of Sections 1, 2, and 3 of the Sherman Antitrust Act.

44.    Based on information and belief, Defendants have entered into licensing agreements with other DDR SDRAM manufacturers and designers that have a royalty of zero percent (0%) to less than one percent (1%).  Notwithstanding Defendants' past pattern and practice, Defendants are demanding a three percent (3%) royalty from Plaintiff.

45.    Manufacturers and distributors of DDR SDRAM who are receiving the lower royalty payments make up a collusive pool encouraging a form of price discrimination designed to artificially inflate the prices that the members of this collusive pool receive for DDR SDRAM chips which have an anticompetitive effect that is not justifiable and only make it more difficult for non-members, such as Plaintiffs, to compete in the

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

relevant market in violation of Section 1 of the Sherman Antitrust Act and Section 2 of the Clayton Act.

## VI.

## CAUSES OF ACTION

## ANTITRUST COUNTS

46.    Plaintiffs bring the following claims of antitrust law violations under title 15 of the United States Code.

## COUNT ONE

## VIOLATION OF THE SHERMAN ANTITRUST ACT

47.    Plaintiffs repeat and reallege the allegations in paragraphs 1-46 as though fully set forth herein.

48.    Defendants' continued assertion of the '166, '336, '689, '070, '918, '068 Patents, which have all expired, in addition to its attempt to expand the geographical scope of its Japanese patent, has an anticompetitive effect on Plaintiffs and the market for intellectual property related to DDR SDRAM and is an illegal extension of the patents' statutory scope in violation of sections 1, 2, and 3 of the Sherman Antitrust Act, codified under Title 15 of the United States Code.

49.    Defendants' acts in the Japanese district court case constitute illegally tying access to the Japanese DDR SDRAM market to a license covering sales in the United States where Defendants do not have patent protection.  This coercive use of its monopoly power in Japan to distort the market in the United States and it territories has an anti-

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

competitive effect in that it prohibits Plaintiffs and other potential competitors from entering the Japanese market without obtaining a license from Defendants for patents covering products and/or processes sold or used in the United States that are not covered by U.S. patents or which may be covered by expired United States patents.

50.     Defendants' actions tend to force Plaintiffs to accept a license covering its sales in the United States, which it would not do in a competitive market.  The competitive consequence of this coercive arrangement is to artificially increase the cost of DDR SDRAM in the United States and its territories in violation of the Sherman Antitrust Act.

51.     In the relevant market of intellectual property covering the manufacture and sale of DDR SDRAM products, Defendants have now secured licenses covering 80 percent of the U.S. market.  By coercive extension of their Japanese patent rights and the rights conferred under now expired U.S. patents, Defendants are attempting to extend their U.S. market coverage to 100 percent and obtain monopoly pricing power of the U.S. market for DDR SDRAM and the intellectual property relating to this technology in violation of the Sherman Antitrust Act.

**COUNT TWO**

**VIOLATION OF THE CLAYTON ACT**

52.     Plaintiffs repeat and reallege the allegations in paragraphs 1-51 as though fully set forth herein.

53.     Defendants have entered into licenses with various other Japanese manufacturers of DDR SDRAM with a royalty rate of zero percent (0%) or significantly less than one

percent (1%) of sales. The worldwide licenses that Defendants are demanding from Plaintiff NTC for the same technologies provide for a royalty rate more than three times what Defendants are demanding from other Japanese manufacturers. The intent of this collusive price discrimination is to lessen competition from non-Japanese companies and artificially inflate the prices of DDR SDRAM in the United States and its territories in violation of the Clayton Act.

54.     Plaintiffs' claims and causes of action against Defendants constitute an extraordinary case under 35 U.S.C. §285 entitling Plaintiff to reasonable attorneys' fees.

## INFRINGEMENT COUNTS

55.     Plaintiff NTC brings the following claims of patent infringement under Title 35 of the United States Code:

## COUNT THREE

## INFRINGEMENT OF THE '187 PATENT

56.     Plaintiff NTC repeats and realleges the allegations in paragraphs 1-55 as though fully set forth herein.

57.     Plaintiff NTC is the patentee and owner of all rights, title, and interest in and under United States Patent No. 6,790,765 ("the '765 Patent"). A true and correct copy of the '765 Patent is attached hereto as Exhibit "C".

58.     The '765 Patent relates to a process for forming contacts on a semiconductor device and is titled "Method For Forming Contact."

59.     The '765 Patent is valid and enforceable.

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

60.     Upon information and belief, Defendants have been and are infringing the '765 Patent by making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the claims of the §765 Patent.

61.     By making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the claims of the §765 Patent, Defendants have also induced infringement of the '765 Patent under 35 U.S.C. § 271(b), and have contributed to the infringement of the '765 Patent under 35 U.S.C. § 271(c). The infringing products have no substantial non-infringing uses.

62.     As a direct and proximate result of Defendants' acts of patent infringement, Plaintiff NTC has been and continues to be injured and has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

63.     Plaintiff NTC has no adequate remedy at law against these acts of patent infringement. Unless Defendants are preliminarily and permanently enjoined from their infringement of the '765 Patent, Plaintiff NTC will suffer irreparable harm.

## COUNT FOUR

### INFRINGEMENT OF THE '187 PATENT

64.     Plaintiff NTC repeats and realleges the allegations in paragraphs 1-63 as though fully set forth herein.

65.    Plaintiff NTC is the patentee and owner of all rights, title, and interest in and under United States Patent No. 6,225,187 ("the '187 Patent"). A true and correct copy of the §187 Patent is attached hereto as Exhibit "D".

66.    The '187 Patent relates to a process for creating a semiconductor structure and is titled "Method For STI-Top Rounding Control."

67.    The '187 Patent is valid and enforceable.

68.    Upon information and belief, Defendants have been and are infringing the '187 Patent by making, using , selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the claims of the '187 Patent.

69.    By making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the claims of the '187 Patent, Defendants have also induced infringement of the '187 Patent under 35 U.S.C. § 271(b), and have contributed to the infringement of the '187 Patent under 35 U.S.C. § 271(c). The infringing products have no substantial non-infringing uses.

70.    As a direct and proximate result of Defendants' acts of patent infringement, Plaintiff NTC has been and continues to be injured and has sustained and will continue to sustain substantial damages in an amount not presently known.

71.    Plaintiff NTC has no adequate remedy at law against these acts of patent infringement.  Unless Defendants are preliminarily and permanently enjoined from their infringement of the '187 Patent, Plaintiff NTC will suffer irreparable harm.

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

## COUNT FIVE

### INFRINGEMENT OF THE '271 PATENT

72.    Plaintiff NTC repeats and realleges the allegations in paragraphs 1-71 as though fully set forth herein.

73.    Plaintiff NTC is the patentee and owner of all rights, title, and interest in and under United States Patent No. 6,426,271 ("the '271 Patent"). A true and correct copy of the '271 Patent is attached hereto as Exhibit "E".

74.    The '271 Patent relates to a process for creating a semiconductor structure and is titled "Method Of Rounding The Corner Of A Shallow Trench Isolation Region."

75.    The '271 Patent is valid and enforceable.

76.    Upon information and belief, Defendants have been and are infringing the '271 Patent by making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the claims of the '271 Patent.

77.    By making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of the claims of the '271 Patent, Defendants have also induced infringement of the '271 Patent under 35 U.S.C. § 271(b), and have contributed to the infringement of the '271 Patent under 35 U.S.C. § 271(c). The infringing products have no substantial non-infringing uses.

78.    As a direct and proximate result of Defendants' acts of patent infringement, Plaintiff NTC has been and continues to be injured and has sustained and will continue to sustain substantial damages in an amount not presently known.

79.    Plaintiff NTC has no adequate remedy at law against these acts of patent infringement.  Unless Defendants are preliminarily and permanently enjoined from their infringement of the '271 Patent, Plaintiff NTC will suffer irreparable harm.

## DECLARATORY RELIEF COUNTS

80.    Plaintiffs bring the following claims for declaratory judgment under both Federal Rule of Civil Procedure, Rule 57 and 28 U.S.C. §§ 2201 and 2202:

## COUNT SIX

## NON-INFRINGEMENT OF THE '166 PATENT

81.    Plaintiffs repeat and reallege the allegations in paragraphs 1-80 as though fully set forth herein.

82.    Plaintiffs have not infringed, and are not infringing, the '166 Patent. A true and correct copy of the '166 Patent is attached hereto as Exhibit "F".

83.    Plaintiffs have not contributed to, are not contributing to, have not induced, and are not inducing the infringement of the '166 Patent by any third party.

84.    Plaintiffs are licensed to the '166 Patent.

85.    Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the non-infringement of the '166 Patent.

---

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

## COUNT SEVEN

## INVALIDITY OF THE '166 PATENT

86.     Plaintiffs repeat and reallege the allegations in paragraphs 1-85 as though fully set forth herein.

87.     The '166 Patent is invalid for failing to satisfy the conditions for patentability set forth in Part II of Title 35 of the United States Code, including but not limited to sections 102, 103, and/or 112.

88.     Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the invalidity of the '166 Patent.

## COUNT EIGHT

## UNENFORCEABILITY OF THE '166 PATENT

89.     Plaintiffs repeat and reallege the allegations in paragraphs 1-88 as though fully set forth herein.

90.     The '166 Patent is unenforceable because it expired in 2004.

91.     The '166 Patent is unenforceable for failing to satisfy the conditions of enforceability required in law and equity.

92.     Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the unenforceability of the '166 Patent.

///

///

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

## COUNT NINE

### NON-INFRINGEMENT OF THE '336 PATENT

93.     Plaintiffs repeat and reallege the allegations in paragraphs 1-92 as though fully set forth herein.

94.     Plaintiffs have not infringed, and are not infringing, the '336 Patent. A true and correct copy of the '336 Patent is attached hereto as Exhibit "G".

95.     Plaintiffs have not contributed to, are not contributing to, have not induced, and are not inducing the infringement of the '336 Patent by any third party.

96.     Plaintiffs are licensed to the '336 Patent.

97.     Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the non-infringement of the '336 Patent.

## COUNT TEN

### INVALIDITY OF THE '336 PATENT

98.     Plaintiffs repeat and reallege the allegations in paragraphs 1-97 as though fully set forth herein.

99.     The '336 Patent is invalid for failing to satisfy the conditions for patentability set forth in Part II of Title 35 of the United States Code, including but not limited to sections 102, 103, and/or 112.

**100.**     Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the invalidity of the '336 Patent.

FIRST AMENDED COMPLAINT FOR ANTITRUST LAW VIOLATIONS,
PATENT INFRINGEMENT, AND FOR DECLARATORY RELIF

## COUNT ELEVEN

## UNENFORCEABILITY OF THE '336 PATENT

101.　Plaintiffs repeat and reallege the allegations in paragraphs 1-100 as though fully set forth herein.

102.　The '336 Patent is unenforceable because it expired in 2001.

103.　The '336 Patent is unenforceable for failing to satisfy the conditions of enforceability required in law and equity.

104.　Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the unenforceability of the '336 Patent.

## COUNT TWELVE

## NON-INFRINGEMENT OF THE '712 PATENT

105.　Plaintiffs repeat and reallege the allegations in paragraphs 1-104 as though fully set forth herein.

106.　Plaintiffs have not infringed, and are not infringing, the '712 Patent. A true and correct copy of the '712 Patent is attached hereto as Exhibit "H".

107.　Plaintiffs have not contributed to, are not contributing to, have not induced, and are not inducing the infringement of the '712 Patent by any third party.

108.　Plaintiffs are licensed to the '712 Patent.

109.　Therefore, there has been and is now an actual controversy between Plaintiffs and Defendants as to the non-infringement of the '712 Patent.