RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone:   (671) 646-9355
Facsimile:    (671) 646-9403

Attorneys for Defendant
FUJITSU LIMITED

FILED
DISTRICT COURT OF GUAM
NOV 20 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| NANYA TECHNOLOGY CORP., | CIVIL CASE NO. 06-CV-00025 |
| Plaintiff, | **FUJITSU LIMITED'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE'S ORDER GRANTING MOTION FOR ALTERNATIVE SERVICE OF PROCESS ON FUJITSU LIMITED** |
| -v- | |
| FUJITSU LIMITED, FUJITSU MICROELECTRONICS AMERICA, INC., | ORAL ARGUMENT REQUESTED |
| Defendants. | |

*CIVIL CASE NO. 06-CV-00025*

ORIGINAL

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................................................ 1

II.  Statement of Facts ............................................................................................................. 1

III. Applicable Laws ................................................................................................................ 5

   A. Compliance with the Hague Convention Is Mandatory ............................................. 5

   B. Service via Postal Channels Should Not Be Permitted Against Japanese Defendants under the Hague Convention .................................................................................................. 6

   C. To the Extent Service by Postal Channels on Japanese Defendants Is Permitted, It Should Meet the Requirements of Fed. R. Civ. P. 4(f)(2) ................................................. 8

      1. Japanese Law Imposes Safeguards for Service By Postal Channels ...................... 8

      2. The Court Should at Least Require Fed. R. Civ. P. 4(f)(2) Safeguards ................ 10

   D. Service under Rule 4(f)(3) Is Appropriate Only In Certain Circumstances ............... 11

      1. Service under Rule 4(f)(3) Is Appropriate Only After Service Under The Hague Convention Has Been Attempted .................................................................................. 11

      2. Service under Rule 4(f)(3) Requires Urgent Circumstances ............................... 12

      3. Service under Rule 4(f)(3) Should Not Violate the Laws of Defendant's Country ....... 13

IV. Analysis .......................................................................................................................... 13

   A. The Magistrate's Order Must Be Set Aside Under Rule 72(a) ................................. 13

      1. Nanya's Motion Was Based On Misrepresentations ........................................... 13

      2. Nanya's Purported "Urgent" Circumstances Allegedly Justifying Rule 4(f)(3) Service Are Entirely Fabricated ................................................................................................ 14

      3. The Form of Service Ordered Was Improper Under Rule 4 ............................... 15

V.  Conclusion ...................................................................................................................... 15

i

## I. INTRODUCTION

Fujitsu Limited ("Fujitsu") respectfully submits its attached objections to the Magistrate's Order Granting Motion for Alternative Service of Process On Fujitsu Limited ("Order"), dated November 9, 2006. Based on these objections, Fujitsu hereby requests that the Order be set aside and that Nanya Technology Corp. ("Nanya") be required to proceed with any future service in accordance with applicable laws, including the Hague Convention.

Nanya's *Ex Parte* Motion for Alternative Service of Process on Defendant Fujitsu Limited and Memorandum in Support ("Nanya's Motion") was based on serious misrepresentations to the Court. For example, contrary to Nanya's allegations, Fujitsu did not ask Nanya during a meeting on September 14, 2006 to delay service of the Guam Complaint. Further, Nanya's argument that there is some urgency in this case due to Fujitsu's alleged attempt to delay the Guam case while pushing forward a N.D. Cal. case filed by Fujitsu is entirely false. Fujitsu has done nothing to accelerate the N.D. Cal. case ahead of the Guam case and has refused no request for extensions in that case.

Further, the form of alleged service requested by Nanya violates Japanese law, the Hague convention, and Rule 4 itself and is accordingly improper.[1]

## II. STATEMENT OF FACTS

Fujitsu approached Nanya in 1999 to discuss the terms of a license regarding Nanya's unauthorized use of substantial Fujitsu technology relating to semiconductor devices. Over the next 5 years the parties met numerous times but were unable to reach agreement on license terms. Fujitsu brought an action for patent infringement against Nanya in August of 2005 in Japan. The

---

[1] These objections are not a responsive pleading to the Complaint and Fujitsu reserves its rights to address serious issues under Fed. R. Civ. P. 12 when responding to the Complaint.

1

*CIVIL CASE NO. 06-CV-00025*

Japanese litigation is progressing and the parties have been engaged in a series of court-supervised mediations.

In an apparent attempt to gain leverage in the mediation, Nanya filed this action on September 13, 2006. On the next day, Nanya's U.S. lawyer, Mr. Michael W. Shore, presented a "courtesy copy" of the Complaint to Mr. Shigeru Kitano of Fujitsu during a meeting in Japan. (Shigeru Kitano Declaration in Support of Fujitsu Limited's Objections to the Magistrate's Order Granting Motion for Alternative Service of Process on Fujitsu Limited ("Kitano Declaration"), ¶¶ 3, 4, 6 and 8.) Mr. Kitano is a Deputy General Manager in the Industry Relations Division of the Law and Intellectual Property Unit of Fujitsu. (*Id.*, ¶ 2.)

In describing the September 14, 2006 meeting, Nanya's Motion incorrectly states that "[a]fter Nanya provided Fujitsu Ltd. with a copy of the Complaint in Tokyo, Fujitsu Ltd. requested that Nanya refrain from formally serving the Complaint until further settlement discussions could take place. Nanya agreed". (Nanya's Motion at 2.) To the contrary, Mr. Shore *unilaterally* told Mr. Kitano and other Fujitsu representatives that Nanya would not serve the complaint so long as negotiations continued. (Kitano Declaration, ¶ 6.) At no time did any Fujitsu representative ask anyone not to serve the Complaint. (*Id.*, ¶ 5.)

The other Fujitsu representatives who attended the September 14 meeting were Mr. Yuichi Sakoda (Director in the Industry Relations Division of the Law and Intellectual Property Unit of Fujitsu), Mr. Takao Miura (Manager in the Intellectual Property & Technical Standards Division of the Electronic Devices Business Unit of Fujitsu), and Mr. Katsuya Irie (Manager in the Industry Relations Division of the Law and Intellectual Property Unit of Fujitsu). (*Id.*, ¶ 3.)

Attendees on behalf of Nanya in addition to Mr. Shore were Ms. Vicky Tseng (Deputy Director, Legal and IP Division, Nanya Technology Corp.), Ms. Yu Ching Liu (Senior

2

CIVIL CASE NO. 06-CV-00025

Administrator, Legal & IP Division, Project Mgt. Section, Nanya Technology Corp.), and Mr. Shigehisa Iwata (President, Nanya Technology Japan). (*Id.*)

Submitted herewith are declarations from each of Mr. Sakoda, Mr. Miura and Mr. Irie, each of whom has reviewed the Kitano Declaration and confirmed that it is correct and that the events during the meeting occurred exactly as Mr. Kitano described. Thus, four witnesses from Fujitsu have confirmed that no one from Fujitsu requested that the Guam Complaint not be served and that, therefore, Mr. Shore's allegations on this point are incorrect.

At a court proceeding held on September 15, 2006 in the Tokyo District Court, Fujitsu asked Nanya to "confirm" its position about the service of the complaint. (Kitano Declaration, ¶ 7.) Again, no Fujitsu representative asked for a delay of service. (*Id.*) Nanya responded by providing Fujitsu with Mr. Shore's September 19 e-mail. (*See Id.*, Exhibit A.)

Mr. Shore's September 19 e-mail is consistent with his statement at the September 14 settlement meeting, because it admits that the copy handed to Fujitsu was only a courtesy copy, that service had not yet been made, and that Nanya would not serve the complaint while the settlement discussions continued. (*Id.*, ¶ 8.) There was no agreement, including a standstill agreement, between Fujitsu and Nanya in relation to the service of the complaint. (*Id.*)

In response to the filing of the Guam complaint by Nanya, Fujitsu filed an action for patent infringement in the N.D. Cal. on October 24, 2006 against both Nanya and Nanya's U.S. subsidiary, Nanya Technology Corp. U.S.A. ("Nanya USA").[2] The N.D. Cal. was chosen because, *inter alia*, it is home to both Nanya USA and Fujitsu Microelectronics America, Inc.

---

[2] Nanya has apparently conceded the importance of its California subsidiary to this matter as it has now added Nanya USA as a co-plaintiff in the Amended Complaint.

3

*CIVIL CASE NO. 06-CV-00025*

1  ("FMA"), a subsidiary of Fujitsu. Fujitsu provided Nanya with a courtesy copy of the N.D. Cal.
2  complaint during the next meeting between the parties on October 25, 2006.

3  A telephone conference took place on October 31, 2006 between Mr. Shore and Fujitsu's
4  counsel in the N.D. Cal. case, *i.e.,* Christopher E. Chalsen and Michael M. Murray. Mr. Chalsen
5  and Mr. Murray are both Partners with Milbank, Tweed, Hadley & McCloy LLP. During that
6  call, Mr. Shore proposed that the parties agree to mutually waive service of process in the Guam
7  and N.D. Cal. cases in exchange for extensions of the deadlines to respond to the complaints.
8  (Christopher E. Chalsen Declaration in Support of Fujitsu Limited's Objections to the
9  Magistrate's Order Granting Motion for Alternative Service of Process on Fujitsu Limited
10 ("Chalsen Declaration"), ¶ 5; Michael M. Murray Declaration in Support of Fujitsu Limited's
11 Objections to the Magistrate's Order Granting Motion for Alternative Service of Process on
12 Fujitsu Limited ("Murray Declaration"), ¶ 3.) Mr. Shore proposed that both Fujitsu and FMA
13 would be given 90 day extensions and sought a 120 day extension for Nanya's deadlines. (*Id.*)
14 Mr. Chalsen advised Mr. Shore that he would communicate the proposal to Fujitsu in Japan. (*Id.*)
15 Mr. Shore asked for a response before November 10, 2006. (*Id.*)

16 However, on October 31, 2006, the same day that Mr. Shore was negotiating the waiver of
17 service, FMA was served with the Guam Complaint in California. (Chalsen Declaration, ¶ 6.)
18 Fujitsu considered the service on FMA to violate the spirit of the negotiations between the parties
19 and to be clearly inconsistent with Mr. Shore's proposal that service be mutually waived. During
20 a second telephone conference on November 1, 2006 between Mr. Shore and Mr. Murray, Mr.
21 Shore stated that he did not believe it was inconsistent to negotiate a waiver of service at the same
22 time that actual service was being carried out. (Murray Declaration, ¶ 5.) In fact, Mr. Shore
23 stated that he had begun service against both Fujitsu and FMA immediately after he was given a

4

CIVIL CASE NO. 06-CV-00025

1  copy of the N.D. Cal. complaint on October 25, 2006. (*Id.*)  He further stated that he was
2  following the Hague Convention to serve Fujitsu in Japan and that service under the Hague
3  Convention could be completed at any time. (*Id.*)

4  On Tuesday, November 7, 2006 at 12:15 p.m. (New York time), Mr. Shore sent Mr.
5  Chalsen an email threatening to file a motion for alternative service under Fed. R. Civ. P. 4(f) the
6  next day in Guam. (Chalsen Declaration, ¶ 8.)  Nanya did not provide Fujitsu's counsel with a
7  copy of the written *ex parte* motion. (*Id.*)

8  At about 9:45 p.m. on November 8, 2006 (New York time), Mr. Chalsen received a call
9  from the Carlsmith firm (also representing Fujitsu) informing him that they had just been advised
10 by Nanya's local counsel that Nanya was going to seek an *ex parte* order at 10:00 p.m. New York
11 time (1:00 p.m. Guam time) unless Fujitsu <u>immediately</u> agreed to waive service. (*Id.*, ¶ 9.)
12 Fujitsu declined to waive service under those circumstances. (*Id.*)

13 **III.   APPLICABLE LAWS**

14    **A.   Compliance with the Hague Convention Is Mandatory**

15 Japan is a signatory to the Hague Convention on the Service Abroad of Judicial and
16 Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention"). The Hague
17 Convention establishes procedures for serving defendants in member countries. ***Those***
18 ***procedures are mandatory.*** *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("compliance
19 with the Convention is mandatory in all cases to which it applies.") (citing *Volkswagenwerk*
20 *Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705, 722 (1988); *Marcantonio v. Primorsk Shipping*
21 *Corp.*, 206 F. Supp. 2d 54, 58 (D. Mass. 2002) ("Use of the [Hague] Convention procedures,
22 when available, is mandatory if documents must be transmitted abroad to effect service.")); *see*
23 Advisory Committee notes on Rule 4(f), 1993 amendment.

5

CIVIL CASE NO. 06-CV-00025

The Hague Convention prohibits service except by those means that are permitted by its provisions. The permissible means include service upon the receiving country's Central Authority, pursuant to Articles 2 through 6, or through diplomatic or consular channels, in accordance with Articles 8 or 9 of the Convention. The receiving country can impose certain requirements with respect to those documents (for example, that they be translated into the language of that country). (*See* Hague Convention Article 5.) The Convention also requires service of a "Request for Service Abroad of Judicial or Extrajudicial Documents" in a format in accord with a form annexed to the Hague Convention. (*Id.*)

### B. Service via Postal Channels Should Not Be Permitted Against Japanese Defendants under the Hague Convention

The law is unsettled regarding whether service via postal channels is permissible against Japanese defendants under the Hague Convention. The better view is that it is not permitted. There are two threshold questions at issue. The first is whether service by postal channels is available under Article 10(a) *generally,* and the second is whether it is available against Japanese defendants *specifically*. There are splits of authority among the circuits on both issues.

The split on the first issue centers on the language in Hague Convention Article 10(a), which refers to the use of postal channels to "send" judicial documents directly to persons abroad. *Id.* Some circuits have interpreted this language as not authorizing *service*, but rather to only permit transmission of judicial documents *after* service of process is effectuated. *See, e.g., Nuovo Pignone, SpA v. Storman Asia M/V,* 310 F.3d 374, 385 (5th Cir. 2002). However, the Ninth Circuit has found that it is possible to serve process by postal channels "provided the State of destination does not object.'" *Brockmeyer v. May,* 383 F.3d 798, 801-02, 808 (9th Cir. 2004).

6

*CIVIL CASE NO. 06-CV-00025*

1    Courts in the Ninth Circuit thus must proceed to the second step of inquiring whether the

2    particular country in question objects. This leads to the split of authority with respect to Japan.

3    At a Special Commission of the Hague Convention held in April, 1989, the Japanese

4    delegation announced that Japan does not consider the sending of foreign judicial documents by

5    postal channels to be an "infringement of its sovereign power". (Practical Handbook on the

6    Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and

7    Commercial Matters, 134 (1992).) The delegation went on to state, however, that Japan's failure

8    to object to mail service "does not necessarily imply that the sending by such a method is

9    considered valid service in Japan," thereby leaving unanswered the question of whether Japan

10   recognizes Article 10(a) to allow direct service of process by mail. (*Id.*); *See also Knapp v.*

11   *Yamaha Motor Corp. U.S.A.*, 60 F. Supp. 2d 566, 569 (S.D. W. Va. 1999).

12   While there is a split of authority on the issue, the better view is that Japan does <u>not</u>

13   recognize Article 10(a) to allow direct service of process by mail, in part because it objected to

14   much more formal modes of service by Japanese officials which were available in Article 10,

15   subdivisions (b) and (c). This view is aptly presented in *Knapp*:

16   > [Courts allowing service by postal channels on Japanese defendants] place
17   > significant reliance on the fact that Japan has not specifically objected to service
>    through postal channels. Of course, ... inasmuch as Article 10(a), unlike 10(b) and
>    10(c), does not mention "service," Japan could quite reasonably have concluded
>    that there was no need to object. Moreover, it seems unlikely that service of
18   > process would have been contemplated through "postal channels" where there is
>    no accompanying safeguard requiring the use of some form of registered mail.
19   > Indeed, Japan does not have an internal legal system which recognizes a form of
>    service equivalent to the United States' registered mail system. *See Suzuki*, 249
20   > Cal.Rptr. at 379. Given this fact, the court agrees with *Suzuki* that it is "extremely
>    unlikely that Japan's failure to object to Article 10, subdivision (a) was intended to
>    authorize the use of registered mail as an effective mode of service of process,
21   > particularly in light of the fact that Japan specifically objected to the much more
>    formal modes of service by Japanese officials which were available in Article 10,
22   > subdivisions (b) and (c)." *Id.* Instead, it seems more likely that Japan interpreted
>    Article 10(a) as allowing only for the transmission of judicial documents after
23   > service of process has been effected. *Id.* Further, as noted previously, in April,

24   

*CIVIL CASE NO. 06-CV-00025*

25

26

1989, the Japanese delegation, at the Special Commission on the operation of the Hague Convention, stated that its failure to object to Article 10(a) did not necessarily imply that it considered direct mail service of process to be valid. *See supra* n. 3.

60 F. Supp. 2d at 571; *see also Eggear v. The Shibusawa Warehouse Co., Ltd.*, 2001 WL 267881, *5-*6 (E.D. Pa. 2001).

Accordingly, in the case of Japan, sending a copy of a summons and complaint by mail to a Japanese defendant should not be considered a method of service of process permitted by the Hague Convention. Rather, courts should require service upon a Japanese defendant to be effected either upon Japan's Minister of Foreign Affairs, pursuant to Articles 2 through 6, or through diplomatic or consular channels, in accordance with Articles 8 or 9 of the Convention.

This result is also consistent with Japanese internal law, which does not permit service by regular mail, as discussed further below. (*See infra* section C.)

### C. To the Extent Service by Postal Channels on Japanese Defendants Is Permitted, It Should Meet the Requirements of Fed. R. Civ. P. 4(f)(2)

If the Court finds that service by postal channels against Japanese defendants is permitted, the Court should at least require such service to meet the requirements for service by international mail on foreign defendants under Fed. R. Civ. P. 4(f)(2), which is the closest U.S. equivalent to service by postal channels under Japanese law.

#### 1. Japanese Law Imposes Safeguards for Service By Postal Channels

Japanese plaintiffs are not able to effect service themselves by mail under their civil law. Unlike the legal practice in the United States, under the Japanese Code of Civil Procedure ("CCP"), only Japanese court clerks can administer matters relating to service. (Shigeshi Tanaka Declaration in Support of Fujitsu Limited's Objections to the Magistrate's Order Granting Motion for Alternative Service of Process on Fujitsu Limited ("Tanaka Declaration"), ¶ 6 (citing Article

8

CIVIL CASE NO. 06-CV-00025

98 (2) of CCP).) Under Japanese law, direct service of process by Japanese attorneys or private citizens is invalid and has no effect. (*Id.* ¶ 7.)

Court clerks can administer service in two ways; either by a special mailing process or through an execution officer. (*Id.*, ¶ 8 (citing Article 99 (1) of CCP).) There are a limited number of exceptions to this principle, for example, a court clerk may effect service in person on a person who has previously appeared in a case before the relevant court. (*Id.*)

With regard to service through the special mailing process, persons engaged in the mailing business known as *tokubetsu sotatsu* are deemed to be the official effecting such service. (*Id.*, ¶ 9 (citing Article 99 (2) of CCP).) This special type of mail is set forth in Article 66 of Postal Service Law. (*Id.*) Under the *tokubetsu sotatsu* procedure, the public official who has effected service shall report in writing to the court, stating the particulars relating to the service such as place, date and time of service, according to Article 109 of CCP. (*Id.*) Such reporting is unique to *tokubetsu sotatsu* service. (*Id.*) All documents associated with this are in Japanese. (*Id.*)

Japan has regular mail, registered mail and couriers, such as Federal Express. (*Id.* ¶ 10.) *Tokubestsu sotatsu* mail is different from any of these types of other mail. (*Id.*)

*Tokubetsu sotatsu* is permitted only for service within Japan. (*Id.*, ¶ 11.) For service outside of Japan, service must be made by the presiding judge entrusting the matter to the competent governmental authorities of such country or to the Japanese ambassador, minister, envoy or consul stationed in such country. (*Id.* (citing Article 108 of CCP).)

Accordingly, service by plaintiffs themselves via postal channels is not permitted under the laws of Japan.

9

### 2. The Court Should at Least Require Fed. R. Civ. P. 4(f)(2) Safeguards

Those courts that have allowed service by postal channels to countries that are signatories to the Hague Convention have nevertheless required the safeguards of Fed. R. Civ. P. 4(f)(2). As discussed in *Fireman's Fund Ins. Co. v. Fuji Electric Sys. Co.*, No. C-04-3627, 2005 WL 628034, *3 (N.D. Cal. Mar. 17, 2005), the Ninth Circuit held in *Brockmeyer* that because Article 10(a) does not itself affirmatively authorize international mail service, a court "must look outside the Hague Convention for affirmative authorization of the international mail service that is merely not forbidden by Article 10(a)." *See Brockmeyer*, 383 F.3d at 804. Any affirmative authorization of service by international mail, and the requirements thereof, "must come from the law of the forum in which the suit is filed." *See id.* at 804. Such "[e]xplicit, affirmative authorization for service by international mail is found only in Rule 4(f)(2)(C)(ii)." *See id.* at 804.

That rule provides, in relevant part:

(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:

...

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

...

(C) unless prohibited by the law of the foreign country, by

...

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served[.]

*See* Fed. R. Civ. P. 4(f)(2)(C)(ii).

In addition to being the only affirmative authorization for service by international mail in Rule 4, the procedures under Fed. R. Civ. P. 4(f)(2)(C)(ii) are also the closest U.S. equivalent to service by postal channels under Japanese law. *See supra* section III.C.1 at page 8.) Whether service is made inside Japan by a Japanese official (execution officer) or *tokubetsu sotatsu*

10

*CIVIL CASE NO. 06-CV-00025*

(Tanaka Declaration ¶ 9 (citing Article 99 (2) of CCP)), or outside of Japan by the presiding judge in the forum in which the suit is brought (*id.*, ¶ 11 (citing Article 108 of CCP)), <u>Japanese law does not permit service by a private plaintiff through postal channels</u>. Japan has important safeguards to ensure that service is effected properly and that the defendant has certainty with respect to its obligations to appear. Such safeguards for service by international mail upon foreign defendants are found under U.S. law only in Fed. R. Civ. P. 4(f)(2)(C)(ii).

In view of the express requirements of the Ninth Circuit and Japanese law (separately or combined), if the Court is inclined to allow service by postal channels upon Japanese defendants, it should at least require the safeguards of Fed. R. Civ. P. 4(f)(2), which requires service "to be addressed and dispatched by the clerk of the court." Fed. R. Civ. P. 4(f)(2)(C)(ii).

**D.     Service under Rule 4(f)(3) Is Appropriate Only In Certain Circumstances**

**1.     Service under Rule 4(f)(3) Is Appropriate Only After Service Under The Hague Convention Has Been Attempted**

In its attempt to avoid the Hague Convention and Fed. R. Civ. P. 4(f)(1) and 4(f)(2), Nanya relies on Fed. R. Civ. P. 4(f)(3) which permits service "by other means not prohibited by international agreement as may be directed by the court." But because "compliance with the Convention is mandatory in all cases to which it applies," *Brockmeyer v. May*, 383 F.3d at 801, a plaintiff must first attempt service under the Hague Convention.

Nanya cites *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016 (9th Cir. 2002) for the proposition that Rule 4(f)(3) "is merely one method of service 'among several which enables service of process on an international defendant.'" (Nanya's Motion at 4.) But Nanya fails to point out that *Rio* involved a defendant being served in Costa Rica, a country that was not a signatory to the Hague Convention. *Rio Properties*, 284 F.3d at 1015 ("A federal court would be

11

prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory.")

In *Marcantonio,* the court distinguished such a situation and found that where the Hague Convention applies, there is a hierarchy to Fed. R. Civ. P. 4(f):

> Marcantonio has not demonstrated that circumstances existed requiring resort to Rule 4(f)(3), which should be seen as a final effort to make service when other means have failed. To be sure, the Court in *Forum Financial Group*, 199 F.R.D. at 23-24, found that "[b]y its plain language and syntax, Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2)." However, that case involved a situation in which the Court held that no international agreement applied, and therefore analyzed whether subsection (f)(2) or (f)(3) took precedence. On the other hand, it is clear from the Advisory Committee Notes on Rule 4, which state "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service," that subsection (f)(1) does take precedence when, as here, an international treaty so requires.
>
> Marcantonio has not made any attempt to comply with the Hague Convention, and therefore employing Rule 4(f)(3) is at present inapplicable.

*Marcantonio,* 206 F. Supp. 2d at 59. Accordingly, service under Rule 4(f)(3) is appropriate only after service under the Hague Convention has been attempted.

**2.     Service under Rule 4(f)(3) Requires Urgent Circumstances**

In addition, when serving a defendant in a country that is signatory to the Hague Convention, a plaintiff must establish urgent circumstances to justify alternative service under Fed. R. Civ. P. 4(f)(3). As stated in the 1993 amendment Advisory Committee notes to Rule 4(f)(3), the Hague Convention "authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances."[3]

---

[3] Some of the circumstances listed in the Committee notes that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service

12

CIVIL CASE NO. 06-CV-00025

In the absence of urgent circumstances, plaintiffs must first follow Rule 4(f)(1), which provides for service "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

Subsection (f)(1) and, secondarily, subsection (f)(2) of Rule 4 take precedence when, as here, an international treaty so requires. *Marcantonio,* 206 F. Supp. 2d at 58-59.

### 3.  Service under Rule 4(f)(3) Should Not Violate the Laws of Defendant's Country

Even if Nanya could establish urgent circumstances warranting alternative service outside of the Hague Convention, such service should "minimize[] offense to foreign law." (*See* Advisory Committee notes to Rule 4(f)(3), 1993 amendment); *See Prewitt Enterprises v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 927 (11th Cir. 2003).

As discussed above, it is clear that service by mail is prohibited under the laws of Japan. *See Fireman's Fund Ins. Co. v. Fuji Electric Sys. Co.*, No. C-04-3627, 2005 WL 628034, *3 (N.D. Cal. Mar. 17, 2005); *see also supra* section III.C.1 at page 8.  Nor do such modes of service "minimize offense" to the foreign law, in view of the alternatives provided by Fed. R. Civ. P. 4.

## IV.  ANALYSIS

### A.  The Magistrate's Order Must Be Set Aside Under Rule 72(a)

#### 1.  Nanya's Motion Was Based On Misrepresentations

As noted above, *supra* section II, Nanya induced the Magistrate to grant the *ex parte* Order under Rule 4(f)(3) by falsely alleging that Fujitsu had asked Nanya not to serve the Guam

---

within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States. Advisory Committee notes to Rule 4(f)(3), 1993 amendment.

13

CIVIL CASE NO. 06-CV-00025

complaint during negotiations. (Nanya's Motion at 2.) In fact, Nanya unilaterally offered to delay service. (Kitano Declaration, ¶ 6.) Fujitsu did nothing to prevent Nanya from promptly serving under the Hague Convention. Nanya's decision to delay service does not justify the extraordinary relief granted by the Magistrate. Further, Nanya informed Fujitsu's counsel that it began Hague service immediately following a meeting on October 24th. (Murray Declaration, ¶ 5.) Nanya did not inform the Magistrate that it was already proceeding with service under the Hague Convention and was simply attempting to short-circuit the Hague process.

Nanya's misrepresentations and omissions led the Magistrate to grant relief that otherwise would have been denied. Accordingly, the Order should be set aside for at least this reason.

### 2. Nanya's Purported "Urgent" Circumstances Allegedly Justifying Rule 4(f)(3) Service Are Entirely Fabricated

Nanya falsely tried to meet the "urgency" requirement of Rule 4(f)(3) by alleging that Fujitsu was trying to delay the Guam case and implying that Fujitsu was trying to accelerate the case in the N.D. Cal. (Nanya Motion at 4.) This is utterly false and unsupported. Fujitsu served the complaint in the N.D. Cal. case only <u>after</u> Nanya served the Guam complaint on FMA. (Chalsen Declaration, ¶ 6.) As explained above, Fujitsu was negotiating in good faith with Nanya for mutual waivers of service and a reasonable extension for all parties to respond to the complaints. (*Id.*, ¶ 4.) It was Nanya that inexplicably served the Guam complaint on the same day that it made the waiver proposal and before Fujitsu's counsel could even communicate the offer to their Japanese client. (*Id.*, ¶ 5.)

Further, Nanya has made no effort to extend the deadlines in the N.D. Cal. case and has not asked Fujitsu to consent to an extension. Thus, the implication that Fujitsu was trying to push

14

*CIVIL CASE NO. 06-CV-00025*

the N.D. Cal. case at a faster pace is entirely a fabrication of Nanya to again try to mislead the Magistrate into granting extraordinary *ex parte* relief.

### 3. The Form of Service Ordered Was Improper Under Rule 4

The Magistrate's Order authorized Plaintiff to serve process on Fujitsu by "e-mail and mail service requiring a signed receipt". However, this form of service is improper for several reasons. As explained above, compliance with the Hague Convention is mandatory and the Hague Convention does not permit service by postal channels or e-mail on a Japanese Defendant.

Further, even if this Court should decide that Hague Convention service allows service through postal channels, such service should, at a minimum, require compliance with Rule 4(f)(2) for the reasons described above. Simple mail service and e-mail by a private plaintiff clearly violate Japanese law and thus do not "minimize offense" to Japanese law as required by Rule 4(f)(3). Further, as described above, service by plaintiff itself is not permitted under Rule 4(f)(2). Rather, 4(f)(2) requires service to be dispatched by the clerk of the Court.

Accordingly, because the Magistrate's Order does not comport with the requirements of the Hague convention, Japanese law and Rule 4 itself, it should be set aside.

## V. CONCLUSION

For the foregoing reasons, Fujitsu respectfully requests that this Court set aside the Magistrate's Order.

Respectfully submitted this 20th day of November, 2006

CALVO & CLARK, LLP
Attorneys at Law
Attorneys for Defendant
*Fujitsu Limited*

By: _____
Daniel M. Benjamin

15

*CIVIL CASE NO. 06-CV-00025*