1   **TEKER TORRES & TEKER, P.C.**
    SUITE 2A, 130 ASPINALL AVENUE
2   HAGÅTÑA, GUAM  96910
    TELEPHONE: (671) 477-9891/4
3   FACSIMILE:  (671) 472-2601

4   **UNPINGCO & ASSOCIATES, LLC**
    SUITE 12B, SINAJANA MALL
5   SINAJANA, GUAM
    TELEPHONE: (671) 475-8545
6   FACSIMILE:  (671) 475-8550

7   **SHORE CHAN BRAGALONE LLP**
    SUITE 4450
8   325 N. ST. PAUL STREET
    DALLAS, TEXAS 75201
9   TELEPHONE: (214) 593-9110
    FACSIMILE:  (214) 593-9111

10

11  *Attorneys for Plaintiffs*
    *Nanya Technology Corp. and*
12  *Nanya Technology Corp. U.S.A.*

**FILED**

**DISTRICT COURT OF GUAM**

**DEC - 6 2006**

**MARY L.M. MORAN**
**CLERK OF COURT**

13                  DISTRICT COURT OF GUAM

14                   TERRITORY OF GUAM

15  NANYA TECHNOLOGY CORP. and          CIVIL CASE NO. CV-06-00025
    NANYA TECHNOLOTY COPR. U.S.A.
16

17          Plaintiffs,
                                        **PLAINTIFFS' RESPONSE AND**
18      vs.                             **MEMORANDUM IN OPPOSITION TO**
                                        **FUJITSU LIMITED'S OBJECTION TO**
19  FUJITSU LIMITED and FUJITSU         **THE MAGISTRATES ORDER**
    MICROELECTRONICS AMERICA, INC.      **ALLOWING ALTERNATIVE SERVICE**
20                                      **ON FUJITSU LIMITED**
            Defendants.
21

22          Fujitsu Ltd.'s objection to Magistrate Judge Manibusan's order is merely an attempt to

23  delay its formal appearance in this action so that it may pursue a duplicative lawsuit that it filed

24  in California against Nanya Technology Corporation ("NTC") and Nanya Technology

25  Corporation USA, Inc. ("NTC USA") (collectively "Nanya") six weeks after this suit was

26  filed.[1]  Fujitsu Ltd.'s objection, however, is fatally flawed because it requires this Court to

27  ───────────────────
    [1] *Fujitsu Limited et al v. Nanya Technology Corp.*, Case No. 4:06-CV-06613-CW ("California
28  Suit").

                                         1

                            **ORIGINAL**

1   disregard Ninth Circuit precedent regarding service under the Hague Convention and

2   alternative service under Rule 4(f)(3). Fujitsu Ltd.'s objection is little more than a request that

3   this Court follow other circuits in what Fujitsu Ltd. admits is a "split in authority."[2] This falls

4   far short of establishing that Magistrate Judge Manibusan's order is "clearly erroneous or

5   contrary to law."

6   Furthermore, Fujitsu Ltd. never argues that the safeguards of Rule 4(f)(3) were not met

7   or that its Due Process rights have been violated. There is no doubt that Fujitsu Ltd. knows

8   about the suit. Its officers and directors have now filed declarations in this case. Its attorneys

9   have been admitted *pro hac vice*. And its objection to the November 9, 2006 Order leaves no

10  doubt that it has knowledge of this lawsuit and can protect its interests in this suit. Nanya,

11  therefore, respectfully requests that the Court overrule Fujitsu Ltd.'s objection to the Magistrate

12  Judge Manibusan's order and allow this first-filed case to go forward without further,

13  unnecessary delay.

14  **I.     ARGUMENT—FUJITSU LTD. HAS BEEN PROPERLY SERVED**

15  Fujitsu Ltd. argues that Magistrate Judge Manibusan's order authorizing service under

16  Rule 4(f)(3) should be set aside because

17      (a)     NTC's counsel made misrepresentations to the Court concerning Fujitsu

18              violating an agreement to continue settlement negotiations;

19      (b)     the Hague Convention does not permit service by mail on Japanese

20              defendants;

21      (c)     the form of service disregards Japanese law,

22      (d)     the safeguards in Rule 4(f)(2)(C)(ii) were not met; and

23      (e)     the order violated the "hierarchy" of service under Rule 4 or did not satisfy Rule

24              4(f)(3)'s "urgency" requirement.

25  All five of these arguments are either not relevant to the issues before the court or based on law

26  from other circuits. As shown below, Magistrate Judge Manibusan's order was firmly based

27  _____

28  [2] Fujitsu Ltd.'s Mem. of Points and Auth. at 6; Dkt. No. 44.

2

1   upon established ***Ninth Circuit*** precedent and the Court's "sound discretion," and the order is

2   certainly not "clearly erroneous or contrary to law." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d

3   1007, 1016 (9th Cir. 2002); FED. R. CIV. P. 72(a).

4   A.    RECRIMINATIONS ASIDE—THERE WAS AN AGREEMENT THAT THE COMPLAINT IN THIS

5        CASE WOULD NOT BE SERVED UNTIL AFTER FURTHER NEGOTIATIONS

6        There are several important points that Nanya would like to bring to the Court's attention

7   with regard to Fujitsu's version of the facts set forth in the memorandum supporting Fujitsu

8   Ltd.'s objection to the Magistrate's order:

9        • Fujitsu Ltd. received a courtesy copy of the complaint in this lawsuit the day

10           after Nanya filed it;

11       • There was an agreement between the parties that Nanya would not formally

12           serve the complaint until after further settlement negotiations; and

13       • Fujitsu Ltd., at the very least, violated the spirit of that agreement when it

14           filed an action in the Northern District of California "[i]n response to the

15           filing of the Guam complaint by Nanya."[3]

16   Fujitsu Ltd. dedicates the first five pages of its memorandum to calling Nanya's attorneys liars.[4]

17   This name calling supposedly supports Fujitsu's argument that there was no urgency requiring

18   alternative service — an argument that Nanya demonstrates below is irrelevant anyway.

19   Nevertheless, Nanya wants to briefly address Fujitsu Ltd.'s claims that Nanya's counsel

20   "***seriously*** misrepresented" to the Court that Fujitsu Ltd. asked that Nanya not to serve the

21   complaint so that further settlement negotiations could continue.[5] According to Fujitsu Ltd., this

22   statement was "***seriously*** misleading" because Fujitsu Ltd. merely asked Nanya's counsel to

23   "***confirm***" that "Nanya would not serve the complaint while settlement discussions continued."[6]

24   Are they "seriously" serious?    Recriminations aside, throw both versions in the pot, add a little

25   _____

26   [3] *Id.* at 3.

     [4] *Id.* at 1-5.

27   [5] *Id.*

     [6] *Id.* at 3.

28

3

1    common sense, and one is left with an agreement that Nanya would postpone service while

2    negotiations continued. Fujitsu Ltd. then filed a duplicative suit in the Northern District of

3    California "in response to the filing of the Guam complaint by Nanya."[7] That violated the spirit

4    of that agreement regardless who first proposed it.

5        Now that Nanya has addressed the personal attacks against its attorneys, the response

6    will now address legal merits, or rather lack thereof, of Fujitsu Ltd.'s arguments.

7    **B.    ACCORDING TO NINTH CIRCUIT PRECEDENT, SERVICE BY MAIL ON FUJITSU LTD. IS**

8    **PROPER**

9        In *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir.

10   2002), the Ninth Circuit stated that alternative service "under Rule 4(f)(3) must be (1) directed

11   by the court; and (2) not prohibited by international agreement." And that's it — there are no

12   other requirements. *Id.* So the only issue is whether service by mail is prohibited by

13   international agreement, namely the Hague Convention. And the Ninth Circuit has held that it

14   is not. *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir. 2004).

15       Article 10(a) of the Hague Convention allows a party to "send" documents to a foreign

16   defendant by mail. In *Brockmeyer*, the Ninth Circuit held that the meaning of "send" by mail in

17   Article 10(a) of the Hague Convention includes "serve" by mail, and it rejected the Eighth

18   Circuit's contrary holding in *Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir. 1989)

19   (holding that the that that the meaning of the word "send" in Article 10(a) does not include

20   "service.") The Ninth Circuit stated that its holding is consistent with the purpose of the

21   Convention to facilitate international service of judicial documents. *Id.* at 802 (citing Hague

22   Convention, art. 1) ("[T]he present Convention shall apply in all cases, in civil or commercial

23   matters, where there is occasion to transmit a judicial or extrajudicial document for service

24   abroad."). The *Brockmeyer* court continued:

25       The purpose and history of the Hague Convention as well as the position of the
26       U.S. State Department convince us that "send" in Article 10(a) includes "serve."

27

28   [7] *Id.*

4

> We therefore hold that the Convention permits – or, in the words of the
> Convention, does not "interfere with" – service of process by international mail,
> **so long as the receiving country does not object.**

*Id.* at 803. As Fujitsu Ltd. is forced to admit in its brief, ***Japan has not objected to Article
10(a).*** [8] Thus, service on a Japanese defendant by mail is proper and effective in this Circuit.

Nevertheless, Fujitsu Ltd. urges the Court to find that Japan has ***implicitly*** objected to

Article 10(a) because it objected to more formal methods of service under the Hague

Convention.[9] Because there is no support for this attenuated theory in the Ninth Circuit, Fujitsu

Ltd. relies on the reasoning of the district court in *Knapp v. Yamaha Motor Corp. U.S.A.* 60 F.

Supp. 2d 566 (S.D. W. Va. 1999).[10] But the district court in *Knapp* expressly "adopt[ed] the

reasoning of the *Bankston* line of cases." *Knapp*, 60 F. Supp. 2d at 574. The Ninth Circuit, in

*Brockmeyer*, has rejected *Bankston*. *Brockmeyer*, 383 F.3d at 803. When reaching its decision,

the Ninth Circuit noted the U.S. State Department's specific disapproval of the *Bankston*

decision "noting that ***Japan did not object*** to the use of postal channels under Article 10(a)."

*Id.* at 803 (emphasis added).

Furthermore, numerous district courts have relied on Japan's failure to specifically

object to Article 10(a) and come to the same result, service on a Japanese defendant by mail is

proper under the Hague Convention:

- *Schiffer v. Mazda Motor Corp.*, 192 F.R.D. 335, 338-39 (N.D. Ga. 2000) ("The Japanese
  delegation's statement to the Special Commission, the Special Commission's report, and
  the United States Department of State's opinion explaining the Japanese delegation's
  statement all support this Court's conclusion that service of process on a Japanese
  corporation by registered mail is permissible pursuant to Article 10(a) of the Hague
  Convention.");

---

[8] Fujitsu Ltd.'s Mem. at 7, Dkt. No. 44.

[9] *Id.*

[10] Fujitsu Ltd.'s Mem. at 7-8, Dkt. No. 44.

5

1

2

- *Weight v. Kawasaki Heavy Industries, Ltd.*, 597 F. Supp. 1082, 1086-87 (E.D. Va. 1984) ("Japan has not declared that it objects to service through postal channels. Accordingly, under Article 10(a), service on a Japanese corporation, was effective by direct mail.");

3

4

5

- *Hammond v. Honda Motor Co., Ltd.*, 128 F.R.D. 638 (D.S.C. 1989) ("Finding the reasoning of the *Weight* court persuasive, the court declines to so narrowly construe the language of Article 10(a). Forbidding direct service by mail would render subpart (a) extraneous material.");

6

7

8

9

- *Lemme v. Wine of Japan Import, Inc.*, 631 F. Supp. 456 (E.D.N.Y. 1986) ("In light of the fact that the Convention purports to deal with the subject of service abroad, the reference to freedom to send judicial documents by postal channels directly to persons abroad would be superfluous unless it was related to the sending of such documents for the purpose of service.");

10

11

12

- *Chrysler Corp. v. General Motors Corp.* 589 F.Supp. 1182, 1206 (D.C.D.C. 1984) ("Specifically, the government of Japan has not objected to subsection (a) of Article 10 of the Hague Convention. That subsection provides that the state of destination does not object to, '(a) the freedom to send judicial documents, by postal channels, directly to persons abroad.' The service of the summons and complaint via this method is proper.").

13

14

15

16

17

And even after numerous courts have upheld service by mail on Japanese parties, Japan still has not objected to Article 10(a). *Schiffer* 192 F.R.D. at 338. ("Numerous United States courts have upheld service of process on Japanese defendants by direct mail, yet the Japanese government has made no efforts to amend it objections to the Convention so as to preclude service by mail pursuant to Article 10(a).")

18

19

20

21

22

23

24

25

26

Fujitsu Ltd. is right that there is a split of authority among the circuit courts regarding postal service under the Hague Convention, but it is wrong to insist that this Court reject Ninth Circuit's reasoning and adopt "the better view."[11] This Court is bound by the law of the Ninth Circuit and, despite Fujitsu Ltd.'s insistence, is "not to resolve splits between circuits no matter how egregiously in error [this Court] may feel [its] own circuit to be." *Zuniga v. United States Can. Co.*, 812 F.2d 443, 450 (9th Cir. 1987). The Ninth Circuit's holding that Article 10(a) allows service by mail, coupled with Japan's failure to object to Article 10(a), renders service upon Fujitsu by mail proper. Magistrate Judge Manibusan's order was consistent with, not "contrary to" Ninth Circuit law. FED. R. CIV. P. 72(a).

27

28

---

[11] *Id.* at 6.

1    **C.    ANALYSIS OF THE JAPANESE MAIL SYSTEM AND CIVIL PROCEDURE ARE**

2    **UNNECESSARY**

3    In *Rio Properties*, the Ninth Circuit stated:

     As is obvious from its plain language, service under Rule 4(f)(3) must be (1)
4    directed by the court; (2) not prohibited by international agreement. *No other
     limitations are evident from the text.* In fact, as long as court-directed and not
5    prohibited by an international agreement, service of process ordered under Rule
     4(f)(3) may be accomplished in *contravention of the laws of a foreign country.*
6

7    284 F.3d at 1016 (9th Cir. 2002). Thus, the issue in the Ninth Circuit is not whether the

8    Magistrate's order complies with Japanese mail system OR Japanese civil procedure as Fujitsu

9    suggests.[12] In fact, there is no need to comply with the law of Japan, and Fujitsu Ltd. cites no

10   relevant Ninth Circuit authority for this type of lengthy analysis of the Japanese mail system or

11   Japanese civil procedure. *Id.* Rather, the only issue under Rule (4)(f)(3) is whether service by

12   mail is prohibited by the Hague Convention, and the Ninth Circuit has held that it is not.

13   *Brockmeyer*, 383 F.3d at 802.

14   **D.    FUJITSU LTD. HAS BEEN AFFORDED THE SAFEGUARDS OF RULE 4(F)(3)**

15   In its interpretation of *Brockmeyer*, Fujitsu Ltd. argues that Rule 4(f)(2)(C)(ii) of the

16   Federal Rules of Civil Procedure contain the only safeguards for service by international mail

17   upon foreign defendants found in U.S. law.[13] While Rule 4(f)(2)(C)(ii) does set out formal

18   requirements in this area, Fujitsu Ltd.'s claim that this is the only safeguard ignores the

19   safeguards in Rule 4(f)(3). One only needs to read a little further in *Brockmeyer* — and in the

20   Federal Rules — to learn that, in addition to the safeguards in Rule 4(f)(2)(ii) Magistrate Judge

21   Manibusan can determine appropriate safeguards using his "sound discretion." *Brockmeyer*, 383

22   F.3d 805. The only requirement is that the method of service not be prohibited by international

23   agreement and comport with the Constitution's Due Process requirements that "service be

24   reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

25   the action and afford them an opportunity to present their objections." *Mullane v. Central*

26   _____

     [12] *Id.* at 8-10, Dkt. No. 44.
27
     [13] Fujitsu Limited's Mem. of Points and Authorities in Support of Its Objs. to the Magistrate's
28   Order Allowing Alternative Service of Process, Dkt. No.45, at 11.

                                                   7

1  *Hanover Bank & Trust Co.*, 339 U.S. 306, 315; *Rio Props.*, 284 F.3d at 1017. Fujitsu Ltd. has

2  had the opportunity to and has presented its objections.

3  　　　In *Rio*, the Ninth Circuit applied this well-established constitutional concept in

4  circumstances similar to this case. *Rio Props.*, 284 F.3d at 1012-13. The plaintiff in *Rio*, a Las

5  Vegas hotel and casino operator, was granted a motion for alternate service of process on a

6  foreign Internet gambling entity. *Rio Props.*, 284 F.3d at 1013. The court ordered service of

7  process on the foreign defendant by mail and email the same way Fujitsu Ltd. was served.[14] *Id.*

8  at 1013. In its analysis of the reasonableness of the methods of service under *Mullane v. Central*

9  *Hanover Bank & Trust Co.*, the Ninth Circuit concluded, "[w]ithout hesitation...each alternative

10 method of service of process ordered by the district court was constitutionally acceptable"

11 because "each method of service was reasonably calculated, under these circumstances, to

12 apprise [the defendant] of the pendency of the action and afford it an opportunity to respond."

13 *Rio Props.*, 284 F.3d at 1017.

14 　　　Fujitsu Ltd. never asserts that the service of process it received did not satisfy Due

15 Process requirements.[15] Fujitsu Ltd. could not make such a claim in good faith because Fujitsu

16 Ltd. has undoubtedly been apprised of the pendency of this case, and its objection to Magistrate

17 Judge Manibusan's order shows that it has been afforded an ample opportunity to respond.

18 Magistrate Judge Manibusan's order satisfies Rule 4(f)'s safeguards and the central purpose of

19 Due Process in accordance with the requirements of the U.S. Constitution.

20 **E. THE NINTH CIRCUIT HAS REJECTED FUJITSU'S "HIERARCHY"**
21 **ARGUMENT AND RULE 4(F) DOES NOT REQUIRE "URGENT**
22 **CIRCUMSTANCES"**

23 　　　Fujitsu Ltd. argues that the Magistrate's order should be set aside because Rule 4(f)(3)

24 only applies after service by the Hague Convention has been attempted, and that Rule 4(f)

25

26 [14] Order Granting Motion for Alternative Service of Process on Fujitsu Limited, Dkt. No. 19, at 1.

27 [15] Fujitsu Limited's Mem. of Points and Authorities in Support of Its Objs. to the Magistrate's
28 Order Allowing Alternative Service of Process, Dkt. No.45.

proscribes a "hierarchy of service."[16]   To support this "hierarchy" argument, Fujitsu cites a

district of Massachusetts case, *Marcantonio v. Primorsk Shipping Corp.*, F. Supp. 2d 54, 58 (D.

Mass. 2002)[17]   But *Marcantonio* — like Fujitsu's brief — directly contradicts Ninth Circuit

authority.  In *Rio*, the Ninth Circuit expressly and unequivocally rejected Fujitsu's argument:

> [Defendant] argues that Rule 4(f) should be read to create a hierarchy of preferred
> methods of service of process.  [Defendant's] interpretation would require that a
> party attempt service of process by those methods enumerated in Rule 4(f)(2),
> including by diplomatic channels and letters rogatory, before petitioning the court
> for alternative relief under Rule 4(f)(3). ***We find no support for [Defendant's]
> position.***  No such requirement is found in Rule's text, implied by its structure, or
> even hinted at in the advisory committee notes.

284 F.3d at 1014-15 (9th Cir. 2002).  For this Court to read such a hierarchy into the Rule 4(f)

or accept Fujitsu Ltd.'s argument would be "contrary to" not consistent with, Ninth Circuit law.

FED. R. CIV. P. 72(a).

Furthermore, neither Rule 4(f)(3) nor the Ninth Circuit requires Plaintiffs to show

"urgent circumstances" before requesting alternative service as Fujitsu Ltd. argues.[18]   Plaintiffs

alleged that circumstances were urgent to prevent Fujitsu Ltd.'s unjust gamesmanship and

forum shopping by filing a duplicative action in California, but the Court was not required to

find "urgent circumstances" before authorizing service under Rule 4(f)(3).   Again, Fujitsu

ignores the direct and binding authority of the *Rio* Court that stated the following:

> Thus, examining the language and structure of Rule 4(f) and the accompanying
> advisory committee notes, we are left with the inevitable conclusion that service
> of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'

284 F.3d at 1015 (9th Cir. 2002).  Rule 4(f)(3)'s plain language and the Ninth Circuit simply do

not require a showing of urgent circumstances, and Magistrate Judge Manibusan's order should

not be set aside on this ground.

---

[16] Fujitsu Ltd.'s Mem. at 11-12, Dkt. No. 44.

[17] *Id.* at 12, Dkt. No. 44.

[18] *Id.*

9

## II.    SUMMARY AND PRAYER

Fujitsu Ltd.'s claim that it did not request that Plaintiffs delay service of this action, but only requested that Plaintiffs confirm that they would delay service pending further settlement discussions is a distinction without difference.  There was an agreement to forego service of this lawsuit and Fujitsu Ltd. violated that agreement by filing a duplicative action in California. Fujitsu Ltd.'s statement that "the Hague Convention does not permit service by postal channels or e-mail on a Japanese Defendant" simply does not hold water in the Ninth Circuit.   And Fujitsu Ltd.'s urging that the court adopt a "better view" falls far short of establishing that Magistrate Judge Manibusan's order is "clearly erroneous or contrary to law."  Thus, the Court should overrule Fujitsu Ltd.'s objection.

DATED at Hagatna, Guam, this 6th day of December, 2006.

**TEKER TORRES & TEKER, P.C.**

By
JOSEPH C. RAZZANO, ESQ.

---

10