1  **TEKER TORRES & TEKER, P.C.**
   SUITE 2A, 130 ASPINALL AVENUE
2  HAGÅTÑA, GUAM 96910
   TELEPHONE: (671) 477-9891/4
3  FACSIMILE: (671) 472-2601

4  **UNPINGCO & ASSOCIATES, LLC**
   SUITE 12B, SINAJANA MALL
5  SINAJANA, GUAM
   TELEPHONE: (671) 475-8545
6  FACSIMILE: (671) 475-8550

7  **SHORE CHAN BRAGALONE LLP**
   SUITE 4450
8  325 N. ST. PAUL STREET
   DALLAS, TEXAS 75201
9  TELEPHONE: (214) 593-9110
   FACSIMILE: (214) 593-9111
10

11 *Attorneys for Plaintiffs*
   *Nanya Technology Corp. and*
12 *Nanya Technology Corp. U.S.A.*

**FILED**
DISTRICT COURT OF GUAM
DEC 22 2006
MARY L.M. MORAN
CLERK OF COURT

### DISTRICT COURT OF GUAM TERRITORY OF GUAM

| | |
|---|---|
| NANYA TECHNOLOGY CORP. and NANYA TECHNOLOGY CORP. U.S.A.<br><br>Plaintiffs,<br><br>vs.<br><br>FUJITSU LIMITED and FUJITSU MICROELECTRONICS AMERICA, INC.<br><br>Defendants. | No. CV-06-00025<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY IN SUPPORT OF THEIR OPPOSITION TO FUJITSU LIMITED'S OBJECTION TO THE MAGISTRATE'S ORDER ALLOWING ALTERNATIVE SERVICE ON FUJITSU LIMITED**<br><br>**[NO ORAL ARGUMENT REQUESTED]** |

NOW COMES PLAINTIFFS, Nanya Technology Corporation and Nanya Technology Corporation, U.S.A. (collectively "Nanya") and respectfully move this Honorable Court for leave to file herewith a short Sur-Reply in Support of their Opposition to Fujitsu Limited's Objection to the Magistrate's Order granting Nanya's Motion for Alternative Service.

The Court's relevant rule, stated in General Order No. 04-00016, refers only to the filing of objections to a Magistrate Judge's Order and responses to those objections, and is silent as to

1

ORIGINAL

the possibility of a Sur-Reply Brief. Nanya believes a Sur-Reply should be permitted here. Nanya believes it should be provided an opportunity to address Fujitsu Limited's mischaracterization of the law and facts surrounding the *Ex Parte* application. Thus, the proposed Sur-Reply that Nanya seeks to file (submitted herewith) will address the mischaracterization raised by Fujitsu in its Reply Brief and finally complete the record for the Court's review.

For these reasons, Nanya respectfully asks that this motion be granted.

Respectfully submitted this 22nd day of December, 2006.

**TEKER TORRES & TEKER, P.C.**

By _[signature]_
JOSEPH C. RAZZANO, ESQ.
Attorneys for Plaintiffs

| | |
|---|---|
| 1 | **TEKER TORRES & TEKER, P.C.** |
|   | SUITE 2A, 130 ASPINALL AVENUE |
| 2 | HAGÅTÑA, GUAM 96910 |
|   | TELEPHONE: (671) 477-9891/4 |
| 3 | FACSIMILE: (671) 472-2601 |

**FILED**
DISTRICT COURT OF GUAM
DEC 2 2 2006
MARY L.M. MORAN
CLERK OF COURT

**UNPINGCO & ASSOCIATES, LLC**
SUITE 12B, SINAJANA MALL
SINAJANA, GUAM
TELEPHONE: (671) 475-8545
FACSIMILE: (671) 475-8550

**SHORE CHAN BRAGALONE LLP**
SUITE 4450
325 N. ST. PAUL STREET
DALLAS, TEXAS 75201
TELEPHONE: (214) 593-9110
FACSIMILE: (214) 593-9111

*Attorneys for Plaintiffs*
*Nanya Technology Corp. and*
*Nanya Technology Corp. U.S.A.*

DISTRICT COURT OF GUAM TERRITORY OF GUAM

| | |
|---|---|
| NANYA TECHNOLOGY CORP. and NANYA TECHNOLOGY CORP. U.S.A.,<br><br>Plaintiffs,<br><br>vs.<br><br>FUJITSU LIMITED and FUJITSU MICROELECTRONICS AMERICA, INC.<br><br>Defendants. | No. CV-06-00025<br><br>**PLAINTIFFS' SUR-REPLY AND MEMORANDUM IN OPPOSITION TO FUJITSU LIMITED'S OBJECTION TO THE MAGISTRATE'S ORDER ALLOWING ALTERNATIVE SERVICE ON FUJITSU LIMITED** |

**SUR-REPLY RE: FUJITSU LTD.'S**
**OBJECTION TO THE MAGISTRATE'S ORDER**

Nanya Technology Corporation and Nanya Technology Corporation, U.S.A. (collectively "Nanya") present this Sur-Reply to address certain misrepresentations in Fujitsu, Ltd.'s reply brief regarding its objection to the Magistrate's order granting Nanya's motion for alternative service. Nanya first addresses Fujitsu's misrepresentations regarding the evidentiary record before the Court. While Nanya tried hard to avoid engaging in recriminations, it appears

1

that Fujitsu insists on taking the litigation in that direction. Nanya will therefore briefly respond and dispel any assertion that silence is the equivalent of assent or guilt. Nanya will then address Fujitsu's legal argument, which is based on Fujitsu's assertion that its legal analysis is better than the Ninth Circuit's.

## I. RECRIMINATIONS

Fujitsu makes the audacious claim that "Nanya does not deny that its *ex parte* motion was for alternative service was based on misrepresentations to the Court." (Defs.' Reply, Dkt. No. 85, at 1.) Far from admitting that Fujitsu's version of events is true, Nanya merely pointed out that it does not matter. The motion for alternative service only noted the agreement between the parties regarding service to demonstrate that Fujitsu had notice of this lawsuit. (Pls.' Mot. for Alt. Service, Dkt. No. 17-1, at 2-3.) While Fujitsu repeatedly, and dishonestly, states that the Magistrate's order was based on this "serious misrepresentation," Fujitsu never states the legal significance of who first proposed the postponement of service of process. The only relevant point Nanya was trying to make is that Fujitsu had actual notice of the suit, and Fujitsu never contests that it did have such actual notice. Fujitsu's dishonest, mean-spirited attack does not even concern material facts.

Fujitsu next asserts that their version of events as set forth in their declarations is now "uncontested." (Defs.' Reply, Dkt. No. 85, at 1-2.) That is blatantly false. The accurate version of events is set forth in Michael Shore's declaration attached as Exhibit A to the motion for alternative service. (Pls.' Mot. for Alt. Service, Dkt. No. 17-1, at 11-14.) The four declarations by the Japanese executives are obviously contested by Mr. Shore's declaration, which is plainly part of the record.

Putting aside the contested and irrelevant issue of who initially proposed the standstill agreement, one can plainly see from the record that such an agreement did exist. Kitano states

in his declaration that he said nothing when Mr. Shore handed him a copy of the complaint in Tokyo. (Kitano Decl., Dkt. No. 51, at ¶ 6.) Kitano then claims that when Mr. Shore later "unilaterally" stated that Nanya would not serve Fujitsu until after further settlement negotiations, he again just stared at Mr. Shore and said nothing. (*Id.* at ¶ 7.) That is simply not credible, and that certainly is not what happened. When Mr. Shore handed Fujitsu a copy of the lawsuit in Tokyo, Kitano requested a standstill. (M. Shore Decl., Dkt. No. 17-1, at ¶ 5.) Mr. Kitano admits that he later asked Nanya to "confirm its position about service of the complaint" for the Tokyo court on September 14, 2006. He later stated in an email to Mr. Shore:

> Thank you for your email of September 19, 2006 acknowledging that the copy of the Guam complaint you provided was during our meeting in Tokyo last week was a courtesy copy. We appreciate your confirmation on this point.

(Email from S. Kitano to V. Seng and M. Shore, Sept. 20, 2006, Dkt. 17-1, at 21.) Considering the context, if Mr. Shore read this email and understood it as confirmation of some agreement between the parties, that certainly would not have been unreasonable. And his representation of that agreement to the Court would certainly not be a "serious misrepresentation" as argued by Fujitsu's counsel. The simple fact of the matter is that there was an agreement between the parties, the events happened exactly as Mr. Shore described in his declaration, and Fujitsu's counsel dishonestly and unprofessionally maligned Nanya's counsel to distract from the weakness of Fujitsu's legal argument.

The final point regarding alleged misrepresentations and personal attacks is the disingenuousness of footnote 1 in the reply. No reasonable person could argue that Fujitsu's statements in its objections to the Magistrate's order were not personal attacks. Nanya's counsel was not "seeking sympathy" or making light of any misrepresentations. Nanya was merely refusing to respond to mean-spirited attacks with more of the same. If Nanya needs any sympathy, it would be for having to deal with opposing counsel who would rather make

accusations about counsel instead of dealing with the merits of the case.

Shifting to those merits, the Court can plainly see why Fujitsu needs to distract attention towards counsel's representations about irrelevant facts. Fujitsu's legal argument is terrible.

## II. FUJITSU'S REQUEST FOR THE COURT TO IGNORE THE NINTH CIRCUIT

Fujitsu's first argument — that Nanya must comply with Rule 4(f)(2)(C)(ii) — is very flawed and easily refuted. *Fireman's Fund Insurance Company v. Fuji Electric Systems Company*, No. C-04-3627, 2005 U.S. Dist. LEXIS 4580 (N.D. Cal. March 17, 2005), relied upon by Fujitsu is not a Rule 4(f)(3) case. Nanya completely agrees that if a Plaintiff does not move for alternative service under Rule 4(f)(3), he must follow Rule 4(f)(2)(C). That is all the *Fireman's Fund* case says and that comports with the Ninth Circuit's decision and analysis in *Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004). The dispositive guidance on this is found in the *Brockmeyer* decision at page 805:

> The <u>decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the "sound discretion of the district court."</u> *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (permitting service on a foreign corporation by regular mail and by e-mail, when authorized by the district court). (Emphasis added by author). The classic case is *Levin v. Ruby Trading Co.*, 248 F. Supp. 537 (S.D.N.Y. 1965), in which the court authorized service abroad by ordinary mail under previous Rule 4(i)(1)(E), which was identical to current Rule 4(f)(3). In *Levin*, the court contrasted Rule 4(i)(1)(D) (**now Rule 4(f)(2)(C)(ii)**) with Rule 4(i)(1)(E), observing that Rule 4(i)(1)(D) "authorizes service by mail without court supervision, and it is for this reason that the double safeguard of mailing by the clerk of the court and a signed receipt was set up." *Id.* at 540. The court held that it could nonetheless authorize service by ordinary mail under Rule 4(i)(1)(E), because "the necessary safeguards are determined by the court[,] which to assure adequacy of notice, may 'tailor the manner of service to fit the necessities of a particular case. . . .'" *Id.* (quoting Fed. R. Civ. P. 4(i)(1)(E) (1963) Advisory Committee Note). Other courts have widely accepted *Levin's* reasoning. *See, e.g., Rio Props.*, 284 F.3d at 1016 (citing *Levin*); *Int'l Controls Corps. v. Vesco*, 593 F.2d 166, 175 n.4 (2d Cir. 1979) (same).

In this passage, the Ninth Circuit flatly rejects Fujitsu's argument. The Ninth Circuit never states that one method of service is better than another. In fact, the Ninth Circuit adheres to the rule that

no hierarchy of service exists in Rule 4(f) and that methods of service under Rule 4(f)(3) are within the sound discretion of the Court. It could not possibly be clearer. The Ninth Circuit then goes on to cite with approval cases where district courts have allowed service under Rule 4(f)(3) by a "variety of alternative methods," including mail and email as in this case. *Brockmeyer*, 383 F.3d at 805. Nevertheless, Fujitsu cites *Brockmeyer* out of context in support of an argument that the Ninth Circuit later refutes in that same opinion.

Fujitsu next claims that "service under Rule 4(f)(3) is appropriate only after service under the Hague Convention has been attempted." The Hague Convention allows service by mail. *Brockmeyer*, 383 F.3d at 802. The *Marcantonio* case cited by Fujitsu is absolutely irrelevant here. In that case, the Plaintiff tried to serve a Russian corporation by giving a copy of the complaint to a ship captain in Canada and sending copies to the corporation's counsel in Canada and New York — none of whom were authorized to accept service. *Marcantonio v. Primorsk Shipping Corp.*, 206 F.Supp. 2d 54, 58-59 (D. Mass 2002). Leaving copies of a complaint with a foreign defendant's employee in Canada or giving a copy of the complaint to the defendant's counsel are not permitted methods of service under the Hague. Service by mail is. *See* Hague Convention, Art. 10(a); *Brockmeyer*, 383 F.3d at 802. Read in context, the *Marcantonio* court was holding that alternative service under Rule 4(f)(3) by means ***not*** permitted by treaty should be "seen as a final effort" only after means allowed by treaty are attempted. The very next sentence, the court notes that "by its plain syntax, Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under sub-sections (1) and (2)." *Marcantonio*, 206 F.Supp.2d at 58 (quoting *Forum Financial Group LLC v. President and Fellows of Harvard College*, 199 F.R.D. 22 (D. Me. 2001)). No one can read *Marcantonio* and argue in good faith that it stands for what Fujitsu argues it does. This is stretching *Marcantonio* far beyond what it says.

The Court should also note that the plaintiff in *Marcantonio* was trying to use Rule 4(f)(3) after the fact, which the court clearly noted: "Service under Fed. R. Civ. P. 4(f)(3) is usually attempted after authorization by a court, so that the court may review the proposal in advance." *Id.* at 59 n.1. Considering that the plaintiff in *Marcantonio* did not move for

Case 4:07-cv-03672-CW    Document 1-131    Filed 07/17/2007    Page 8 of 9

alternative service under Rule 4(f)(3) prior to attempting alternative service by means not allowed under the Hague, he should have first attempted service under Rule 4(f)(1) or 4(f)(2). That is plainly consistent with *Fireman's Fund* and *Brockmeyer* as discussed above. It is also plainly irrelevant in this case because Nanya did move for alternative service under Rule 4(f)(3), the alternative means requested are expressly allowed under the Hague, and Nanya's motion was granted. Again, Fujitsu takes cites the *Marcantonio* case out of context to make an argument that the case does not support.

Fujitsu's final argument is again that Nanya should have followed the laws of Japan. The Ninth Circuit expressly rejected this argument in *Rio Properties*, and in every circuit like the Ninth Circuit where the courts have held that service by mail is allowed under the Hague, the district courts have allowed service of Japanese defendants by mail without regard to Japanese law. *Schiffer v. Mazda Motor Corp.*, 192 F.R.D. 335, 338-39 (N.D. Ga. 2000); *Weight v. Kawasaki Heavy Industries, Ltd.*, 597 F. Supp. 1082, 1086-87 (E.D. Va. 1984); *Hammond v. Honda Motor Co., Ltd.*, 128 F.R.D. 638 (D.S.C. 1989); *Lemme v. Wine of Japan Import, Inc.*, 631 F. Supp. 456 (E.D.N.Y. 1986); *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1206 (D.C.D.C. 1984). Fujitsu has not cited a single case to the contrary.

In summary, Nanya has presented the Court with an honest account of the facts and a correct, well-researched account of the law. Fujitsu has presented neither. On this record, we respectfully ask the Court to find that Magistrate Judge Manibusan's Order allowing alternative service was not "clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

Respectfully submitted this 22nd day of December, 2006.

**TEKER TORRES & TEKER, P.C.**

By: _____
JOSEPH C. RAZZANO, ESQ.
Attorneys for Plaintiffs