TEKER TORRES & TEKER, P.C.
130 Aspinall Avenue-Suite 2A
Hagåtña, Guam 96910
Telephone: (671) 477.9891
Facsimile: (671) 472.2601

UNPINGCO & ASSOCIATES, LLC
Sinajana Mall-Suite 12B
Sinajana, Guam 96910
Telephone: (671) 475.8545
Facsimile: (671).475.8550

SHORE CHAN BRAGALONE LLP
Suite 4450
325 N. St. Paul Street
Dallas, Texas 75201
Telephone: (214) 593-9110
Facsimile: (214) 593-9111

*Attorneys For Plaintiffs*
*Nanya Technology Corp. and*
*Nanya Technology Corp. U.S.A.*

FILED
DISTRICT COURT OF GUAM
JAN 30 2007
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| NANYA TECHNOLOGY CORP. AND NANYA TECHNOLOGY CORP. U.S.A., <br><br>Plaintiffs, <br>v. <br><br>FUJITSU LIMITED AND FUJITSU MICROELECTRONICS AMERICA, INC., <br><br>Defendants. | Case No. CV-06-00025 <br><br>**PLAINTIFFS' MOTION TO EXCEED NUMBER OF INTERROGATORIES AND REQUESTS FOR ADMISSIONS** <br><br>**[NO ORAL ARGUMENT REQUESTED]** |

COME NOW, Plaintiffs, Nanya Technology Corp. and Nanya Technology Corp. U.S.A., with their Motion to Exceed Number of Interrogatories and Requests for Admissions pursuant to the District Court of Guam's Local Rules of Practice, L.R. 33.1(a).

### FACTUAL BACKGROUND

On, September 13, 2006, Plaintiffs Nanya Technology Corp. ("NTC") and Nanya Technology Corp. U.S.A. ("NTC USA") (collectively, "Plaintiffs") filed suit against Fujitsu Limited ("Fujitsu") and Fujitsu Microelectronics America, Inc. ("FMA") (collectively, "Defendants") in the United States

District Court of Guam for patent misuse, antitrust violations and patent infringement. In this case, the Court will have to construe the claims and determine infringement or non-infringement of at least fourteen (14) Fujitsu patents and at least four (4) NTC patents.

Pursuant to Local Rule 33.1, both parties are limited to one set of twenty-five or less interrogatories or requests for admissions. In order to serve additional interrogatories or requests for admissions, a party must submit to the Court a written memorandum setting forth the proposed additional interrogatories or requests for admissions and the reasons establishing good cause for their use.

As this is a complex patent litigation case with multiple claims of patent infringement, anti-trust violations and patent misuse, Plaintiffs respectfully request that this honorable Court grant them leave to exceed the limits for interrogatories and admissions set forth in Local Rule 33.1. FMA apparently agrees with Plaintiffs as it concedes in its Proposed Discovery Plan that this is a complex case that will need a "modification of the limitations on discovery provided under the Rules." In fact, FMA admits that there will be a "need for extensive discovery" and that it is anticipated to take "in excess of one year." Plaintiffs seek the Court's permission to have one set of twenty-five interrogatories and one set of twenty-five requests for admissions for each of the patents at issue, both offensive and defensive. After the initial set of twenty-five have been answered and received, plaintiffs request permission to serve a second set of twenty-five interrogatories and requests for admissions to clarify or further ascertain the scope of the responses given to the first set. Rather than the Court investing an extraordinary amount of time and resources trying to flush out and flesh out the meaning of critical terms and narrowing the issues, the parties should do this to the maximum extent possible. The additional discovery sought will immensely help achieve this objective.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

The primary reason justifying the Motion to Exceed the Number of Interrogatories and

Requests for Admissions is that the additional information will greatly aid claim construction. By statute, each issued patent concludes with one or more claims that particularly point out and distinctly claim the patented invention. 35 U.S.C.A. § 112(2) (1984). The claims define the "metes and bounds" of the patented invention in modern patent claim practice. Risdale Ellis, Patent Claims §§ 4-9 (1949); Anthony W. Deller, Patent Claims §§ 5-11 (2d ed. 1971); <u>Burke Inc. v. Bruno Independent. Living Aids, Inc.</u>,183 F. 3d 1334, 1340; 51 USPQ2d 1295 (Fed. Cir. 1999); <u>Zenith Laboratories, Inc. v. Bristol-Meyers Squibb Co.</u>, 19 F. 3d 1418, 1424, 30 USPQ2d 1285 (Fed. Cir.), 1994 *cert. denied*, 513 U.S. 995, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994). In <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 116 S.Ct. 1384, 38 USPQ2d 1461 (1996), the Supreme Court ruled that the interpretation of the language in a patent claim was a question of law and disputes as to the meaning of the language were to be exclusively decided by a judge.

The importance of claim construction cannot be overemphasized. It is a threshold issue for the trial court because it shapes and often resolves key liability issues. In addition, it may narrow the issues, it may guide the parties as to what issues are significant and what evidence is needed for trial. *Guidelines for Patent Claim Construction: Post Phillips – The Basics of a Markman Hearing*, 14 Fed. Cir. Bar J., Vol. 16(1) (2006).

The biggest problem in claims construction is determining the meaning of the language of the claims (<u>Augustine Med. v. Gayman Industries</u>, 181 F. 3d 1291, 50 USPQ2d 1900 (Fed. Cir. 1999)), determining the scope of the claims (<u>Interactive Gift Express v. Compuserve</u>, 231 F. 3d 859, 864, 56 USPQ2d 1647 (Fed. Cir. 2000)), or determining both the meaning and scope of the claims (<u>IMS Tech. Inc. v. Haas Automation</u>, 206 F. 3d 1422, 1429, 54 USPQ2d 11229 (Fed. Cir. 2000)). Claims construction centers on the words actually used in the claims. <u>Johnson Worldwide Assn. v. Zebco Corp.</u>, 175 F. 3d 989, 990, 50 USPQ2d 1607 (Fed. Cir. 1999).

Unfortunately, the words in a patent do not have a universally correct meaning, *e.g.* different words in a patent may have the same meaning (Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F. 3d 958, 968, 55 USPQ2d 1513 (Fed. Cir. 2000)), or the same words in a patent may have different meanings (CAE Screenplates v. Heinrich Fiedler Gmbh& Co. KG, 224 F. 3d 1308, 1317, 55 USPQ 2d 1804 (Fed. Cir. 2000)). Words can have an acquired meaning from a variety of sources. Vitronics Corp. v. Conceptronic, Inc., 90 F. 3d 1576, 1582, 39 USPQ2d 1573 (Fed. Cir. 1996). Conversely, one or more of the same sources may prove that a word has not acquired a certain meaning. Sources of word meanings include but are not limited to ordinary usage in the English language, usage by a particular group (trade, technological, professional, scientific), a special definition ascribed to the word by the patent applicant on the particular usage of the word in the patent or its prosecution history. Worse, these sources are not given equal credence. For example, the patent applicant (acting as a "lexicographer") giving a word a special use or definition is by itself controlling as to the meaning of the word in a claim. Renishaw PLC v. Marposs Societa' per Azioni, 158 F. 3d 1243, 1249, 48 USPQ2d 1117 (Fed. Cir. 1998).

Based on the foregoing brief synopsis of the difficulties in interpreting patent claims, Plaintiffs, for good cause, seek permission to exceed Local Rule 33.1's discovery limits to allow fuller, more comprehensive discovery regarding each patent infringement claim, both offensive and defensive, and each antitrust and patent misuse claim.

The second reason for this Motion to Exceed the Number of Interrogatories and Requests for Admissions under L.R. 33.1(a) is that in addition to ferreting out the meaning of words in a claim or patent, the patent misuse and antitrust claims necessitate investigation into Defendants' corporate strategy, financial data, e-mail correspondence and relevant agreements with their Japanese partners and other licensees. The limitation of LR 33.1 does not permit a fair and reasonable inquiry into Fujitsu and FMA's patent misuse, the antitrust issues and circumstances under which licenses are

**PLAINTIFFS' MOTION TO EXCEED NUMBER OF INTERROGATORIES AND REQUESTS FOR ADMISSIONS** Page 4

granted.

The third reason for this motion is to vastly improve the chances of the parties settling this case. The claims in each patent may be subjected to alternative claims constructions or interpretations by the parties. This can be a moving target. Discovery gives guidance to the parties that helps narrow the issues or resolve the case without requiring extraordinary supervisory time and effort from the trial judge. For example, Defendants have been trumpeting that none of their offending products are sold on Guam. Yet, Plaintiffs have discovered and purchased a variety of Defendants' products on Guam which brings us to the next reason for this motion.

The fourth reason for this motion is the indispensable need for jurisdictional discovery. There is a broad spectrum of products that uses Defendants' microcontrollers. Plaintiffs' preliminary investigation has found Defendants' computer chips or microcontrollers in products ranging from blood glucose monitoring systems to automobiles to cellular telephones. These diverse products contain microcontrollers Defendants expressly advertise on their website or in press releases. Specifically, Plaintiffs purchased in Guam a blood glucose monitoring system that appears to be featured prominently on Defendants' advertisements. *See* Exhibit A, Copy of receipt for purchase of blood glucose monitoring system, photos of purchased blood glucose monitoring system, and Fujitsu advertisement featuring blood glucose monitoring system. As Defendants state in their advertisement touting the advantages of their microcontrollers, "**[g]lucose monitors**, home theatre remotes, security systems, and thermostat controls are just a few examples of the hundreds of applications where our new, expanded 8-bit MCUs have found a home." *Id.*

Additionally, Defendants' microcontrollers are an integral part of the electronic/computer system of many automobiles. In particular, Defendants' microcontrollers are designed to be used with the MOST (Media Oriented System Transport) Multimedia Car Infotainment system for installation in automobiles, technology that "serves as the backbone technology of in-car infotainment systems." *See*

Exhibit B, Defendants' joint press release with Hyundai regarding MOST Multimedia Car Infotainment system and BMW automobile materials describing the use of the MOST system in BMW automobiles. As Defendants expressly claim, "MOST technology combined with Fujitsu components, which are cutting edge in the automotive market, increases system flexibility and service configuration speed for end users compared to existing state-of-the-art analogue systems." *Id.* Plaintiffs' preliminary investigation reveals that the MOST system is in at least the Hyundai and BMW automobiles which are sold in Guam, with the probability of many other automobiles. *Id.* Yet another use of Defendants' microcontrollers in automobiles is as CAN and FlexRay controllers. *See* Exhibit C, Defendants' press releases expressly advertising the CAN and Flex-Ray technology in their microcontrollers. CAN or Controller-Area-Network and FlexRay are essentially network devices that permit the various electronic components in an automobile to communicate with each other using a common framework. These controllers control such items as the electronic dashboards, power windows, air conditioning and power seats. *Id.* Indeed, Defendants publicly proclaim their microcontrollers' reputation for reliability, "making them ideal for automobiles." *See* Exhibit D, Defendants' advertisement describing advantages of their microcontrollers for automotive applications.

Further, Defendants also ship their microcontrollers to Guam for purchase. In fact, Plaintiffs purchased Defendants' infringing microcontrollers for delivery to Guam. *See* Exhibit E, Invoice receipt demonstrating purchase of Defendants' microcontrollers for delivery to Guam. Thus, Defendants' claims that none of their microcontrollers are found or sold in Guam are fully negated by Plaintiffs' discovery and purchase of Defendants' microcontrollers in a large sample of available products on Guam. Additional discovery will flush out other offending products as the offending Fujitsu computer chips are embedded deep within a large variety of products.[1] All of this additional

---

[1] There is no other way to find out the complete listing of products and all the product brands that contain the offending Fujitsu microcontrollers. Plaintiffs cannot depend on Defendants'

information will push/pull the parties towards more fruitful settlement negotiations.

The fifth reason for additional discovery is that it is permissible. "District court have wide latitude in controlling discovery and [their] rulings will not be overturned in the absence of a clear abuse of discretion". Cornwell v. Electra Cent. Credit Union, 439 F. 3d 1018, 1027 (9th Cir. 2006) *citing* California v. Campbell, 138 F. 3d 772, 779 (9th Cir. 1998) *quoting* Volk v. D.A. Davidson & Co., 816 F. 2d 1406, 1416-17 (9th Cir. 1987). *See also* University of West Virginia Board of Trustees v. Vanvoorhies, 278 F. 3d 1288, 1304 (Fed. Cir. 2002) *citing* Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc., 265 F. 3d 1294, 1307 (Fed. Cir. 2001) ("District courts have great discretion over the discovery process and over the mechanics of the trial process. We decline to interfere with a court's management of the discovery process absent a showing of a clear abuse of discretion or extreme prejudice.").

Therefore, due to the complex nature of this patent litigation and the indispensable need for both jurisdictional and fact discovery, Plaintiffs, for good cause, seek permission to exceed Local Rule 33.1's discovery limits to allow full, comprehensive discovery regarding: (1) *each* patent infringement claim, both offensive and defensive; and (2) *each* antitrust and patent misuse claim.

Insofar as setting forth the proposed additional interrogatories and requests for admissions, Plaintiffs respectfully submit that in the foregoing paragraphs the subject areas have been set forth. And, because of the numerical limitation of twenty-five, much thought and analysis will be given prior to propounding the interrogatories or requests due to this numerical limitation. In sum, the interrogatories and requests will not be unduly burdensome or wasteful or trivial as the opportunity to ask for them is too precious. And, much of them will be centered on the key words in the patents.

---

advertising to discover all the products containing the offending computer chips or microcontrollers. Obtaining such information through interrogatories and other discovery is not only convenient and more efficient but the only practical, sure way to obtain this information.

---

**PLAINTIFFS' MOTION TO EXCEED NUMBER OF INTERROGATORIES AND REQUESTS FOR ADMISSIONS**   Page 7

However, should the Court wish to see the proposed additional admissions or requests to aid its decision on this Motion, they shall be submitted.

Granting this motion will not result in undue delay or prejudice to Defendants because discovery is currently in its initial stages. To date, only prediscovery disclosures (pursuant to Local Rule 26.2) and requests for production have been served by the parties. In fact, allowing additional discovery serves the sound principles of judicial economy and will allow the parties to narrow the scope of their claims and to better define and hone the issues without having excessive court involvement. Simply stated, thorough, comprehensive discovery serves the best interest of the Court and all parties involved in this case and will improve the prospects for settlement.

Therefore, Plaintiffs respectfully request this Motion for Leave to Exceed Discovery Limits be granted.

DATED at Hagåtña, Guam, on January 30, 2007.

**SHORE CHAN BRAGALONE, LLP**

**TEKER TORRES & TEKER, P.C.**

**UNPINGCO & ASSOCIATES, LLC**

By _____
**JOHN S. UNPINGCO, ESQ.**
*Attorneys for Plaintiffs, Nanya Technology Corp.
And Nanya Technology Corp. U.S.A.*