1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone:     (671) 646-9355
Facsimile:     (671) 646-9403

**CHRISTOPHER E. CHALSEN, ESQ.**
**MICHAEL M. MURRAY, ESQ.**
**LAWRENCE T. KASS, ESQ.**
**MILBANK, TWEED, HADLEY & MCCLOY LLP**
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:     (212) 530-5000
Facsimile:     (212) 822-5796

*Attorneys for Defendant*
FUJITSU MICROELECTRONICS AMERICA, INC.

**FILED**
DISTRICT COURT OF GUAM

FEB 23 2007

**MARY L.M. MORAN**
**CLERK OF COURT**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

NANYA TECHNOLOGY CORP. and
NANYA TECHNOLOGY CORP. U.S.A.,

                    Plaintiff,

          vs.

FUJITSU LIMITED, FUJITSU
MICROELECTRONICS AMERICA, INC.,

                    Defendants.

CIVIL CASE NO. 06-CV-00025

**FMA'S OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL SUBSTANTIVE**
**RESPONSES TO PLAINTIFFS' FIRST**
**REQUESTS FOR PRODUCTION**

**(ORAL ARGUMENT REQUESTED)**

{G0019980.DOC;2}

# ORIGINAL

1        Defendant Fujitsu Microelectronics America, Inc. ("FMA") hereby opposes Plaintiffs'
2  Motion to Compel Substantive Responses to Plaintiffs' First Requests for Production to
3  Defendant Fujitsu Microelectronics America, Inc. ("Motion"). Plaintiffs' current Motion should
4  be denied because: (1) in violation of local rules requiring a meet and confer, Plaintiffs filed a
5  previous motion to compel for this exact set of Requests for Production, which has not been
6  withdrawn or reconciled with the current Motion; (2) in filing their current Motion, Plaintiffs
7  again failed to comply with this Court's local rules; (3) FMA's specific objections were perfectly
8  appropriate and FMA is producing documents subject to its objections; and (4) the parties reached
9  agreement on definitions in a meet and confer but then Plaintiffs reneged by belatedly attempting
10  to add another, expansive definition to their Requests more than a month and a half after serving
11  them.

12  **I.    FACTUAL BACKGROUND**

13        Plaintiffs served their Requests on December 14, 2006, reciting one hundred and forty-
14  seven (147) separate requests covering a litany of products that seemingly encompass virtually
15  every electronic device sold on Guam. FMA served its Responses and Objections to Plaintiff's
16  Requests ("Responses") on January 16, 2007 appropriately detailing its objections to the
17  Requests, including, *inter alia*, that the Requests were untimely, overly broad, and unduly
18  burdensome, as well as providing specific objections for each individual request. (*See* Exh. A to
19  Motion).

20        On January 17, 2007, without a meet and confer and indeed before even receiving FMA's
21  Responses (which had been served by mail), Plaintiffs filed their first Motion to Compel
22  Substantive Responses to Plaintiffs' Discovery Requests ("First Motion"). (*See* Dkt. No. 113).
23  On February 1, 2007, FMA filed its Opposition to the First Motion. (*See* Dkt. No. 130).

24        On February 6, 2007, the parties conducted a meet and confer attempting to address the
25  substance of Plaintiffs' Requests and FMA's Responses. At the same meet and confer, the parties
26  also discussed the terms of a stipulated protective order to protect the confidential information
27  that both sides will ultimately produce in this case. Agreement was reached on a number of
28  issues.

{G0019980.DOC;2}

1       During the February 6 meet and confer, the parties discussed the meaning of the phrase

2   "computer memory chip" that appears in the definition of "dynamic memory chip" contained in

3   the Requests, and which defines the scope of the FMA products that will be covered by the

4   Requests. FMA asserted that the common meaning of "computer memory chip" was that it was

5   limited to chips that are primarily "memory" products. Plaintiffs, on the other hand, argued that

6   "computer memory chip" covers all computer chips that contain any memory, even if the memory

7   was a small part of the chip. At the end of the conference, Plaintiffs stated that they would

8   provide a "clarification" of the meaning of this phrase. This was apparently the only remaining

9   issue of contention with the parties concerning the Requests. When FMA offered to discuss the

10   substance of the remainder of the objections in its Response, Plaintiffs declined.

11       On the next day, Plaintiffs proposed a new definition of "dynamic memory chip" which

12   was substantially broader than that contained in its original Requests. (*See* Exh. A hereto). FMA

13   promptly informed Plaintiffs that it could not accept this entirely new definition, but offered to

14   allow Plaintiffs to effectively remove the word "memory" from the definition such that instead of

15   being limited to "computer memory chips" the Requests would cover all "computer chips" that

16   otherwise met the definition. (*See* Exh. B hereto). FMA made this offer in the spirit of

17   cooperation and in an effort to move this case forward. Indeed, Plaintiffs apparently agreed and

18   promptly accepted FMA's offer. (*See* Exh. C hereto). Thus, at this point, the parties had no

19   disagreement concerning the Requests.

20       However, Plaintiffs apparently later had some regrets about using the term "Dynamic

21   Access Memory" or "DRAM" in their original Requests and sent a further revised definition to

22   FMA, in essence trying to further retroactively redefine the scope of the Requests. (*See* Exh. D

23   hereto). FMA objected to this additional after-the-fact introduction of a new and substantially

24   broader definition. (*See* Exh. E hereto).

25       Plaintiffs then filed this Motion without withdrawing or reconciling their First Motion.

26   Plaintiffs' new Motion also ignored the fact that the parties had come to substantial agreement

27   concerning the general scope of the requests other than the redefined term and that FMA had

28   agreed to produce responsive documents, subject to FMA's objections. (*See* Dkt. No. 148).

2

1    Meanwhile, the parties continued to negotiate the terms of a protective order and a

2    Stipulated Protective Order has now been agreed. (*See* Dkt. 157)  With a Protective Order in

3    place, FMA will begin the production of documents responsive to the Requests as agreed by the

4    parties.

5    **II.    PLAINTIFFS HAVE DUELING MOTIONS ON THE SAME ISSUE**

6    Plaintiffs already have pending their First Motion to compel for this exact set of Requests

7    for Production.[1]  Plaintiffs filed their First Motion without a meet and confer, in violation of local

8    rules.  Plaintiffs' First Motion now appears to be moot in view of subsequent meet and confer

9    agreements, but it is unclear because Plaintiffs have made no attempt to reconcile their First

10   Motion with their current Motion.  If Plaintiffs were going to file another motion, they should

11   have withdrawn the first and consolidated any remaining issues in the second.  Instead they left it

12   to FMA and the Court to sort it all out.  That alone is reason enough to warrant denial of

13   Plaintiffs' current Motion.  Plaintiffs' "shoot first, ask questions later" (*i.e.*, file first, meet and

14   confer later) approach is a waste of time and resources for all concerned.

15   **III.    PLAINTIFFS' MOTION VIOLATES THIS COURT'S LOCAL RULES**

16   During the meet and confer that occurred on February 6, 2007, FMA specifically offered

17   to go through each of its individual objections from the Responses and explain the basis for each

18   objection so that the parties could discuss the merits of each objection.  Plaintiffs' counsel,

19   however, declined to discuss the individual objections.  Local Rule 37.1 requires:

20   (a) Prior to the filing of any motion relating to a discovery dispute, counsel for the parties
21   shall meet in person in a good faith effort to eliminate the necessity for hearing the motion
     or to eliminate as many of the disputes as possible. It shall be the responsibility of counsel
22   for the moving party to arrange for the conference.

23   (b) If counsel are unable to settle their differences, they shall formulate a written
24   stipulation specifying separately and with particularity each issue that remains to be
     determined at the hearing and the contentions and points and authorities of each party. The
25   stipulation shall not refer the Court to other documents in the file.

26

27

28   [1] *See* Plaintiff's First Request for Production of Documents to Defendant Fujitsu
     Microelectronics America, Inc. ("Requests") (Exh. B to Dkt. No. 113).

1    Despite FMA's attempt to confer on the scope of the Requests and their objections as is
2    required by Local Rule 37.1 and Fed. R. Civ. P. 37, Plaintiffs were unwilling to discuss these
3    matters in good faith. Plaintiffs' filing of this Motion, attacking the merits of the individual
4    objections, after declining to even discuss the individual objections with counsel for FMA, is a
5    clear violation of this Court's Local Rule 37.1. In fact, Plaintiffs' Motion clearly omitted "a
6    written stipulation specifying separately and with particularity each issue that remains" between
7    the parties that they are unable to settle. Plaintiffs were unwilling to discuss these matters in an
8    attempt to resolve them, preferring instead to file this Motion.

9    While Plaintiffs may believe it unnecessary, a good faith meet and confer is essential to
10    conserving judicial resources. *Morris v. McGrath*, No. C-04-3142, 2006 WL 870965, *1
11    (N.D. Cal. Apr. 3, 2006). This requirement is "more than just a 'formalistic prerequisite' to
12    judicial resolution of a discovery dispute," but rather requires a "'sincere effort' where both
13    parties presented the merits of their respective positions and meaningfully assessed the relative
14    strengths of each." *Shuffle Master v. Progressive Games*, 170 F.R.D. 166, 172 (D. Nev. 1996)
15    (citation omitted) (denying patent holder's motion to compel in part for failure to confer or
16    attempt to confer in good faith in an effort to resolve matters as required by the court's local rules
17    and Fed. R. Civ. P. 37(A)(2)(B)). Rather than require this Court to become the "overseer of all
18    discovery," Plaintiffs should have at the very least attempted to discuss their issues with FMA's
19    Responses in an effort to eliminate at least some of Plaintiffs issues listed in the Motion. *Morris*,
20    2006 WL 870965 at *1.

21    **IV.    FMA'S SPECIFIC OBJECTIONS WERE APPROPRIATE**

22    Plaintiffs' Motion contains page after page of argument attacking the specific objections
23    contained in FMA's responses. Plaintiffs' contentions are unfounded. For example, Plaintiffs
24    contend that it was "particularly egregious" for FMA to object to "common terms" such as "fax
25    machine" as being vague and ambiguous. (Motion at 3.) But common terms can be ambiguous[2]

---

26
27    [2] For example, a common computer has the ability to create documents and send them over phone lines as facsimile images. Similarly, such a computer can receive and view facsimile images and cause them to be printed using a standard printer. It is not at all clear whether
28    Plaintiffs would consider such a device to be a "fax machine." Similarly, the average cell phone can now take pictures, play music, and receive e-mail. The lines between many products are

{G0019980.DOC;2}

4

1  and, in the context of Nanya's Requests, such terms *were* vague and ambiguous. It was entirely

2  appropriate for FMA to object. But in any event, the details of many of FMA's objections and

3  responses are no longer relevant in view of the parties' agreement to produce responsive

4  documents subject to FMA's objections.

5  FMA's Responses and objections were reasonable and necessary given the sheer breadth

6  and ambiguity of Plaintiffs' Requests. If Plaintiffs disagreed with one or more of FMA's

7  objections, they were provided ample opportunity to discuss their disagreements and yet elected

8  not to, preferring instead to file yet another unnecessary motion.

9  **V.    THE PARTIES AGREED ON FMA'S PRODUCTION OF DOCUMENTS AND
10       THEN NANYA RENEGED**

11  As noted above, the parties conducted a meet and confer concerning the Requests and

12  came to an agreement, as evidenced by the e-mail from Nanya's counsel.[3] (*See* Exh. C hereto).

13  As a result of this meet and confer, the parties agreed that, following entry of the Protective

14  Order, FMA would begin producing responsive documents. (*See, e.g.,* Dkt. 148).

15  But then Nanya reneged on this agreement, setting up the only "disagreement" and the

16  apparent reason for this Motion. Specifically, Nanya sought to continue adding definitions to the

17  Requests long after they were served, and after the parties had reached an agreement on FMA's

18  document production. Plaintiffs are effectively attempting to compel further responses based on a

19  definition that was not even contained in the original Requests. Plaintiffs have offered no support

20  for such relief. Furthermore, apparently realizing the weakness in this tactic, Plaintiffs have

21  essentially re-served their "jurisdictional" discovery requests with new definitions of the covered

22  products. (*See* Exh. F hereto).

23  Plaintiffs' generalized allegation that FMA is unwilling "to participate in any discovery in

24  Guam" (Motion at 4) is untrue and ignores, among other things, the agreements made at the meet

25  and confer, as confirmed by the e-mail from Nanya's Counsel (*See* Exh. C hereto), and FMA's

26  blurring and definitions are important to avoid uncertainty and assure appropriate responses to
   such requests.

27       [3] FMA notes that the e-mail from Nanya's counsel states that "[a]s long as ALL versions
28  of DRAM are included, this is acceptable and appreciated". (Exh. C). In fact, FMA is collecting
   and producing documents, subject to its objections, relating to all versions of DRAM.

{G0019980.DOC;2}

1    agreement to begin production subject to its objections. (*See* Dkt. 148). Plaintiffs also falsely

2    allege that "FMA has refused to permit Plaintiffs to depose individuals." (Motion at 4). Plaintiffs

3    have requested the deposition of only one individual from FMA, Mr. Michael Moore. FMA

4    agreed to produce Mr. Moore for deposition on February 27, 2007, and the parties later agreed to

5    reschedule the deposition. (*See* Dkt. 148). There are numerous other accusations contained in

6    Plaintiffs' Motion, which will not be addressed in detail herein as they are simply not relevant.

7        There is no legitimate dispute concerning the Requests that were actually served by

8    Plaintiffs, as opposed to the Requests that they wish they had served. Any further disputes with

9    respect to definitions are only a result of Plaintiffs reneging on an agreement reached in the meet

10   and confer. Plaintiffs' Motion therefore should be denied.

11   **VI.    CONCLUSION**

12       Plaintiffs' Motion failed to comply with the local rules and failed to address the parties'

13   previous agreements. FMA's objections were perfectly reasonable, and any other differences

14   among the parties are solely the result of Plaintiffs reneging on meet and confer agreements.

15   Accordingly, FMA respectfully requests that Plaintiffs' Motion be denied in its entirety.

16       Respectfully submitted this 23rd day of February, 2007.

17                          **CALVO & CLARK, LLP**
                           **MILBANK, TWEED, HADLEY**
18                              **& MCCLOY LLP**
                           *Attorneys for Defendant*
19                         Fujitsu Microelectronics America, Inc.

20

21                    By: _____
22                           **DANIEL M. BENJAMIN**

23

24

25

26

27

28

{G0019980.DOC;2}

# EXHIBIT A



Martin Pascual
325 N. St. Paul Street, Suite 4450
Dallas, Texas 75201
214-593-9118 Telephone
214-593-9111 Facsimile
mpascual@shorechan.com

February 6, 2007

VIA EMAIL

Michael Murray, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

Re:    *Nanya Technology Corp., et al.  v. Fujitsu Limited, et al.*
       (No. 06-CV-00025, in the U.S. District Court, District of Guam

Dear Michael:

Based on our telephone conference today, we are sending you a revised definition of the term "dynamic memory chip" to clarify and assist you in understanding the scope of the term in Plaintiffs' document requests to Defendants. The term "dynamic memory chip" signifies "any and all devices, products, and tangible things that include memory as a component, including but not limited to microcontrollers, processors, sensors, and integrated circuits."

Regards,

Martin Pascual

cc:    Daniel Benjamin (via email)
       Rodney Jacob (via email)
       Joseph Razzano (via email)
       Judge John Unpingco (via email)

# EXHIBIT B

## MILBANK, TWEED, HADLEY & McCLOY LLP

### 1 CHASE MANHATTAN PLAZA

**NEW YORK, N.Y. 10005-1413**

212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MICHAEL M. MURRAY**
PARTNER
DIRECT DIAL NUMBER
212-530-5424
FAX: 212-822-5424

February 7, 2007

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**VIA E-MAIL**
Martin Pascual, Esq.
Shore Chan Bragalone LLP
325 N. St. Paul Street
Suite 4450
Dallas, Texas 75201

Re:  <u>Fujitsu v. Nanya, Civil Case Nos. 06-06613 and 06-00025</u>

Dear Martin:

        The revised definition of "dynamic memory chip" contained in your letter of February 6, 2007 is far broader than the definition contained in the original document requests. For example, you have now broadened the request to include all "memory" and not just DRAM. Accordingly, we do not accept this definition as a clarification of the original request.

        However, we will agree, in this instance only, to treat the term "dynamic memory chip" in the original request as follows: "any and all computer chips that include Dynamic Random Access Memory". In other words, while your original definition was limited to "computer memory chips" we will agree to treat it as more generally covering "computer chips" that are or include DRAM.

        Concerning the protective order issues, we await your revised language to section 11 (Retention of Confidential Materials). After we receive that language we will send you a revised version.

Sincerely yours,

Michael M. Murray

MMM:smm

cc:  Christopher E. Chalsen, Esq.

NY2:#4727430v1

# EXHIBIT C

**From:** Michael Shore [mailto:mshore@ShoreChan.com]
**Sent:** Wednesday, February 07, 2007 4:20 PM
**To:** Murray, Michael; Martin Pascual
**Cc:** Alfonso G Chan; dbenjamin@calvoclark.com; rjacob@calvoclark.com; Joseph Razzano; junpingco@ualawguam.com; Ruth Lee; Mary Henry; Justin Kimble; Chalsen, Christopher; Kass, Lawrence
**Subject:** RE: Nanya v. Fujitsu

As long as ALL versions of DRAM are included, this is acceptable and appreciated.

# EXHIBIT D



Martin Pascual
325 N. St. Paul Street, Suite 4450
Dallas, Texas 75201
214-593-9118 Telephone
214-593-9111 Facsimile
mpascual@shorechan.com

February 7, 2007

<u>VIA EMAIL</u>

Michael Murray, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

Re:    *Nanya Technology Corp., et al. v. Fujitsu Limited, et al.*
       (No. 06-CV-00025, in the U.S. District Court, District of Guam

Dear Michael:

In response to your letter of today regarding the definition of "Dynamic Random Access Memory" or "DRAM", we understand DRAM to include any type of memory that is dynamically refreshed (such as DDR2, DDR3 and any other memory that has refreshing circuitry).

Concerning the revised language to section 11 (Retention of Confidential Materials) of the proposed protective order, we will get those materials to you shortly.

Regards,

Martin Pascual

cc:    Christopher Chalsen (via email)
       Daniel Benjamin (via email)
       Rodney Jacob (via email)
       Joseph Razzano (via email)
       Judge John Unpingco (via email)

# EXHIBIT E

**From:** Murray, Michael
**Sent:** Thursday, February 08, 2007 2:48 PM
**To:** 'Martin Pascual'
**Cc:** 'Michael Shore'; 'Alfonso G Chan'; 'dbenjamin@calvoclark.com'; 'rjacob@calvoclark.com'; 'Joseph Razzano'; 'junpingco@ualawguam.com'; 'Ruth Lee'; 'Mary Henry'; 'Justin Kimble'; Chalsen, Christopher; Kass, Lawrence
**Subject:** RE: Nanya v. Fujitsu

Dear Martin,

Thank you for your letter and your understanding of the term "DRAM". As your original document requests did not include any definition whatsoever of DRAM, we do not agree to allow you to insert one at this date.

Regards,

Mike

# EXHIBIT F

# SHORECHAN
# BRAGALONE LLP

Ruth E. Lee
325 N. St. Paul Street, Suite 4450
Dallas, Texas 75201
214-593-9134 Telephone
214-593-9111 Facsimile
rlee@shorechan.com

RECEIVED
FEB 16 2007
CALVO & CLARK LLP
By:

February 9, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Rodney J. Jacob, Esq.
Daniel M. Benjamin, Esq.
Calvo & Clark
655 South Marine Corps. Drive, Suite 202
Tamuning, Guam 96913

Christopher Chalsen, Esq.
Michael Murray, Esq.
Lawrence T. Kass, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

Re:    *Nanya Technology Corp., et al. v. Fujitsu Limited, et al.*
       (No. 06-CV-00025, in the U.S. District Court, District of Guam

Dear Counsel:

Enclosed please find Plaintiffs' Second Set of Jurisdictional Requests for Production to Defendant Fujitsu Limited, and Plaintiffs' Second Set of Jurisdictional Requests for Production to Defendant Fujitsu Microelectronics America, Inc.

Sincerely,

Ruth Lee

Ruth Lee

Enclosures

1  **TEKER TORRES & TEKER, P.C.**
   130 Asinall Avenue-Suite 2A
2  Hagatna, Guam 96910
   671.477.9891 Telephone
3  671.472.2601 Facsimile

4  **UNPINGCO & ASSOCIATES, LLC**
   Sinajana Mall-Suite 12B
5  Sinajana, Guam
   671.475.8545 Telephone
6  671.475.8550 Facsimile

7  **SHORE CHAN BRAGALONE LLP**
   325 N. St. Paul Street, Suite 4450
8  Dallas, Texas 75201
   214.593.9110 Telephone
9  214.593.9111 Facsimile

10 ATTORNEYS FOR PLAINTIFFS
   Nanya Technology Corp. and
11 Nanya Technology Corp. U.S.A.

12          **UNITED STATES DISTRICT COURT**

13               **DISTRICT OF GUAM**

14

15 NANYA TECHNOLOGY CORP. and          Case No. CV-06-00025
   NANYA TECHNOLOGY CORP. U.S.A.,
16

17          Plaintiffs,               **PLAINTIFFS' SECOND SET OF**
                                       **JURISDICTIONAL REQUESTS FOR**
18                                     **PRODUCTION TO DEFENDANT**
   v.                                  **FUJITSU MICROELECTRONICS**
19                                     **AMERICA, INC.**
   FUJITSU LIMITED and FUJITSU
20 MICROELECTRONICS AMERICA, INC.,

21          Defendants.

22 TO:    Defendant Fujitsu Microelectronics America, Inc., by and through its attorneys of record,
23        Rodney J. Jacob and Daniel M. Benjamin, Calvo & Clark, LLP, 655 South Marine Corps
          Drive, Suite 202, Tamuning, Guam 96913, and Christopher E. Chalsen, Michael M. Murray
24        and Lawrence T. Kass, Milbank Tweed Hadley & McCloy, LLP, 1 Chase Manhattan Plaza,
25        New York, New York 10005

26        Pursuant to Federal Rules of Civil Procedure 34, Plaintiffs Nanya Technology Corp. and Nanya

27 Technology Corp. U.S.A. ("PLAINTIFFS") request that Defendant Fujitsu Microelectronics America,

28

---

Inc. ("DEFENDANT" or "Fujitsu")  produce and permit Plaintiffs' attorneys to inspect and to copy each of the following documents belonging to or in the possession of Defendant within thirty (30) days of service of these requests.

These requests shall be deemed to be continuing and any additional information or documents relating in any way to these requests that you acquire subsequent to the date of answering these requests and up to and including the time of trial shall be furnished, promptly after such information or documents are acquired, as supplemental responses to these requests.

## DEFINITIONS

1.    "Documents" mean the original and any non-identical copy of all "writings," "recordings" and "photographs" as those terms are defined in the FRCP including, but not limited to letters, facsimile communications, electronic mail ("e-mail") communications, telegraphs, cablegrams, telexes, memoranda, notes, records, reports, studies, calendars, diaries, agenda, minutes, books, pamphlets, periodicals, newspaper clippings, graphs, index, charts, tabulations, statistical accumulations, ledgers, financial statements, accounting entries, press releases, contracts, affidavits, transcripts, legal documents, records of meetings and conferences, records of conversations and telephone calls, still photographs, video tapes, motion pictures, tape recordings, microfilm, punch cards, programs, printouts, and the written information necessary to understand and use such films and records.

2.    A document "related to" or that "relates to" any given subject means any document that in whole or in part constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including without limitation, document concerning the preparation of other documents.

3.    The pronoun "you" refers to each Defendant and the party answering this Request for Production, their agents and representatives.

---

4.      "Plaintiff" and "Plaintiffs" includes Nanya Technology Corp. and Nanya Technology Corp. U.S.A., all its subsidiaries, parents and affiliates, and all officers, directors, employees, agents, and any other person acting on its behalf.

5.      "Defendant" includes Fujitsu Microelectronics America, Inc. and all its subsidiaries, parents (including but not limited to Fujitsu Limited), and affiliates and all officers, directors, employees, agents, and any other person acting on their behalf.

6.      "Communication" is any and all means for transmitting information in the form of facts, ideas, inquiries or otherwise.

7.      "Identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment and employment title.  Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent requests requiring the identification of that person.

8.      "Person" is defined as any natural person or any business, legal or governmental entity or association.

9.      "Concerning" means relating to, inferring to, describing, evidencing, or constituting.

10.     The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

11.     The terms "infringe", "infringes", "infringed", "infringement", "directly infringes", "contributes to the infringement", and "induces the infringement" are to be understood in accordance with 35 U.S.C. § 271.

12.    The terms "ACCUSED DEVICE" or "ACCUSED DEVICES" refer to the following parts or devices:

(a)    Fujitsu "FR" series of 32 bit RISC microcontrollers (including but not limited to part numbers MB91F133A, MB91191R/F191A, MB911912/F192, MB91101A, MB91107, MB91108, MB91121, MB91F127, MB91F128, MB91133, MB91F133, MB91154, MB91F154, MB91155, MB91F155, MB91F158, MB91F362GB, MB91F365GB, MB91F366GA/GB, MB91F367G/GB, MB91F368GB, MB91F369GA, MB91301, MB91305, MB91307B, MB91307R, MB91F312A, MB91F318A, MB91FV319A, MB91352A, MB91353A/F353A, MB91354A, MB91355A, MB91F355A, MB91232L, MB91233L, MB91F233, MB91F233L, MB91263B, MB91F264B, MB91266, MB91F267, MB91F272, MB91F477, MB91F478, MB91401, MB91402, and MB91403);

(b)    Fujitsu "M-2" series, *a.k.a.* "Millennia-2 Mobile," and "SPARClite," a.k.a. "MB8683X" series of camera processors (including but not limited to part numbers MB91188, MB91188A, MB91189, MB91392, MB86831, MB86941, MB86942); and

(c)    Fujitsu "MB91360G" Series of 32 bit RISC microcontrollers with CAN interface (including but not limited to part numbers MB91F362GAPFVS, MB91F362GA, MB91F365GB, MB91F366GB, MB91F367GB, MB91F368GB, and MB91F369GA).

13.    The terms "similar device" or "similar devices" are defined as any and all devices, products, and tangible things made or designed by Fujitsu using the same or similar structure for any memory component thereof, including but not limited to, microcontrollers, processors, micro control units ("MCUs"), graphic control units, sensors, and integrated circuits.

14.    The term "biometric sensors" refers to the models MBF200, SBF200, DKF200, MBF310, and/or MBF320.

15.    The term "WiMax" is defined as any device complying with or purporting to comply with the *IEEE 802.16* standard.

16.    The term "MEMS" or "Micro-Electro-Mechanical Systems" is defined as a device having an integration of mechanical elements, sensors, actuators, and electronics on a common silicon substrate through microfabrication technology.

16.     The term "FlexRay" refers to the high-speed serial communication system using point-to-point links over unshielded or shielded pair cable known as the FlexRay standard.

17.     The term "MOST" or "Media Oriented System Transport" refers to the Multimedia Car Infotainment system available in automobiles.

18.     The term "CAN" or "Controller-Area-Network" refers to network devices that permit the various electronic components in an automobile to communicate with each other using a common framework.

## INSTRUCTIONS

1.      Under Rule 34 of the Federal Rules of Civil Procedure, Defendant is required to produce the documents as they are kept in the usual course of business or to organize and label them to correspond with the categories of this request.  Accordingly, whenever a document or group of documents is taken out of a file folder, file drawer, file box, or notebook, before the same is produced, Plaintiffs request Defendant to attach thereto a copy of the label on the file folder, file drawer, file box, or notebook from which the document or group of documents was removed.  Defendant shall also provide an index of all documents produced.

2.      If you are aware of any document otherwise responsive to these requests, which document is no longer in your custody or control, identify the name and title of the author, the name and title of the addressee, the date of the document, the subject matter of documents, the last date on which the document was in your control, the person(s) or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstances surrounding its disposition, and state what knowledge each person has on which document was in your control, the person(s) or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstance surrounding its disposition, and state what knowledge each such person has.

3.    Reference to the singular includes the plural and reference to the plural includes the singular.

4.    All claims of privilege and refusal to produce documents based upon any other doctrine (such as the attorney-work product doctrine, etc.) shall be made in conforming with the Guam Rules of Civil Procedure and shall include the following information in your statement of the basis for any document so withheld or redacted:

       a.    the date of the document;

       b.    the number of pages, attachments, and appendices;

       c.    the identity of its author, authors or preparers;

       d.    the identity of each person who was sent, shown, blind, dash or carbon copied on, or had custody of such documents; and

       e.    subject matter of each such document, and in the case of any document relating to or referring to a meeting or conversation, identification of such meeting or conversation.

5.    If any document or tangible thing requested herein was at one time in existence, but has been lost, discarded or destroyed, or otherwise is no longer available, identify such document or thing as completely as possible, providing as much of the following information as possible:

       a.    the type of document or thing;

       b.    its date;

       c.    the date or approximate date it was lost, discarded, destroyed, or otherwise became no longer available;

       d.    the circumstances and manner in which it was lost, discarded, destroyed, or otherwise became no longer available;

       e.    the reason for, or reasons for, the disposing of the document;

---

**PLAINTIFFS' SECOND SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION TO DEFENDANT FUJITSU MICROELECTRONICS AMERICA, INC.**                                                    **PAGE 6**

1           f.     the identity of all persons authorizing or having knowledge of the circumstances

2    surrounding the disposal of the document or things;

3           g.     the identity of the person(s) who lost, discarded or destroyed the document or

4    thing; and

5

6           h.     the identity of all persons having knowledge of the contents thereof.

7        6.     Unless otherwise specified herein, this request calls for all documents generated,

8    prepared or received, or that refer to or relate to any events in the period from 1999 up to and including

9    the date of this request.

10       7.     To the extent permitted by the Federal Rules of Civil Procedure, these requests shall be

11   deemed continuing so as to require prompt further and supplemental production if you locate or obtain

12   possession, custody or control of additional responsive documents at any time prior to trial.

13

14       8.     Plaintiffs reserve the right to request additional documents.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## REQUESTS FOR PRODUCTION

2

1.    All documents listing any manufacturer or customer that has purchased a Fujitsu

3

ACCUSED DEVICE or similar device made by Fujitsu or bearing a Fujitsu trademark for use or

4

incorporation in any manufacturer's or customer's products from 1999 to the present.

5

6

2.    All documents listing any product made by Fujitsu or other manufacturer or customer

7

that has used or incorporated a Fujitsu ACCUSED DEVICE or similar device made by Fujitsu or other

8

manufacturer or customer from 1999 to the present.

9

3.    All documents listing any contract entered into within the last six years between

10

DEFENDANT and any manufacturer or customer involving a Fujitsu ACCUSED DEVICE or similar

11

device made by Fujitsu or other manufacturer or customer.

12

13

4.    All documents listing any request made from 1999 to the present by any manufacturer

14

or customer for proposals from DEFENDANT to develop, manufacture, distribute, or otherwise

15

produce products employing any Fujitsu ACCUSED DEVICE or similar device made by Fujitsu or

16

other manufacturer or customer.

17

5.    All documents listing any proposal from 1999 to the present by DEFENDANT to

18

develop, manufacture, distribute, or otherwise produce a Fujitsu ACCUSED DEVICE or similar

19

device for any manufacturer or customer.

20

21

6.    All documents showing any product made by Fujitsu or other manufacturer or customer

22

with embedded RAM, MEMS, WiMax or other ACCUSED DEVICE or similar device made by

23

Fujitsu or bearing a Fujitsu trademark.

24

7.    All documents showing any product made by Fujitsu or other manufacturer using a

25

biometric sensor made by Fujitsu or bearing a Fujitsu trademark.

26

8.    All documents showing any product using a MEMS device made by Fujitsu or bearing a

27

Fujitsu trademark.

28

9.    All documents showing contracts for sale of any MCUs, biometric sensors, or MEMS devices.

10.    All documents showing any customers for Fujitsu MCUs, biometric sensors, or MEMS devices.

11.    All documents showing design wins for any Fujitsu MCU or ACCUSED DEVICE or similar device in any blood glucose measuring device.

12.    All documents showing design wins for any Fujitsu display controller (whether accused or not) in any automobile.

13.    All documents showing design wins for Fujitsu FlexRay controllers or devices.

    (a)    All documents showing design wins for "MOST" controllers or devices.

    (b)    All documents showing design wins for "CAN" controllers or devices.

14.    All documents showing supply of any part from Fujitsu (including subsidiaries) to any manufacturer or customer (including but not limited to automobile manufacturers such as Honda, Hyundai, BMW and any affiliated companies).

15.    All documents related to any Fujitsu device having embedded RAM.

16.    All documents identifying any product that incorporates any one or more of the following parts or devices:

    (a)    Fujitsu "FR" series of 32 bit RISC microcontrollers (including but not limited to part numbers MB91F133A, MB91191R/F191A, MB911912/F192, MB91101A, MB91107, MB91108, MB91121, MB91F127, MB91F128, MB91133, MB91F133, MB91154, MB91F154, MB91155, MB91F155, MB91F158, MB91F362GB, MB91F365GB, MB91F366GA/GB, MB91F367G/GB, MB91F368GB, MB91F369GA, MB91301, MB91305, MB91307B, MB91307R, MB91F312A, MB91F318A, MB91FV319A, MB91352A, MB91353A/F353A, MB91354A, MB91355A, MB91F355A, MB91232L, MB91233L, MB91F233, MB91F233L, MB91263B, MB91F264B, MB91266, MB91F267, MB91F272, MB91F477, MB91F478, MB91401, MB91402, and MB91403);

    (b)    Fujitsu "M-2" series, *a.k.a.* "Millennia-2 Mobile," "SPARC," and "SPARClite," a.k.a. "MB8683X" series of camera processors (including but not limited to part

numbers MB91188, MB91188A, MB91189, MB91392, MB86831, MB86941, MB86942); and

    (c)   Fujitsu "MB91360G" Series of 32 bit RISC microcontrollers with CAN interface (including but not limited to part numbers MB91F362GAPFVS, MB91F362GA, MB91F365GB, MB91F366GB, MB91F367GB, MB91F368GB, and MB91F369GA).

17.   All documents concerning the design of and sales of any product, including but not limited to digital cameras, that incorporates Fujitsu ACCUSED DEVICES or similar devices made by Fujitsu or bearing a Fujitsu trademark.

18.   All communications between Fujitsu and any entity concerning the use of any Fujitsu ACCUSED DEVICES or similar devices made by Fujitsu or bearing a Fujitsu trademark used in any product, including but not limited to digital cameras, from 1999 to the present.

19.   All documents showing sales of any product containing or employing Fujitsu ACCUSED DEVICES in the United States, including specifically in the territory of Guam.

20.   All documents showing sales of any product made by Fujitsu or other manufacturer containing or employing Fujitsu ACCUSED DEVICES or similar devices to the Kmart Corporation.

21.   All documents evidencing incorporation of Fujitsu ACCUSED DEVICES or similar devices in any non-Fujitsu-branded or non-Fujitsu-trademarked product.

22.   All documents showing shipments, sales, or marketing of products made by or bearing the Fujitsu trademark or trade name to Guam.

23.   All documents showing sales of any ACCUSED DEVICES or similar devices to cell phone makers.

24.   All documents showing sales of any ACCUSED DEVICES or similar devices to digital video recorder makers.

25.   All documents showing sales of any ACCUSED DEVICES or similar devices to digital video camera makers.

1    26.    All documents showing sales of any ACCUSED DEVICES or similar devices to digital

2    video disk player makers.

3    27.    All documents showing sales of any ACCUSED DEVICES or similar devices to set top

4
5    box makers.

6    28.    All documents showing sales of any ACCUSED DEVICES or similar devices to printer

7    makers.

8    29.    All documents showing sales of any ACCUSED DEVICES or similar devices to

9    network enabled device makers.

10    30.    All documents showing sales of any ACCUSED DEVICES or similar devices to makers

11    of in-circuit emulators or development kits.

12
13    31.    All documents showing sales of any ACCUSED DEVICES or similar devices to digital

14    camera makers.

15    32.    All documents showing sales of any ACCUSED DEVICES or similar devices to any

16    other manufacturer or customer not listed or identified in the preceding requests.

17    33.    All documents covering the "SPARC" and "SPARClite" series of processors.

18    34.    All documents concerning any product (including but not limited to digital cameras and

19    including but not limited to the following models of digital cameras:  Canon (D30, D60, 10D, 20D),

20
21    Canon (1D, 1Ds Mark II), Canon Powershot (Sxxx, Axxx); Nikon D-SLRs (D2X, D2H, D100, D70),

22    Nikon Coolpix series and Sigma/Foveon (SD10, SD20)) made by Fujitsu or other manufacturer or

23    customer that has used or incorporated a Fujitsu ACCUSED DEVICE (including but not limited to the

24    "SPARC," "SPARClite" and other Fujitsu-related and Fujitsu-branded series of camera processors) or

25    similar device made by Fujitsu or other manufacturer or customer from 1999 to the present.

26

27

28

1    Dated: February 9, 2007                    SHORE CHAN BRAGALONE LLP

2

3                                               By:

4                                                  MARTIN PASCUAL, Esq.
                                                   (admitted *pro hac vice*)

5                                               ATTORNEYS FOR PLAINTIFFS
                                                Nanya Technology Corp. and
6                                               Nanya Technology Corp. U.S.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TEKER TORRES & TEKER, P.C.**
130 Asinall Avenue-Suite 2A
Hagatna, Guam 96910
671.477.9891 Telephone
671.472.2601 Facsimile

**UNPINGCO & ASSOCIATES, LLC**
Sinajana Mall-Suite 12B
Sinajana, Guam
671.475.8545 Telephone
671.475.8550 Facsimile

**SHORE CHAN BRAGALONE LLP**
325 N. St. Paul Street, Suite 4450
Dallas, Texas 75201
214.593.9110 Telephone
214.593.9111 Facsimile

ATTORNEYS FOR PLAINTIFFS
Nanya Technology Corp. and
Nanya Technology Corp. U.S.A.

## UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| NANYA TECHNOLOGY CORP. and NANYA TECHNOLOGY CORP. U.S.A., | Case No. CV-06-00025 |
| Plaintiffs, | **PLAINTIFFS' SECOND SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION TO DEFENDANT FUJITSU LIMITED** |
| v. | |
| FUJITSU LIMITED and FUJITSU MICROELECTRONICS AMERICA, INC., | |
| Defendants. | |

TO:    Defendant Fujitsu Ltd., by and through its attorneys of record, Rodney J. Jacob and Daniel M. Benjamin, Calvo & Clark, LLP, 655 South Marine Corps Drive, Suite 202, Tamuning, Guam 96913, and Christopher E. Chalsen, Michael M. Murray and Lawrence T. Kass, Milbank Tweed Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York 10005

Pursuant to Federal Rules of Civil Procedure 34, Plaintiffs Nanya Technology Corp. and Nanya Technology Corp. U.S.A. ("PLAINTIFFS") request that Defendant Fujitsu Limited ("DEFENDANT" or "Fujitsu")  produce and permit Plaintiffs' attorneys to inspect and to copy each of the following

1   documents belonging to or in the possession of Defendant within thirty (30) days of service of these

2   requests.

3       These requests shall be deemed to be continuing and any additional information or documents

4

5   relating in any way to these requests that you acquire subsequent to the date of answering these

6   requests and up to and including the time of trial shall be furnished, promptly after such information or

7   documents are acquired, as supplemental responses to these requests.

8                                    **DEFINITIONS**

9       1.      "Documents" mean the original and any non-identical copy of all "writings,"

10  "recordings" and "photographs" as those terms are defined in the FRCP including, but not limited to

11  letters, facsimile communications, electronic mail ("e-mail") communications, telegraphs, cablegrams,

12

13  telexes, memoranda, notes, records, reports, studies, calendars, diaries, agenda, minutes, books,

14  pamphlets, periodicals, newspaper clippings, graphs, index, charts, tabulations, statistical

15  accumulations, ledgers, financial statements, accounting entries, press releases, contracts, affidavits,

16  transcripts, legal documents, records of meetings and conferences, records of conversations and

17  telephone calls, still photographs, video tapes, motion pictures, tape recordings, microfilm, punch

18  cards, programs, printouts, and the written information necessary to understand and use such films and

19  records.

20

21      2.      A document "related to" or that "relates to" any given subject means any document that

22  in whole or in part constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is

23  in any way pertinent to that subject, including without limitation, document concerning the preparation

24  of other documents.

25      3.      The pronoun "you" refers to each Defendant and the party answering this Request for

26  Production, their agents and representatives.

27

28

4.    "Plaintiff" and "Plaintiffs" includes Nanya Technology Corp. and Nanya Technology Corp. U.S.A., all its subsidiaries, parents and affiliates, and all officers, directors, employees, agents, and any other person acting on its behalf.

5.    "Defendant" includes Fujitsu Limited and all its subsidiaries (including but not limited to Fujitsu Microelectronics America, Inc.), parents, and affiliates and all officers, directors, employees, agents, and any other person acting on their behalf.

6.    "Communication" is any and all means for transmitting information in the form of facts, ideas, inquiries or otherwise.

7.    "Identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment and employment title.  Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent requests requiring the identification of that person.

8.    "Person" is defined as any natural person or any business, legal or governmental entity or association.

9.    "Concerning" means relating to, inferring to, describing, evidencing, or constituting.

10.   The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

11.   The terms "infringe", "infringes", "infringed", "infringement", "directly infringes", "contributes to the infringement", and "induces the infringement" are to be understood in accordance with 35 U.S.C. § 271.

1
2

12. The terms "ACCUSED DEVICE" or "ACCUSED DEVICES" refer to the following parts or devices:

3
4
5
6
7
8
9

(a) Fujitsu "FR" series of 32 bit RISC microcontrollers (including but not limited to part numbers MB91F133A, MB91191R/F191A, MB911912/F192, MB91101A, MB91107, MB91108, MB91121, MB91F127, MB91F128, MB91133, MB91F133, MB91154, MB91F154, MB91155, MB91F155, MB91F158, MB91F362GB, MB91F365GB, MB91F366GA/GB, MB91F367G/GB, MB91F368GB, MB91F369GA, MB91301, MB91305, MB91307B, MB91307R, MB91F312A, MB91F318A, MB91FV319A, MB91352A, MB91353A/F353A, MB91354A, MB91355A, MB91F355A, MB91232L, MB91233L, MB91F233, MB91F233L, MB91263B, MB91F264B, MB91266, MB91F267, MB91F272, MB91F477, MB91F478, MB91401, MB91402, and MB91403);

10
11
12

(b) Fujitsu "M-2" series, *a.k.a.* "Millennia-2 Mobile," and "SPARClite," a.k.a. "MB8683X" series of camera processors (including but not limited to part numbers MB91188, MB91188A, MB91189, MB91392, MB86831, MB86941, MB86942); and

13
14
15

(c) Fujitsu "MB91360G" Series of 32 bit RISC microcontrollers with CAN interface (including but not limited to part numbers MB91F362GAPFVS, MB91F362GA, MB91F365GB, MB91F366GB, MB91F367GB, MB91F368GB, and MB91F369GA).

16
17
18
19
20

13. The terms "similar device" or "similar devices" are defined as any and all devices, products, and tangible things made or designed by Fujitsu using the same or similar structure for any memory component thereof, including but not limited to, microcontrollers, processors, micro control units ("MCUs"), graphic control units, sensors, and integrated circuits.

21
22

14. The term "biometric sensors" refers to the models MBF200, SBF200, DKF200, MBF310, and/or MBF320.

23
24

15. The term "WiMax" is defined as any device complying with or purporting to comply with the *IEEE 802.16* standard.

25
26
27
28

16. The term "MEMS" or "Micro-Electro-Mechanical Systems" is defined as a device having an integration of mechanical elements, sensors, actuators, and electronics on a common silicon substrate through microfabrication technology.

16.    The term "FlexRay" refers to the high-speed serial communication system using point-to-point links over unshielded or shielded pair cable known as the FlexRay standard.

17.    The term "MOST" or "Media Oriented System Transport" refers to the Multimedia Car Infotainment system available in automobiles.

18.    The term "CAN" or "Controller-Area-Network" refers to network devices that permit the various electronic components in an automobile to communicate with each other using a common framework.

## INSTRUCTIONS

1.    Under Rule 34 of the Federal Rules of Civil Procedure, Defendant is required to produce the documents as they are kept in the usual course of business or to organize and label them to correspond with the categories of this request.  Accordingly, whenever a document or group of documents is taken out of a file folder, file drawer, file box, or notebook, before the same is produced, Plaintiffs request Defendant to attach thereto a copy of the label on the file folder, file drawer, file box, or notebook from which the document or group of documents was removed.  Defendant shall also provide an index of all documents produced.

2.    If you are aware of any document otherwise responsive to these requests, which document is no longer in your custody or control, identify the name and title of the author, the name and title of the addressee, the date of the document, the subject matter of documents, the last date on which the document was in your control, the person(s) or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstances surrounding its disposition, and state what knowledge each person has on which document was in your control, the person(s) or entity, if any, now in control of the document, the reasons for your disposition or release of the document, all persons who have knowledge of the circumstance surrounding its disposition, and state what knowledge each such person has.

3.    Reference to the singular includes the plural and reference to the plural includes the singular.

4.    All claims of privilege and refusal to produce documents based upon any other doctrine (such as the attorney-work product doctrine, etc.) shall be made in conforming with the Guam Rules of Civil Procedure and shall include the following information in your statement of the basis for any document so withheld or redacted:

      a.    the date of the document;

      b.    the number of pages, attachments, and appendices;

      c.    the identity of its author, authors or preparers;

      d.    the identity of each person who was sent, shown, blind, dash or carbon copied on, or had custody of such documents; and

      e.    subject matter of each such document, and in the case of any document relating to or referring to a meeting or conversation, identification of such meeting or conversation.

5.    If any document or tangible thing requested herein was at one time in existence, but has been lost, discarded or destroyed, or otherwise is no longer available, identify such document or thing as completely as possible, providing as much of the following information as possible:

      a.    the type of document or thing;

      b.    its date;

      c.    the date or approximate date it was lost, discarded, destroyed, or otherwise became no longer available;

      d.    the circumstances and manner in which it was lost, discarded, destroyed, or otherwise became no longer available;

      e.    the reason for, or reasons for, the disposing of the document;

1          f.      the identity of all persons authorizing or having knowledge of the circumstances

2    surrounding the disposal of the document or things;

3          g.      the identity of the person(s) who lost, discarded or destroyed the document or

4    thing; and

5

6          h.      the identity of all persons having knowledge of the contents thereof.

7          6.      Unless otherwise specified herein, this request calls for all documents generated,

8    prepared or received, or that refer to or relate to any events in the period from 1999 up to and including

9    the date of this request.

10          7.      To the extent permitted by the Federal Rules of Civil Procedure, these requests shall be

11    deemed continuing so as to require prompt further and supplemental production if you locate or obtain

12    possession, custody or control of additional responsive documents at any time prior to trial.

13

14          8.      Plaintiffs reserve the right to request additional documents.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## REQUESTS FOR PRODUCTION

2

3

4

5

1.      All documents listing any manufacturer or customer that has purchased a Fujitsu ACCUSED DEVICE or similar device made by Fujitsu or bearing a Fujitsu trademark for use or incorporation in any manufacturer's or customer's products from 1999 to the present.

6

7

8

2.      All documents listing any product made by Fujitsu or other manufacturer or customer that has used or incorporated a Fujitsu ACCUSED DEVICE or similar device made by Fujitsu or other manufacturer or customer from 1999 to the present.

9

10

11

12

3.      All documents listing any contract entered into within the last six years between DEFENDANT and any manufacturer or customer involving a Fujitsu ACCUSED DEVICE or similar device made by Fujitsu or other manufacturer or customer.

13

14

15

16

4.      All documents listing any request made from 1999 to the present by any manufacturer or customer for proposals from DEFENDANT to develop, manufacture, distribute, or otherwise produce products employing any Fujitsu ACCUSED DEVICE or similar device made by Fujitsu or other manufacturer or customer.

17

18

19

20

5.      All documents listing any proposal from 1999 to the present by DEFENDANT to develop, manufacture, distribute, or otherwise produce a Fujitsu ACCUSED DEVICE or similar device for any manufacturer or customer.

21

22

23

6.      All documents showing any product made by Fujitsu or other manufacturer or customer with embedded RAM, MEMS, WiMax or other ACCUSED DEVICE or similar device made by Fujitsu or bearing a Fujitsu trademark.

24

25

7.      All documents showing any product made by Fujitsu or other manufacturer using a biometric sensor made by Fujitsu or bearing a Fujitsu trademark.

26

27

28

8.      All documents showing any product using a MEMS device made by Fujitsu or bearing a Fujitsu trademark.

9.    All documents showing contracts for sale of any MCUs, biometric sensors, or MEMS devices.

10.    All documents showing any customers for Fujitsu MCUs, biometric sensors, or MEMS devices.

11.    All documents showing design wins for any Fujitsu MCU or ACCUSED DEVICE or similar device in any blood glucose measuring device.

12.    All documents showing design wins for any Fujitsu display controller (whether accused or not) in any automobile.

13.    All documents showing design wins for Fujitsu FlexRay controllers or devices.

    (a)    All documents showing design wins for "MOST" controllers or devices.

    (b)    All documents showing design wins for "CAN" controllers or devices.

14.    All documents showing supply of any part from Fujitsu (including subsidiaries) to any manufacturer or customer (including but not limited to automobile manufacturers such as Honda, Hyundai, BMW and any affiliated companies).

15.    All documents related to any Fujitsu device having embedded RAM.

16.    All documents identifying any product that incorporates any one or more of the following parts or devices:

    (a)    Fujitsu "FR" series of 32 bit RISC microcontrollers (including but not limited to part numbers MB91F133A, MB91191R/F191A, MB911912/F192, MB91101A, MB91107, MB91108, MB91121, MB91F127, MB91F128, MB91133, MB91F133, MB91154, MB91F154, MB91155, MB91F155, MB91F158, MB91F362GB, MB91F365GB, MB91F366GA/GB, MB91F367G/GB, MB91F368GB, MB91F369GA, MB91301, MB91305, MB91307B, MB91307R, MB91F312A, MB91F318A, MB91FV319A, MB91352A, MB91353A/F353A, MB91354A, MB91355A, MB91F355A, MB91232L, MB91233L, MB91F233, MB91F233L, MB91263B, MB91F264B, MB91266, MB91F267, MB91F272, MB91F477, MB91F478, MB91401, MB91402, and MB91403);

    (b)    Fujitsu "M-2" series, *a.k.a.* "Millennia-2 Mobile," "SPARC," and "SPARClite," *a.k.a.* "MB8683X" series of camera processors (including but not limited to part

numbers MB91188, MB91188A, MB91189, MB91392, MB86831, MB86941, MB86942); and

(c)    Fujitsu "MB91360G" Series of 32 bit RISC microcontrollers with CAN interface (including but not limited to part numbers MB91F362GAPFVS, MB91F362GA, MB91F365GB, MB91F366GB, MB91F367GB, MB91F368GB, and MB91F369GA).

17.    All documents concerning the design of and sales of any product, including but not limited to digital cameras, that incorporates Fujitsu ACCUSED DEVICES or similar devices made by Fujitsu or bearing a Fujitsu trademark.

18.    All communications between Fujitsu and any entity concerning the use of any Fujitsu ACCUSED DEVICES or similar devices made by Fujitsu or bearing a Fujitsu trademark used in any product, including but not limited to digital cameras, from 1999 to the present.

19.    All documents showing sales of any product containing or employing Fujitsu ACCUSED DEVICES in the United States, including specifically in the territory of Guam.

20.    All documents showing sales of any product made by Fujitsu or other manufacturer containing or employing Fujitsu ACCUSED DEVICES or similar devices to the Kmart Corporation.

21.    All documents evidencing incorporation of Fujitsu ACCUSED DEVICES or similar devices in any non-Fujitsu-branded or non-Fujitsu-trademarked product.

22.    All documents showing shipments, sales, or marketing of products made by or bearing the Fujitsu trademark or trade name to Guam.

23.    All documents showing sales of any ACCUSED DEVICES or similar devices to cell phone makers.

24.    All documents showing sales of any ACCUSED DEVICES or similar devices to digital video recorder makers.

25.    All documents showing sales of any ACCUSED DEVICES or similar devices to digital video camera makers.

1    26.    All documents showing sales of any ACCUSED DEVICES or similar devices to digital

2    video disk player makers.

3    27.    All documents showing sales of any ACCUSED DEVICES or similar devices to set top

4
5    box makers.

6    28.    All documents showing sales of any ACCUSED DEVICES or similar devices to printer

7    makers.

8    29.    All documents showing sales of any ACCUSED DEVICES or similar devices to

9    network enabled device makers.

10    30.    All documents showing sales of any ACCUSED DEVICES or similar devices to makers

11
     of in-circuit emulators or development kits.
12

13    31.    All documents showing sales of any ACCUSED DEVICES or similar devices to digital

14    camera makers.

15    32.    All documents showing sales of any ACCUSED DEVICES or similar devices to any

16    other manufacturer or customer not listed or identified in the preceding requests.

17    33.    All documents covering the "SPARC" and "SPARClite" series of processors.

18    34.    All documents concerning any product (including but not limited to digital cameras and

19
     including but not limited to the following models of digital cameras:  Canon (D30, D60, 10D, 20D),
20

21    Canon (1D, 1Ds Mark II), Canon Powershot (Sxxx, Axxx); Nikon D-SLRs (D2X, D2H, D100, D70),

22    Nikon Coolpix series and Sigma/Foveon (SD10, SD20)) made by Fujitsu or other manufacturer or

23    customer that has used or incorporated a Fujitsu ACCUSED DEVICE (including but not limited to the

24    "SPARC," "SPARClite" and other Fujitsu-related and Fujitsu-branded series of camera processors) or

25    similar device made by Fujitsu or other manufacturer or customer from 1999 to the present.

26

27

28

1

2  Dated: February 9, 2007                  SHORE CHAN BRAGALONE LLP

3

4                                           By: _____
                                                Martin A. Pascual, Esq.
5                                               (admitted *pro hac vice*)

6                                           ATTORNEYS FOR PLAINTIFFS
                                            Nanya Technology Corp. and
7                                           Nanya Technology Corp. U.S.A.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28