1  **RODNEY J. JACOB, ESQ.**
   **DANIEL M. BENJAMIN, ESQ.**
2  **CALVO & CLARK, LLP**
3  Attorneys at Law
   655 South Marine Corps Drive, Suite 202
4  Tamuning, Guam 96913
   Telephone:    (671) 646-9355
5  Facsimile:     (671) 646-9403

6  **CHRISTOPHER E. CHALSEN, ESQ.**
7  **MICHAEL M. MURRAY, ESQ.**
   **LAWRENCE T. KASS, ESQ.**
8  **MILBANK, TWEED, HADLEY & MCCLOY LLP**
   1 Chase Manhattan Plaza
9  New York, New York 10005
   Telephone:    (212) 530-5000
10 Facsimile:     (212) 822-5796

11 *Attorneys for Defendants*
12 FUJITSU LIMITED, and
   FUJITSU MICROELECTRONICS AMERICA, INC.
13

14

15                IN THE UNITED STATES DISTRICT COURT

16                        DISTRICT OF GUAM

17 NANYA TECHNOLOGY CORP. and          CIVIL CASE NO. 06-CV-00025
   NANYA TECHNOLOGY CORP. U.S.A.,
18                                     **DEFENDANTS' OPPOSITION TO**
19                 Plaintiff,          **PLAINTIFFS' MOTION FOR COURT**
                                       **ORDERED MEDIATION AND**
20                 vs.                 **MEMORANDUM OF POINTS AND**
                                       **AUTHORITIES**
21 FUJITSU LIMITED, FUJITSU
   MICROELECTRONICS AMERICA, INC.,
22                                     **[ORAL ARGUMENT REQUESTED]**
                   Defendants.
23

24

25

26

27

28                          ORIGINAL
   *CIVIL CASE NO. 06-CV-00025*
   *{G0021348.DOC;1}*

FILED
DISTRICT COURT OF GUAM

APR 16 2007

MARY L.M. MORAN
CLERK OF COURT

1    Defendants Fujitsu Limited and Fujitsu Microelectronics America, Inc.,
2  (collectively "Fujitsu") hereby oppose the motion of Plaintiffs Nanya Technology Corp. and
3  Nanya Technology Corp. U.S.A. (collectively "Nanya") for court ordered mediation. The Court
4  should deny Nanya's motion because (1) an order forcing the parties to attend a mediation that
5  they have already consented to participate in is unnecessary and improperly compels Judge
6  Infante to undertake mediation of the Guam case without his consent; (2) an order that vaguely
7  makes the "result" of the California mediation "binding in both the Guam and California cases" is
8  illogical and improperly seeks to transform the mediation into an arbitration, and (3) such an
9  order could significantly interfere with Judge Infante's ability to conduct the mediation and could
10  place a cloud of ambiguity over the entire proceeding.

11                                    **STATEMENT OF FACTS**

12    Nanya filed the present action on September 13, 2006 for declaratory relief and
13  patent infringement against Fujitsu (the "Guam Action"). On October 24, 2006, Fujitsu filed a
14  complaint in the Northern District of California alleging patent infringement and requesting
15  declaratory relief against Nanya (the "California Action"). On February 7, 2007, the Court in the
16  California Action issued a Case Management Order. (*See* Minute and Case Management Order;
17  Exh. A hereto). Pursuant to the Case Management Order, the Court referred Fujitsu and Nanya to
18  court-connected mediation as a means to resolve the matters pending in the California Action.
19  (*Id.* at 1.) The Court noted that it would allow private mediation in lieu of court-connected
20  mediation if the parties were agreeable. (*Id.* at 2.) Both parties then expressed a willingness to
21  proceed with private mediation and the California Court subsequently ordered private mediation
22  for the California Action with the Honorable Edward A. Infante of the Judicial Arbitration and
23  Mediation Service. (*See* Order Withdrawing Case from Court-Sponsored Mediation and
24  Referring Case to Private Mediation; Exh. B hereto.) By agreement of the parties and Judge
25  Infante, this mediation is scheduled to go forward on May 15, 2007.

26    On March 2, 2007, this Court conducted a Hearing on Motions before Magistrate
27  Judge Manibusan. (*See* Transcript of Pleadings ("Transcript"); Exh. C hereto). During this
28  hearing, Nanya's counsel made an oral motion that the Court authorize Judge Infante to act as

1    mediator for the Guam Action during his mediation of the California Action. (*Id.* at 80.) This

2    Court responded that it would be more appropriate for Nanya to first ask Judge Infante whether

3    he would agree to mediate both cases at once before requesting such an order from the Court. (*Id.*

4    at 87-88.)   Judge Manibusan also expressed some skepticism that such an order was even

5    necessary. (*See, e.g., id* at 85-87.) Further, the Court indicated that a motion would be necessary

6    only if Judge Infante requested formal authorization from this Court to conduct mediation in the

7    Guam Action. (*Id.* at 88-90.) This Court thus denied Nanya's oral motion. (*Id.* at 87-88.)

8           Disregarding this Court's instructions, Nanya filed the present motion seeking

9    court ordered mediation with Judge Infante in the Guam Action without first asking Judge Infante

10   whether or not he was even willing to mediate both cases.  Defendants' understanding is that

11   minimal, if any, effort was made to schedule a call with Judge Infante to discuss these issues.

12   Thus, contrary to Nanya's claims, this Court did not "invite" the filing of the current motion and,

13   as noted, the current motion is inconsistent with the procedure specifically suggested by

14   Magistrate Judge Manibusan.

15                                   **ARGUMENT**

16   **I.    NANYA'S ARGUMENTS DO NOT SUPPORT THE RELIEF REQUESTED**

17           Nanya's Motion argues that 1) this Court has inherent powers to order parties to

18   attend pretrial mediation and 2) mediation in this case would be useful and could encourage the

19   parties to reach a global settlement.  Neither of these points is disputed by Fujitsu and neither

20   justify the relief requested.

21           Nanya's Motion does not explain why this Court should order the parties to appear

22   before Judge Infante, thereby effectively ordering Judge Infante to mediate the Guam action

23   without his consent.  More significantly, Nanya does not address at all why this Court should

24   issue a broad order that any "result" of Judge Infante's mediation be "binding" on the Guam case

25   even though the mediation itself is *non-binding*.   Nanya only vaguely states that this will

26   "preclude[e] litigation in Guam of issues already resolved by the mediation by a disgruntled

27   party." (Nanya's Motion at 2-3.) As explained below, the relief requested is illogical, and could

28   undermine the mediation process before it even begins.

## II. BECAUSE THE PARTIES HAVE ALREADY AGREED TO PARTICIPATE IN THE CALIFORNIA MEDIATION, AN ORDER FORCING ATTENDANCE AT THE MEDIATION IS UNNECESSARY AND INAPPROPRIATE

It is simply unnecessary to order the parties to participate in the California mediation. First of all, the California Court has already ordered the parties to participate in this mediation. (*See* Exh. B hereto.) Second, ordering the parties to attend a mediation on May 15, 2007 specifically could cause scheduling problems for both parties as well as for Judge Infante. For example, if Judge Infante needed to reschedule the mediation, Fujitsu and Nanya would potentially be in violation of this Court's order by agreeing to a new date.

Finally, ordering the parties to appear before Judge Infante for mediation is tantamount to ordering Judge Infante to conduct a mediation for the Guam case. Nanya's "scheduling" excuses for not seeking Judge Infante's permission for such an order are weak. Magistrate Judge Manibusan expressed concern about exactly this point and stated in the hearing that the motion should not be brought until "after ascertaining from the mediator whether this is an item which that mediator wants to undertake". (Transcript at 88.) Nanya has made no real effort to obtain Judge Infante's consent.

## III. NANYA'S PROPOSED ORDER TO MAKE THE CALIFORNIA MEDIATION BINDING UNDERMINES THE VERY PURPOSE AND NATURE OF MEDIATION

Nanya requests that the Court issue an order that the "[California] mediation be binding in both the Guam and California Actions." *Id.* This request is contrary to the very nature of private mediation. In California, like most states, "[m]ediation is a flexible, *non-binding*, confidential process in which a neutral person (the mediator) facilitates settlement negotiations." ADR L.R. 6-1 (emphasis added). The parties themselves have final discretion whether or not to settle a case, and if they do come to an agreement, they are free to define its terms however they like. Neither suggestions made by the mediator nor proposals made by the parties during a mediation are "binding" without a signed, written agreement. Making private mediation legally "binding" on the parties would defeat the purpose of its voluntary, non-binding nature and effectively convert it to an arbitration proceeding.

1    Further, having such an order in effect going into the mediation could have a substantial

2   detrimental effect on the mediation itself. Fujitsu could be hesitant to make any proposal or to

3   come to any agreement on any issue because such a "result" of the mediation could be

4   automatically "binding" in both cases. Thus, such an order could effectively rob the mediation of

5   any chance for success before it even begins.

6   **IV.    NANYA'S MOTION COULD UNDERMINE JUDGE INFANTE'S ABILITY TO**

7   **CONDUCT THE MEDIATION**

8    Nanya's proposed order to make the California mediation binding in Guam could

9   significantly undermine and restrict Judge Infante's ability to conduct the California mediation.

10   The authority of California mediators like Judge Infante is provided for by the Northern District

11   of California local rules, which clearly state that the mediator—and not a court or the parties

12   attending the mediation—has sole discretion "to structure the mediation so as to maximize the

13   benefits of the process." ADR L.R. 6-10(a). Should this Court issue an order making the "result"

14   of the mediation binding in Guam, Judge Infante would have to consider the impact on Guam in

15   every step of the mediation process.

16                                  **CONCLUSION**

17    Nanya's Motion unnecessarily seeks to order the parties to attend a mediation they have

18   agreed to attend, improperly would compel Judge Infante to conduct a mediation without his

19   consent and could undermine the mediation itself before it even begins. Thus, for these and all

20   the foregoing reasons, Fujitsu respectfully requests that this Court deny Nanya's Motion in its

21   entirety.

22    Respectfully submitted this 16th day of April, 2007.

23                           **CALVO & CLARK, LLP**
                            **MILBANK, TWEED, HADLEY**
24                             **& MCCLOY LLP**
                            *Attorneys for Defendants*
25                          Fujitsu Limited and
                            Fujitsu Microelectronics America, Inc.
26

27

28                    By:    _____
                            **DANIEL M. BENJAMIN**

# EXHIBIT A

1           IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3  FUJITSU LIMITED, et al,         No. C 06-06613 CW

4    v.                  MINUTE ORDER AND
                             CASE MANAGEMENT

5  NANYA TECHNOLOGY CORP., et al    ORDER
                       /

6

7  Clerk: Sheilah Cahill        Reporter: Raynee Mercado
    Plaintiff Attorney: Chris Holm; Michael Murray; Christopher Chalsen
8  Defendant Attorney: Martin Fliesler; Alfonso Chan; Kenneth Shore

9      A case management conference was held on: 2/2/07.  The Case
    Management Statement and Proposed Order filed by the parties is hereby
10  adopted by the Court as the Case Management Order for the case, except
    as may be noted below.  The Court's standard Order for Pretrial
11  Preparation also applies.

12  The case is hereby referred to the following ADR process:
    Non-binding Arbitration: [ ]    Early Neutral Evaluation:  [ ]
13  Court-connected mediation:  [ X ]    Private mediation:  [ ]
    Magistrate Judge settlement conference:  [ ]
14  ADR session to be held by:                   [06/01/07]
    (or as soon thereafter as is convenient to the mediator's schedule)
15

16  Deadline to add additional parties or claims:       [02/02/07]
      (with exception of any counterclaim filed with answer)
    Date of next case management conference:          [02/01/08]
17

    Completion of Fact Discovery:                [02/01/08]
18  Disclosure of identities and reports of expert witnesses:  [03/03/08]
                          Rebuttal:  [04/01/08]
19  Completion of Expert Discovery:              [06/02/08]

20  All case-dispositive motions and claim construction
        to be heard at 10:00 AM on or before:         [09/26/08]
21  Final Pretrial Conference at 1:30 P.M. on:         [12/19/08]
    A 16 day Jury Trial will begin at 8:30 A.M. on:     [01/12/09]
22

    Additional Matters:  Copy of Court's Order for Pretrial Preparation
23  given to attys in court.  Claim Construction will be held in
    conjunction with any summary judgment motions.  Plaintiffs to file
24  opening brief addressing all claims construed and all dispositive
    motions by 6/27/08; Defendants' opposition and cross-motion re all
25  claims construed and any dispositive motions (contained within a
    single brief) due 7/25/08; Plaintiffs' reply/opposition (contained
26  within a single brief) due 8/22/08; Defendants' surreply due 9/5/08
    (Local Rule page limits apply unless parties seek relief).  **A further
27  CMC will be held on 02/01/08 at 1:30 p.m.** to discuss further ADR,
    Court appointed expert, and the possibility of waiving jury and having
28  trial by Court with special master or trial by subject matter expert;

United States District Court
For the Northern District of California

1  joint statement due one week prior to FCMC. **A further CMC will also**
   **be held on 9/26/08 at 10:00 a.m.** Defendants to give Plaintiffs within
2  20 days a draft answer and draft counterclaims; Patent Local Rule
   requirements will kick in at that time. Defendants are agreeable to
3  private mediator; Plaintiffs' counsel to check with client re private
   mediator and let Court know by end of next week whether Plaintiffs
4  will agree to private mediation and Court will withdraw reference to
   court-sponsored mediation.

5
       IT IS SO ORDERED.
6

7  Dated: 2/7/07                        _____
                                        CLAUDIA WILKEN
8                                       United States District Judge

9

10 Copies to:  Chambers; ADR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

**United States District Court**
**For the Northern District of California**

## NOTICE

Criminal Law and Motion calendar is conducted on Mondays at 2:00 p.m. (in custody) and 2:30 p.m. (not in custody). Civil Law and Motion calendar is conducted on Fridays at 10:00 a.m. Case Management Conferences and Pretrial Conferences are conducted on Fridays at 1:30 p.m. Order of call is determined by the Court. Counsel need not reserve a hearing date for civil motions; however, counsel are advised to check the legal newspapers or the Court's website at www.cand.uscourts.gov for unavailable dates.

Motions for Summary Judgment: All issues shall be contained within one motion and shall conform with Civil L.R. 7-2. Separate statements of undisputed facts in support of or in opposition to motions for summary judgment will not be considered by the Court. (See Civil Local Rule 56-2(a)). All briefing on motions for summary judgment must be included in the memoranda of points and authorities in support of, opposition to, or reply to the motion, and shall comply with the page limits of Civil Local Rule 7-4. The memoranda should include a statement of facts supported by citations to the declarations filed with respect to the motion. Cross or counter-motions shall be contained within the opposition to any motion for summary judgment and shall conform with Civil L.R. 7-3. The Court may, sua sponte or pursuant to a motion under Civil L.R. 6-3, reschedule the hearing so as to give a moving party time to file a surreply to the cross or counter-motion.

All DISCOVERY MOTIONS are referred to a Magistrate Judge to be heard and considered at the convenience of his/her calendar. All such matters shall be noticed by the moving party for hearing on the assigned Magistrate Judge's regular law and motion calendar, or pursuant to that Judge's procedures.

(rev. 5/11/05)

**United States District Court**
**For the Northern District of California**

1      <u>ORDER FOR PRETRIAL PREPARATION</u>

2  <u>PRETRIAL CONFERENCE</u>

3      1.   Not less than 30 days prior to the pretrial conference,

4  counsel shall **exchange** (but not file or lodge) the papers described

5  in Civil L.R. 16-10(b)(7),(8),(9), and (10), and their motions in

6  limine.

7      2.   At least 20 days before the final pretrial conference, lead

8  counsel who will try the case shall meet and confer with respect to:

9          (a)   Preparation and content of the joint pretrial
   conference statement;

10

         (b)   Resolution of any differences between the parties
11  regarding the preparation and content of the joint pretrial
   conference statement and the preparation and exchange of
12  pretrial materials to be served and lodged pursuant to this
   Order for Pretrial Preparation. To the extent such differences
13  are not resolved, parties will present the issues in the
   pretrial conference statement so that the judge may rule on the
14  matter during the pretrial conference; and

15          (c)   Settlement of the action.

16      3.   Not less than 10 days prior to the pretrial conference,

17  counsel shall submit the following.

18          (a)   Pretrial Conference Statement. The parties shall file

19  a joint pretrial conference statement containing the following

20  information:

21      (1)   The Action.

22          (A) Substance of the Action. A brief description of the
   substance of claims and defenses which remain to be decided.

23

         (B)   Relief Prayed. A detailed statement of all the relief
24  claimed, particularly itemizing all elements of damages claimed.

25

         (2)   The Factual Basis of the Action.

26

         (A)   Undisputed Facts. A plain and concise statement of
27  all relevant facts not reasonably disputed.

28          (B)   Disputed Factual Issues. A plain and concise

1   statement of all disputed factual issues which remain to be
    decided.

2

3          (C)   Agreed Statement.   A statement assessing whether all
    or part of the action may be presented upon an agreed statement
    of facts.

4

5          (D)   Stipulations.   A statement of stipulations requested
    or proposed for pretrial or trial purposes.

6   (3)   Disputed Legal Issues.   Without extended legal argument,

7   a concise statement of each disputed point of law concerning

8   liability or relief.

9   (4)   Further Discovery or Motions.   A statement of all remaining

10  discovery or motions.

11  (5)   Trial Alternatives and Options.

12         (A)   Settlement Discussion.   A statement summarizing the
    status of settlement negotiations and indicating whether further

13  negotiations are likely to be productive.

14         (B)     Consent to Trial Before a Magistrate Judge.    A
    statement whether the parties consent to a court or jury trial

15  before a magistrate judge, with appeal directly to the Ninth
    Circuit.

16

17         (C)   Bifurcation, Separate Trial of Issues.  A statement of
    whether bifurcation or a separate trial of specific issues is

18  feasible and desired.

19  (6)   Miscellaneous.  Any other subjects relevant to the trial of

20  the action, or material to its just, speedy and inexpensive

21  determination.

22         (b)   Exhibit List and Objections.  The exhibit list shall

23  list each proposed exhibit by its number, description, and sponsoring

24  witness, followed by blanks to accommodate the date on which it is

25  marked for identification and the date on which it is admitted into

26  evidence.  **No party shall be permitted to offer any exhibit in its

27  case-in-chief that is not disclosed in its exhibit list without leave

28  of the Court for good cause shown.**  Parties shall also deliver a set

1  of premarked exhibits to the Courtroom Deputy.  The exhibit markers

2  shall each contain the name and number of the case, the number of the

3  exhibit, and blanks to accommodate the date admitted and the Deputy

4  Clerk's initials.  (Appropriate sample forms are available on the

5  Court's website at www.cand.uscourts.gov).  Any objections to exhibits

6  which remain after the pretrial meeting shall be indicated in the

7  pretrial statement.

8          (c)    Witness List.    In addition to the requirements of

9  FRCivP 26(a)(3)(A), a brief statement describing the substance of the

10 testimony to be given by each witness who may be called at trial.  **No**

11 **party shall be permitted to call any witness in its case-in-chief that**

12 **is not disclosed in its pretrial statement without leave of Court for**

13 **good cause shown.**

14         (d)    Use  of  Discovery  Responses.    In  addition  to  the

15 requirements of FRCivP 26(a)(3)(B), a designation of any excerpts from

16 interrogatory answers or from responses for admissions intended to be

17 offered at trial.  Counsel shall indicate any objections to use of

18 these  materials  and  that  counsel  have  conferred  respecting  such

19 objections.

20         (e)    Trial  briefs.    Briefs  on  all  significant  disputed

21 issues  of  law,  including  foreseeable  procedural  and  evidentiary

22 issues, which remain after the pretrial meeting.

23         (f)    Motions in Limine.  Any motions in limine that could

24 not  be  settled  at  the  pretrial  meeting  shall  be  filed  with  the

25 pretrial statement.  All motions in limine shall be contained within

26 one document, limited to 25 pages pursuant to Civil L.R. 7-2(b), with

27 each motion listed as a subheading.  Opposition to the motions in

28 limine shall be contained within one document, limited to 25 pages,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    with corresponding subheadings, and filed five (5) days thereafter.

2         (g)   Joint Proposed Voir Dire.   The attached voir dire
3    questionnaire will be given to the venire members, and copies of the
4    responses will be made available to counsel at the beginning of voir
5    dire.  Counsel may submit a set of additional requested voir dire, to
6    be posed by the Court, to which they have agreed at the pretrial
7    meeting.  Any voir dire questions on which counsel cannot agree shall
8    be submitted separately.  Counsel may be allowed brief follow-up voir
9    dire after the Court's questioning.

10        (h)   Joint Proposed Jury Instructions.   Jury instructions
11   §1.1 through §1.12, §1.13 through §2.2, and §3.1 through §4.3 from the
12   Manual of Model Civil Jury Instructions for the Ninth Circuit (2001
13   Edition) will be given absent objection.  Counsel shall jointly submit
14   one set of additional proposed jury instructions, to which they have
15   agreed at the pretrial meeting.  The instructions shall be ordered in
16   a  logical  sequence,  together  with  a  table  of  contents.   Any
17   instruction  on  which  counsel  cannot  agree  shall  be  marked  as
18   "disputed,"  and  shall  be  included  within  the  jointly  submitted
19   instructions and accompanying table of contents, in the place where
20   the party proposing the instruction believes it should be given.
21   Argument and authority for and against each disputed instruction shall
22   be  included  as  part  of  the  joint  submission,  on  separate  sheets
23   directly following the disputed instruction.

24        Whenever possible, counsel shall deliver to the Courtroom Deputy
25   a copy of their joint proposed jury instructions on a computer disk
26   in WordPerfect or ASCII format.   The disk label should include the
27   name  of  the  parties,  the  case  number  and  a  description  of  the
28   document.

United States District Court
For the Northern District of California

1                (I)   Proposed Verdict Forms, Joint or Separate.

2                (j)   Proposed Findings of Fact and Conclusions of Law (Court

3  Trial only).   Whenever possible, counsel shall deliver to the

4  Courtroom Deputy a copy of their proposed findings of fact and

5  conclusions of law on a computer disk in WordPerfect or ASCII format.

6  The disk label should include the name of the parties, the case number

7  and a description of the document.

8  JURY SELECTION

9      The Jury Commissioner will summon 20 to 25 prospective jurors.

10  The Courtroom Deputy will select their names at random and seat them

11  in the courtroom in the order in which their names are called.

12      Voir dire will be asked of sufficient venire persons so that

13  eight (or more for a lengthy trial) will remain after all peremptory

14  challenges and an anticipated number of hardship dismissals and cause

15  challenges have been made.

16      The Court will then take cause challenges, and discuss hardship

17  claims from the individual jurors, outside the presence of the venire.

18  The Court will inform the attorneys which hardship claims and cause

19  challenges will be granted, but will not announce those dismissals

20  until the process is completed.  Each side may then list in writing

21  up to three peremptory challenges.  The attorneys will review each

22  other's lists and then submit them to the Courtroom Deputy.

23      Then, from the list of jurors in numerical order, the Court will

24  strike the persons with meritorious hardships, those excused for

25  cause, and those challenged peremptorily, and call the first eight

26  people in numerical sequence remaining.  Those people will be the

27  jury.

28      All jurors remaining at the close of the case will deliberate.

1   There are no alternates.

2   <u>SANCTIONS</u>

3      Failure to comply with this Order is cause for sanctions under

4   Federal Rule of Civil Procedure 16(f).

5      IT IS SO ORDERED.

6

7

8   Dated: _____       <u>s/CLAUDIA  WILKEN</u>
                                        CLAUDIA WILKEN

9                                      UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JUROR QUESTIONNAIRE

Please fill out this form as completely as possible and print clearly.
Since we want to make copies for the attorneys and the Court, do not
write on the back of any page.  If you need more room, continue at the
bottom of the page.  Thank you for your cooperation.

1.    Your name: _____

2.    Your age: _____

3.    The city where you live: _____

4.    Your place of birth: _____

5.    Do you rent or own your own home? _____

6.    Your marital status: (circle one)

      single    married    separated    divorced    widowed

7.    What is your occupation, and how long have you worked in
      it?  (If you are retired, please describe your main
      occupation when you were working).

_____
_____

8.    Who is (or was) your employer?

_____

9.    How long have you worked for this employer? _____

10.   Please list the occupations of any adults with whom you
      live.

_____

11.   If you have children, please list their ages and sex and,
      if they are employed, please give their occupations.

_____
_____

12.   Please describe your educational background:

      Highest grade completed: _____

College and/or vocational schools you have attended:

_____

_____

_____

_____

Major areas of study:_____

13.  Have you ever served on a jury before? _____   How many

times?_____

If yes:  State/County Court _____   Federal Court _____

When? _____

Was it a civil or criminal case? _____

Did the jury(ies) reach a verdict? _____

(rev. 9/4/02)

United States District Court
For the Northern District of California

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FUJITSU LIMITED, et al.,

      Plaintiffs,

  v.

NANYA TECHNOLOGY CORP. et al.,

      Defendants.

_____/

No. 06-06613 CW

ORDER WITHDRAWING CASE FROM COURT-SPONSORED MEDIATION AND REFERRING CASE TO PRIVATE MEDIATION

IT IS HEREBY ORDERED that the above-captioned case is withdrawn from the Court's Mediation Program and referred to private mediation with the Honorable Edward A. Infante.  Each party to pay half the costs of private mediation.


      2/21/07

Dated _____

                        _____
                        CLAUDIA WILKEN
                        United States District Judge

cc:  ADR

# EXHIBIT C

1

**FILED**

DISTRICT COURT OF GUAM

MAR 1 2 2007

MARY L.M. MORAN
CLERK OF COURT

### IN THE DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

* * *

NANYA TECHNOLOGY CORP., and )
NANYA TECHNOLOGY CORP. U.S.A., )
                              )
          Plaintiffs,         )
                              )
    vs.                       ) CIVIL CASE
                              )    NO. CV06-00025
FUJITSU LIMITED, FUJITSU      )
MICROELECTRONICS AMERICA, INC., )
                              )
          Defendants.         )
_____)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOAQUIN V. E. MANIBUSAN, JR.,
Magistrate Judge

**HEARING ON MOTIONS**

**FRIDAY, MARCH 2, 2007**
* * *



2

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFFS:

 4    LAW OFFICES OF TEKER, TORRES & TEKER
      BY:  JOSEPH C. RAZZANO, Esq.
 5    Suite 2A, 130 Aspinall Avenue
      Hagatna, Guam  96910
 6
      and
 7    LAW OFFICES OF UNPINGCO & ASSOCIATES
      BY:  JOHN S. UNPINGCO, Esq.
 8    Sinajana Mall, Suite 12B
      Sinajana, Guam
 9
      and
10    LAW OFFICES OF SHORE, WEST & FREEMAN
      BY:  KENNETH E. SHORE, Esq.
11    2020 Bill Owens Parkway, Suite 200
      Longview, Texas 75604
12
      and
13    LAW OFFICES OF SHORE, CHAN & BRAGALONE
      BY:  ALFONSO G. CHAN, Esq.
14    325 N. St. Paul Street, Suite 4450
      Republic Center
15    Dallas, Texas 75201

16

17

18    FOR THE DEFENDANTS:

19    LAW OFFICES OF CALVO & CLARK
      BY:  DANIEL M. BENJAMIN, Esq.
20    655 S. Marine Corps Drive
      Tamuning, Guam 96913
21

22    LAW OFFICES OF MILBANK, TWEED, HADLEY & MCCLOY
      BY:  MICHAEL M. MURRAY, ESQ.
23    1 Chase Manhattan Plaza
      New York, New York  10005
24

25
```

3

1    HAGATNA, GUAM; FRIDAY, MARCH 2, 2007; 10:05 A.M.

2                          * * *

3        THE CLERK:  Civil case No. 06-00025, Nanya

4    Technology Corp., versus Fujitsu, Motion To Compel

5    Substantive Responses to Plaintiffs' First Requests for

6    Production to Defendant Fujitsu Microelectronics

7    America, Inc.; Motion To Clarify Magistrate Judge's

8    Order and Motion To Compel Substantive Responses;

9    Motion To Exceed Number Of Interrogatories and Request

10   for Admissions.

11       Counsel, please state your appearances.

12       MR. UNPINGCO:  Yes, Your Honor, John Unpingco,

13   from Unpingco and Associates on behalf of plaintiffs.

14   I'll be taking care of the scheduling order.

15       THE COURT:  All right.

16       MR. UNPINGCO:  And my co-counsel.

17       MR. SHORE:  Dennis Shore, Your Honor, I'll be

18   handling the motion, motion to exceed the number of

19   interrogatories and request for admissions.

20       THE COURT:  All right.  There's others,

21   there's others in the back.

22       MR. RAZZANO:  Joe Razzano and Alfonso Chan,

23   we're going to sit with Mr. Shore on behalf of

24   plaintiffs.

25       THE COURT:  All right.

4

1              MR. BENJAMIN:  Dan Benjamin and Michael Murray

2    on behalf of the defendants, Your Honor.

3              THE COURT:  Good morning.

4              MR. MURRAY:  Good morning, Your Honor.

5              THE COURT:  Let me gulp some water; I just

6    took some antibiotics and I need to push that down with

7    some water.

8              We're here this morning for basically just one

9    motion.  It appears that the other motions have been

10   resolved and are rendered moot by a stipulation signed

11   by the parties.  And generally, as counsel has said, it

12   appears that the main issue not yet resolved is the

13   plaintiff's motion to exceed the number of

14   interrogatories and requests for admissions.

15             I've reviewed the motion, and the responses.

16   A couple of things I want to bring out before I hear

17   from the parties.

18             It seems that the posture of the case at the

19   present time merely is the complaint that's been filed.

20   I don't believe there had been an answer to that

21   complaint other than the motion to dismiss or to

22   transfer the case to the Northern District.

23             Is that correct, or is that not correct?

24             MR. MURRAY:  Yes, that's correct, Your Honor.

25   Neither defendant has filed an answer yet.

```
 1          THE COURT:  Okay.  So I'm going with the
 2   complaint that's before the court.  In looking at the
 3   complaint, of course there's a cause of action for
 4   violation of the Sherman Antitrust Act, Clayton Act,
 5   three counts for infringement of patents belonging to
 6   the plaintiff, 15 general counts of non-infringement of
 7   patents belonging to the defendant.
 8          When I look at these causes of action, and
 9   there are actually 50 in number, and compare that with
10   perhaps the issues that are at stake in the Northern
11   District, based on what I read from the complaint, the
12   plaintiffs' causes of action for infringement are at
13   issue there, plus four patents belonging to the
14   defendants that are made an issue there.  So it seems
15   to me, I guess, at the beginning of this argument, that
16   the only patents at issue in the Northern District are
17   seven in number when compared to the number of patents
18   at issue here.  Is that correct?
19          MR. CHAN:  Actually, Your Honor, if I could
20   address that issue.  My name is Alfonso Chan, counsel
21   for plaintiff Nanya Technology Corporation.  The Nanya
22   filed an answer and counterclaims in the Northern
23   District of California, and in that answer and
24   counterclaims, it is true that the three Nanya patents
25   are at issue.  But in addition, the other 15 Fujitsu
```

1    patents were placed at issue --

2                THE COURT:  To your answer?

3                MR. CHAN:  Yes, and also the antitrust claims

4    as well.  So now the same claims are at issue --

5                THE COURT:  In both courts.

6                MR. CHAN:  -- in both courts, yes.

7                THE COURT:  All right.  And the other thing,

8    I had hoped perhaps that the parties would come to a

9    meeting of the minds regarding this issue, because it

10   appears to affect both sides of the equation.  I gather

11   from the defendants that if the court were to allow

12   plaintiff's motion, I suppose that they're going to be

13   treated the same way.  So I just want to have the

14   parties keep that in mind.

15               And I note for purposes of my reading of these

16   memoranda that one of the main contentions of the

17   defendant is the fact that generally the rules have not

18   been complied with, technically, by the furnishing of

19   the proposed interrogatories or admissions which would

20   actually provide a basis for finding a need to exceed

21   such a limit.  And those are important issues that

22   defendants have raised that I think perhaps also

23   plaintiff should deal with in that motion.

24               So let me hear from plaintiff at this point.

25               MR. SHORE:  Judge, I'm Kenneth Shore; I

1  represent Nanya.

2          THE COURT:  And just before we begin, also, my

3  understanding of the motion is that you want to serve

4  generally a beginning set, and once those sets have

5  been I suppose answered, you want to serve a second

6  set.

7          MR. SHORE:  Yes, Your Honor.

8          THE COURT:  So all together we're looking at

9  perhaps 2,000 in number, because you have the two

10  antitrust claims in addition to the 18 patents.

11          MR. SHORE:  I think it's 1800 would be the

12  amount that we're actually requesting, Your Honor.

13          THE COURT:  But you have 1800 representing,

14  those would represent 18 patents; right?

15          MR. SHORE:  One for each patent, Your Honor,

16  one set.

17          THE COURT:  But you're also asserting an

18  additional 25 for the two claims, the two antitrust

19  claims.

20          MR. SHORE:  Correct, Your Honor, but I think

21  1800 should be enough.

22          THE COURT:  Okay, I see.  So the cap is 1800.

23          MR. SHORE:  And that's what we're asking for.

24  I think within the 1800 we can probably hit the

25  antitrust claims as well.

1          THE COURT:  All right.

2          MR. SHORE:  To start off, Judge, I just want

3   to go through quickly the background of the case.  This

4   controversy is actually about seven years old, and the

5   parties have been negotiating or discussing some

6   allegations that Fujitsu has made against Nanya about

7   various patents, including some Japanese patents and

8   U.S. patents and some other foreign patents.  And when

9   this issue first arose, you know, the parties

10  negotiated I think in good faith for a number of years;

11  when those negotiations broke down, Fujitsu filed a

12  suit in Tokyo District Court against Nanya asserting

13  one Japanese patent, but at the same time they were

14  demanding a billion dollars to settle that case and a

15  license for worldwide sales of Nanya's products.  So

16  the issue here and the amount in controversy, you know,

17  is huge, and this is a critical case for my client.

18        And that also comes back to our counterclaims,

19  and our counterclaims kind of -- they focus around the

20  coercive nature of these negotiations and the coercive

21  nature of the Tokyo lawsuit.  In order to settle the

22  Tokyo lawsuit, they've also asserted several U.S.

23  patents that have expired, U.S. patents that we clearly

24  do not infringe, and U.S. patents that are invalid.

25  And what they're trying to do is basically threaten to

1   exclude Nanya from the Japanese market by tying

2   licenses for U.S. patents over products that we don't

3   infringe and tying licenses to expired U.S. patents to

4   access to the Japanese markets.  And that's kind of the

5   basis of our antitrust claims.  Those claims are

6   obviously very complicated and those antitrust claims

7   alone are a very large and complex case.  And that's

8   kind of what forced us to seek the protection from this

9   court, protection for our access to U.S. markets,

10  protection to our sales in these markets and our profit

11  margin in U.S. markets, including this market here in

12  Guam.

13          So there are now 18 patents at issue in this

14  case, the 15 Fujitsu patents that Fujitsu has asserted

15  against Nanya, and then we've also asserted three

16  patents of our own.  But by asserting these patents

17  against Fujitsu, judge, I want to stress to the court

18  that Fujitsu's framed this controversy, Fujitsu is the

19  one who brought 8 -- 15 different patents.  So the

20  complexity of this case is actually a result of

21  Fujitsu's actions and we --

22          THE COURT:  But the cause of action in

23  Northern California only raises seven in total.

24  You've brought the others through your counterclaim.

25          MR. SHORE:  Exactly, Your Honor.  But that's

1    the ones they asserted in the Northern District of

2    California, but that's not the ones they've asserted

3    against us in the negotiations in Tokyo.

4              THE COURT:  But does that -- you see, one of

5    the problems I hear here, or I see here, is that I see

6    these claims generally are of -- it's like a person

7    saying I haven't committed a crime but yet the

8    government hasn't prosecuted legally, as to those

9    non-infringing claims.

10             MR. SHORE:  Well, Your Honor --

11             THE COURT:  And in the absence of an answer,

12   they might say, well, yeah, you haven't infringed.

13             MR. SHORE:  Well, Your Honor, the Declaratory

14   Judgment Act allows this court to have jurisdiction

15   over any ripe controversy, any real controversy between

16   the parties.  They've asserted all these 15 patents

17   against us in the negotiations in Tokyo.  We chose the

18   15 Fujitsu patents --

19             THE COURT:  But assuming they did that in

20   Tokyo, though, in the Northern District litigation,

21   they did not assert that.

22             MR. SHORE:  But they filed that case after we

23   filed this case, Your Honor.  We chose those 15 patents

24   based upon the 15 patents that they've accused us of

25   infringing.  I mean, they've given us a letter, you

1    know, it took us a while to get the letter out of them,

2    but we got a letter out of them saying here's the

3    patents, here's the U.S. patents that we think Nanya's

4    infringed.

5          THE COURT:  But does it make it ripe for

6    discovery here when I don't see anything that puts it

7    at issue?

8          MR. SHORE:  Well, they've demanded that we pay

9    them licensing fees for those patents.

10         THE COURT:  In the non-legal setting.  But in

11   the legal setting here, there's been no answer in the

12   Northern District, they've not actually made it an

13   issue.  I'm just raising it for purposes of discovery.

14         MR. SHORE:  Well, they have made it -- I think

15   they have made it an issue, Judge, by accusing us of

16   infringing those patents.  You know, they have --

17         THE COURT:  But, you know, I can say that to

18   you outside the courtroom, hey, you've infringed my

19   patents, but as long as I haven't filed something

20   formally, it never becomes an issue in the legal

21   setting.

22         MR. SHORE:  Judge, I'm not sure that is a

23   requirement to grant the court declaratory judgment

24   jurisdiction.  If that were the case, well, then you

25   couldn't file declaratory judgment until someone has

1   sued you for --

2         THE COURT:  But in a sense you're saying I

3   haven't committed a crime, and the government is not

4   charging you.

5         MR. SHORE:  Well, they've accused us of it.

6   And in order to get it off of our back, in order to let

7   us get on with our business and let us sell our

8   products without this threat of a billion dollar

9   lawsuit, we have a right under the U.S. Code to --

10        THE COURT:  But don't you have a right to

11  continue to do business unless some legal action is

12  brought against you?

13        MR. SHORE:  We should be able to do that

14  business without -- you know, clear of any threats,

15  Your Honor.  I mean, they've made explicit threats, and

16  you know, explicit assertions of these patents against

17  us.

18        THE COURT:  The threats could be baseless, you

19  know.

20        MR. SHORE:  Which they are baseless, Your

21  Honor, and that's why we filed the declaratory judgment

22  alleging that we don't infringe, the patents are

23  invalid and unenforceable.  And we do think they're

24  baseless, you know, that's what we think.  And in order

25  to get this controversy finally behind us, we have the

1    right to come in and file declaratory judgment actions

2    since they've made explicit allegations of infringement

3    of those patents.

4              THE COURT:  All right.

5              MR. SHORE:  And with all these patents at

6    issue, Judge, I think when you're considering how to

7    manage the discovery in this case, the Manual For

8    Complex Litigation talks about early identification and

9    clarification of issues critical to discovery control.

10   And I can't emphasize enough that this case really

11   involves the joinder of 19 different cases.  There are

12   18 -- this is 18 patent lawsuits in one, the joinder of

13   18 patent lawsuits and an antitrust suit.

14             So in addition to the discovery for the 18

15   patent lawsuits and the one antitrust lawsuit, we also

16   have the issue of personal jurisdiction discovery, and

17   so there is, you know, so there's a need for a large

18   number of discovery in this case, Judge, because we

19   could have brought each one of these patent cases, each

20   one of these patent cases could be brought as an

21   individual case.  You know, if you file a patent case

22   with one patent, you get 25 interrogatories and 25

23   requests for admissions.  But this is not just one

24   patent, it's 18 patents, 18 patent cases.

25             And when you look at Rule 26(b)(2)(iii),

1  Judge, in determining the scope of discovery that

2  you're going to allow and the amount of discovery

3  you're going to allow, the court generally should look

4  at the burden and extent and determine whether or not

5  they outweigh the likely benefits.  And Rule 26 gives

6  us five different things to consider.  It gives us the

7  needs of the case, the amount in controversy, the

8  parties' resources, the importance of the issues at

9  stake, and the importance of the proposed discovery in

10  resolving that dispute.  And I'll discuss each one of

11  those briefly, Your Honor.

12          THE COURT:  Let me ask you this to begin with.

13  Local Rule 33.1, does it contravene any Federal Rule of

14  Civil Procedure?

15          MR. SHORE:  Excuse me, Judge?

16          THE COURT:  Local Rule 33.1, does that

17  contravene any Federal Rule of Civil Procedure?

18          MR. SHORE:  Judge, under the Federal Rules of

19  Civil Procedure and under the local rules, you have the

20  power and it's within your discretion to tailor the

21  discovery in your cases the way you think it should

22  be --

23          THE COURT:  The rules currently say that if

24  you want to exceed these numbers, you must serve

25  additional interrogatories, you shall submit to the

1   court --

2        MR. SHORE:  And, Judge, you're talking about

3   the sample interrogatories?  We've actually got sample

4   interrogatories.  But in this case, sir, what I wanted

5   to do with you today is go through all the different

6   issues that are going to be pertinent in each of those

7   patent cases.  And there's going to be discovery in

8   each one of those.  I mean, obviously, it would be

9   very burdensome for us on the front end to draft 1800

10  interrogatories and submit them to you to determine

11  whether you should allow us to draft and serve 1800

12  interrogatories.

13       THE COURT:  But isn't the whole purpose of

14  33.1, isn't the whole purpose of that rule is to say to

15  you, well, draft these interrogatories first so that

16  those can be -- it seems to me that you haven't done

17  any drafting in terms of what these requests might be,

18  but you're asking the court at this point to grant, you

19  know, in a sense what the defendants say as a blanket

20  rule in terms of numbers.  And at this point your

21  request really appears to be very reasonable, it's

22  just, well, what are the contours?

23       MR. SHORE:  And Rule 33 --

24       THE COURT:  And that's my problem, I don't

25  know what the contours are, in light of the fact that

1  the first requirement of the rule has not been met.

2        MR. SHORE:  Well, that rule is in place

3  obviously to help you, Judge.  I mean that rule is in

4  place to --

5        THE COURT:  Well, to help me and also to help

6  the defendant in terms of perhaps what objection they

7  may make to your request.

8        MR. SHORE:  But I think the defendants are

9  pretty aware of the different issues that arise in

10 patent cases.

11        THE COURT:  I know they are.

12        MR. SHORE:  I mean, they've litigated hundreds

13 of these things.  They know exactly what we're going to

14 ask.  Rule 33.1 is there for you, Judge.  I mean, you

15 have -- I mean, it's there to give you information and

16 make it easier for you to determine how you want to

17 tailor discovery in the cases that you preside over.

18        THE COURT:  Well, let me ask you this.

19 Supposing you ask one question in terms of all of these

20 patents, how have we infringed, that's one question.

21        MR. SHORE:  I've got -- I'll go --

22        THE COURT:  I'm just -- just for purposes of

23 argument, you ask one question:  In terms of all of

24 these patents, how have we infringed these patents that

25 you say we've infringed upon.

1          MR. SORE:  Well, I mean --

2          THE COURT:  Would that be a fair question or

3   not?

4          MR. SHORE:  That's a fair question, I mean --

5          THE COURT:  And that's my one question.

6          MR. SHORE:  That's one question we will have

7   in the interrogatories, and actually there will be

8   several different interrogatories going to that same

9   question, how do you allege that Nanya infringes these

10  patents.

11         THE COURT:  Right, that would be the second

12  question.

13         MR. SHORE:  And then there's questions:  Did

14  they do a proper Rule 11 investigation before they

15  asserted the patents against Nanya.  What evidence do

16  they show that Nanya had actual or constructive notice

17  of the patents.  You know, we have interrogatories

18  going to whether or not Fujitsu actually owns the

19  patent, whether or not --

20         THE COURT:  See, that's what I'm saying.  All

21  of these questions, instead of it being 500, can be

22  reduced to say a hundred, 150 questions.

23         MR. SHORE:  But --

24         THE COURT:  At the initial stage.

25         MR. SHORE:  At the initial stage there's a lot

1    of different issues that go with each and every patent.

2    There's the Rule 11 investigation; there's notice;

3    there's ownership, you know, did the named inventors

4    actually invent the patent; did they disclose the

5    patent invention one year prior to the filing date,

6    which would invalidate the patent; were there prior

7    inventions that contemplated the invention of each

8    patent or rendered the invention obvious, which goes to

9    validity and enforcement.  How was each one of the

10   patents conceded and reduced to practice, which goes to

11   validity and enforceability.

12           There's claim terms, like take the 428 patent,

13   for example, there's claim terms like data-latch

14   circuits, I mean, there's strobe signals, clock

15   signals.  What's a data-latch circuit?  How would

16   someone familiar, skilled in the art define that?  Or

17   how they would understand that.  Is there extrinsic

18   evidence that they want to bring in to construe these

19   claim terms, or what intrinsic evidence do they want to

20   -- I mean, it just goes --

21           THE COURT:  Can those be obtained through

22   depositions?

23           MR. UNPINGCO:  A moment please, Your Honor.

24           THE COURT:  Yes.

25               (Pause/plaintiffs' counsel conferred.)

1          MR. SHORE:  Judge, if you like, I've got a

2    presentation that goes through each one of these

3    issues.  Of course, we're going to have, you know, with

4    each patent, we're going to have all of these issues.

5    Disclosure will help flush them out.  Once these

6    issues, all these different issues that arise in any

7    patent case, once we get the initial set of discovery,

8    that will raise additional issues, but that allows us

9    to go into the depositions knowing what to ask.

10         I mean, we can't go into -- as interrogatories

11   in any case, when I send a set of interrogatories, I

12   get the answers to the interrogatories, that helps me

13   plan how I'm going to depose someone, that lets me know

14   what questions I want to ask.  But if I go into a

15   deposition blind, I go into deposition and I don't know

16   what they're going to allege, you know, constitute a

17   constructive notice, I don't know what the ownership

18   issues are, I don't know how they're saying this

19   invention was conceived and reduced to practice, I

20   can't go into a deposition.  Very unproductive for me

21   to go into a deposition and try to start from scratch

22   in discovery with the deposition without having these

23   questions answered.  And these are questions that arise

24   in every single patent case.

25         If you'd like I can go through the

1    presentation that I've prepared for you today, that

2    we've prepared for you today to show an example patent,

3    the 428 patent, and the types of issues that are going

4    to arise with that one patent.  There's even a sample

5    of -- we've got a sample.  For example, I can show you

6    a copy of the 428 patent, I've got it right here in one

7    -- which is just one of the 18 patents.

8            May I approach, Your Honor?

9            THE COURT:  Yes, you may.

10           MR. SHORE:  Which is just one of the 18

11   patents that's going to be at issue in this case.  In

12   addition, I've got a presentation I can go through --

13           THE COURT:  Is the problem -- is the problem,

14   though, that you haven't actually drafted these

15   interrogatories?

16           MR. SHORE:  They're actually drafted in this,

17   they're drafted right here, Judge.  And may I approach

18   again, Your Honor?

19           THE COURT:  Yes.

20               (Handing documents to the court.)

21           MR. SHORE:  In this presentation that I've

22   prepared for you on the 428 patent, it's just an

23   example of one of these patents, one of 18 patents in

24   suit, Judge.  This one was filed on January 29, 1999

25   by Fujitsu listing two inventors.  Inventorship is

1   obviously going to be an issue, as in any patent.

2   We've got the effective -- the priority date of the

3   claim is actually 1998, and that's through a treaty

4   with Japan, because there was a previous Japanese

5   patent.  And the patent issued September 18, 2001.

6          This patent, semiconductor device reconciling

7   different timing signals, there are 42 different claims

8   in this case, in this patent, five independent claims

9   and 37 dependent claims.

10          And then, for example, we can go to claim one.

11  A semiconductor device which receives addresses in

12  synchronism with the clock signal and receives data in

13  synchronism with a strobe signal, said semiconductor

14  device comprising address-latch circuits which latches

15  the address.

16          And you can kind of see what we're talking

17  about, claims construction, just right here, Judge.

18  What would someone skilled in the art, how would

19  they -- what is an address-latch circuit.  What is a

20  semiconductor device.  These all could be, you know,

21  claim issues with regard to defining these claim terms.

22  And this is just one of five independent claims.  And

23  then the dependent claims further define the scope of

24  the patent with regard to each of the independent

25  claims.

1    And then, Judge, once we move on, there's

2    interrogatories, 25 interrogatories.  These

3    interrogatories that we prepared for you today, Judge,

4    these interrogatories assume that we do adopt the

5    Northern District rules, Northern District local patent

6    rules, which, and you can see, Judge, Northern District

7    local patent rules.  But you have the first --

8    THE COURT:  I'm biased toward the Northern

9    District; I went to school in the Northern District.

10    MR. SHORE:  Okay.  You have Rule 11

11    investigation; in other words, what Rule 11

12    investigation prior to securing the patent did they

13    conduct.  Did Nanya have actual or constructive notice.

14    Then you go on to ownership.  Does Fujitsu

15    actually own the patent.  Did Tomita and Kanda actually

16    invent the patented device.  You know, did Fujitsu

17    disclose the patent devices more than a year prior to

18    the filing for the patent.  Are there prior inventions

19    that contemplated or rendered obvious the invention

20    disclosed in the 428 patent.  You have, how was the 428

21    conceived and reduced to practice.

22    You know, how will Fujitsu seek to construe

23    claim terms such as address-latch circuits, strobe

24    signals, clock signals, data light memory circuits,

25    address input circuits, timing signals, all these

1    different things need to be defined.  So, and for each,

2    you know, and this is just claim terms in this one

3    claim, one independent claim in one of the patents, and

4    there's 18 different patents.              -

5              What extrinsic and intrinsic evidence does

6    Fujitsu intend to use to define these claim terms.

7    What other manufacturers' products does Fujitsu allege

8    infringe.  Which claims can be construed as mean plus

9    function claims, under 35 USC, Section 112.  What

10   Nanya products does Fujitsu allege infringe the 428

11   patent.  What evidence does Fujitsu intend to use to

12   prove infringement for each of the independent claims.

13             And in each claim in this patent, Judge,

14   there's five, claim one, claim nine, claim eight, claim

15   41 and claim 42; so in each one of the patents, 18

16   patents, you may have four or five independent claims.

17             Does Fujitsu contend that Nanya directly

18   infringes, induces infringement, or contributes to

19   infringement.  Does Fujitsu intend to show willful

20   infringement, and if so, how they intend to do that,

21   which is important, because that would be an issue for

22   attorneys' fees and other things.

23             You know, what are Fujitsu's alleged damages.

24   Are there other licenses out there establishing a

25   reasonable right.  What are the sales of Fujitsu

1   products incorporating this invention.  What are the

2   sales of Nanya products incorporating this invention.

3   How important are the features contemplated by the

4   invention of the 428 patent to the functionality of the

5   devices.  Is that something that really matters to the

6   end user or original equipment manufacturers, making

7   the invention more valuable.  Are there any exceptional

8   circumstances with the infringement here which would

9   entitle one side to attorneys fees.

10          And then you have a whole host of issues with

11  invalidity and unenforceability, patentability issues,

12  inequitable conduct at the patent office, laches,

13  patent misuse.

14          So, as you can see, Judge, for each one of

15  these patents, you have literally dozens of issues that

16  have to be flushed out.  And in allowing these

17  interrogatories, you know, allows -- gives us, each

18  side the opportunity to do targeted depositions, and

19  the depositions would be much more productive if this

20  information in this discovery is flushed out first

21  with, with interrogatories.

22          And just getting back, I mean, obviously, the

23  importance of the discovery in resolving the issues in

24  this case is absolutely critical, and the needs of this

25  case, this additional discovery is absolutely critical.

1    But if you look at the other Rule 26(b)(2)(iii)

2    factors, (b)(2)(iii) factors that the court would look

3    at, the amount in controversy--their initial demand was

4    over a billion dollars--the amount in controversy still

5    is hundreds of millions of dollars.  I mean, obviously,

6    that factor weighs strongly in favor of allowing

7    expansive discovery.

8            The parties' resources.  This isn't David and

9    Goliath, I mean, this is basically Goliath and Goliath.

10   I mean, each side has hundreds of millions and billions

11   of dollars in sales, each side has plenty of lawyers

12   working on its side to get this work done.  Each side

13   believes the case is critical, and can garner the

14   resources necessary to get this discovery done.

15           The importance of the issues at stake, the

16   third factor.  I can't over-emphasize how important

17   this is to Nanya.  I mean, this is an industry with

18   razor-thin margins, and Fujitsu is demanding license

19   fees of 3 percent on every product Nanya sells on this

20   entire planet.  That is an absolutely critical issue to

21   my client.

22           THE COURT:  That's related to the antitrust

23   issue, though.

24           MR. SHORE:  No, that's a Rule 26(b)(2)(iii)

25   factor:  Needs of the case, amount in controversy, the

1   parties' resources, the importance of the issues at

2   stake, and the importance of the proposed discovery in

3   resolving the case.

4           THE COURT:  But I assume the discovery date

5   would be related to your antitrust claims?

6           MR. SHORE:  Of course it's related to our

7   antitrust claims, but it's related to the patent claims

8   as well.  I mean these are the factors that you'll

9   consider when you determine whether or not to grant

10  this discovery is the importance of the issues at

11  stake.  And, obviously, if it's an industry with razor-

12  thin margins, if we have to pay a royalty to Fujitsu,

13  it might us process out of certain markets.  This is a

14  critical case to our client.  And when you have such

15  critical issues, those are the kind of cases where the

16  court should grant expansive discovery.  You know, and

17  Fujitsu obviously feels that the patents at issue in

18  this case are critically important.

19          But, you know, I can't -- in summary, Judge,

20  I just want to emphasize that this is not one case,

21  this is 19 different cases.  You know, once we get past

22  all of the issues with the patents, the 18 different

23  patents, and all the discovery that we just went over,

24  we still have the issues of the antitrust.  You know,

25  what's the relevant market, what other licensing

1    arrangements does Fujitsu have.  Are there collusive

2    licensing arrangements with other semiconductor

3    manufacturers.  Is this a scheme to exclude certain

4    manufacturers from the market by placing licensing

5    burdens on them which basically push them out of the

6    industry.  We're not the only ones to ever make these

7    kind of allegations against Fujitsu.  They're defending

8    plenty other antitrust cases as well related to similar

9    conduct.

10           And then we have the whole issues with

11   jurisdictional discovery.  I mean, the discovery in

12   this case is critical.  It's not one case, this is

13   really 19 different cases; and whether this was an

14   antitrust case standing alone, we get 25

15   interrogatories, 25 requests for admissions at least.

16   And antitrust case is an extremely complicated case in

17   its own right.  And then you have 18 different patent

18   cases, each with their issues of validity,

19   infringement, enforceability, you know, the complex

20   issues that we went over earlier.

21           So, I would ask the court to look at this case

22   not as one case, but as 19 different cases, and each of

23   the 19 cases has its own host of issues that need to be

24   explored in discovery.  And the only way we can do

25   this, the only way we can prepare for the depositions,

1    the only way we can prepare for trial in this case is

2    to have the expansive discovery that we've asked for.

3            Thank you, Your Honor.

4            THE COURT:  Counsel.

5            MR. MURRAY:  Good morning, Your Honor, I'm

6    Michael Murray representing the defendants.

7            Your Honor, I'd like to start off just briefly

8    addressing some of the background statements that

9    Mr. Shore made.  He made some allegations about Fujitsu

10   asserting expired patents improperly, and improperly

11   trying to tie the litigation going on in Japan to the

12   worldwide markets, et cetera.

13           Now those are really off point for the topic

14   of today, but I just want to briefly say that none of

15   that is true.  The action filed in Japan involves a

16   Japanese patent; Fujitsu has been willing from the

17   beginning to grant a license under that patent alone.

18   Nanya doesn't like the terms of the license that was

19   offered under that patent.  There's been no

20   inappropriate attempts to tie settlement of the

21   Japanese case to some sort of worldwide license, so

22   that's just not true.  Neither is it true that Fujitsu

23   has demanded a billion dollars in connection with the

24   Japanese litigation.

25           But let me move on to the issue of this

```
 1    particular motion.  Basically, Your Honor, this motion
 2    is extremely premature, for a number of reasons.  First
 3    of all, as Your Honor noted, we have not yet even filed
 4    an answer in this case.  What's happening right now is
 5    there is jurisdictional discovery going on.  Nanya has
 6    not filed any interrogatories in connection with the
 7    jurisdictional discovery, so apparently they don't feel
 8    that they need interrogatories in order to resolve the
 9    jurisdictional issues.
10         The motions to dismiss and transfer have been
11    set for hearing, we're moving forward with document
12    production, we have a stipulation between the parties
13    to sort of stage the discovery and the briefing on the
14    jurisdictional issues.  So we certainly think that the
15    jurisdictional issues should be resolved before the
16    court deals with sort of the proper scope of the merits
17    discovery that should go on in this case.
18         Second, Mr. Shore has really not given the
19    court a good reason for disregarding Rule 33.1.  Rule
20    33.1 sets forth a perfectly reasonable procedure for
21    obtaining additional interrogatories.  If they want
22    additional interrogatories, they should write the
23    interrogatories down, submit them.  First, of course,
24    have a meet and confer with us to discuss the
25    interrogatories.
```

1      The 25 interrogatories that Mr. Shore showed
2   the court this morning I saw for the first time about
3   ten minutes before this hearing.  So there's been
4   really an unfortunate reluctance on the part of
5   plaintiff in this case to meet and confer with us and
6   try to work through things.  What they should do is
7   follow the local rules.  They should serve the 25
8   interrogatories that they're entitled to serve, they
9   should then write any additional interrogatories that
10   they feel needed, sit down with us and discuss them, we
11   might be able to agree to the interrogatories.  If
12   there's some disagreement between the parties, the
13   interrogatories that we agree about should be presented
14   to Your Honor, under Rule 33.1, and if necessary, we
15   can have argument on those particular interrogatories.
16   But to just grant a blank check for 900 interrogatories
17   would just be extremely burdensome, especially this
18   early in the case when, as I said, we haven't filed an
19   answer yet, we really don't know exactly what the
20   posture of the case is going to be a few months from
21   now.
22      This same relief was requested, interestingly,
23   in the Northern District of California, as part of the
24   initial scheduling before Judge Wilkin; they asked for
25   25 interrogatories per patent, they got zero.  There

1   was no additional interrogatories granted in the

2   scheduling order that came out of the Northern District

3   of California.

4           Now, looking at the particular issues that

5   Mr. Shore talked about and the sample interrogatories,

6   as I mentioned, I had very little time to look at them,

7   really just as he was speaking, but a lot of these

8   issues really can be resolved through other ways.  The

9   way that a lot of the issues are settled in terms of

10  ownership of the patents and things like that is

11  through documents.  And they have in fact served 1500

12  document requests on us already.  They're going to get

13  documents beginning either this week or early next week

14  the documents will start coming, so Mr. Shore won't be

15  going into deposition blind.  He will have documents,

16  he'll see the assignments, for example, of rights in

17  the patents to Fujitsu, he'll have time to study them

18  and then he can go into a deposition and ask questions

19  about them.  Or if he feels at that time he has to do

20  it through interrogatories, he can follow the local

21  rules and request additional interrogatories.

22          The system that is set up in the Northern

23  District of California for claim construction is the

24  system that we think really is most appropriate here,

25  which is Local Rule 4-2 in the Northern District of

(content)

1    been through this many times -- the parties usually

2    come to some agreement on what they disagree about.

3    Okay.   There are these 20 terms at the end of this

4    process, maybe there are 20 terms that need to be

5    construed, and that forms the basis for going into the

6    so-called Markman claim construction hearing where the

7    court resolves the claim construction disputes.   It's

8    not through hundreds of interrogatories, that process

9    that Nanya suggested just doesn't make sense, it's very

10   burdensome, and we would suggest that when we get to

11   that point, that the procedures set forth in local

12   rule --

13            THE COURT:   The process that you're suggesting

14   does not exist here, though.

15            MR. MURRAY:   It does not exist here, but Nanya

16   has in fact suggested that the local rules be adopted

17   for this case.   We don't think that the court should or

18   needs to wholesale adopt the local rules, but the

19   parties can come to some agreement, I think, that Local

20   Rule 4-2 -- I don't think Nanya is suggesting that the

21   court adopt everything excepting Local Rule 4-2.   So

22   Nanya is suggesting, and we agree, that Rule 4 is an

23   appropriate way to resolve the claim construction

24   issues.   And once we go through that process, a lot

25   of this will shake out and it won't be necessary to

1    burden the parties with hundreds and hundreds of

2    interrogatories directed to the claim construction.

3            So what Mr. Shore is proposing here is really

4    going to be extremely burdensome, it's really not going

5    to move the case forward, it's going to cost a lot of

6    money, and I think that there's just a much more

7    efficient way to do it.  And there's been no good

8    argument made here today why the local rules should be

9    disregarded, which is what he's asking the court to do.

10   He's asking the court to set aside the local rule with

11   respect to interrogatories and adopt a completely

12   different procedure to just allow them to serve as many

13   interrogatories, you know, up to this 900 limit as they

14   want, without putting them forth in advance, without

15   meeting and conferring us, and it's really just going

16   to be a very burdensome process, Your Honor.

17           THE COURT:  Well, let's assume that they file

18   with you, and tomorrow all the interrogatories that

19   they want to ask the court to approve, what happens

20   then?

21           MR. MURRAY:  Well, I think that that would be

22   a good first step for them, because that would be in

23   accordance with the local rules, and we would sit down

24   and try to negotiate with them and work something out.

25   If the interrogatories are reasonable and we think will

1    move discovery forward in this case, perhaps we would

2    agree to them.  If we think they're not and then --

3        THE COURT:  The interrogatories that they file

4    today, you said you've looked at it briefly; are these

5    reasonable as far as the defendant is concerned?

6        MR. MURRAY:  I think some of them are clearly

7    not reasonable.  But I would, you know, I would request

8    time to study them and discuss them with my client and

9    find out what, what the burden would be on us to

10   respond to them.  I think a lot of these -- a lot of

11   the information they're looking for here can and should

12   be obtained through means less burdensome than

13   interrogatories, like documents.  I think they should

14   wait and get the documents that they've asked for and

15   see whether they still need this information after

16   getting the documents.  They want to know -- well, some

17   of them ask us to identify documents, identify

18   documents concerning --

19       THE COURT:  But the documents won't be

20   received by them until sometime in April, I think.

21   I think the stipulation calls for providing these

22   documents in April.

23       MR. MURRAY:  Well, the parties have agreed

24   and stipulated to sort of staged discovery here, where

25   we're going to focus first on the jurisdictional