1    **RODNEY J. JACOB, ESQ.**
     **DANIEL M. BENJAMIN, ESQ.**
2    **CALVO & CLARK, LLP**
     Attorneys at Law
3    655 South Marine Corps Drive, Suite 202
4    Tamuning, Guam 96913
     Telephone:    (671) 646-9355
5    Facsimile:    (671) 646-9403

6    **CHRISTOPHER E. CHALSEN, ESQ.**
     **MICHAEL M. MURRAY, ESQ.**
7    **LAWRENCE T. KASS, ESQ.**
     **MILBANK, TWEED, HADLEY & MCCLOY LLP**
8    1 Chase Manhattan Plaza
9    New York, New York 10005
     Telephone:    (212) 530-5000
10   Facsimile:    (212) 822-5796

11   *Attorneys for Defendants*
12   FUJITSU LIMITED, and
     FUJITSU MICROELECTRONICS AMERICA, INC.
13

14

15                    IN THE UNITED STATES DISTRICT COURT

16                              DISTRICT OF GUAM

17   NANYA TECHNOLOGY CORP. and              CIVIL CASE NO. 06-CV-00025
     NANYA TECHNOLOGY CORP. U.S.A.,
18

19                        Plaintiff,

20              vs.                          **DEFENDANTS' MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
                                             **SUPPORT OF MOTION TO**
21   FUJITSU LIMITED, FUJITSU                **IMMEDIATELY TRANSFER FOR**
     MICROELECTRONICS AMERICA, INC.,         **CONVENIENCE**
22

23                        Defendants.        **ORAL ARGUMENT REQUESTED**

24

25

26

27

28
     *CIVIL CASE NO. 06-CV-00025*
     *{G0021368.DOC;1}*            ORIGINAL

FILED
DISTRICT COURT OF GUAM
APR 17 2007
MARY L.M. MORAN
CLERK OF COURT

1

# TABLE OF CONTENTS

I.    Introduction..................................................................................................................... 1

II.   Courts May Consider Transfer for Convenience Before Establishing Jurisdiction............. 2

III.  The Convenience Issues Are Straightforward and Strongly Favor Transfer........................ 3

      A.    Applicable Convenience Law ................................................................................. 3

      B.    The Case Should Clearly Be Transferred to the Northern District of California for
            Convenience.......................................................................................................... 5

            1.    Nanya Could Have Brought This Action in the Northern District of
                  California..................................................................................................... 5

            2.    The Northern District of California Is More Convenient for FMA and
                  Nanya USA -- Both California Corporations................................................. 5

            3.    The Northern District of California Is More Convenient for Fujitsu........... 6

            4.    The Northern District of California Is Nearly As Convenient for Nanya.... 6

            5.    The Northern District of California Is More Convenient for Experts, Third
                  Parties and Third Party Witnesses ............................................................... 7

            6.    The "Interests of Justice" Strongly Favor Transfer to the Northern District
                  of California ............................................................................................... 8

            7.    The Balance of Convenience Favors Transfer to the Northern District of
                  California..................................................................................................... 8

IV.   The Jurisdictional Issues Are Difficult and Uncertain....................................................... 9

      A.    Nanya's Broad Jurisdictional Discovery Requests Are Causing Unnecessary
            Expense and Burden.............................................................................................. 9

      B.    Resolving Questions of Personal Jurisdiction Will Be Difficult at Best ............... 10

V.    The Court Should Immediately Transfer for Convenience ................................................ 11

VI.   Conclusion ..................................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

Arley v. United Pac. Ins. Co.,
    379 F.2d 183 (9th Cir. 1967)..............................................................................................4

Copitas v. Fishing Vessel Alexandros,
    No. 98-00013 (D. Guam Oct. 5, 1998), aff'd, 20 Fed. Appx. 744 (9th Cir. 2001) ................. 8

Datasouth Computer Corp. v. Three Dimensional Techs., Inc.,
    719 F. Supp. 446 (W.D.N.C. 1989) ............................................................................... 12

Decker Coal Co. v. Commonwealth Edison Co.,
    805 F.2d 834 (9th Cir. 1986)............................................................................................4

Donnelly v. Klosters Rederi A/S,
    515 F. Supp. 5 (E.D. Pa. 1981) ....................................................................................... 13

Gulf Oil v. Gilbert,
    330 U.S. 501 (1947).........................................................................................................4

Kahhan v. City of Fort Lauderdale,
    566 F. Supp. 736 (E.D. Pa. 1983) ................................................................................... 13

Multistate Legal Studies, Inc. v. Marino,
    1996 WL 786124 (C.D. Cal. 1996)............................................................... 11, 12, 13, 14

Pac. Car & Foundry Co. v. Pence,
    403 F.2d 949 (9th Cir. 1968).....................................................................................4, 5, 8

Patrickson v. Dole Food Co.,
    251 F.3d 795 (9th Cir. 2001)............................................................................................2

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981).........................................................................................................4

Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,
    148 F.3d 1355 (Fed. Cir. 1998)...................................................................................... 10

Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,
    No. 06-102, 549 U.S. _, 127 S.Ct. 1184 (Mar. 5, 2007) ....................................... passim

Storage Tech. Corp. v. Cisco Sys., Inc.,
    329 F.3d 823 (Fed. Cir. 2003)..........................................................................................4

Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry & Assocs., Inc.,
    454 F. Supp 418 (S.D.N.Y. 1978)................................................................................... 13

Triton Container Int'l, Ltd. v. Compania Anomina Venezolana de Navigacion,
    No. 94-00055, 1994 WL 803257 (D. Guam Dec. 12, 1994)................................... 4, 5, 8

Van Dusen v. Barrack,
    376 U.S. 612 (1964) ........................................................................................................ 3

X-Rail Sys., Inc. v. Norfolk & W. Ry. Co.,
    485 F. Supp. 553 (D.N.J. 1980) ..................................................................................... 13

## Statutes

28 U.S.C § 1404(a) .................................................................................................... passim

1    Defendants Fujitsu Limited (Fujitsu) and Fujitsu Microelectronics America, Inc.

2    ("FMA") (collectively "Defendants") hereby move to immediately transfer this case to the

3    Northern District of California for convenience, without prejudice to full consideration of

4    Defendants' respective motions to dismiss or transfer.[1]

5    **I.    INTRODUCTION**

6    The U.S. Supreme Court recently issued a decision establishing new guidelines for

7    courts that are addressing complex jurisdictional and transfer issues. In *Sinochem Int'l Co. v.*

8    *Malaysia Int'l Shipping Corp.*, No. 06-102, 549 U.S. _, 127 S.Ct. 1184 (Mar. 5, 2007), the

9    Supreme Court held that a district court has discretion to immediately consider a motion to

10   transfer for convenience before taking up complicated jurisdictional issues. Consequently, this

11   Court in its discretion may now consider transferring this case to the Northern District of

12   California for convenience before addressing the more complex personal jurisdiction issues raised

13   by Defendants. Should the transfer motion be granted, the jurisdictional issues will be mooted,

14   ongoing expensive jurisdictional discovery, briefing, motion practice and hearings will be

15   avoided, and both the Court and the parties will save substantial resources.

16   Immediate transfer to the Northern District of California under 28 U.S.C. §

17   1404(a) is warranted because that court has jurisdiction over all parties and is a substantially more

18   convenient forum to hear this dispute. All parties have significant contacts with the Northern

19   District of California, and none have significant contacts with Guam. Two of the parties to this

20   action actually reside in the Northern District of California; none reside in Guam. There are

21   substantial documents and witnesses located in the Northern District of California; no documents

22   or witnesses are located in Guam. In short, virtually all of the traditional convenience factors

23   strongly favor a transfer of this case to the Northern District of California.

24   On the other hand, Guam is extremely inconvenient for all parties, and jurisdiction

25   in Guam is hotly contested. Jurisdictional discovery has been and will continue to be burdensome

26   

27   [1] *See* Dkt. Nos. 74 and 89. The request is without prejudice because resolution of jurisdictional issues in favor of Fujitsu and/or FMA would further support transfer. For example, if the Court finds that it lacks jurisdiction over FMA, then that would further support transferring Fujitsu to the Northern District

28   of California for convenience to avoid duplicative parallel litigation.

1    and expensive. For example, Nanya has filed three motions to compel discovery on jurisdictional

2    issues; none of the motions have any merit, but all require substantial resources to address.

3    Following jurisdictional discovery, resolving the jurisdictional issues will still be difficult and

4    uncertain at best. There is no need to get bogged down with jurisdictional issues because transfer

5    for convenience does not involve extensive discovery or difficult questions. Because of the

6    recent *Sinochem* decision, this Court now has the authority to transfer for convenience before

7    considering dismissal for lack of jurisdiction. Defendants thus respectfully request that transfer

8    for convenience be addressed at the earliest opportunity and that this case be transferred.

9    **II.    COURTS MAY CONSIDER TRANSFER FOR CONVENIENCE BEFORE**

10   **ESTABLISHING JURISDICTION**

11            In the past, courts in this Circuit have considered motions to transfer for

12   convenience before addressing jurisdiction, in order to avoid unnecessary, burdensome

13   jurisdictional discovery and difficult issues of personal jurisdiction. *See, e.g., Multistate Legal*

14   *Studies, Inc. v. Marino*, 1996 WL 786124 (C.D. Cal. 1996). However, in 2001, the Ninth Circuit

15   came out against this approach in *Patrickson v. Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001).

16   There, the Ninth Circuit reversed a *forum non conveniens* dismissal because the district court did

17   not first satisfy itself of jurisdiction. *Id.* at 800 n.3 ("As the district court recognized, such claims

18   may raise serious questions of forum non conveniens under federal and state law. Of course, the

19   federal courts may decide that issue only if we have jurisdiction over the case."). Accordingly,

20   consideration of convenience before jurisdiction was contrary to Ninth Circuit precedent when

21   Defendants initially filed their motions to dismiss or transfer.

22            But earlier this month, in *Sinochem*, No. 06-102, 549 U.S. _, 127 S.Ct. 1184, the

23   U.S. Supreme Court effectively overruled *Patrickson* and held that a district court has discretion

24   to immediately consider a defendant's *forum non conveniens* plea, and need not take up first any

25   other threshold objection.   In particular, a court need not resolve whether it has personal

26   jurisdiction over a defendant if it determines that, in any event, a foreign tribunal is the more

27   suitable arbiter of the merits of the case. Indeed, the Supreme Court *encouraged* district courts to

28   take this approach: "where subject-matter or personal jurisdiction is difficult to determine, and

*CIVIL CASE NO. 06-CV-00025*
*{G0021368.DOC;1}*

1   *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes

2   the less burdensome course." *Sinochem*, 549 U.S. at _, 127 S.Ct. at 1194. Accordingly, the

3   Supreme Court cleared the way for this Court to consider transferring to the Northern District of

4   California for convenience before considering whether it has jurisdiction.

5   **III.    THE CONVENIENCE ISSUES ARE STRAIGHTFORWARD AND STRONGLY**
6   **FAVOR TRANSFER**

7           The Court should immediately transfer to the Northern District of California for

8   convenience. The convenience issues are straightforward and do not require discovery. There is

9   no dispute that two out of the four parties in this action reside in the Northern District of

10  California. None of the parties to this litigation reside in, or have any relevant witnesses or

11  documents in Guam. For example, Defendants do not maintain any offices in Guam and have no

12  operations, affiliates, employees, salespersons or other witnesses in Guam. (*See* Michael Moore's

13  Declaration in Support of Fujitsu Microelectronics America Inc.'s Motion to Dismiss or Transfer

14  to the Northern District of California and for a More Definite Statement, December 4, 2006, 06-

15  cv-00025, Dkt. No. 78, ("Moore Decl.") ¶ 4, attached hereto as Exh. A; Shigeru Kitano's

16  Declaration in Support of Fujitsu Limited's Motion to Dismiss or Transfer to the Northern

17  District of California and for a More Definite Statement, December 15, 2006, 06-cv-00025, Dkt.

18  No. 94 ("Kitano Decl.") ¶ 4, attached hereto as Exh. B.) Guam has no relationship whatsoever to

19  the parties, witnesses or issues in this case, and is the most inconvenient forum in the United

20  States to prepare and try this complex patent infringement litigation. It would be far more

21  efficient to try this case in the Northern District of California -- the location of both U.S. parties'

22  headquarters, documents and fact witnesses.

23          **A.    Applicable Convenience Law**

24          Pursuant to 28 U.S.C. § 1404(a), any civil action may be transferred "[f]or the

25  convenience of parties and witnesses, in the interest of justice ... to any other district or division

26  where it might have been brought." The purpose of transfer under this section is to "prevent the

27  waste of time, energy and money and to protect litigants, witnesses and the public against

28  unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)

*CIVIL CASE NO. 06-CV-00025*
{G0021368.DOC;1}                                                                              3

1    (citations omitted).   In furtherance of this purpose, § 1404(a) provides this Court with broad

2    discretion to adjudicate motions to transfer.  *See Arley v. United Pac. Ins. Co.,* 379 F.2d 183, 185,

3    n.1 (9th Cir. 1967).[2]

4             Though § 1404(a) partially replaces the common law doctrine of *forum non*

5    *conveniens*, the private and public factors traditionally used to decide motions to dismiss under

6    that doctrine[3] have also been used by courts to decide a motion under § 1404(a).  *Decker Coal*

7    *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).   The relevant private

8    factors include: availability of process to compel the presence of unwilling witnesses; costs of

9    obtaining the presence of unwilling and willing witnesses; relative ease of access to sources of

10   proof; and all other practical problems indicating the case can be tried more expeditiously and

11   less expensively.  *Triton Container Int'l, Ltd. v. Compania Anomina Venezolana de Navigacion*,

12   No. 94-00055, 1994 WL 803257, at *2-3 (D. Guam Dec. 12, 1994).   The relevant public factors

13   include: the unfairness of imposing jury duty on local community members when no local issues

14   are at stake; the local interest in having localized controversies decided at home; avoidance of

15   unnecessary problems in conflict of laws or in the application of foreign law; and the

16   administrative difficulty of court congestion.  *Id.*

17            In support of its motion to transfer, the moving party bears the burden of making a

18   "'strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'"  *Triton*

19   *Container*, at *2 (quoting *Decker*, 805 F.2d at 843).  However, in judging the proper weight to be

20   given plaintiff's choice, this Court must consider both "the defendant's business contacts with the

21   chosen forum and [] the plaintiff's contacts, including those relating to his cause of action.  If the

22   operative facts have not occurred within the forum of original selection and that forum has no

23   particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to

24   minimal consideration."  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

25

26            [2] In reviewing a district court's ruling on a motion to transfer pursuant to 28 U.S.C § 1404(a), the
     Federal Circuit applies the law of the regional circuit.  *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d
27   823, 836 (Fed. Cir. 2003).

28            [3] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947).

1    Although Guam is geographically closer to Taiwan and Japan, courts have found geographical

2    distance to a forum to be irrelevant unless the plaintiff resides in the forum. *See, e.g., Pac. Car &*

3    *Foundry*, 403 F.2d at 953, 955.

4        **B.    The Case Should Clearly Be Transferred to the Northern District of**
5        **California for Convenience**

6        This case clearly should be transferred to the Northern District of California. All

7    of the convenience factors favor transfer to that district. In addition, because both FMA and co-

8    plaintiff Nanya USA reside there, it is evident that the Northern District of California has a much

9    greater interest in adjudicating this dispute.[4] As noted above, though a party moving to transfer

10   an action must typically make a "strong showing of inconvenience" to warrant upsetting the

11   plaintiff's choice of forum, *Triton Container*, 1994 WL 803257, at *2, in this case, Nanya's

12   choice of forum is entitled to only minimum consideration because no substantial contacts with

13   Guam exist with respect to any of the parties. *See Pac. Car & Foundry*, 403 F.2d at 954-55.

14        **1.    Nanya Could Have Brought This Action in the Northern District of**
         **California**

15

16       There is no dispute that Fujitsu and FMA both have sufficient contacts with the

17   Northern District of California regarding the present suit such that Plaintiffs could have sued

     there. FMA is located in that district and Fujitsu's accused products are sold there.

18

19        **2.    The Northern District of California Is More Convenient for FMA and**
         **Nanya USA -- Both California Corporations**

20       FMA is headquartered in Sunnyvale, California. (Moore Decl. ¶ 2.)

21   Consequently, FMA's fact witnesses and documents relevant to this litigation are located in the

22   Northern District of California. (Moore Decl. ¶ 20; Kitano Decl. ¶ 25.) The Northern District of

23

24       [4] Plaintiffs regularly appear in the U.S. District Court for the Northern District of California.
25   Indeed, a recent search of on-line databases revealed dozens of cases in which Plaintiffs presently or
     recently have been part to litigation in the Northern District, including numerous patent and antitrust
26   litigations. Even in the present case, Plaintiffs have sought to avail themselves of the Northern District of
     California court's resources. For example, in their proposed scheduling order, Plaintiffs suggested
27   adopting the Northern District of California rules of practice in patent cases and also requested that a
     mediation ordered in the Northern District of California action "also serve as a mediation in the Guam
28   Action." (Pls. Mot. for Ct. Ordered Mediation and Mem. of P. & A. at 2).

     *CIVIL CASE NO. 06-CV-00025*
     {G0021368.DOC;1}                                                                                    5

1    California is also where Plaintiff Nanya USA maintains its headquarters. (Amended Guam
2    Complaint, Dkt. No. 24 ¶ 2). Accordingly, virtually all of those parties' witnesses, documents,
3    and other evidence will be found in the Northern District of California.

4          **3.    The Northern District of California Is More Convenient for Fujitsu**

5          The Northern District of California is a much more convenient location for Fujitsu
6    and its employees compared with Guam. Reasons for this include more options for transportation
7    and scheduling. (Kitano Decl. ¶ 26.) In addition, because Fujitsu's subsidiary FMA is located in
8    the Northern District of California, a number of Fujitsu's employees regularly travel there. (*Id.*)
9    FMA also has cost-effective arrangements for accommodations for its out-of-town visitors that
10   can be made available to Fujitsu employees. (*Id.*) Fujitsu also has cost-effective arrangements
11   for transportation of documents to the Northern District of California. (*Id.* ¶ 27.) Finally, FMA
12   can assist Fujitsu with logistics in relation to litigation matters. (*Id.*)

13         **4.    The Northern District of California Is Nearly As Convenient for
14               Nanya**

15         The Northern District of California is nearly as convenient for Nanya as Guam.
16   For Nanya witnesses, only *one* non-stop flight from Taipei, Taiwan to Agana, Guam is offered at
17   most,[5] only on two business days during a typical week, and only at inconvenient times (after
18   midnight). (*See* Exh. C hereto, Declaration of Lawrence T. Kass, March 29, 2007, ("Kass Decl.")
19   ¶¶ 3-4 and Exhs. A-B). Aside from this one inconvenient and sporadically offered flight, the
20   other travel option from Taiwan to Guam is to take a one-stop flight which involves a total travel
21   time of about eight hours. (*Id.*) In contrast, several nonstop flights from Taipei, Taiwan to San
22   Francisco, California are available each day of a typical week and involve a travel time of less
23   than eleven hours. (*Id.*) Moreover, once in the Bay Area, Nanya's witnesses would be less than a
24   45 minute drive to their North American headquarters. By contrast, Nanya's witnesses would
25   appear to have no business reason to otherwise travel to Guam.

26

27
        _____
28         [5] Some months this flight is only offered on one business day and Sunday, instead of two business
     days, Saturday, and Sunday.

     *CIVIL CASE NO. 06-CV-00025*
     *{G0021368.DOC;1}*                                                                          6

1       In addition, Nanya has acknowledged that all of its documents are already in

2    Texas, which is closer and more convenient to ship to California than to Guam. *See* [Nanya's]

3    Initial Disclosures Pursuant to Rule 26(a), N.D. Cal. 06-cv-06613, at 4-5 (Kass Decl. Exh. C).

4    No Nanya documents have been identified as being in Guam, and no Nanya witnesses have been

5    identified as being in Guam. *Id.*

6          **5.  The Northern District of California Is More Convenient for Experts,**
7             **Third Parties and Third Party Witnesses**

8       The Northern District of California would be much more convenient for experts,

9    third parties and third party witnesses. If the litigation moves forward in Guam, all of the expert

10   witnesses would have to come from off-island for extended periods. This case involves complex

11   semiconductor technology and the experts will likely be professors and/or industry experts in this

12   field. The West Coast of the U.S. has a large number of suitable experts whereas none are

13   believed to be on Guam.

14      In addition, third parties and third party witnesses critical to the antitrust issues

15   would have to come to Guam at great inconvenience that may even preclude their live testimony.

16   The antitrust allegations involve an alleged "collusive pool" of "[m]anufacturers and distributors

17   of DDR SDRAM." (Amended Guam Complaint, ¶ 45.) Thus, antitrust evidence will depend

18   heavily on third parties in this alleged "collusive pool." Although Plaintiffs did not name these

19   third parties in the First Amended Complaint, the West Coast of the U.S. is the home to a large

20   number of the world's semiconductor companies. Even foreign semiconductor companies (like

21   Nanya and Fujitsu) tend to have subsidiaries or offices in California. Thus, California is a critical

22   location for these third parties. None of these companies are on Guam. This critical factor

23   strongly favors California as the more convenient location.

24      The Northern District of California is also much more convenient for various other

25   witnesses and for the production of documents both identified as located in Washington D.C. and

26   elsewhere in the continental United States. *See, e.g.,* Fed. R. Civ. P. 26(a)(1) Initial Disclosure,

27   N.D. Cal. 06-cv-06613, at 2-3, 7-8 (Kass Decl. Exh. D).

28

*CIVIL CASE NO. 06-CV-00025*
{G0021368.DOC;1}                                               7

1

**6.    The "Interests of Justice" Strongly Favor Transfer to the Northern District of California**

The "interests of justice" under 28 U.S.C. § 1404(a) also favor transfer. There is no dispute that the Northern District of California court has jurisdiction over all parties, while jurisdiction in Guam is uncertain. There also can be no disputing California's interest in a litigation involving two California corporations. On the other hand, it does not serve the interests of justice to burden the courts or the citizens of Guam with participating in a complex litigation and a long jury trial over an issue that has no connection to Guam. *Triton Container*, 1994 WL 803257, at *3; *see also Copitas v. Fishing Vessel Alexandros*, No. 98-00013, at *4 (D. Guam Oct. 5, 1998) (attached hereto as Exh. D), *aff'd*, 20 Fed. Appx. 744 (9th Cir. 2001) (unpublished).

**7.    The Balance of Convenience Favors Transfer to the Northern District of California**

The balance of convenience clearly favors transferring this action to the Northern District of California. None of the relevant documents and/or witnesses are located in Guam because none of the actions giving rise to Nanya's claims have any relation to Guam and neither Nanya nor FMA resides in Guam. (Amended Complaint ¶¶ 1, 2, 3, 4.) Relevant documents would have to be shipped to Guam and witnesses would have to travel from such places as California and Washington D.C. to give testimony. *See Pac. Car*, 403 F.2d at 953.

There is not a single factor favoring convenience in Guam, and overwhelming factors supporting convenience in the Northern District of California. To echo this Court's own words, "[i]t is doubtful that Plaintiffs could have selected a United States forum that was more distant than Guam is from the principal places of business of the respective parties." *Triton Container*, 1994 WL 803257, at *3.

Accordingly, the convenience issues are very straightforward, and can be resolved in favor of transfer without delay.

*CIVIL CASE NO. 06-CV-00025*
{G0021368.DOC;1}                                                                                      8

## IV.    THE JURISDICTIONAL ISSUES ARE DIFFICULT AND UNCERTAIN

### A.    Nanya's Broad Jurisdictional Discovery Requests Are Causing Unnecessary Expense and Burden

Nanya filed suit in Guam without sufficient basis to sustain jurisdiction, and since then has unduly multiplied the expense and burden of this litigation with jurisdictional discovery. Nanya issued a first set of jurisdictional document requests on December 14, 2006 which was essentially a fishing expedition. Nanya followed up on February 9, 2007 by issuing another set of even broader jurisdictional document requests.[6]  Thereafter, Nanya issued 77 interrogatories to Fujitsu Limited, and 77 interrogatories to FMA. That is more than *three times* the number of interrogatories normally allotted for an *entire case*. Nanya also issued 27 requests for admission to Fujitsu Limited and 27 requests for admission to FMA, again exceeding the number normally allotted for an entire case.

Furthermore, although Defendants have produced about 60,000 pages of information and have provided FMA's general counsel for a deposition last week, Nanya remains unsatisfied and has recently made additional unreasonable discovery demands. (*See* letter from Pascual to Murray of April 13, 2007 ("Nanya Letter", Exh. E hereto).)  For example, item number 2 in the Nanya Letter seeks the production of "all documents identifying the entities involved in the design, supply, manufacture, sales, solicitation, or purchase of the Accused Devices." This request covers, *inter alia*, every piece of paper and electronic record in the company that includes the name of any customer of any of the accused devices, which would potentially amount to hundreds of thousands of documents. After being explicitly told that this request was clearly burdensome (*see* email from Murray to Pascual dated April 15, 2007, Exh. F hereto), Nanya responded by filing yet another motion to compel production of this information on April 16, 2007.

In addition to these clearly unreasonable document demands, the Nanya Letter further requests a 30(b)(6) deposition with categories so broad as to potentially require the

---

[6] The parties agreed to the Scheduling Order providing for jurisdictional discovery on February 16, 2007, before the Supreme Court's *Sinochem* decision on March 5, 2007.

*CIVIL CASE NO. 06-CV-00025*
{G0021368.DOC;1}                                                                                      9

1  deposition of as many as half a dozen different corporate witnesses. (*See* Nanya Letter at 2.)
2  Thus, the jurisdictional discovery sought by Nanya will potentially exceed the total amount of
3  discovery typically undertaken for an entire case.

4          **B.    Resolving Questions of Personal Jurisdiction Will Be Difficult at Best**

5                  In filing suit, Nanya apparently did not have any evidence at all of personal
6  jurisdiction. Consequently, Nanya has had to resort not only to the broad discovery requests on
7  Defendants discussed above, but has also served third-party subpoenas on no less than seven
8  manufacturing companies and seven Guam retailers, in an attempt to establish some basis for a
9  "stream of commerce" theory of specific jurisdiction (*i.e.*, jurisdiction based on "the regular and
10 anticipated flow of products from manufacturer to distribution to retail sale"). Defendants do not
11 appear to have uncovered documents that would support such a theory and most of the
12 subpoenaed third parties who have responded have indicated that they have no responsive
13 documents. However, even if some "stream of commerce" documents are located, they are not
14 likely to easily settle the jurisdictional debate.

15                 "'Random,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum
16 contacts calculus." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359
17 (Fed. Cir. 1998). Thus, even assuming some of Defendants' products found their way to Guam,
18 such "contact" between Defendants and Guam is likely to be so attenuated as to not serve as a
19 proper basis for jurisdiction. *Id.* Further, Nanya will still have to make a *prima facie* showing
20 that these products infringe such that its claims can be said to arise out of any alleged contacts
21 with Guam. Evaluation of such contacts and infringement accusations will be so uncertain as to
22 make deciding the jurisdictional issues very difficult. While Nanya undoubtedly will argue that it
23 is developing a strong jurisdictional case, Fujitsu will undoubtedly argue the opposite.
24 Regardless of the outcome, the complexity and uncertainty in resolving the issue strongly favors
25 immediate transfer.

26                 In addition to stream of commerce, Nanya is expected to argue that jurisdiction is
27 proper under the antitrust laws. But Nanya did not serve its original Guam complaint under
28 Section 12 of the Clayton Act and therefore it cannot now use it as a basis for jurisdiction over

*CIVIL CASE NO. 06-CV-00025*
*{G0021368.DOC;1}*                                                                                      10

1    Defendants.    Moreover, Nanya has not alleged any facts whatsoever to support antitrust

2    jurisdiction over FMA. Nanya's antitrust allegations relate solely to Fujitsu. Specifically, the

3    allegations relate to Fujitsu's alleged assertion of Fujitsu patents, Fujitsu's alleged improper

4    settlement tactics, and Fujitsu's alleged price discrimination and "collusion" with third parties in

5    setting royalty rates. Nanya cannot make any of these allegations against FMA, and therefore it

6    cannot sustain jurisdiction over FMA under Section 12 of the Clayton Act. Consequently, Nanya

7    will have to rely solely on a complex stream of commerce theory for jurisdiction over FMA,

8    where intensely factual issues of whether certain alleged contacts are "random," "fortuitous," or

9    "attenuated" again are sure to be hotly disputed.

10                   Accordingly, the questions of personal jurisdiction will be difficult and uncertain

11   at best.

12   **V.    THE COURT SHOULD IMMEDIATELY TRANSFER FOR CONVENIENCE**

13                   Efficiency, conservation of judicial resources, and avoidance of delay all strongly

14   favor immediate transfer under § 1404(a) for convenience without addressing the jurisdictional

15   and venue issues. Briefing on the § 1404(a) transfer issue can be easily finalized and the issue

16   can be decided at the Court's earliest convenience without any need for discovery. In fact, in the

17   California case, Plaintiffs filed a motion to transfer on § 1404(a) grounds and thus have already

18   prepared a brief on the convenience issues. Plaintiffs could therefore easily brief this limited

19   issue for the Court.

20                   If the Court grants Defendants' § 1404(a) motion and transfers the case to

21   California, the jurisdictional issues will be moot, and significant efficiencies will be gained. The

22   court in *Multistate Legal Studies, Inc. v. Marino*, 1996 WL 786124 (C.D. Cal. 1996) gained such

23   efficiencies in exactly this way. There, the court found that immediate transfer to another district

24   for convenience would serve the interests of justice because it would avoid difficult jurisdictional

25   issues and would render jurisdictional discovery moot. *Id.* at *8.

26                   The facts and reasoning of *Multistate* are instructive. The Central District of

27   California was presented with defendants' motion to dismiss for lack of personal jurisdiction and

28   improper venue or, in the alternative, to transfer the action to another district pursuant to 28

*CIVIL CASE NO. 06-CV-00025*
{G0021368.DOC;1}                                                                                    11

1  U.S.C. § 1404(a) . *Multistate*, 1996 WL 786124, at *1. In response to the defendants' motion,

2  the plaintiff made a *prima facie* showing that it could assert personal jurisdiction over one

3  defendant -- "BLP." However, it was unclear "at first blush" whether the court could assert

4  jurisdiction over two other defendants -- "Marino or Grufferman." *Id*. at *8. The plaintiff

5  therefore sought discovery to prove its allegation that the court assert personal jurisdiction over

6  both. *Id*.

7          While acknowledging that it would have normally granted the plaintiff's discovery

8  request, the *Multistate* court found that it would best "serve the interests of justice within the

9  meaning of § 1404(a) " to immediately grant defendants' § 1404(a) motion to transfer:

10             If this Court were to retain jurisdiction over this case, the Court
               would have granted Plaintiff's request. It is in this Court's
11             discretion to permit discovery to aid in the determination of ...
               personal jurisdiction. However, because this Court is transferring
12             this case to the Southern District of New York, **Plaintiff's request**
               **to conduct discovery on this issue is moot**.
13

14  *Id*. at *8 (citations omitted; emphasis added). The court reasoned that courts "have repeatedly

15  held that a change of venue from a forum where there is a difficult question of personal

16  jurisdiction or venue to a district where there are not such uncertainties serves the interests of

17  justice." *Id*. at *11. The court noted that addressing jurisdictional issues would involve further

18  discovery, further briefing and potentially an evidentiary hearing, requiring the parties and the

19  court to expend substantial efforts. *Id*. The court further found that "these efforts will consume

20  time, energy and resources of all involved whether the Court ultimately retains jurisdiction or

21  concludes that it cannot assert jurisdiction over some or all of the defendants, compelling a

22  transfer or dismissal." *Id*. Accordingly, the court ordered immediate transfer in the interests of

23  justice.

24          As the court in *Multistate* noted, other district courts have repeatedly taken the

25  same approach. For example, in *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*,

26  719 F. Supp. 446, 453 (W.D.N.C. 1989), the court ordered transfer based in part on its finding

27  that it would "require a substantial expenditure of additional resources" to resolve a "serious

28  question" of personal jurisdiction, whereas transfer to a district "where [defendant] is

*CIVIL CASE NO. 06-CV-00025*
*{G0021368.DOC;1}*                                                                                  12

1   incorporated and is certainly subject to the *in personam* jurisdiction" would "moot the issue of

2   personal jurisdiction" and "save judicial resources by making it unnecessary to decide the

3   problematic jurisdictional issue."

4          Likewise, the court in *Kahhan v. City of Fort Lauderdale*, 566 F. Supp. 736, 740

5   (E.D. Pa. 1983), found the public interest in conserving judicial resources supported transfer.

6                  Whether sufficient contacts exist to create *in personam* jurisdiction
7                  ... is in doubt.   Neither of these questions would exist in [the
                   transferee court]:   *in personam* jurisdiction over a resident
8                  corporation would be clear.... "Substantial time, money and effort
                   will be required to determine these preliminary jurisdictional issues
9                  which are rendered unnecessary if the action is transferred to [a
                   district] which has in personam jurisdiction over the defendant and
10                 is a forum where the action might have been brought. A transfer,
                   obviating a jurisdictional difficulty, has been found to serve the
11                 interests of justice within the meaning of that language in
12                 §1404(a)."

13  *Id.*; *see also Donnelly v. Klosters Rederi A/S*, 515 F. Supp. 5, 7 (E.D. Pa. 1981) (same); *Terukuni*

14  *Kaiun Kaisha, Ltd. v. C.R. Rittenberry & Assocs., Inc.*, 454 F. Supp 418, 422-23 (S.D.N.Y. 1978)

15  (same); *X-Rail Sys., Inc. v. Norfolk & W. Ry. Co.*, 485 F. Supp. 553, 555 (D.N.J. 1980)

16  (Jurisdictional "deposition and document discovery began [], but .... the proper remedy is to

17  transfer the case.... Transfer will ... strike a constructive blow in support of the need to eliminate

18  avoidable discovery, and aid in the inexpensive determination of the action... since it will render

19  moot the dispute over minimum contacts..." (citations omitted)).

20         And as noted above, the Supreme Court itself has now expressly encouraged

21  district courts to take the less burdensome course, *i.e.*, immediately address convenience when

22  considerations weigh heavily in favor of dismissal or transfer while jurisdictional issues are

23  difficult to determine. *Sinochem,* 549 U.S. at _, 127 S.Ct. at 1194.

24         As in *Multistate*, this Court can best "serve[] the interests of justice within the

25  meaning of § 1404(a) " by first deciding the § 1404(a)  issue, thereby possibly avoiding

26  unnecessary burden on itself and the parties of jurisdictional issues.  *Id*. at *11. As noted above,

27  doing so will require no discovery and briefing can be completed within the month.  There would

28  be no significant delay. Plaintiffs themselves argue that efficiency, conserving judicial resources,

1   and proceeding without delay should weigh heavily in determining how to proceed. (*See*
2   Plaintiffs' Motion to Clarify Magistrate Judge's Order and Motion to Compel Substantive
3   Responses to Plaintiffs' Discovery Requests, at 4.)

4           If the Court transfers the case from Guam "where there is a difficult question of
5   personal jurisdiction or venue to [California] where there are not such uncertainties," the
6   jurisdiction and venue issues will be rendered moot, thereby eliminating all unnecessary
7   jurisdiction issues. *Multistate,* at *11.

8   **VI.    CONCLUSION**

9           Significant resources of the parties and the Court may be saved by addressing the
10  convenience issues now. The factors favoring transfer to the Northern District of California,
11  where two parties reside, are substantial. Accordingly, Defendants respectfully request that the
12  Court immediately transfer this case to the Northern District of California.

13          Respectfully submitted this 17th day of April, 2007.

14                                  **CALVO & CLARK, LLP**
15                                  **MILBANK, TWEED, HADLEY**
                                         **& MCCLOY LLP**
16                                  *Attorneys for Defendants*
                                    Fujitsu Limited and
17                                  Fujitsu Microelectronics America, Inc.

18
19
                            By: _____
20                                  DANIEL M. BENJAMIN
21
22
23
24
25
26
27
28

*CIVIL CASE NO. 06-CV-00025*
{G0021368.DOC;1}                                                                            14

# EXHIBIT A



**DISTRICT COURT OF GUAM**

DEC - 5 2006

**MARY L.M. MORAN
CLERK OF COURT**

## UNITED STATES DISTRICT COURT
### DISTRICT OF GUAM

NANYA TECHNOLOGY CORP., and
NANYA TECHNOLOGY CORP.
U.S.A.

        Plaintiffs,

        v.

FUJITSU LIMITED, FUJITSU
MICROELECTRONICS AMERICA,
INC.,

        Defendants.

CIVIL CASE NO. 06-CV-00025

**MICHAEL M. MOORE DECLARATION
IN SUPPORT OF FUJITSU
MICROELECTRONICS AMERICA,
INC.'S MOTION TO DISMISS OR
TRANSFER TO THE NORTHERN
DISTRICT OF CALIFORNIA AND FOR A
MORE DEFINITE STATEMENT**

Michael M. Moore, deposes and says

    1.    I am Vice President and General Counsel of Fujitsu Microelectronics America, Inc. ("FMA"). I make this declaration in support of the motion by FMA to dismiss the complaint for lack of personal jurisdiction and improper venue or alternatively to transfer the case to the Northern District of California and for a more definite statement. The following statements are based on my personal knowledge, my review of documents prepared and maintained by FMA in the ordinary course of business, and upon information provided by FMA's employees responsible for and with knowledge of the business records of FMA.

    2.    FMA is a corporation organized and existing under the laws of California, and maintains its principal place of business at 1250 E. Arques Avenue, M/S 333, Sunnyvale, California 94085-5401.

    3.    FMA is engaged in the business of sales and design of products for networking, wireless, automotive, industrial, consumer, and security applications.

# ORIGINAL

4.    FMA does not maintain any offices in Guam, and has no operations, affiliates, employees or salespersons in Guam.

5.    Guam is not part of FMA's sales territory.

6.    FMA owns no real or personal property in Guam.

7.    FMA has no bank accounts in Guam.

8.    FMA leases no office space or other facility of any kind in Guam and does not maintain a telephone, telex or telefax number in Guam.

9.    FMA maintains no Guam post office box or street address.

10.    FMA is not registered to do business in Guam.

11.    FMA does not file tax returns in Guam.

12.    FMA does not advertise its products or services in any local media in Guam.

13.    FMA has no directors, officers or employees in Guam and has appointed no agents in Guam for service of process.

14.    FMA does not sell DRAMs anywhere. Our SAP records further indicate that FMA's last sale of a DRAM product occurred on October 12, 2001.

15.    Based on a data run through FMA's SAP record system, FMA has a total of 4,647 customer records. None of them has a Guam address.

16.    FMA has never been party to a lawsuit or legal proceeding in Guam (according to a search of Public Access to Court Electronic Records (PACER), which dates back to January 1, 1997).

17.    FMA has filed no papers with any agency of Guam, has never negotiated or executed any agreements in Guam, nor executed any agreements that call for their performance in Guam.

2

18.    Prior to the filing of Nanya's complaint, FMA has had no correspondence with Nanya of any kind in Guam nor in any way related to any proposed business in Guam.

19.    FMA has no documents relevant to this lawsuit in Guam and knows of no fact witnesses in Guam.

20.    All of FMA's documents and fact witnesses are located in the Northern District of California because that is where FMA maintains its headquarters.

21.    In its Amended Complaint, Nanya alleges that "FMA manufactures a broad range of microelectronics with the knowledge that they would be used in a significant number of consumer products sold in the United States and the Territory of Guam." (First Amended Complaint at ¶ 21.) However, FMA does not manufacture microelectronics of any kind. Further, to the best of my knowledge, no FMA customer has ever told us that it planned to market its products in Guam.

22.    In its Amended Complaint, Nanya refers to meetings that took place in Taiwan and infringement proceedings initiated by Defendants against Nanya in Tokyo District Court. (*See* First Amended Complaint at ¶¶ 27 and 31.) FMA was not a party to these negotiations and is not involved at all in the Tokyo action.

23.    FMA has no ownership interest in or control over any patent currently at issue in this case.

24.    Prior to receiving Nanya's Amended Complaint FMA had no notice of Nanya's claims involving U.S. Patent No. 6,104,486, and had no notice that Nanya

3

Technology Corp. USA would be joined in this action.


    I, Michael M. Moore, declare under penalty of perjury that the foregoing is

true and correct to the best of my knowledge and belief.

Executed on December 4, 2006

By: _____

Michael M. Moore


NY2:#4718800


**4**



Friday, April 06, 2007                                Service Date(s):   8/16/1999   thru

Please cut along dashed line below and return top portion with payment

| Patient Name: | Account Number: |
|---|---|
| CAMACHO ,LUIS C | 27114652 |

| REV CD | SVC DTE | PST DTE | SVC CODE | SERVICE DESCRIPTION | HCPC | QTY | AMOUNT |
|---|---|---|---|---|---|---|---|
| 333 | 8/16/1999 | 8/17/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/17/1999 | 8/18/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/18/1999 | 8/19/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/19/1999 | 8/20/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 270 | 8/20/1999 | 8/26/1999 | 70003635 | IR DISTILLED H20 L | A4849 | 1 | $21.00 |
| 333 | 8/20/1999 | 8/23/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/20/1999 | 8/23/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/20/1999 | 8/23/1999 | 28001509 | PORT FILM | 77417 | 1 | $78.00 |
| 333 | 8/20/1999 | 8/23/1999 | 28501609 | CONT PHYSICS QA SUPPORT | 77336 | 1 | $437.00 |
| 250 | 8/23/1999 | 8/23/1999 | 30022912 | SUCRALPATE 1GM/10ML SUSP B* | | 450 | $65.90 |
| 333 | 8/23/1999 | 8/24/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/23/1999 | 8/24/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/24/1999 | 8/25/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/24/1999 | 8/25/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/24/1999 | 8/25/1999 | 28001509 | PORT FILM | 77417 | 1 | $78.00 |
| 333 | 8/24/1999 | 8/25/1999 | 28501609 | CONT PHYSICS QA SUPPORT | 77336 | 1 | $437.00 |
| 333 | 8/25/1999 | 8/26/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/25/1999 | 8/26/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/26/1999 | 8/27/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/26/1999 | 8/27/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/27/1999 | 8/30/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/27/1999 | 8/30/1999 | 28001509 | PORT FILM | 77417 | 1 | $78.00 |
| 333 | 8/27/1999 | 8/30/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/27/1999 | 8/30/1999 | 28501609 | CONT PHYSICS QA SUPPORT | 77336 | 1 | $437.00 |
| 300 | 8/30/1999 | 8/31/1999 | 28001731 | HGB & HCT | 85027 | 1 | $20.00 |
| 333 | 8/30/1999 | 8/31/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 8/30/1999 | 8/31/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 9/2/1999 | 9/3/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 9/2/1999 | 9/3/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |

**Patient Name:**

# CAMACHO ,LUIS C

**Account Number:**

# 27114652

| REV CD | SVC DTE | PST DTE | SVC CODE | SERVICE DESCRIPTION | HCPC | QTY | AMOUNT |
|---|---|---|---|---|---|---|---|
| 333 | 9/3/1999 | 9/7/1999 | 28001509 | PORT FILM | 77417 | 1 | $78.00 |
| 333 | 9/3/1999 | 9/7/1999 | 28501509 | CONT PHYSICS QA SUPPORT | 77536 | 1 | $437.00 |
| 333 | 9/3/1999 | 9/7/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| 333 | 9/3/1999 | 9/7/1999 | 28001401 | RAD THER - CMPLX  6-10 | 77413 | 1 | $450.00 |
| | 1/7/2000 | 1/7/2000 | 90006690 | GMHP PAYMENT | | -1 | ($6,780.20) |
| | 1/7/2000 | 1/7/2000 | 93001494 | GUAM MEM HEALTH PLAN DISC | | -1 | ($2,905.80) |
| | 3/5/2001 | 3/5/2001 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | -1 | ($2,315.00) |
| | 3/5/2001 | 3/5/2001 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | 1 | $2,315.00 |
| | 10/10/2003 | 10/10/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | 1 | $2,380.90 |
| | 10/10/2003 | 10/10/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | -1 | ($2,380.90) |
| | 11/25/2003 | 11/25/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | -1 | ($2,380.90) |
| | 11/25/2003 | 11/25/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | 1 | $2,380.90 |
| | 11/25/2003 | 11/25/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | -1 | ($2,380.90) |
| | 11/25/2003 | 11/25/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | 1 | $2,380.90 |
| | 11/25/2003 | 11/25/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | -1 | ($2,380.90) |
| | 11/25/2003 | 11/25/2003 | 91900009 | ADJ-PAYOR TO PAYOR (MANUAL) | | 1 | $2,380.90 |
| | | | | | | | $2,380.90 |

# EXHIBIT B

**FILED**

DISTRICT COURT OF GUAM

DEC 18 2006

MARY L.M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

NANYA TECHNOLOGY CORP., and
NANYA TECHNOLOGY CORP.
U.S.A.

        Plaintiffs,

        v.

FUJITSU LIMITED, FUJITSU
MICROELECTRONICS AMERICA,
INC.,

        Defendants.

CIVIL CASE NO. 06-CV-00025

SHIGERU KITANO'S DECLARATION IN
SUPPORT OF FUJITSU LIMITED'S
MOTION TO DISMISS OR TRANSFER
TO THE NORTHERN DISTRICT OF
CALIFORNIA AND FOR A MORE
DEFINITE STATEMENT

I, Shigeru Kitano, declare as follows:

    1.    I am a Deputy General Manager in the Industry Relations Division of the Law and Intellectual Property Unit of Fujitsu Limited ("Fujitsu Ltd."). I make this declaration in support of the motion by Fujitsu Ltd. to dismiss the complaint for lack of personal jurisdiction and improper venue or alternatively to transfer to the case to the Northern District of California. The following statements related to Fujitsu Ltd. are based on my personal knowledge, my review of documents prepared and maintained by Fujitsu Ltd. in the ordinary course of business, and upon information provided by Fujitsu Ltd.'s employees responsible for and with knowledge of the business records of Fujitsu Ltd. Statements made herein related to entities other than Fujitsu Ltd. are based on information and belief after reasonable inquiry.

    2.    Fujitsu Ltd. is a company organized and existing under the laws of Japan, and maintains its principal place of business at Shiodome City Center, 1-5-2, Higashi-Shimbashi, Minato-ku Tokyo, 105-7123, Japan.

**RECEIVED**

DEC 18 2006

UNPINGCO & ASSOCIATES, LLC



3.     Fujitsu Ltd. is engaged in the business of research, design, manufacture, and provision of information technology and communications products and services.

4.     Fujitsu Ltd. does not maintain any offices in Guam, and has no operations, affiliates, employees or salespersons in Guam.

5.     Fujitsu Ltd. owns no real or personal property in Guam.

6.     Fujitsu Ltd. has no bank accounts in Guam.

7.     Fujitsu Ltd. does not lease any office space or other facility of any kind in Guam and does not maintain a telephone, telex or telefax number in Guam.

8.     Fujitsu Ltd. does not maintain a Guam post office box or street address.

9.     Fujitsu Ltd. is not registered to do business in Guam.

10.    Fujitsu Ltd. does not file tax returns in Guam.

11.    Fujitsu Ltd. does not advertise any products or services in any local media in Guam.

12.    Fujitsu Ltd. has no directors, officers or employees in Guam and has not appointed agents in Guam for service of process.

13.    Fujitsu Ltd. has never been party to a lawsuit or legal proceeding in Guam (according to a search of Public Access to Court Electronic Records (PACER), which dates back to January 1, 1997).

14.    Fujitsu Ltd. has not filed papers with any agency of Guam relating to the subject matter of this suit.

15.    Fujitsu Ltd. has neither negotiated nor executed any agreements, nor had any correspondence with Nanya of any kind, in Guam relating to the subject matter of this suit.

2

16. Fujitsu Ltd. does not sell or distribute any products in Guam, including to the U.S. Armed Forces Exchanges in Guam.

17. In its First Amended Complaint, Nanya makes certain allegations concerning Fujitsu Computer Products of America, Inc., Fujitsu General New Zealand Limited and Fujitsu Ten. On information and belief, after reasonable inquiry, none of these companies have any of the contacts with Guam addressed above in paragraphs 4-16.

18. Fujitsu Ltd., Fujitsu Microelectronics America, Inc., Fujitsu Computer Products of America, Inc., Fujitsu General New Zealand Limited and Fujitsu Ten are independently operated and Fujitsu Ltd. does not exercise control over the daily business operations of these other entities.

19. Fujitsu Ltd. does not formulate the general business policies and strategies of Fujitsu Microelectronics America, Inc., Fujitsu Computer Products of America, Inc., Fujitsu General New Zealand Limited and Fujitsu Ten.

20. Fujitsu Ltd., Fujitsu Microelectronics America, Inc., Fujitsu Computer Products of America, Inc., Fujitsu General New Zealand Limited and Fujitsu Ten observe all corporate formalities and document any financial transactions between Fujitsu Ltd. and these other entities.

21. Fujitsu General New Zealand Limited is at least partially owned by Fujitsu General Japan, in which Fujitsu Ltd. has a 46% stock share, and which is not a Fujitsu Ltd. subsidiary.

22. In its First Amended Complaint, Nanya asserts three patents against Fujitsu Ltd. and states that all three patents relate to semiconductors. (First Amended Complaint for Antitrust Law Violations, Patent Infringement, And for Declaratory Relief at ¶¶ 58, 66 and

3

74.) Neither Fujitsu Computer Products of America, Inc., Fujitsu General New Zealand Limited or Fujitsu Ten manufacture or sell Fujitsu Ltd.'s semiconductor devices.

23.    In its First Amended Complaint, Nanya refers to meetings that took place in Taiwan and infringement proceedings initiated by Defendants against Nanya in Tokyo District Court. Neither the Taiwanese meetings nor the Japanese proceedings have any connection with Guam.

24.    Fujitsu Ltd. has no documents relevant to this law suit in Guam and knows of no fact witnesses in Guam.

25.    Fujitsu Ltd.'s co-defendant Fujitsu Microelectronics America, Inc. (FMA) is located in Sunnyvale, California. Consequently, FMA's fact witnesses and documents relevant to this litigation are located in Northern District of California.

26.    The Northern District of California is a much more convenient location for Fujitsu Ltd. and its employees compared with Guam. Reasons for this include more options for transportation and scheduling. In addition, because Fujitsu Ltd.'s subsidiary FMA is located in the Northern District of California, a number of Fujitsu Ltd.'s employees regularly travel there. FMA also has cost-effective arrangements for accommodations for its out-of-town visitors that can be made available to Fujitsu Ltd. employees.

27.    The Northern District of California is also a much more convenient location for Fujitsu Ltd. with respect to documents. Because FMA is located there, Fujitsu Ltd. has cost-effective arrangements for transportation of documents to the Northern District of California. In addition, documents can be transmitted electronically to FMA where they can be efficiently and cost-effectively printed by FMA. Finally, FMA can assist Fujitsu Ltd. with logistics in relation to litigation matters.

4

28.    On November 10, 2006 (Japan time), I received an email sent from Nanya's counsel on November 9, 2006 (US time) attaching Nanya's Original Complaint without exhibits. On November 13, 2006, I received a package from Nanya's counsel delivered via Federal Express containing Nanya's Original Complaint with exhibits. Neither the email nor the Federal Express package included a copy of the Summons. To my knowledge, Fujitsu has received no other emails or packages from Nanya or its counsel regarding the Original Complaint.

29.    On December 1, 2006 (Japan time), I received an email sent from Nanya's counsel on November 30, 2006 (US time) attaching Nanya's Amended Complaint without exhibits. On December 4, 2006, I received a package from Nanya's counsel delivered via Federal Express containing Nanya's Amended Complaint with exhibits. Neither the email nor the Federal Express package included a copy of the Summons. To my knowledge, Fujitsu has received no other emails or packages from Nanya or its counsel regarding the Amended Complaint.

I, Shigeru Kitano, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed on  December  15, 2006

By: _____
Shigeru Kitano

5