# EXHIBIT B

1   Martin C. Fliesler (SBN 073768) mcf@fdml.com
    Rex Hwang (SBN 221079) rhwang@fdml.com
2   Justas Geringson (SBN 240182) jgeringson@fdml.com
    FLIESLER MEYER LLP
3   Four Embarcadero Center, Fourth Floor
4   San Francisco, CA 94111
    Telephone:    (415) 362-3800
5   Facsimile:    (415) 362-2928

6   Michael W. Shore (*Pro Hac Vice to be filed*) mshore@shorechan.com
7   Alfonso Chan (*Pro Hac Vice to be filed*) achan@shorechan.com
    Martin Pascual (*Pro Hac Vice to be filed*) mpascual@shorechan.com
8   SHORE CHAN BRAGALONE, LLP
9   325 N. St. Paul St. Suite 4350
    Dallas, TX 75201
10  Telephone:    (214) 593-6110
    Facsimile:    (214) 593-6111
11

12  Attorneys for Defendants
    Nanya Technology Corp. and
13  Nanya Technology Corp. U.S.A.

14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18
    FUJITSU LIMITED and FUJITSU          )        Action No. C06-06613 EDL
19  MICROELECTRONICS AMERICA, INC.        )
                                          )        **NOTICE OF MOTION; MOTION**
20           Plaintiffs,                  )        **AND MEMORANDUM IN**
                                          )        **SUPPORT OF DEFENDANTS'**
21       vs.                              )        **MOTION TO DISMISS, TRANSFER**
                                          )        **OR STAY CASE**
22  NANYA TECHNOLOGY CORP. and NANYA      )
23  TECHNOLOGY CORP. U.S.A.               )        Date:     January 30, 2007
                                          )        Time:     9:00 A.M.
24  Defendants.                           )        Location: Courtroom E, 15th Floor
                                          )
25  _____ )

26

27

28
                                                                                    1
FLIESLER    Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss,
MEYER LLP   **Transfer or Stay Case**
            Action No. C06-06613 EDL

1    **NOTICE OF MOTION AND MOTION**

2    Please take notice that pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) and

3    Civil L.R. 7-2, Defendants Nanya Technology Corp. ("NTC") and Nanya Technology Corp. U.S.A.

4    ("NTC USA") move the Court for an order dismissing Plaintiffs' complaint, transferring this case to the

5    United States District Court for the District of Guam, or staying this case because there is a first-filed

6    action in the United States District Court for the District of Guam with identical parties and issues.

7    This motion will be and is based on the accompanying memorandum of points and authorities,

8    the Declaration of Alfonso Garcia Chan, the Declaration of Ken Hurley, the request for judicial notice,

9    the papers and pleadings already on file in this Court, and any other evidence or argument that may be

10   presented through the hearing of the motion.

11   **INTRODUCTION**

12   This lawsuit represents a blatant attempt at forum shopping by Fujitsu Limited ("Fujitsu Ltd.")

13   and Fujitsu Microelectronics America, Inc. ("FMA"). On September 13, 2006, NTC and NTC USA

14   filed suit against Fujitsu Ltd. and FMA in the United States District Court of Guam.[1]  The Guam Suit

15   shares the same parties and substantially the same issues as this action. There is no valid reason for this

16   Court not to defer to the first-filed Guam Suit. In fact, the District of Guam is the closest United States

17   federal district to Japan and Taiwan, where the primary parties are headquartered and where essentially

18   all relevant documents and important witnesses are located. The District of Guam is not only the venue

19   of the first-filed action, but also the most convenient forum. Defendants therefore respectfully request

20   that the Court dismiss this case, transfer it to the District of Guam, or stay the case pending the outcome

21   of the Guam Suit.

22

23                                    **I.    FACTS**

24   **A.    The First-Filed Guam Suit Came After Years of Failed Negotiations**

25   Over the past seven years, Fujitsu Ltd. has used unlawful threats and coercion in an attempt to

26   intimidate NTC into paying *worldwide* "licensing fees" on Fujitsu Ltd.'s Japanese and U.S. patents

27   _____

28   [1] *Nanya Technology Corp. v. Fujitsu Limited et al*, Case No. 1:06-CV-00025 (D. Guam) ("Guam Suit").

FUESLER
MEYER LLP

Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss,
Transfer or Stay Case
Action No. C06-06613 EDL                                                              2

1  related to computer memory chips.[2]  NTC clearly demonstrated to Fujitsu Ltd. that NTC did not and

2  does not infringe the asserted patents — many of which have expired, and almost all of which are

3  demonstrably invalid or unenforceable.

4      Despite several years of good faith negotiations on the part of NTC, Fujitsu Ltd. sued NTC in

5  Tokyo District Court in 2005.[3]  That suit alleges only the infringement of a single Japanese patent.[4]

6  Continuing its pattern of extortion and intimidation, during settlement negotiations in the Japanese Suit,

7  Fujitsu Ltd. demanded that NTC take a *worldwide* license to settle the Japanese Suit or Fujitsu would

8  seek to bar NTC from the Japanese market via an injunction. In those discussions, Fujitsu Ltd. continued

9  to assert several expired U.S. patents — thus tying access to the Japanese market to licenses covering

10  unenforceable U.S. patent rights.[5]  These recent settlement negotiations related to Fujitsu Ltd.'s claims

11  have been ongoing for months in Tokyo, Japan.[6]

12  **B.     NTC Files Suit in Guam—The Closest Court to Taiwan and Japan**

13      Because of Fujitsu Ltd.'s improper licensing demands, its threats of infringement of several U.S.

14  patents, and its attempt to extort a worldwide license to settle the Japanese suit, on September 13, 2006,

15  NTC sued Fujitsu Ltd. in Guam.[7]  In the Guam Suit, NTC asserts claims for antitrust violations based on

16  Fujitsu Ltd.'s coercive misuse of its patent portfolio, claims for infringement of NTC's patents on related

17  technology, and claims for a declaration that certain Fujitsu Ltd. patents asserted in the Japanese

18  negotiations are invalid, unenforceable, or not infringed by NTC.[8]

19

20  [2] *See* Declaration of Alfonso G. Chan in Support of Defendants' Motion to Dismiss, Transfer or Stay Case (hereafter "Chan Decl."), ¶ 2.

21  [3] *Fujitsu Limited v. Nanya Technology Corporation*, No. (wa) 17182 2005 (Heisei 17), pending in Civil Division 46, Tokyo District Court ("Japanese Suit").

22  [4] Chan Decl. ¶ 2.

23  [5] *Id.* ¶ 3; At one time or another, Fujitsu Ltd. has explicitly accused NTC of infringing United States patents including Patent Nos. 4,641,166 ("'166 Patent"); 4,458,336 ("'336 Patent"); 5,688,712 ("'712

24  Patent"); 5,841,731 ("'731 Patent"); 4,692,689 ("'689 Patent"); 4,527,070 ("'070 Patent"); 4,384,918 ("'918 Patent"); 4,539,068 ("'068 Patent"); 5,397,432 ("'432 Patent"); 5,227,996 ("'996 Patent");

25  5,339,273 ("'273 Patent"); 4,801,989 ("'989 Patent"); 6,104,486 ("'486 Patent"); 6,292,428 ("'428

26  Patent"); and 6,320,819 ("'819 Patent").
[6] Chan Decl. ¶ 2.

27  [7] *Id.* ¶ 4. The Guam Complaint is attached as an exhibit to Alfonso Chan's declaration which is filed concurrently with this motion.

28  [8] *Id.* ¶ 3; Pl.s' First Am. Compl., Dkt. No. 24, *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. CV-06-00025

FLIESLER
MEYER LLP

**Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss,
Transfer or Stay Case**
Action No. C06-06613 EDL

3

1  NTC chose the District of Guam for several valid reasons. First, Guam is the closest United

2  States District Court to both Fujitsu Ltd. and NTC.[9] There is only a one hour time difference between

3  Guam (GMT +10 hours) and Tokyo (GMT +9 hours).[10] Flights from Tokyo, Japan or Taipei, Taiwan to

4  Guam are direct and about three and one-half hours — as compared to nine hours to the San Francisco

5  Bay Area.[11] Litigation in Guam would require the least amount of disruption to NTC's operations, as

6  their engineering staff could commute easily to and from court to testify and support the litigation. All

7  the inventors of NTC's U.S. patents at issue reside in Taiwan.[12] Taiwan is where NTC's chip fabrication

8  plants are located, as well as the technical design and manufacturing records regarding the products at

9  issue.[13] All of NTC's corporate representatives that have the most knowledge of the technology and

10  economics regarding DDR SDRAM reside in Taiwan.[14] Guam is clearly the most convenient forum for

11  **both** NTC and Fujitsu Ltd.[15]

12
13  ### C. NTC Hand Delivered a Copy of the Guam Suit to Fujitsu Ltd. and Agreed to Further Negotiations

14  On September 14, 2006, in Tokyo, Japan, NTC's counsel delivered a copy of the Guam

15  complaint to Fujitsu Ltd. during a settlement conference.[16] At the conference and during subsequent

16  negotiations, Fujitsu Ltd.'s representatives repeatedly asked that NTC forego formal service of the

17  complaint to allow further informal settlement negotiations before litigation intensified. Acting in a

18  good faith effort to continue settlement negotiations, NTC's counsel agreed, and Fujitsu Ltd. was not

19  formally served.[17]

20
21
22  (D. Guam)
23  [9] Chan Decl. ¶ 5.
   [10] *Id.* ¶ 6.
24  [11] *Id.* ¶¶ 7, 8.
25  [12] *See* Declaration of Ken Hurley in Support of Defendants' Motion to Dismiss, Transfer or Stay Case, ¶ 4.
26  [13] Hurley Decl. ¶ 7, 8.
   [14] *Id.* ¶ 9.
27  [15] *Id.* ¶ 9.
   [16] Chan Decl. ¶ 10.
28  [17] *Id.* ¶ 11.

FLIESLER
MEYER LLP

**Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss, Transfer or Stay Case**
Action No. C06-06613 EDL

4

**D.    Fujitsu Ltd. and FMA File a Copycat Suit in This Court**

NTC's reliance on Fujitsu Ltd's request to forego service and continue negotiations was misplaced. On October 24, 2006 — the day before the parties were to meet again in Tokyo, Japan to discuss settlement— Fujitsu Ltd. and FMA filed this lawsuit.[18] Fujitsu Ltd. and FMA have admitted in papers filed in the Guam Suit that the only reason they filed this case was "in response to the filing of the Guam complaint."[19] On November 2, 2006, Fujitsu Ltd. and FMA served NTC USA.[20] Fujitsu Ltd. and FMA have attempted to serve NTC in Taiwan, but as discussed in NTC's motion to quash service, that service is defective absent an order from this authorizing an alternative means of service.

Once NTC realized that Fujitsu Ltd.'s and FMA's request to continue negotiations was merely a ruse to buy time to prepare their own suit, NTC initiated service of the Guam suit. On October 31, 2006, NTC and NTC USA served FMA with the Guam lawsuit.[21] On November 9, 2006, the Guam court signed an order authorizing alternative service on Fujitsu Ltd. in Japan by email and overnight mail.[22] The next day, November 10, 2006, NTC and NTC USA served Fujitsu Ltd.[23] On November 17, 2006, NTC amended its complaint in the Guam action to include NTC USA as a party.[24] It was served upon both Fujitsu Ltd. and FMA the next day.[25]

While the Guam Suit has more patents at issue, these two cases now have the exact same parties and essentially the same issues. This Court will have to construe the claims and determine infringement or non-infringement of at least seven of the patents that are also at issue in the Guam action (the Guam action concerns eighteen patents).[26]

---

[18] *Id.* ¶ 12.
[19] Fujitsu Limited's Mem. of Points and Authorities in Support of Its Objections to The Magistrate's Order Granting Mot. for Alternative Service of Process on Fujitsu Limited, Dkt. No.45, *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. CV-06-00025 (D. Guam), at 3.
[20] Aff. of Service of Summons, Dkt. No. 11.
[21] Chan Decl. ¶ 13.
[22] *Id.* ¶ 14; Order Dkt. No.24, *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. CV-06-00025 (D. Guam), at 3.
[23] *Id.* ¶ 15.
[24] *Id.* ¶ 16; Pl.'s First Amended Complaint, Dkt. No.24, *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. CV-06-00025 (D. Guam).
[25] Chan Decl. ¶16.
[26] *Id.* ¶ 17.

FLIESLER
MEYER LLP

Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss, Transfer or Stay Case
Action No. C06-06613 EDL

5

1     At this stage, the Guam suit is also further along in the proceedings and moving at a much faster

2 pace than this suit. First, the Guam court has directed the parties to file a proposed scheduling order and

3 discovery plan by November 27, 2006,[27] and NTC's counsel has forwarded drafts of the proposed

4 scheduling order to Fujitsu Ltd.'s and FMA's counsel.[28]  Second, the Guam court has also set a

5 scheduling conference for December 12, 2006.[29]  Discovery should be well under way in the Guam suit

6 by the end of the year.

7     In light of the progress and timing of this lawsuit compared to the Guam suit, this second-filed

8 case is a waste of judicial resources created by Fujitsu Ltd's and FMA's attempt to forum shop. The

9 court should therefore dismiss this case, transfer it to the District of Guam, or stay it pending the

10 outcome of the case in Guam.

11

12           **II.    ARGUMENT — THE FIRST-TO-FILE RULE WARRANTS**
                     **A DISMISSAL, TRANSFER, OR STAY**

13     Where there are two competing patent cases, such as this case and the first-filed Guam suit that

14 involve the same patents and same litigants, the Federal Circuit has mandated that the "first-to-file" rule

15 should be applied. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("We prefer to

16 apply in patent cases the general rule whereby the forum of the first-filed case is favored unless

17 considerations of judicial and litigant economy, and the just and effective disposition of disputes, require

18 otherwise."). The first-to-file rule is also recognized in the Ninth Circuit as a doctrine of federal comity

19 that permits the Court to dismiss an action when a complaint "involving the same parties and issues has

20 already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th

21 Cir. 1982). The purpose of this well-established first-to-file rule is to promote efficiency by avoiding

22 duplicative litigation; thus, *it "should not be disregarded lightly." Alltrade Inc. v. Uniweld Products,*

23 *Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).

24     There are three factors courts in this district evaluate when applying the first-filed rule:

25     (1) the chronology of the two actions,

26

27 [27] *Id.* ¶ 18.
   [28] *Id.* ¶ 19.

28 [29] *Id.* ¶ 18, Scheduling Not., Dkt. No.2, *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. CV-06-00025 (D. Guam).

FLIESLER
MEYER LLP

Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss, Transfer or Stay Case
Action No. C06-06613 EDL

6

1    (2) the similarity of parties, and

2    (3) the similarity of the issues.

3    *N. Am. Cas. Ins. Co. v. Encompass Power Servs., Inc.*, No. CIV-S-05-1587 DFL GGH, 2005

4    U.S. Dist. LEXIS 33314, *8 (E.D. Cal. 2005).

5    If these three factors apply, then the Court should dismiss or transfer this case unless there is a "sound

6    reason that would make it unjust or inefficient to do so." *Genentech*, 998 F.2d at 938. No such "sound

7    reason" exists in this case. Ninth Circuit law may also allow a court to disregard the first-filed rule, but

8    only in cases where there is bad faith, an anticipatory suit, or forum shopping. *Alltrade*, 946 F.2d at

9    628.[30] These three factors tend to boil down simply to whether a reasonable attempt at settlement was

10   made before suit. *Z-Lines Design Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 666-67 (N.D. Cal. 2003);

11   *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2004 U.S. Dist. LEXIS 27601,

12   *17 (N.D. Cal. 2004). Not only did NTC try for several years to settle this controversy, but justice and

13   convenience also strongly favor the Guam Suit.

14   **A.    THE CHRONOLOGY OF THE TWO ACTIONS — THE GUAM SUIT WAS FILED FIRST**

15   It is evident from looking at PACER that NTC filed the Guam case six weeks before Fujitsu Ltd.

16   filed this action. It is also evident that Fujitsu Ltd. received a copy of the Guam suit on September 14,

17   2006 during settlement discussions in Tokyo.[31] In fact, Fujitsu Ltd. admits that this case was filed in

18   reaction to the Guam Suit,[32] and there is no reason to disregard this chronology simply because the two

19   sides were in settlement discussions. *See Google*, U.S. Dist. LEXUS 27601, at *11; *Ward v. Follett*

20   *Corp.*, 158 F.R.D. 645, 647 (N.D. Cal. 1994). Finally, the Guam Suit was not anticipatory. There was

21   no reason for NTC to believe that a U.S. patent lawsuit by Fujitsu Ltd. was imminent. The parties'

22   Japanese settlement negotiations had simply stalled due to Fujitsu Ltd.'s illegal efforts to tie access to the

23   Japanese market to payment of worldwide royalties on U.S. patents that are invalid, unenforceable,

24

25   [30] Note that Federal Circuit and Ninth Circuit law tend to diverge on the point of whether it is
26   relevant that the first-filed suit was anticipatory. *See Electronics for Imaging, Inc. v. Coyle*, 394 F.3d
     1341, 1347 (Fed. Cir. 2005) (holding that the district court abused its discretion in refusing to apply
27   the first-filed rule due to the anticipatory nature of the first-filed action).
     [31] Chan Decl. ¶ 10.
28   [32] Fujitsu Limited's Mem., *supra* note 11, at 3.

FLIESLER
MEYER LLP    Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss,
             Transfer or Stay Case
             Action No. C06-06613 EDL

             7

1  expired, and not infringed. The Guam suit also seeks enforcement of NTC's own patents that Fujitsu

2  Ltd. and FMA continue to infringe.

3  **B.    THE PARTIES ARE THE EXACT SAME IN BOTH CASES**

4      The second factor --- similarity of the parties --- clearly favors application of the first-filed rule.

5  From the face of the complaint in this case and the complaints in the Guam case, it is clear that the

6  parties are identical.[33]

7  **C.    THE FACTUAL AND LEGAL ISSUES ARE SIMILAR IN BOTH CASES**

8      All of the legal issues that Fujitsu Ltd. and FMA ask this Court to adjudicate are currently

9  pending in Guam. In this action, Fujitsu Ltd. and FMA claim NTC and NTC USA are infringing certain

10 of its patents. NTC, however, had already requested a declaratory judgment of non-infringement in the

11 Guam case regarding the very same patents. *Genetech*, 998 F.2d at 937 (noting that the first-to-file rule

12 favors the first-filed action regardless of whether it is an action seeking affirmative relief or a declaratory

13 judgment of non-infringement). In addition, Fujitsu Ltd. and FMA seek a declaratory judgment of non-

14 infringement regarding the NTC patents that NTC asserted in the Guam action. In other words, all of the

15 patents at issue in this case are at issue in the first-filed Guam case as shown in the following table:

16

| PATENTS AT ISSUE | |
|---|---|
| GUAM Action | This Case |
| **Fujitsu's U.S. Patents** | **Fujitsu's U.S. Patents** |
| 4,384,918 | --- |
| 4,458,336 | --- |
| 4,527,070 | --- |
| 4,539,068 | --- |
| 4,641,166 | --- |
| 4,692,689 | --- |
| 4,801,989 | 4,801,989 |
| 5,227,996 | --- |
| 5,339,273 | --- |
| 5,397,432 | --- |
| 5,688,712 | --- |

---

[33] Chan Decl. ¶ 17.

Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss,
Transfer or Stay Case
Action No. C06-06613 EDL.

8

| | 5,841,731 | --- |
| | 6,104,486 | 6,104,486 |
| | 6,292,428 | 6,292,428 |
| | 6,320,819 | 6,320,819 |
| **Fujitsu's Japanese Patents** | | **Fujitsu's Japanese Patents** |
| | 2063684 | --- |
| | 3253712 | --- |
| | 3270831 | --- |
| **Fujitsu's Taiwanese Patents** | | **Fujitsu's Taiwanese Patents** |
| | 119,726 | --- |
| | 400,635 | --- |
| **Fujitsu's German Patent** | | **Fujitsu's German Patent** |
| | 234891 | --- |
| **Fujitsu's Korean Patent** | | **Fujitsu's Korean Patent** |
| | 316813 | --- |
| **Nanya's U.S. Patents** | | **Nanya's U.S. Patents** |
| | 6,225,187 | 6,225,187 |
| | 6,426,271 | 6,426,271 |
| | 6,790,765 | 6,790,765 |

The fact that the Guam complaint contains additional causes of action and additional patents makes no difference. "The 'sameness' requirement does not mandate that the two actions be identical, but is satisfied if they are 'substantially similar.'" *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).

NTC and NTC USA have additional claims of patent misuse and antitrust violations in the Guam action, but these are intertwined with the defenses that they would have to assert in this case. Fujitsu Ltd. has used threats and coercion to unlawfully intimidate NTC into paying licensing fees on patents that NTC did not and does not infringe, patents that are expired, invalid patents, unenforceable patents, and foreign patents that are not entitled to exclusivity or enforcement in the United States. These coercive acts are an illegal attempt to expand Fujitsu Ltd.'s patent protections beyond their permitted temporal and territorial scopes and obtain an unlawful monopoly on intellectual property related to the design and manufacture of computer memory chips, specifically DDR SDRAM found in personal computers and other electronic devices. This type of patent misuse renders a Fujitsu Ltd.'s patents unenforceable. Thus, NTC's patent misuse and antitrust claims in Guam are intertwined with Fujitsu

FLIESLER
MEYER LLP

Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss,
Transfer or Stay Case
Action No. C06-06613 EDL

9

1  Ltd.'s patent claims and NTC's defenses in this case. All of these issues should be adjudicated in only

2  one action in one forum, Guam.

3
4

**D. NTC HAD SOUND REASONS TO FILE ITS CASE IN GUAM AND NOTHING MAKES ENFORCEMENT OF THE FIRST-FILED RULE UNJUST OR INEFFICIENT**

5  NTC had "sound reasons" for choosing Guam as the forum for its claims — convenience of the

6  parties and the proximity of the witnesses. *Serco Servs. Co. v. Kelly Co., Inc.*, 51 F.3d 1037, 1040 (Fed.

7  Cir. 1995) (noting that convenience of witnesses is a sound reason supporting application of the first-

8  filed rule); *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005) (holding that

9  there must be a sound reason or "compelling factors" *not* to enforce the first-filed rule such that doing so

10  would be unjust or inefficient).

11  The United States District Court in Guam is the closest forum to both NTC's and Fujitsu Ltd.'s

12  primary offices. Fujitsu Ltd.'s and FMA's decision makers are in Tokyo, Japan. Tokyo, Japan is where

13  *all* the settlement negations have taken place. NTC is in Taipei, Taiwan. Instead of flying thirteen hours

14  from Tokyo to San Francisco, Fujitsu Ltd.'s and NTC's key witnesses can fly three and one-half hours to

15  Guam. There is only a one hour time difference between Tokyo and Guam — compared to eighteen-

16  hour time difference with San Francisco. In other words, all of the relevant witnesses, documents, and

17  evidence are closer to Guam than San Francisco.

18  Dismissing, transferring, or staying this case also promotes efficiency. There is no sound

19  rationale for two different courts to adjudicate the same lawsuit. The onerous burden and tremendous

20  inefficiency of two different courts conducting *Markman* hearings on the same patents is clearly a waste

21  of judicial resources. This duplication of efforts will only exacerbate problems of congestion in the

22  courts. More importantly, substantially similar concurrent suits create the very real danger of producing

23  conflicting constructions of the same claims, resulting in disparate judicial conclusions on identical

24  questions of law. *See, e.g., Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 816

25  (1976) (noting that courts should consider "wise judicial administration, giving regard to conservation of

26  judicial resources and comprehensive disposition of litigation") (quoting *Kerostat Mfg. Co. v. C-O-Two*

27  *Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

28

FUESLER
MEYER LLP

Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss, Transfer or Stay Case
Action No. C06-06613 EDL

10

**III.    SUMMARY & PRAYER**

Defendants filed the Guam suit six weeks before Plaintiffs filed this suit. The parties in the Guam suit are identical to the parties in this suit. The issues in the two suits are substantially related. There is no sound reason not to enforce the first-filed rule and dismiss this case, or, in the alternative, transfer this case to the District of Guam, or, in the alternative, stay this case pending the outcome of the Guam Suit

Respectfully Submitted,

Dated:  November 22, 2006          By: _____
                                        FLIESLER MEYER LLP
                                        Martin C. Fliesler (SBN 073768)
                                        Rex Hwang (SBN 221079)
                                        Justas Geringson (SBN 240182)
                                        Four Embarcadero Center, Fourth Floor
                                        San Francisco, CA 94111
                                        Telephone:    (415) 362-3800
                                        Facsimile:    (415) 362-2928

                                        SHORE CHAN BRAGALONE, LLP
                                        Michael Shore (*Pro Hac Vice to be filed*)
                                        Alfonso Chan (*Pro Hac Vice to be filed*)
                                        Martin Pascual (*Pro Hac Vice to be filed*)
                                        325 N. St. Paul St. Suite 4350
                                        Dallas, TX 75201
                                        Telephone:    (214) 593-6110
                                        Facsimile:    (214) 593-6111

                                        Attorneys for Defendants
                                        Nanya Technology Corp. and
                                        Nanya Technology Corp. U.S.A.

pldg 061122 - Motion to Dismiss.Guam. Memorandum.doc

**FLIESLER MEYER LLP**

**Notice of Motion; Motion and Memorandum in Support of Defendants' Motion to Dismiss, Transfer or Stay Case**
Action No. C06-06613 EDL

11

1   Martin Fliesler (SBN 073768) mcf@fdml.com
    Rex Hwang (SBN 221079) rhwang@fdml.com
2   Justas Geringson (SBN 240182) jgeringson@fdml.com
    FLIESLER MEYER LLP
3   650 California Street, 14th Floor
    San Francisco, CA 94108
4   Telephone:    (415) 362-3800
    Facsimile:    (415) 362-2928
5
    Michael Shore mshore@shorechan.com *(Pro Hac Vice)*
6   Alfonso Chan achan@shorechan.com *(Pro Hac Vice)*
    Martin Pascual mpascual@shorechan.com *(Pro Hac Vice)*
7   SHORE CHAN BRAGALONE, LLP
    325 N. St. Paul St. Suite 4450
8   Dallas, Texas 75201
    Telephone:    (214) 593-9110
9   Facsimile:    (214) 593-9111

10  Attorneys for Defendants
    NTC Technology Corp. and
11  NTC Technology Corp. U.S.A.

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                    OAKLAND DIVISION

16

17  FUJITSU LIMITED and FUJITSU                No. CV-06 06613 CW
    MICROELECTRONICS AMERICA, INC.
                                               DEFENDANTS' REPLY TO PLAINTIFFS'
18              Plaintiffs,                     OPPOSITION TO DEFENDANTS'
                                               MOTION TO DISMISS, TRANSFER OR
19          vs.                                STAY CASE

20  NTC TECHNOLOGY CORP. and NTC               Date:      February 2, 2007
    TECHNOLOGY CORP. U.S.A.                    Time:      10:00 am
21                                             Location:  Courtroom 2, 4th Floor
                Defendants.
22

23

24

25

26

27

---

**Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case**
Action No. CV-06 06613 CW

1

# TABLE OF CONTENTS

2

3

I.   GUAM IS A PROPER VENUE ...........................................................................................2

    A.   PLAINTIFFS' SALE OF INFRINGING PRODUCTS IN GUAM SUBJECTS THEM
        TO PERSONAL JURISDICTION ..................................................................................2

    B.   PLAINTIFFS IGNORE THE STANDARD FOR PERSONAL JURISDICTION
        UNDER THE CLAYTON ACT .....................................................................................5

II.  NTC'S AMENDED COMPLAINT RELATES BACK TO THE ORIGINAL
    COMPLAINT.............................................................................................................7

    A.   DEFENDANTS' DECLARATORY RELIEF CLAIM REGARDING THE '486
        PATENT RELATES TO PLAINTIFFS' UNLAWFUL CONDUCT ......................................8

    B.   NTC USA IS A RELATED PARTY AND ITS CLAIMS ARISE OUT OF
        FUJITSU'S SAME MISCONDUCT ...............................................................................9

III. THERE IS NOTHING ANTICIPITORY ABOUT WAITING SEVEN
    YEARS TO SUE..........................................................................................................10

IV.  SOUND REASONS—NOT FORUM SHOPPING .......................................................11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case**
Action No. CV-06 06613 CW

1

**TABLE OF AUTHORITIES**

2

3 **U.S. SUPREME COURT CASES**

4 *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ...................................................2

5 *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...................................................3

6

7 **FEDERAL CIRCUIT CASES**

8 *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995)...........................................................................2

9 *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ............................3

10 *Commisariat A L'Energie Atomique v. Chi Mei Optoelectronic Corp.*, 395 F.3d
   1315 (Fed. Cir. 2005).................................................................................................................4, 5
11
   *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) .......................................11
12
   *Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001)...............................................................2
13
   *North Am. Philips Corp. v. American Vending Sales*, 35 F.3d 1576 (Fed. Cir.
14   1994) ...........................................................................................................................................3

15 *Serco Servs. Co. v. Kelly Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995) ...............................................11

16

17 **NINTH CIRCUIT CASES**

18 *Action Embroidery Corp. v. Atl. Embroidery, Inc.* 368 F.3d 1174 (9th Cir. 2004) .....................5, 6

19 *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999) ...............................................................................9

20 *Besig v. Dolphin Boating and Swimming Club*, 683 F.2d 1271 (9th Cir. 1982)...............................9

21 *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ........................................................................7

22

23 **U.S. DISTRICT COURT CASES**

24 *Abaun v. General Electric Co.*, 735 F. Supp. 1479 (D. Guam 1990) ...............................................2

25 *Agilent Techs., Inc. v. Elan Microelectronics Corp.*, No. C 04-05385-JW, 2005
   U.S. Dist. LEXIS 34305 (N.D. Cal. 2005)...................................................................................5
26
   *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663 (N.D. Cal. 2003)...........................10, 11
27

28
ii
Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case
Action No. C06-06613 CW

1   **FEDERAL RULES**

2   15 U.S.C. § 22 ................................................................................................................................6

3   FED. R. CIV. P. 15(c)(2) .............................................................................................................8, 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
**Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case**
Action No. C06-06613 CW

1    Plaintiffs Fujitsu Ltd. and Fujitsu Microelectronics Inc.'s ("FMA") response fails to show
2  "sound reasons" why this Court should not apply the first-filed rule and dismiss or transfer this
3  case. Instead, Plaintiffs grasp at straws. First, they ask this Court to make a personal jurisdiction
4  determination for the District Court in Guam—as if this Court could somehow dismiss the Guam
5  case. But Fujitsu Ltd. and FMA's response fails to address the main point—why Fujitsu Ltd. and
6  FMA should be able to maintain a duplicative lawsuit. Fujitsu Ltd. and FMA even argue
7  convenience, but they ignore the terrible inconvenience of maintaining two identical lawsuits in
8  separate districts. In reply, Nanya Technology Corp. ("NTC") and Nanya Technology Corp.
9  U.S.A. ("NTC USA") show why the Guam court has personal jurisdiction over Plaintiffs and that
10  venue is proper in Guam, but NTC and NTC USA note that this determination will be made by
11  the Guam court.

12    Second, Plaintiffs argue that by seeking declaratory relief on an additional patent or
13  because NTC USA was added as a plaintiff in the Guam suit, NTC and NTC USA's amended
14  complaint in Guam became a second-filed action. But by examining the two Guam complaints,
15  one can see that the additional patent claim in the amended complaint relates directly to NTC and
16  NTC USA's antitrust and patent misuse claims—the very same conduct described in the original
17  complaint. Further, NTC and the additional party, NTC USA, have identical interests and seek
18  the same relief for Fujitsu's same bad conduct. Thus, the amended Guam complaint relates back
19  to the original Guam complaint, which was filed six weeks before Plaintiffs filed this case.

20    Finally, there is nothing "anticipatory" about waiting seven years for settlement
21  negotiations to break down to finally sue Fujitsu Ltd. and FMA in the United States district court
22  closest to Taiwan. The bottom line is that the District of Guam is still the closest district to Japan
23  and Taiwan, the residence of most party witnesses, non-party witnesses, and the location of
24  essentially all relevant documents. These were "sound reasons" for filing the case there, and
25  nothing in Plaintiffs' response refutes that. Defendants therefore respectfully request that the
26  Court dismiss this case, transfer it to the District of Guam, or stay the case pending the outcome
27  of the Guam litigation.

**Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case**
Action No. CV-06 06613 CW

1          **I. GUAM IS A PROPER VENUE**

2          In defense of their forum shopping, Fujitsu Ltd. and FMA claim that Guam is an improper

3    venue because they are not subject to personal jurisdiction in Guam. Plaintiffs are wrong. The

4    district court in Guam has personal jurisdiction over Fujitsu Ltd. and FMA because Plaintiffs'

5    infringing products are sold in that district. Furthermore, the Clayton Act merely requires that

6    Fujitsu Ltd. and FMA have minimum contacts with any judicial district within the United States

7    as a prerequisite to the Guam court's proper exercise of personal jurisdiction.

8          A.    PLAINTIFFS' SALE OF INFRINGING PRODUCTS IN GUAM SUBJECTS THEM TO
9                PERSONAL JURISDICTION

10         Fujitsu Ltd. and FMA's exclusive reliance on Ninth Circuit case law to support their claim

11   regarding personal jurisdiction is misplaced. Personal jurisdiction in patent cases is determined

12   under the law of the Federal Circuit, not the law of the regional circuit in which the case arises.

13   *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). According to Federal Circuit

14   precedent, determining whether personal jurisdiction exists over an out-of-state defendant

15   involves two inquiries: (1) whether a forum state's long arm statute permits service of process,

16   and (2) whether the assertion of personal jurisdiction would violate due process. *Inamed Corp. v.*

17   *Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Because Guam's long-arm statute extends the

18   reach of personal jurisdiction to the limits of the Constitution, the two inquiries collapse into

19   whether jurisdiction comports with due process. *Abaun v. General Electric Co.*, 735 F. Supp.

20   1479, 1481 (D. Guam 1990); *Inamed*, 249 F.3d at 1360. Due process requires that a two-prong

21   test be met for the exercise of personal jurisdiction. *International Shoe Co. v. Washington*, 326

22   U.S. 310, 316 (1945). First, the plaintiff must show that the defendant has "minimum contacts"

23   with the forum state. *Id.* at 316. Second, the plaintiff must show that exercising personal

24   jurisdiction over the defendant comports with traditional notions of fair play and substantial

25   justice. *Id.* at 316.

26         The necessary "minimum contacts" between   Fujitsu Ltd., FMA, and Guam are

27   established under the "stream of commerce" standard first discussed by the Supreme Court in

28                                          2
     Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case
     Action No. C06-06613 CW

1  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Under this standard, the

2  exercise of personal jurisdiction is appropriate where the defendant "delivers its products into the

3  stream of commerce with the expectation that they will be purchased by consumers in the forum

4  state." *Id.* at 298. "[I]f the sale of a product of a manufacturer or distributor. . . is not simply an

5  isolated occurrence, but arises from the efforts of the [defendant] to serve, directly or indirectly,

6  the market for its products . . . it is not unreasonable to subject it to suit." *Id.* at 297.

7       The Federal Circuit adopted and applied the stream of commerce standard in *Beverly Hills*

8  *Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In *Beverly Hills Fan*, the

9  plaintiff, a California ceiling fan manufacturer, sued both the manufacturer and distributor of a

10  competing ceiling fan in the Eastern District of Virginia alleging patent infringement. Ultec, the

11  manufacturer of the infringing fans, was a Chinese corporation that made the infringing fans in

12  Taiwan. The fans were then imported into the United States by defendant Royal. Royal sold the

13  fans to Builder's Square, a retail chain that operated stores located throughout Virginia.

14       The Federal Circuit rejected the defendants' claims that the court lacked personal

15  jurisdiction, finding that the exercise of personal jurisdiction was proper because the accused fans

16  arrived in that forum through the defendants' purposeful shipment of fans through an established

17  distribution channel. *Id.* at 1565-66. Specifically, the court held that:

18       When viewed in the light of the allegations and the uncontroverted assertions in
        the affidavits, plaintiff has stated all of the necessary ingredients for an exercise of
19       jurisdiction consonant with due process: defendants, acting in consort, placed the
        accused fan in the stream of commerce, they knew the likely destination of the
20       products and their conduct and connections with the forum state were such that
        they should reasonably have anticipated being brought into court there.
21

22  *Id.* at 1566. Put simply, personal jurisdiction over a defendant in a patent infringement case is

23  proper where infringing products are sold because that is where the injury occurs. *North Am.*

24  *Philips Corp. v. American Vending Sales*, 35 F.3d 1576, 1580 (Fed. Cir. 1994) ("Surely the

25  reasonable market participant in the modern commercial world has to expect to be haled into the

26  courts of that state, however distant, to answer for any [patent infringement] liability based at

27

28                                              3

1    least in part on that importation."). Plaintiffs' page-and-a-half recitation about not maintaining

2    offices in Guam, not having employees in Guam, and not paying taxes in Guam is simply

3    irrelevant.

4            Fujitsu Ltd. and FMA misrepresent the law when they urge that this Court use some other

5    standard or that the Court should consider "the volume, the value, and the hazardous character of

6    the components" to determine if Fujitsu Ltd. and FMA have a reasonable expectation of being

7    hailed into court in Guam. (Pl.s' Resp. to Mot. to Dismiss, Transfer or Stay pg. 9 line 22-24.)

8    The Federal Circuit has expressly rejected that standard stating: "That test, designed for products

9    liability cases, is inapplicable to actions for patent infringement." *Commisariat A L'Energie*

10   *Atomique v. Chi Mei Optoelectronic Corp.*, 395 F.3d 1315, 1321 n.6 (Fed. Cir. 2005).

11           Nowhere in Fujitsu Ltd. and FMA's brief do they deny that they sell memory chips and

12   microcontrollers through established distribution channels in Guam. That is because they cannot

13   make this claim; Plaintiffs' infringing devices are incorporated into cell phones, scanners,

14   automobiles, digital cameras, flash drives, personal computers, copiers, and many other products.[1]

15   NTC and NTC USA have identified several products that Fujitsu Ltd. and FMA sell through

16   established distribution channels that they believe infringe their patents as illustrated in the table

17   below.

18

| Fujitsu Product | Product Name or No. | Location |
|---|---|---|
| Glucose Meter | One Touch Ultra | Dededo, Guam |
| Automobile Entertainment | Hyundai Most System | Press Release on Website |
| Thermostat | Digimax 210 Wireless Room Thermostat DX210 | Hagana, Guam |
| Flash Drive | MBF310 Sweep Sensor | Hagana, Guam |
| Microcontroller | MB91F133A | Hagana, Guam |

26

27   [1] http://www.fujitsu.com/global/services/microelectronics/.

28
                                           4

| Microcontroller | MB91F362GAPFVS | Hagana, Guam |
| --- | --- | --- |
| Microcontroller | MB91188 | Hagana, Guam |
| Microcontroller | DIPmodul-F40 | Hagana, Guam |

Furthermore, NTC and NTC USA have already begun jurisdictional discovery in the Guam case to conclusively establish what it already knows—Fujitsu Ltd. and FMA knowingly sell a substantial amount of infringing products in Guam through well established distribution channels, including their own website.[2]  These sales and marketing activities constitute the minimum contacts necessary for the Guam court to exercise personal jurisdiction in a patent case. *Id.* at1323-24.  NTC and NTC USA's factual allegations suffice to make a *prima facia* showing of jurisdictional facts. *See e.g. Agilent Techs., Inc. v. Elan Microelectronics Corp.*, No. C 04-05385-JW, 2005 U.S. Dist. LEXIS 34305 (N.D. Cal. 2005).  Thus, Defendants are confident that the court in Guam will conclude that it has personal jurisdiction over Plaintiffs and that Guam is a proper venue.

**B.   PLAINTIFFS IGNORE THE STANDARD FOR PERSONAL JURISDICTION UNDER THE CLAYTON ACT**

In addition, Fujitsu Ltd. and FMA choose to ignore the other obvious basis for personal jurisdiction in Guam—United States antitrust law.  NTC and NTC USA are seeking relief in Guam for Fujitsu Ltd. and FMA's violations of the Sherman and Clayton Acts based on their coercive misuse of their patent portfolio and their illegal attempt to exercise monopoly pricing power in the SDRAM market.

Under the Clayton Act, the district court in Guam "obtains personal jurisdiction over a defendant if it is able to serve process on him." *Action Embroidery Corp. v. Atl. Embroidery, Inc.* 368 F.3d 1174, 1177 (9th Cir. 2004).  A statutory basis for exercising personal jurisdiction may

---

[2] http://www.fujitsu.com/global/.

**Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case**
Action No. C06-06613 CW

1   be found in a statute providing for service of process. That basis can be found in Section 12 of

2   the Clayton Act, which contains its own statutory long arm statute:

3      Any suit, or proceeding under the antitrust laws against a corporation may be
       brought not only in the judicial district whereof it is an inhabitant, but also in any
4      district wherein it may be found or transacts business; and all process in such
       cases may be served in the district of which it is an inhabitant, *or wherever it may*
5      *be found.*

6   15 U.S.C. § 22. FMA is not disputing service in Guam, and although Fujitsu Ltd. is arguing that

7   it was not properly served, it is not arguing whether the district court can properly serve it. So the

8   only issue is whether the Guam court's exercise of personal jurisdiction over Fujitsu Ltd. and

9   FMA satisfies the constitutional principles of due process and comports with "traditional notions

10  of fair play and substantial justice." *Action Embroidery Corp.*, 368 F.3d at 1180.

11     These constitutional considerations are met if Fujitsu Ltd. and FMA have minimum

12  contacts with the forum state. *Id.* at 1180. Under the Clayton Act, minimum contacts with the

13  forum state means minimum contacts with the United States because the statute expressly

14  authorizes nationwide (and worldwide) service. *Id.* at 1180. Thus, the inquiry to determine

15  "minimum contacts" becomes "whether the defendant has acted within *any* district of the United

16  States or sufficiently caused foreseeable consequences in this country." *Id.* at 1180 (citing

17  *Securities Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)). Thus, Plaintiffs'

18  claim that they have no "relationship" with Guam in particular, is irrelevant.

19     As a California corporation, operating in the United States, FMA clearly has minimum

20  contacts with a district of the United States sufficient to confer personal jurisdiction on any

21  district court, including the District of Guam. *Id.* at 1180.

22     Likewise, Fujitsu Ltd. conducts substantial business in the United States. According to

23  Fujitsu Ltd.'s own website, 8.1% of its revenue is derived from sales in the United States.[3]

24  Fujitsu Ltd. exports a wide variety of products to the United States that it sells through numerous

25  wholly-owned subsidiaries. It sells computers that contain its memory chips via the internet to

26

27  [3] http://www.fujitsu.com/global/about/profile/.

28
                                        6

1   the United States.[4] Fujitsu Ltd. applies for patent protection in the United States and obviously

2   files lawsuits in United States district courts to enforce its patents. Fujitsu Ltd. also regularly

3   contracts with United States companies to sell its products. If those companies breach such

4   agreements, Fujitsu Ltd. sues them in United States courts.[5] Furthermore, a search on PACER

5   reveals that Fujitsu Ltd. is a defendant in no fewer than *29 current antitrust cases* related to its

6   sale of memory chips in the United States.

7        Moreover, Fujitsu Ltd.'s improper and coercive licensing efforts are directed squarely at

8   the United States market. Fujitsu Ltd. is demanding that NTC pay a license for Fujitsu Ltd.'s

9   expired or invalid patents based on NTC's sales volume in the United States. These jurisdictional

10  facts are set forth in detail in NTC and NTC USA's complaint in the Guam action and remain

11  uncontroverted. Thus, Plaintiffs' claim that the Guam court lacks personal jurisdiction and that

12  Guam is an improper venue must fail. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)

13  (stating that where not directly controverted, the plaintiff's version of the facts are taken as true

14  for the purposes of establishing personal jurisdiction). The district court in Guam has personal

15  jurisdiction over Plaintiffs, and Guam is a proper venue.

16       Plaintiffs' venue argument is a red herring and cannot be a "compelling reason" to prevent

17  the application of the first-filed rule. Thus, the Court should dismiss, transfer, or stay this case,

18  which was filed six weeks after the Guam case.

19  ## II. NTC'S AMENDED COMPLAINT RELATES BACK TO THE ORIGINAL COMPLAINT

20

21       According to Federal Rule of Civil Procedure 15(c)(2), an amended complaint "relates

22  back" for purposes of the filing date, if "the claim or defense asserted in the amended pleading

23  arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

24  original pleading."[6] The additional claim for declaratory relief regarding Fujitsu Ltd.'s U.S.

25  [4] http://www.fujitsu.com/us/services/computing/

26  [5] *See Fujitsu Limited v. Cirrus Logic, Inc. et al*, Case Number 5:02-cv-01627, In the United States District Court for the Northern District of California.

27  [6] Fed. R. Civ. P. 15(c)(2).

28

1  Patent No. 6,104,486 (the "486 patent") or the addition of antitrust claims by NTC USA in the
2  amended Guam complaint obviously arise from the same conduct set forth in the original Guam
3  complaint. There is no good faith argument that the amended Guam complaint does not "relate
4  back."

5  **A.   DEFENDANTS' DECLARATORY RELIEF CLAIM REGARDING THE '486 PATENT
6        RELATES TO PLAINTIFFS' UNLAWFUL CONDUCT**

7       The Guam litigation arises out of two types of wrongful conduct by Fujitsu Ltd. and
8  FMA: (1) Fujitsu Ltd. and FMA's attempt to extort a worldwide license on their foreign patents
9  and U.S. patents that have expired or are invalid (the "antitrust conduct"), and (2) Fujitsu Ltd. and
10 FMA's continued infringement of NTC's patents. The amended complaint merely adds claims
11 that arise out of Plaintiffs' antitrust misconduct, which was described in the original complaint.

12      NTC was already seeking declaratory relief regarding 14 other patents in the Guam suit
13 when Fujitsu Ltd. asserted its infringement claim regarding the '486 patent in this case. Fujitsu
14 Ltd.'s claim is merely another instance of Fujitsu Ltd. attempting to unlawfully intimidate NTC
15 into paying licensing fees on patents that NTC did not and does not infringe, patents that are
16 expired, and foreign patents that are not entitled to exclusivity or enforcement in the United
17 States. So NTC and NTC USA amended their Guam complaint to request declaratory relief
18 regarding the '486 patent because it is related to the same wrongful conduct pleaded in the
19 original complaint. This also makes it easier for this Court to dismiss or transfer the case to
20 Guam because of the similarity of issues. Thus, under Rule 15(c)(2), the addition of a request for
21 declaratory relief of non-infringement, invalidity, and unenforceability of the '486 patent does not
22 prevent NTC's amended complaint from relating back to the original complaint.

23
24
25
26
27
28
                                          8

1

2

**B.    NTC USA IS A RELATED PARTY AND ITS CLAIMS ARISE OUT OF FUJITSU'S SAME MISCONDUCT**

3

4

5

6

7

8

9

The addition of NTC USA, a related plaintiff who has the same interests as the original plaintiff in the Guam litigation, does not prevent the amended complaint from relating back to the original complaint. *Bowles v. Reade*, 198 F.3d 752, 762 (9th Cir. 1999) ("an amendment changing plaintiffs may relate back when the relief sought in the amended complaint is identical to that demanded originally.")  Plaintiffs' conclusory claim that NTC and NTC USA do not have identity of interests is absurd. NTC USA is a wholly-owned subsidiary of NTC, and it clearly has an identical objective as its parent, to stop Fujitsu Ltd. and FMA's attempt to monopolize the SDRAM market and prevent competition in the United States market.

10

11

12

13

14

15

16

17

18

19

20

Both NTC and NTC USA will be injured in exactly the same way, if not to the same extent, if they do not stop Fujitsu Ltd. and FMA's predatory and monopolistic licensing misconduct. *Besig v. Dolphin Boating and Swimming Club*, 683 F.2d 1271, 1278 (9th Cir. 1982) ("an amended complaint substituting plaintiffs relates back only when the relief sought is sufficiently similar to constitute an identity of interest.")  Thus, NTC and NTC USA have identical interests and identical claims. Both seek to declare Fujitsu Ltd.'s asserted patents invalid, unenforceable, or non-infringed and to free themselves from Fujitsu Ltd.'s anticompetitive licensing demands.  Because the antitrust injury "asserted in the amended pleading [arises] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," NTC's amended complaint relates back to the filing date of the original complaint. FED. R. CIV. P. 15(c)(2).

21

22

23

24

Furthermore, NTC and NTC USA share a common interest in their patent infringement claims against Fujitsu Ltd. and FMA. Both NTC and its subsidiary NTC USA deal in the same products. Thus, the Guam court will conduct only one infringement analysis for both NTC's and NTC USA's products.

25

26

27

The amended complaint relates back to the original complaint. The Guam case was the first-filed case, period. Thus, this action should be dismissed under the first-filed rule or in the

28

9

**Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case Action No. C06-06613 CW**

1    alternative transferred to the District of Guam.

2                    **III. THERE IS NOTHING ANTICIPITORY ABOUT WAITING**
3                              **SEVEN YEARS TO SUE**

4            Citing *Z-Line Designs, Inc. v. Bell'O Int'l LLC* 218 F.R.D. 663, 665 (N.D. Cal. 2003) in
5    their response, Plaintiffs claim that NTC raced to the courthouse to file suit in Guam after
6    receiving a list of patents from Fujitsu Ltd. Therefore, Plaintiffs argue, the Court should not
7    apply the first-filed rule. (Pl.s' Resp. to Mot. to Dismiss, Transfer or Stay pg. 16.) There is no
8    support for such an argument in *Z-line* or any other case. In *Z-Line*, the patent owner, Bell'O
9    International, sent a demand and cease and desist letter from New Jersey on June 23 to Z-Line in
10   California that outlined Bell'O's intellectual property claims and set July 7 as the deadline to
11   respond. *Id.* at 664. That deadline came and went and after several telephone calls between the
12   parties' counsel, Bell'O set a final deadline of July 29 for Z-line to respond to its demand. *Id.* at
13   664-65. On July 30, Z-Line sued Bell'O in California. Two days later, Bell'O sued Z-Line in
14   New Jersey. The court determined that the first lawsuit was "anticipatory" because the "plaintiff
15   filed this action in anticipation of specific, concrete indications that a suit by Bell'O was
16   imminent." *Id.* at 666. The court further found that the two-day difference between the filing of
17   the two lawsuits diminished the importance of the earlier filed suit. *Id.* at 667. That is not the
18   case here.

19           Fujitsu Ltd. did not even indicate, much less give a deadline, that it would sue in a United
20   States court. Fujitsu Ltd. cannot point to a demand letter like the one in *Z-line* that contains any
21   deadline. In fact, Plaintiffs claim that NTC had to coerce a letter out of Fujitsu Ltd. that lists the
22   patents that NTC allegedly infringes.[7] Furthermore, Fujitsu Ltd. never indicated that a suit was
23   imminent. Fujitsu Ltd.'s August 11, 2006 letter listing the patents that NTC and NTC USA
24   allegedly infringe states that settlement negotiations have been ongoing since 1999.[8] Plaintiffs
25   admit in their response that settlement negotiations have been ongoing for years, then in the same

26   _____
     [7] Plaintiffs' Opp. to Def.s' Mot. to Dismiss, Transfer, or Stay Case at 3.

27   [8] August 11, 2006 Ltr. from Fujitsu Ltd. to NTC attached as Ex. B to Kitano Decl.

28   _____  10  _____
     **Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case**
     Action No. C06-06613 CW

1    brief claim that this suit was sprung on them before they could file suit.[9]  There were no specific

2    concrete indications that Fujitsu Ltd.'s lawsuit, filed *six weeks* after the Guam suit, was imminent

3    at the time NTC filed the Guam suit.  Thus, the Guam suit was not anticipatory.  *Id.* at 666.

4         NTC did request a list of patents from Fujitsu Ltd. for the settlement negotiations in

5    Tokyo, Japan.  That list contained several expired and invalid foreign and U.S. patents.[10]

6    Contrary to Plaintiffs' assertions, NTC used that list in settlement negotiations, but it also used it

7    to show on paper what Fujitsu Ltd. has been asserting in negotiations for years—Fujitsu Ltd.'s

8    demand that NTC take a worldwide license for expired or invalid patents.  Plaintiffs' claim that

9    the Guam case is merely a tactic to increase settlement pressure on the Tokyo case is incorrect.

10   The Guam case is about damages for serious antitrust violations and patent misuse.  Far from

11   seeking to gain an advantage in the Tokyo District Court which concerns one Japanese patent,

12   NTC and NTC USA filed suit in Guam because of Fujitsu Ltd.'s persistent and continued demand

13   that NTC take a *worldwide* license for foreign and expired patents to settle the Japanese lawsuit.

14   NTC and NTC USA note that Plaintiffs only asserted infringement of a handful of all the patents

15   listed in Fujitsu Ltd.'s August letter in this lawsuit.  That letter is not evidence of Defendants'

16   gamesmanship; it is evidence of Fujitsu Ltd.'s guilt.

17                        **IV.  SOUND REASONS—NOT FORUM SHOPPING**

18        NTC had "sound reasons" for choosing Guam as the forum for its claims—convenience

19   of the parties and the proximity of the witnesses.  *Serco Servs. Co. v. Kelly Co., Inc.*, 51 F.3d

20   1037, 1040 (Fed. Cir. 1995) (noting that convenience of witnesses is a sound reason supporting

21   application of the first-filed rule); *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-

22   48 (Fed. Cir. 2005) (holding that there must be a sound reason or "compelling factors" *not* to

23   enforce the first-filed rule such that doing so would be unjust or inefficient).  Plaintiffs' response

24   simply ignores the standard the Federal Circuit has articulated when applying the first-filed rule.

25

26   [9] Pls.' Opp. To Def.s' Mot. to Dismiss Transfer or Stay at 16.

27   [10] August 11, 2006 Ltr. from Fujitsu Ltd. to NTC attached as Ex. B to Kitano Decl.

28                                                    11
     **Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case
     Action No. C06-06613 CW**

1    Nothing in Plaintiffs' response refutes the following:

2        • The United States District Court in Guam is the closest forum to both NTC's and

3          Fujitsu Ltd.'s primary offices;

4        • Fujitsu Ltd.'s decision makers are in Tokyo, Japan;

5        • NTC's decision makers are in Taiwan;

6        • Tokyo, Japan is where *all* the settlement negations have taken place;

7        • Most of the witnesses, including the inventors of the patents at issue reside in

8          Japan or Taiwan;

9        • There is only a one hour time difference between Tokyo and Guam — compared

10         to eighteen-hour time difference with San Franscisco;

11       • Flights to Guam from Japan and Taiwan are a third as long as they are to San

12         Francisco;

13       • Dismissing, transferring, or staying this case promotes judicial efficiency;

14       • Litigating in one forum will be much cheaper and more efficient for the parties;

15       • The Guam litigation will dispose of all of the issues and claims between the

16         parties and not just Fujitsu Ltd.'s infringement claims on a handful of the total

17         number of patents; and

18       • Dismissing the case eliminates the danger of producing conflicting claim

19         constructions of the same terms, resulting in disparate judicial conclusions on

20         identical questions of law.

21   While it is true as Plaintiffs state in their response that the Guam court is the farthest court from

22   the continental United States, it is also true that it is the closest court to the relevant witnesses

23   and evidence.  The parties in the Guam suit are identical to the parties in this suit.  The issues in

24   the two suits are substantially related.   Finally, the Guam suit was filed six weeks before

25   Plaintiffs filed suit in this district.

26        There is no sound reason not to enforce the first-filed rule and dismiss this case, or, in the

27   alternative, transfer this case to the District of Guam, or, in the alternative, stay this case pending

28 _____12_____
     Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Transfer or Stay Case
     Action No. C06-06613 CW

1    the outcome of the Guam suit.

2
     Dated: January 19, 2006
3

4                                    By:_____ /s/ Martin C. Fliesler

5                                       Martin Fliesler (SBN 073768) mcf@fdml.com
                                        Rex Hwang (SBN 221079) rhwang@fdml.com
6                                       Justas Geringson (SBN 240182) jgeringson@fdml.com
                                        FLIESLER MEYER LLP
7                                       650      California     Street,    14th      Floor
                                        San           Francisco,        CA           94108
8                                       Telephone:    (415)                        362-3800
                                        Facsimile:    (415) 362-2928
9
                                        Michael Shore mshore@shorechan.com *(Pro Hac Vice)*
10                                      Alfonso Chan achan@shorechan.com *(Pro Hac Vice)*
                                        Martin Pascual mpascual@shorechan.com *(Pro Hac Vice)*
11                                      SHORE CHAN BRAGALONE, LLP
                                        325 N. St. Paul St. Suite 4450
12                                      Dallas, Texas 75201
                                        Telephone:    (214) 593-9110
13                                      Facsimile:    (214) 593-9111

14                                      Attorneys for Defendants
                                        NTC Technology Corp. and
15                                      NTC Technology Corp. U.S.A.

16

17

18

19

20

21

22

23

24

25

26

27

28                                              13