# EXHIBIT A

# MILBANK, TWEED, HADLEY & McCLOY LLP

## 1 CHASE MANHATTAN PLAZA

### NEW YORK, NY 10005-1413

212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

## FACSIMILE TRANSMISSION

**DATE:**       April 24, 2007

**TO:**

| NAME | FAX NO. | PHONE NO. |
|------|---------|-----------|
| Alfonso Chan | (214) 593-9111 | (214) 593-9140 |

**FROM:**     Lawrence T. Kass, Esq.     **PHONE:**  (212) 530-5178    **FAX:**  (212) 822-5796

**RE:**        *Fujitsu-Nanya Patent Litigation*

| FILE NUMBER: | 35068.02100 | | 08936 |
|--------------|-------------|---|-------|
| NUMBER OF PAGES, INCLUDING COVER: | 3 | ORIGINALS BY FEDEX/MAIL: | NO |

**MESSAGE:**
              PLEASE SEE ATTACHED.

## CONFIDENTIALITY NOTE:

The information contained in this facsimile message may contain legally privileged and/or confidential information and is intended only for the use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or reproduction of this facsimile is strictly prohibited. If you have received this facsimile in error, we would appreciate your notifying us at 212-530-5014. Thank you.

# MILBANK, TWEED, HADLEY & McCLOY LLP

1 CHASE MANHATTAN PLAZA

NEW YORK, N.Y. 10005-1413

212-530-5000

FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

LAWRENCE T. KASS
(212) 530-5178 TEL
(212) 822-5796 FAX
LKASS@MILBANK.COM

April 24, 2007

## VIA FACSIMILE AND EMAIL

Alfonso Chan
Shore Chan Bragalone LLP
325 N. St. Paul St., Suite 4450
Dallas, Texas 75201

> Re:    *Nanya Technology Corp., et al. v. Fujitsu Limited et al.,*
>        No. 06-cv-00025 in the U.S. District Court for the District of Guam

Dear Alfonso:

This letter addresses: (1) Plaintiffs' Objections and Responses to Fujitsu Microelectronics America, Inc.'s First Set of Interrogatories (Nos. 1-6); (2) Plaintiffs' Objections and Responses to Fujitsu Microelectronics America, Inc.'s First Set of Requests for Production (Nos. 1-29); (3) Plaintiff Nanya Technology Corporation U.S.A.'s Objections and Responses to Fujitsu Microelectronics America, Inc.'s First Set of Requests for Admissions (Nos. 1-34); and (4) Plaintiff Nanya Technology Corporation's Objections and Responses to Fujitsu Microelectronics America, Inc.'s First Set of Requests for Admissions (Nos. 1-34) (collectively "Plaintiffs' Responses"). Plaintiffs' Responses lack any substantive answers and are entirely improper.

For example, with regard to Plaintiffs' responses to Interrogatory Nos. 1-6, Requests For Production Nos. 1-29 ("RFPs") and Requests For Admissions Nos. 1-34 ("RFAs"), Plaintiffs claim to be under no obligation to respond to any of these interrogatories and requests because no pre-discovery disclosures have been made. Plaintiffs also indicate that they intend to withhold answers to the interrogatories and withhold documents responsive to the RFPs until the filing of Plaintiffs' Response in Opposition to Fujitsu Microelectronics America, Inc.'s Motion to Dismiss or Transfer to the Northern District of California and for a More Definite Statement ("Response to Defendant's Motion to Dismiss or Transfer"), which is due on May 15, 2007.

Alfonso Chan
April 24, 2007
Page Two

Neither the dates for serving Initial Disclosures nor for filing Plaintiffs' Response to Defendant's Motion to Dismiss or Transfer tolls or otherwise delays Plaintiffs' obligation to provide substantive answers to Defendants' jurisdictional interrogatories or RFAs, or to produce responsive documents. To the extent that Plaintiffs now have answers and responsive documents, they should be provided immediately. It was Plaintiffs who sought and received the current period of jurisdictional discovery and this period is not a one-sided discovery phase. Defendants have produced in excess of 118,000 pages of documents responsive to Plaintiffs' jurisdictional discovery requests and Plaintiffs have yet to produce any documents responsive to Defendants' jurisdictional discovery requests. Please confirm that Plaintiffs will immediately provide substantive answers to Defendants' interrogatories and RFAs, and begin rolling production of documents responsive to its RFPs one week from today, *i.e.*, on May 1, with completion of rolling production one week after that, *i.e.*, on May 8.

With regard to both sets of Plaintiffs' responses to the RFAs, Plaintiffs further state in every response that each request seeks information irrelevant to any claim or defense in the case. Such an allegation is false and an egregious violation of the Federal Rules of Civil Procedure. The information sought is entirely appropriate and in fact is analogous to the very information sought by Plaintiffs' own jurisdictional discovery requests. Thus, for each request, please immediately provide answers responsive to the RFAs.

This letter identifies certain immediately apparent deficiencies in Plaintiffs' Responses, and we reserve the right to follow up on additional points and deficiencies.

We request a meet and confer tomorrow, April 25, 2007 at 4 p.m. EST to discuss these issues. If these issues are not resolved by this meet and confer, Defendants will file an expedited motion to compel.

Very truly yours,

Lawrence T. Kass

cc (via email):
> Christopher Chalsen
> Dan Benjamin
> Michael Shore
> Martin Pascual
> Judge John Unpingco
> Joseph Razzano

# EXHIBIT B

# SHORECHAN
# BRAGALONE LLP

## FAX TRANSMISSION

### April 25, 2007

|  | **NAME** | **FAX** | **PHONE** |
|---|---|---|---|
| **To:** | Lawrence T. Kass<br>Milbank Tweed Hadley &<br>McCloy, LLP | (212) 822-5178 | (212) 530-5178 |

**From:**    **Alfonso Garcia Chan**

**Direct Dial:**    **(214) 593-9110**

**Re:**    *Nanya Technology Corp., et al. v. Fujitsu Limited, et al.*

**Total Pages:**    3

**Message:**    **Please see attached. Thank you.**

The information contained in this facsimile message is attorney-client privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us by mail at the address below.

325 N. St. Paul, Suite 4450, Dallas, Texas 75201 / (214) 593-9110 / (214) 593-9111Fax / www.shorechan.com

# SHORECHAN
# BRAGALONE LLP

Alfonso G. Chan
Republic Center
325 North Saint Paul Street
Suite 4450
Dallas, Texas 75201
214.593.9120 Direct Dial
214.593.9111 Facsimile
achan@shorechan.com

April 25, 2007

**VIA FACSIMILE:**
Lawrence T. Kass
Milbank Tweed Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005

Subject: *Nanya Technology Corp., et al. v. Fujitsu Limited, et al.*

Dear Larry:

Please find this letter as a confirmation of my previous email sent to you.

As previously indicated to you, I believe we can avoid burdening the Court with the parties' contemplated discovery motions. As we discussed during our telephone conference, please consider the following: Plaintiffs will provide substantive responses to Defendants' written discovery requests within 10 days after Defendants serve their prediscovery disclosures required by Local Rule 26.2. Similarly, within 10 days after Defendants serve their prediscovery disclosures, Plaintiffs will provide Defendants with deposition dates for the requested Rule 30(b)(6) categories. Both parties reserve the right to assert privileges and other reasonably warranted objections, as well as the right to seek Court intervention when necessary.

As evident from Judge Manibusan's comments during today's hearing, the parties would be well advised to comply with all the formalities required by the Local Rules. We believe our proposal is more than reasonable, since it substantially shortens our period to respond to your discovery requests from 30 days after prediscovery disclosures to 10 days after prediscovery disclosures, thereby affording you additional time to use our discovery responses in your reply brief and during the Rule 30(b)(6) depositions.

# SHORECHAN
## BRAGALONE LLP

Lawrence T. Kass, Esq.
Milbank Tweed Hadley & McCloy LLP
April 25, 2007
Page 2

Please inform us as soon as practicable whether this is acceptable or whether you have
an alternate proposal.

Sincerely,

Alfonso Garcia Chan / by promise por
Alfonso Garcia Chan

# EXHIBIT C

# MILBANK, TWEED, HADLEY & McCLOY LLP

## 1 CHASE MANHATTAN PLAZA

### NEW YORK, NY 10005-1413

212-530-5000

FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

## FACSIMILE TRANSMISSION

**DATE:**      April 25, 2007

**TO:**

| NAME | FAX NO. | PHONE NO. |
|------|---------|-----------|
| Alfonso Chan | (214) 593-9111 | (214) 593-9120 |

**FROM:**    Lawrence T. Kass, Esq.     **PHONE:**  (212) 530-5178    **FAX:**  (212) 822-5796

**RE:**      *Fujitsu-Nanya Patent Litigation*

| FILE NUMBER: | 35068.02100 | | | 08936 |
|--------------|-------------|---|---|-------|
| NUMBER OF PAGES, INCLUDING COVER: | | 3 | ORIGINALS BY FEDEX/MAIL: | No |

**MESSAGE:**

   PLEASE SEE ATTACHED.

**CONFIDENTIALITY NOTE:**

The information contained in this facsimile message may contain legally privileged and/or confidential information and is intended only for the use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or reproduction of this facsimile is strictly prohibited. If you have received this facsimile in error, we would appreciate your notifying us at 212-530-5014. Thank you.

# MILBANK, TWEED, HADLEY & McCLOY LLP

## 1 CHASE MANHATTAN PLAZA

NEW YORK, N.Y. 10005-1413

———

212-530-5000

FAX: 212-530-5219

LAWRENCE T. KASS
(212) 530-5178 TEL
(212) 822-5796 FAX
LKASS@MILBANK.COM

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

April 25, 2007

## VIA FACSIMILE AND EMAIL

Alfonso Chan
Shore Chan Bragalone LLP
325 N. St. Paul St., Suite 4450
Dallas, Texas 75201

> Re:  *Nanya Technology Corp., et al. v. Fujitsu Limited et al.,*
> No. 06-cv-00025 in the U.S. District Court for the District of Guam

Dear Alfonso:

This responds to your email of this morning and confirmation letter this afternoon ("letter"). During our meet and confer teleconference beginning at 12 a.m. EST this morning, you purported to present a proposal to provide substantive responses to Defendants' discovery requests within 10 days after Defendants serve their pre-discovery disclosures. However, you refused to explain or elaborate upon Nanya's position despite our numerous inquiries. Instead, you assured us that you would elaborate in writing. Yet your follow-up letter still does not address our inquiries.

For example, your letter does not address whether or how the content of any Rule 26(a)(1) disclosures from FMA under your proposal would affect whether Nanya provides full responses to our discovery requests. If the content of the disclosures would not affect Nanya's obligation to provide full responses, then why does Nanya need 10 days? If Nanya envisions that the content of FMA's disclosures may affect Nanya's obligation to provide full responses, then what is to prevent Nanya from simply deeming FMA's disclosures insufficient under its own subjective and biased "standards" and thereby avoid discovery? (We note that FMA has already provided initial disclosures in the Northern District of California case.) Nanya's refusal to answer these and other legitimate questions (posed repeatedly in our teleconference) demonstrates that Nanya's proposal is illusory and improper. Just as Nanya is employing delay tactics in an attempt to moot Defendants' Motion to Immediately Dismiss or Transfer, here, Nanya is using delay tactics to avoid responding to FMA's legitimate jurisdictional discovery requests until those requests are moot.

Alfonso Chan
April 25, 2007
Page Two

        Nanya's attempt to hide behind Local Rule 26.2 is improper.  Pursuant to the
March 5, 2007 Discovery Order, Defendants' disclosures pursuant to Fed. R. Civ. P.
26(a)(1) and L.R. 26.2 are due sixty (60) days after the entry of the Scheduling Order on
May 4, 2007.  Accordingly, those disclosures are not yet due.  The fact that they are not
yet due does not excuse Nanya from participating in jurisdictional discovery.  The same
Discovery Order, which both parties approved on February 16, 2007, discussed discovery
procedures with respect to both parties and never suggested that jurisdictional discovery
would be one-sided, as Nanya is now insisting.  Nor did the order otherwise restrict
Defendants' jurisdictional discovery options.  It was Nanya who sought and received the
current period of jurisdictional discovery, and it is highly improper for Nanya to
stonewall Defendants' legitimate discovery requests during that court-ordered
jurisdictional discovery period.

        Defendants have been more than cooperative in jurisdictional discovery.
Defendants have produced in excess of 118,000 pages of documents responsive to
Plaintiffs' jurisdictional discovery requests.  In contrast, Plaintiffs have yet to produce
one document or any written discovery responsive to Defendants' jurisdictional discovery
requests.  Defendants' requests are more than reasonable and are precisely tailored.
Plaintiffs' objections are meritless and seek only to delay or completely avoid substantive
responses prior to Plaintiffs' opposition to Defendants' Motion to Transfer or Dismiss.
Plaintiffs are seeking to conduct trial / motion by ambush.  The Court will be fully
informed of Plaintiffs' gamesmanship.

        Of course, these same points apply to Nanya's threatened motion to quash FMA's
deposition notices under 30(b)(6).

        As stated in my April 24 letter, Plaintiffs must agree to immediately provide
substantive answers to Defendants' interrogatories and RFAs, and begin rolling
production of documents responsive to its RFPs on May 1, with completion of rolling
production on May 8.  Plaintiffs must also agree to schedule appropriate 30(b)(6)
depositions on or about Thursday, May 10, 2007, as requested in FMA's deposition
notices.

                                                        Very truly yours,

                                                        Lawrence T. Kass

cc (via email):
        Christopher Chalsen
        Dan Benjamin
        Michael Shore
        Martin Pascual
        Judge John Unpingco
        Joseph Razzano

# EXHIBIT D



# SHORECHAN
## BRAGALONELLP

## FAX TRANSMISSION

### April 26, 2007

|  | **NAME** | **FAX** | **PHONE** |
|---|---|---|---|
| **To:** | Lawrence T. Kass | (212) 822-5178 | (212) 530-5178 |
|  | Milbank Tweed Hadley & McCloy, LLP |  |  |

**From:**      Alfonso Garcia Chan

**Direct Dial:**      (214) 593-9110

**Re:**      *Nanya Technology Corp., et al. v. Fujitsu Limited, et al.*

**Total Pages:**      3

**Message:**      Please see attached.  Thank you.

The information contained in this facsimile message is attorney-client privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us by mail at the address below.

325 N. St. Paul, Suite 4450, Dallas, Texas 75201 / (214) 593-9110 / (214) 593-9111Fax / www.shorechan.com



Alfonso Garcia Chan
Republic Center
325 North Saint Paul Street
Suite 4450
Dallas, Texas 75201
214.593.9120 Direct Dial
214.593.9111 Facsimile
achan@shorechan.com

April 26, 2007

**VIA FACSIMILE:**
Lawrence T. Kass
Milbank Tweed Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005

Subject:   *Nanya Technology Corp., et al. v. Fujitsu Limited, et al.*
            (No. 06-CV-00025, in the U.S. District Court, District of Guam)

Dear Larry:

I am writing in response to your April 25, 2007 letter.

Contrary to your allegations, Plaintiffs are not trying "to hide behind Local Rule
26.2['s]" pre-discovery disclosure requirements. Page 6 of Judge Manibusan's April
26, 2007 Order makes clear that the Court's Local Rules must be respected: "the Court
... will not hesitate to impose sanctions in the future, if warranted, when the Local
Rules are not followed." Page 2, lines 20-21 of the Court's Discovery Plan places
Defendants' due date for making disclosures under Local Rule 26.2 at May 4, 2007.
Thus, pursuant to the Court's Discovery Plan and the Local Rule 26.2, Plaintiffs are not
obligated to provide any objections or responses to Defendants' written discovery
requests until 30 days after May 4, 2007, *i.e.*, June 4 (June 3 falls on a Sunday).
Nonetheless, as a courtesy, Plaintiffs provided Defendants with early, provisional sets
of discovery objections and responses on April 23, 2007. As an accommodation to
Defendants' purported urgency, however, Plaintiffs are willing to shorten the 30 day
response period to 10 days, thereby resulting in a discovery response date of May 18,
2007. Plaintiffs believe the 10 day shortened period is more than reasonable, especially
when viewed in light of Judge Manibusan's April 26, 2007 Order affording Defendants
14 days to comply with the discovery requests set forth in Martin Pascual's April 13,
2007 letter.

Of course, Defendants always have the option of imposing an earlier discovery due date
by making earlier pre-discovery disclosures. Absolutely nothing has prevented
Defendants from doing so since this lawsuit was filed.

# SHORECHAN
## BRAGALONE LLP

Lawrence T. Kass, Esq.
Milbank Tweed Hadley & McCloy LLP
April 26, 2007
Page 2

Assuming Defendants will timely comply with Local Rule 26.2, please advise us of your arrangements with and schedule of the American Institute in Taiwan to accommodate the requested Rule 30(b)(6) depositions of Plaintiff Nanya Technology Corporation. Plaintiffs prefer that depositions taken in Taiwan occur before a Travel Services Officer in accordance with 22 U.S.C. §§ 3305 and 3306 (a)(1). Obviously, this information is important and will impact the deposition availability dates Plaintiff can offer.

In closing, Plaintiffs respectfully request that Defendants reconsider Plaintiffs' discovery compromise proposal. In the event Defendants decide to reject the proposal and move forward with a motion to compel, the proposal shall be withdrawn and Plaintiff will stand by Local Rule 26.2 and the regular 30 day response period. Also, in such event, please email us a draft Rule 37.1(b) stipulation, preferably in Microsoft Word format, at your earliest convenience.

Sincerely,

Alfonso Garcia Chan

# EXHIBIT E

1

1

2

3

4

5

**FILED**

DISTRICT COURT OF GUAM

MAR 1 2 2007

MARY L.M. MORAN
CLERK OF COURT

6               IN THE DISTRICT COURT OF GUAM

7                    TERRITORY OF GUAM

8                         * * *

9

10   NANYA TECHNOLOGY CORP., and          )
     NANYA TECHNOLOGY CORP. U.S.A.,        )
11                                         )
                    Plaintiffs,            )
12                                         )
          vs.                              )   CIVIL CASE
13                                         )      NO. CV06-00025
     FUJITSU LIMITED, FUJITSU              )
14   MICROELECTRONICS AMERICA, INC.,       )
                                           )
15                  Defendants.            )
     _____)
16

17

18

19              TRANSCRIPT OF PROCEEDINGS

20                     BEFORE

21      THE HONORABLE JOAQUIN V. E. MANIBUSAN, JR.,
                    Magistrate Judge
22

23              **HEARING ON MOTIONS**

24            **FRIDAY, MARCH 2, 2007**
                       * * *
25



2

1  APPEARANCES:

2

3  **FOR THE PLAINTIFFS:**

4  LAW OFFICES OF TEKER, TORRES & TEKER
   BY:   JOSEPH C. RAZZANO, Esq.
5  Suite 2A, 130 Aspinall Avenue
   Hagatna, Guam  96910

6
   and
7  LAW OFFICES OF UNPINGCO & ASSOCIATES
   BY:   JOHN S. UNPINGCO, Esq.
8  Sinajana Mall, Suite 12B
   Sinajana, Guam

9
   and
10 LAW OFFICES OF SHORE, WEST & FREEMAN
   BY:   KENNETH E. SHORE, Esq.
11 2020 Bill Owens Parkway, Suite 200
   Longview, Texas 75604

12
   and
13 LAW OFFICES OF SHORE, CHAN & BRAGALONE
   BY:   ALFONSO G. CHAN, Esq.
14 325 N. St. Paul Street, Suite 4450
   Republic Center
15 Dallas, Texas 75201

16

17

18 **FOR THE DEFENDANTS:**

19 LAW OFFICES OF CALVO & CLARK
   BY:   DANIEL M. BENJAMIN, Esq.
20 655 S. Marine Corps Drive
   Tamuning, Guam 96913

21

22 LAW OFFICES OF MILBANK, TWEED, HADLEY & MCCLOY
   BY:   MICHAEL M. MURRAY, ESQ.
23 1 Chase Manhattan Plaza
   New York, New York  10005

24

25

1      HAGATNA, GUAM; FRIDAY, MARCH 2, 2007; 10:05 A.M.

2                          *  *  *

3          THE CLERK:  Civil case No. 06-00025, Nanya

4   Technology Corp., versus Fujitsu, Motion To Compel

5   Substantive Responses to Plaintiffs' First Requests for

6   Production to Defendant Fujitsu Microelectronics

7   America, Inc.; Motion To Clarify Magistrate Judge's

8   Order and Motion To Compel Substantive Responses;

9   Motion To Exceed Number Of Interrogatories and Request

10  for Admissions.

11          Counsel, please state your appearances.

12          MR. UNPINGCO:  Yes, Your Honor, John Unpingco,

13  from Unpingco and Associates on behalf of plaintiffs.

14  I'll be taking care of the scheduling order.

15          THE COURT:  All right.

16          MR. UNPINGCO:  And my co-counsel.

17          MR. SHORE:  Dennis Shore, Your Honor, I'll be

18  handling the motion, motion to exceed the number of

19  interrogatories and request for admissions.

20          THE COURT:  All right.  There's others,

21  there's others in the back.

22          MR. RAZZANO:  Joe Razzano and Alfonso Chan,

23  we're going to sit with Mr. Shore on behalf of

24  plaintiffs.

25          THE COURT:  All right.

1          MR. BENJAMIN:  Dan Benjamin and Michael Murray

2    on behalf of the defendants, Your Honor.

3          THE COURT:  Good morning.

4          MR. MURRAY:  Good morning, Your Honor.

5          THE COURT:  Let me gulp some water; I just

6    took some antibiotics and I need to push that down with

7    some water.

8          We're here this morning for basically just one

9    motion.  It appears that the other motions have been

10   resolved and are rendered moot by a stipulation signed

11   by the parties.  And generally, as counsel has said, it

12   appears that the main issue not yet resolved is the

13   plaintiff's motion to exceed the number of

14   interrogatories and requests for admissions.

15         I've reviewed the motion, and the responses.

16   A couple of things I want to bring out before I hear

17   from the parties.

18         It seems that the posture of the case at the

19   present time merely is the complaint that's been filed.

20   I don't believe there had been an answer to that

21   complaint other than the motion to dismiss or to

22   transfer the case to the Northern District.

23         Is that correct, or is that not correct?

24         MR. MURRAY:  Yes, that's correct, Your Honor.

25   Neither defendant has filed an answer yet.

1      THE COURT:  Okay.  So I'm going with the

2   complaint that's before the court.  In looking at the

3   complaint, of course there's a cause of action for

4   violation of the Sherman Antitrust Act, Clayton Act,

5   three counts for infringement of patents belonging to

6   the plaintiff, 15 general counts of non-infringement of

7   patents belonging to the defendant.

8      When I look at these causes of action, and

9   there are actually 50 in number, and compare that with

10  perhaps the issues that are at stake in the Northern

11  District, based on what I read from the complaint, the

12  plaintiffs' causes of action for infringement are at

13  issue there, plus four patents belonging to the

14  defendants that are made an issue there.  So it seems

15  to me, I guess, at the beginning of this argument, that

16  the only patents at issue in the Northern District are

17  seven in number when compared to the number of patents

18  at issue here.  Is that correct?

19      MR. CHAN:  Actually, Your Honor, if I could

20  address that issue.  My name is Alfonso Chan, counsel

21  for plaintiff Nanya Technology Corporation.  The Nanya

22  filed an answer and counterclaims in the Northern

23  District of California, and in that answer and

24  counterclaims, it is true that the three Nanya patents

25  are at issue.  But in addition, the other 15 Fujitsu

```
 1   patents were placed at issue --
 2            THE COURT:  To your answer?
 3            MR. CHAN:  Yes, and also the antitrust claims
 4   as well.  So now the same claims are at issue --
 5            THE COURT:  In both courts.
 6            MR. CHAN:  -- in both courts, yes.
 7            THE COURT:  All right.  And the other thing,
 8   I had hoped perhaps that the parties would come to a
 9   meeting of the minds regarding this issue, because it
10   appears to affect both sides of the equation.  I gather
11   from the defendants that if the court were to allow
12   plaintiff's motion, I suppose that they're going to be
13   treated the same way.  So I just want to have the
14   parties keep that in mind.
15            And I note for purposes of my reading of these
16   memoranda that one of the main contentions of the
17   defendant is the fact that generally the rules have not
18   been complied with, technically, by the furnishing of
19   the proposed interrogatories or admissions which would
20   actually provide a basis for finding a need to exceed
21   such a limit.  And those are important issues that
22   defendants have raised that I think perhaps also
23   plaintiff should deal with in that motion.
24            So let me hear from plaintiff at this point.
25            MR. SHORE:  Judge, I'm Kenneth Shore; I
```

1  represent Nanya.

2          THE COURT:  And just before we begin, also, my

3  understanding of the motion is that you want to serve

4  generally a beginning set, and once those sets have

5  been I suppose answered, you want to serve a second

6  set.

7          MR. SHORE:  Yes, Your Honor.

8          THE COURT:  So all together we're looking at

9  perhaps 2,000 in number, because you have the two

10 antitrust claims in addition to the 18 patents.

11         MR. SHORE:  I think it's 1800 would be the

12 amount that we're actually requesting, Your Honor.

13         THE COURT:  But you have 1800 representing,

14 those would represent 18 patents; right?

15         MR. SHORE:  One for each patent, Your Honor,

16 one set.

17         THE COURT:  But you're also asserting an

18 additional 25 for the two claims, the two antitrust

19 claims.

20         MR. SHORE:  Correct, Your Honor, but I think

21 1800 should be enough.

22         THE COURT:  Okay, I see.  So the cap is 1800.

23         MR. SHORE:  And that's what we're asking for.

24 I think within the 1800 we can probably hit the

25 antitrust claims as well.

1      THE COURT:  All right.

2      MR. SHORE:  To start off, Judge, I just want

3  to go through quickly the background of the case.  This

4  controversy is actually about seven years old, and the

5  parties have been negotiating or discussing some

6  allegations that Fujitsu has made against Nanya about

7  various patents, including some Japanese patents and

8  U.S. patents and some other foreign patents.  And when

9  this issue first arose, you know, the parties

10  negotiated I think in good faith for a number of years;

11  when those negotiations broke down, Fujitsu filed a

12  suit in Tokyo District Court against Nanya asserting

13  one Japanese patent, but at the same time they were

14  demanding a billion dollars to settle that case and a

15  license for worldwide sales of Nanya's products.  So

16  the issue here and the amount in controversy, you know,

17  is huge, and this is a critical case for my client.

18      And that also comes back to our counterclaims,

19  and our counterclaims kind of -- they focus around the

20  coercive nature of these negotiations and the coercive

21  nature of the Tokyo lawsuit.  In order to settle the

22  Tokyo lawsuit, they've also asserted several U.S.

23  patents that have expired, U.S. patents that we clearly

24  do not infringe, and U.S. patents that are invalid.

25  And what they're trying to do is basically threaten to

1    exclude Nanya from the Japanese market by tying

2    licenses for U.S. patents over products that we don't

3    infringe and tying licenses to expired U.S. patents to

4    access to the Japanese markets.  And that's kind of the

5    basis of our antitrust claims.  Those claims are

6    obviously very complicated and those antitrust claims

7    alone are a very large and complex case.  And that's

8    kind of what forced us to seek the protection from this

9    court, protection for our access to U.S. markets,

10   protection to our sales in these markets and our profit

11   margin in U.S. markets, including this market here in

12   Guam.

13           So there are now 18 patents at issue in this

14   case, the 15 Fujitsu patents that Fujitsu has asserted

15   against Nanya, and then we've also asserted three

16   patents of our own.  But by asserting these patents

17   against Fujitsu, judge, I want to stress to the court

18   that Fujitsu's framed this controversy, Fujitsu is the

19   one who brought 8 -- 15 different patents.  So the

20   complexity of this case is actually a result of

21   Fujitsu's actions and we --

22           THE COURT:  But the cause of action in

23   Northern California only raises seven in total.

24   You've brought the others through your counterclaim.

25           MR. SHORE:  Exactly, Your Honor.  But that's

1    the ones they asserted in the Northern District of

2    California, but that's not the ones they've asserted

3    against us in the negotiations in Tokyo.

4            THE COURT:  But does that -- you see, one of

5    the problems I hear here, or I see here, is that I see

6    these claims generally are of -- it's like a person

7    saying I haven't committed a crime but yet the

8    government hasn't prosecuted legally, as to those

9    non-infringing claims.

10           MR. SHORE:  Well, Your Honor --

11           THE COURT:  And in the absence of an answer,

12   they might say, well, yeah, you haven't infringed.

13           MR. SHORE:  Well, Your Honor, the Declaratory

14   Judgment Act allows this court to have jurisdiction

15   over any ripe controversy, any real controversy between

16   the parties.  They've asserted all these 15 patents

17   against us in the negotiations in Tokyo.  We chose the

18   15 Fujitsu patents --

19           THE COURT:  But assuming they did that in

20   Tokyo, though, in the Northern District litigation,

21   they did not assert that.

22           MR. SHORE:  But they filed that case after we

23   filed this case, Your Honor.  We chose those 15 patents

24   based upon the 15 patents that they've accused us of

25   infringing.  I mean, they've given us a letter, you

1  know, it took us a while to get the letter out of them,

2  but we got a letter out of them saying here's the

3  patents, here's the U.S. patents that we think Nanya's

4  infringed.

5       THE COURT:  But does it make it ripe for

6  discovery here when I don't see anything that puts it

7  at issue?

8       MR. SHORE:  Well, they've demanded that we pay

9  them licensing fees for those patents.

10      THE COURT:  In the non-legal setting.  But in

11 the legal setting here, there's been no answer in the

12 Northern District, they've not actually made it an

13 issue.  I'm just raising it for purposes of discovery.

14      MR. SHORE:  Well, they have made it -- I think

15 they have made it an issue, Judge, by accusing us of

16 infringing those patents.  You know, they have --

17      THE COURT:  But, you know, I can say that to

18 you outside the courtroom, hey, you've infringed my

19 patents, but as long as I haven't filed something

20 formally, it never becomes an issue in the legal

21 setting.

22      MR. SHORE:  Judge, I'm not sure that is a

23 requirement to grant the court declaratory judgment

24 jurisdiction.  If that were the case, well, then you

25 couldn't file declaratory judgment until someone has

```
 1    sued you for --
 2            THE COURT:  But in a sense you're saying I
 3    haven't committed a crime, and the government is not
 4    charging you.
 5            MR. SHORE:  Well, they've accused us of it.
 6    And in order to get it off of our back, in order to let
 7    us get on with our business and let us sell our
 8    products without this threat of a billion dollar
 9    lawsuit, we have a right under the U.S. Code to --
10            THE COURT:  But don't you have a right to
11    continue to do business unless some legal action is
12    brought against you?
13            MR. SHORE:  We should be able to do that
14    business without -- you know, clear of any threats,
15    Your Honor.  I mean, they've made explicit threats, and
16    you know, explicit assertions of these patents against
17    us.
18            THE COURT:  The threats could be baseless, you
19    know.
20            MR. SHORE:  Which they are baseless, Your
21    Honor, and that's why we filed the declaratory judgment
22    alleging that we don't infringe, the patents are
23    invalid and unenforceable.  And we do think they're
24    baseless, you know, that's what we think.  And in order
25    to get this controversy finally behind us, we have the
```

1    right to come in and file declaratory judgment actions

2    since they've made explicit allegations of infringement

3    of those patents.

4            THE COURT:  All right.

5            MR. SHORE:  And with all these patents at

6    issue, Judge, I think when you're considering how to

7    manage the discovery in this case, the Manual For

8    Complex Litigation talks about early identification and

9    clarification of issues critical to discovery control.

10   And I can't emphasize enough that this case really

11   involves the joinder of 19 different cases.  There are

12   18 -- this is 18 patent lawsuits in one, the joinder of

13   18 patent lawsuits and an antitrust suit.

14           So in addition to the discovery for the 18

15   patent lawsuits and the one antitrust lawsuit, we also

16   have the issue of personal jurisdiction discovery, and

17   so there is, you know, so there's a need for a large

18   number of discovery in this case, Judge, because we

19   could have brought each one of these patent cases, each

20   one of these patent cases could be brought as an

21   individual case.  You know, if you file a patent case

22   with one patent, you get 25 interrogatories and 25

23   requests for admissions.  But this is not just one

24   patent, it's 18 patents, 18 patent cases.

25           And when you look at Rule 26(b)(2)(iii),

1    Judge, in determining the scope of discovery that

2    you're going to allow and the amount of discovery

3    you're going to allow, the court generally should look

4    at the burden and extent and determine whether or not

5    they outweigh the likely benefits.  And Rule 26 gives

6    us five different things to consider.  It gives us the

7    needs of the case, the amount in controversy, the

8    parties' resources, the importance of the issues at

9    stake, and the importance of the proposed discovery in

10   resolving that dispute.  And I'll discuss each one of

11   those briefly, Your Honor.

12            THE COURT:  Let me ask you this to begin with.

13   Local Rule 33.1, does it contravene any Federal Rule of

14   Civil Procedure?

15            MR. SHORE:  Excuse me, Judge?

16            THE COURT:  Local Rule 33.1, does that

17   contravene any Federal Rule of Civil Procedure?

18            MR. SHORE:  Judge, under the Federal Rules of

19   Civil Procedure and under the local rules, you have the

20   power and it's within your discretion to tailor the

21   discovery in your cases the way you think it should

22   be --

23            THE COURT:  The rules currently say that if

24   you want to exceed these numbers, you must serve

25   additional interrogatories, you shall submit to the

1   court --

2       MR. SHORE:  And, Judge, you're talking about

3   the sample interrogatories?  We've actually got sample

4   interrogatories.  But in this case, sir, what I wanted

5   to do with you today is go through all the different

6   issues that are going to be pertinent in each of those

7   patent cases.  And there's going to be discovery in

8   each one of those.  I mean, obviously, it would be

9   very burdensome for us on the front end to draft 1800

10  interrogatories and submit them to you to determine

11  whether you should allow us to draft and serve 1800

12  interrogatories.

13      THE COURT:  But isn't the whole purpose of

14  33.1, isn't the whole purpose of that rule is to say to

15  you, well, draft these interrogatories first so that

16  those can be -- it seems to me that you haven't done

17  any drafting in terms of what these requests might be,

18  but you're asking the court at this point to grant, you

19  know, in a sense what the defendants say as a blanket

20  rule in terms of numbers.  And at this point your

21  request really appears to be very reasonable, it's

22  just, well, what are the contours?

23      MR. SHORE:  And Rule 33 --

24      THE COURT:  And that's my problem, I don't

25  know what the contours are, in light of the fact that

```
1    the first requirement of the rule has not been met.
2         MR. SHORE:  Well, that rule is in place
3    obviously to help you, Judge.  I mean that rule is in
4    place to --
5         THE COURT:  Well, to help me and also to help
6    the defendant in terms of perhaps what objection they
7    may make to your request.
8         MR. SHORE:  But I think the defendants are
9    pretty aware of the different issues that arise in
10   patent cases.
11        THE COURT:  I know they are.
12        MR. SHORE:  I mean, they've litigated hundreds
13   of these things.  They know exactly what we're going to
14   ask.  Rule 33.1 is there for you, Judge.  I mean, you
15   have -- I mean, it's there to give you information and
16   make it easier for you to determine how you want to
17   tailor discovery in the cases that you preside over.
18        THE COURT:  Well, let me ask you this.
19   Supposing you ask one question in terms of all of these
20   patents, how have we infringed, that's one question.
21        MR. SHORE:  I've got -- I'll go --
22        THE COURT:  I'm just -- just for purposes of
23   argument, you ask one question:  In terms of all of
24   these patents, how have we infringed these patents that
25   you say we've infringed upon.
```

1        MR. SORE:  Well, I mean --

2        THE COURT:  Would that be a fair question or

3   not?

4        MR. SHORE:  That's a fair question, I mean --

5        THE COURT:  And that's my one question.

6        MR. SHORE:  That's one question we will have

7   in the interrogatories, and actually there will be

8   several different interrogatories going to that same

9   question, how do you allege that Nanya infringes these

10  patents.

11       THE COURT:  Right, that would be the second

12  question.

13       MR. SHORE:  And then there's questions:  Did

14  they do a proper Rule 11 investigation before they

15  asserted the patents against Nanya.  What evidence do

16  they show that Nanya had actual or constructive notice

17  of the patents.  You know, we have interrogatories

18  going to whether or not Fujitsu actually owns the

19  patent, whether or not --

20       THE COURT:  See, that's what I'm saying.  All

21  of these questions, instead of it being 500, can be

22  reduced to say a hundred, 150 questions.

23       MR. SHORE:  But --

24       THE COURT:  At the initial stage.

25       MR. SHORE:  At the initial stage there's a lot

1    of different issues that go with each and every patent.

2    There's the Rule 11 investigation; there's notice;

3    there's ownership, you know, did the named inventors

4    actually invent the patent; did they disclose the

5    patent invention one year prior to the filing date,

6    which would invalidate the patent; were there prior

7    inventions that contemplated the invention of each

8    patent or rendered the invention obvious, which goes to

9    validity and enforcement. How was each one of the

10   patents conceded and reduced to practice, which goes to

11   validity and enforceability.

12        There's claim terms, like take the 428 patent,

13   for example, there's claim terms like data-latch

14   circuits, I mean, there's strobe signals, clock

15   signals. What's a data-latch circuit? How would

16   someone familiar, skilled in the art define that? Or

17   how they would understand that. Is there extrinsic

18   evidence that they want to bring in to construe these

19   claim terms, or what intrinsic evidence do they want to

20   -- I mean, it just goes --

21        THE COURT: Can those be obtained through

22   depositions?

23        MR. UNPINGCO: A moment please, Your Honor.

24        THE COURT: Yes.

25             (Pause/plaintiffs' counsel conferred.)

1          MR. SHORE:  Judge, if you like, I've got a

2    presentation that goes through each one of these

3    issues.  Of course, we're going to have, you know, with

4    each patent, we're going to have all of these issues.

5    Disclosure will help flush them out.  Once these

6    issues, all these different issues that arise in any

7    patent case, once we get the initial set of discovery,

8    that will raise additional issues, but that allows us

9    to go into the depositions knowing what to ask.

10          I mean, we can't go into -- as interrogatories

11    in any case, when I send a set of interrogatories, I

12    get the answers to the interrogatories, that helps me

13    plan how I'm going to depose someone, that lets me know

14    what questions I want to ask.  But if I go into a

15    deposition blind, I go into deposition and I don't know

16    what they're going to allege, you know, constitute a

17    constructive notice, I don't know what the ownership

18    issues are, I don't know how they're saying this

19    invention was conceived and reduced to practice, I

20    can't go into a deposition.  Very unproductive for me

21    to go into a deposition and try to start from scratch

22    in discovery with the deposition without having these

23    questions answered.  And these are questions that arise

24    in every single patent case.

25          If you'd like I can go through the

1    presentation that I've prepared for you today, that

2    we've prepared for you today to show an example patent,

3    the 428 patent, and the types of issues that are going

4    to arise with that one patent.  There's even a sample

5    of -- we've got a sample.  For example, I can show you

6    a copy of the 428 patent, I've got it right here in one

7    -- which is just one of the 18 patents.

8              May I approach, Your Honor?

9              THE COURT:  Yes, you may.

10             MR. SHORE:  Which is just one of the 18

11   patents that's going to be at issue in this case.  In

12   addition, I've got a presentation I can go through --

13             THE COURT:  Is the problem -- is the problem,

14   though, that you haven't actually drafted these

15   interrogatories?

16             MR. SHORE:  They're actually drafted in this,

17   they're drafted right here, Judge.  And may I approach

18   again, Your Honor?

19             THE COURT:  Yes.

20             (Handing documents to the court.)

21             MR. SHORE:  In this presentation that I've

22   prepared for you on the 428 patent, it's just an

23   example of one of these patents, one of 18 patents in

24   suit, Judge.  This one was filed on January 29, 1999

25   by Fujitsu listing two inventors.  Inventorship is

1   obviously going to be an issue, as in any patent.
2   We've got the effective -- the priority date of the
3   claim is actually 1998, and that's through a treaty
4   with Japan, because there was a previous Japanese
5   patent.  And the patent issued September 18, 2001.
6           This patent, semiconductor device reconciling
7   different timing signals, there are 42 different claims
8   in this case, in this patent, five independent claims
9   and 37 dependent claims.
10          And then, for example, we can go to claim one.
11  A semiconductor device which receives addresses in
12  synchronism with the clock signal and receives data in
13  synchronism with a strobe signal, said semiconductor
14  device comprising address-latch circuits which latches
15  the address.
16          And you can kind of see what we're talking
17  about, claims construction, just right here, Judge.
18  What would someone skilled in the art, how would
19  they -- what is an address-latch circuit.  What is a
20  semiconductor device.  These all could be, you know,
21  claim issues with regard to defining these claim terms.
22  And this is just one of five independent claims.  And
23  then the dependent claims further define the scope of
24  the patent with regard to each of the independent
25  claims.

1          And then, Judge, once we move on, there's

2    interrogatories, 25 interrogatories.  These

3    interrogatories that we prepared for you today, Judge,

4    these interrogatories assume that we do adopt the

5    Northern District rules, Northern District local patent

6    rules, which, and you can see, Judge, Northern District

7    local patent rules.  But you have the first --

8          THE COURT:  I'm biased toward the Northern

9    District; I went to school in the Northern District.

10          MR. SHORE:  Okay.  You have Rule 11

11    investigation; in other words, what Rule 11

12    investigation prior to securing the patent did they

13    conduct.  Did Nanya have actual or constructive notice.

14          Then you go on to ownership.  Does Fujitsu

15    actually own the patent.  Did Tomita and Kanda actually

16    invent the patented device.  You know, did Fujitsu

17    disclose the patent devices more than a year prior to

18    the filing for the patent.  Are there prior inventions

19    that contemplated or rendered obvious the invention

20    disclosed in the 428 patent.  You have, how was the 428

21    conceived and reduced to practice.

22          You know, how will Fujitsu seek to construe

23    claim terms such as address-latch circuits, strobe

24    signals, clock signals, data light memory circuits,

25    address input circuits, timing signals, all these

1    different things need to be defined.  So, and for each,

2    you know, and this is just claim terms in this one

3    claim, one independent claim in one of the patents, and

4    there's 18 different patents.

5         What extrinsic and intrinsic evidence does

6    Fujitsu intend to use to define these claim terms.

7    What other manufacturers' products does Fujitsu allege

8    infringe.  Which claims can be construed as mean plus

9    function claims, under 35 USC, Section 112.  What

10   Nanya products does Fujitsu allege infringe the 428

11   patent.  What evidence does Fujitsu intend to use to

12   prove infringement for each of the independent claims.

13        And in each claim in this patent, Judge,

14   there's five, claim one, claim nine, claim eight, claim

15   41 and claim 42; so in each one of the patents, 18

16   patents, you may have four or five independent claims.

17        Does Fujitsu contend that Nanya directly

18   infringes, induces infringement, or contributes to

19   infringement.  Does Fujitsu intend to show willful

20   infringement, and if so, how they intend to do that,

21   which is important, because that would be an issue for

22   attorneys' fees and other things.

23        You know, what are Fujitsu's alleged damages.

24   Are there other licenses out there establishing a

25   reasonable right.  What are the sales of Fujitsu

1    products incorporating this invention.  What are the

2    sales of Nanya products incorporating this invention.

3    How important are the features contemplated by the

4    invention of the 428 patent to the functionality of the

5    devices.  Is that something that really matters to the

6    end user or original equipment manufacturers, making

7    the invention more valuable.  Are there any exceptional

8    circumstances with the infringement here which would

9    entitle one side to attorneys fees.

10          And then you have a whole host of issues with

11   invalidity and unenforceability, patentability issues,

12   inequitable conduct at the patent office, laches,

13   patent misuse.

14          So, as you can see, Judge, for each one of

15   these patents, you have literally dozens of issues that

16   have to be flushed out.  And in allowing these

17   interrogatories, you know, allows -- gives us, each

18   side the opportunity to do targeted depositions, and

19   the depositions would be much more productive if this

20   information in this discovery is flushed out first

21   with, with interrogatories.

22          And just getting back, I mean, obviously, the

23   importance of the discovery in resolving the issues in

24   this case is absolutely critical, and the needs of this

25   case, this additional discovery is absolutely critical.

1    But if you look at the other Rule 26(b)(2)(iii)

2    factors, (b)(2)(iii) factors that the court would look

3    at, the amount in controversy--their initial demand was

4    over a billion dollars--the amount in controversy still

5    is hundreds of millions of dollars.  I mean, obviously,

6    that factor weighs strongly in favor of allowing

7    expansive discovery.

8         The parties' resources.  This isn't David and

9    Goliath, I mean, this is basically Goliath and Goliath.

10   I mean, each side has hundreds of millions and billions

11   of dollars in sales, each side has plenty of lawyers

12   working on its side to get this work done.  Each side

13   believes the case is critical, and can garner the

14   resources necessary to get this discovery done.

15        The importance of the issues at stake, the

16   third factor.  I can't over-emphasize how important

17   this is to Nanya.  I mean, this is an industry with

18   razor-thin margins, and Fujitsu is demanding license

19   fees of 3 percent on every product Nanya sells on this

20   entire planet.  That is an absolutely critical issue to

21   my client.

22        THE COURT:  That's related to the antitrust

23   issue, though.

24        MR. SHORE:  No, that's a Rule 26(b)(2)(iii)

25   factor:  Needs of the case, amount in controversy, the

1    parties' resources, the importance of the issues at

2    stake, and the importance of the proposed discovery in

3    resolving the case.

4         THE COURT:  But I assume the discovery date

5    would be related to your antitrust claims?

6         MR. SHORE:  Of course it's related to our

7    antitrust claims, but it's related to the patent claims

8    as well.  I mean these are the factors that you'll

9    consider when you determine whether or not to grant

10   this discovery is the importance of the issues at

11   stake.  And, obviously, if it's an industry with razor-

12   thin margins, if we have to pay a royalty to Fujitsu,

13   it might us process out of certain markets.  This is a

14   critical case to our client.  And when you have such

15   critical issues, those are the kind of cases where the

16   court should grant expansive discovery.  You know, and

17   Fujitsu obviously feels that the patents at issue in

18   this case are critically important.

19        But, you know, I can't -- in summary, Judge,

20   I just want to emphasize that this is not one case,

21   this is 19 different cases.  You know, once we get past

22   all of the issues with the patents, the 18 different

23   patents, and all the discovery that we just went over,

24   we still have the issues of the antitrust.  You know,

25   what's the relevant market, what other licensing

1    arrangements does Fujitsu have.  Are there collusive

2    licensing arrangements with other semiconductor

3    manufacturers.  Is this a scheme to exclude certain

4    manufacturers from the market by placing licensing

5    burdens on them which basically push them out of the

6    industry.  We're not the only ones to ever make these

7    kind of allegations against Fujitsu.  They're defending

8    plenty other antitrust cases as well related to similar

9    conduct.

10           And then we have the whole issues with

11   jurisdictional discovery.  I mean, the discovery in

12   this case is critical.  It's not one case, this is

13   really 19 different cases; and whether this was an

14   antitrust case standing alone, we get 25

15   interrogatories, 25 requests for admissions at least.

16   And antitrust case is an extremely complicated case in

17   its own right.  And then you have 18 different patent

18   cases, each with their issues of validity,

19   infringement, enforceability, you know, the complex

20   issues that we went over earlier.

21           So, I would ask the court to look at this case

22   not as one case, but as 19 different cases, and each of

23   the 19 cases has its own host of issues that need to be

24   explored in discovery.  And the only way we can do

25   this, the only way we can prepare for the depositions,

1    the only way we can prepare for trial in this case is

2    to have the expansive discovery that we've asked for.

3              Thank you, Your Honor.

4              THE COURT:  Counsel.

5              MR. MURRAY:  Good morning, Your Honor, I'm

6    Michael Murray representing the defendants.

7              Your Honor, I'd like to start off just briefly

8    addressing some of the background statements that

9    Mr. Shore made.  He made some allegations about Fujitsu

10   asserting expired patents improperly, and improperly

11   trying to tie the litigation going on in Japan to the

12   worldwide markets, et cetera.

13             Now those are really off point for the topic

14   of today, but I just want to briefly say that none of

15   that is true.  The action filed in Japan involves a

16   Japanese patent; Fujitsu has been willing from the

17   beginning to grant a license under that patent alone.

18   Nanya doesn't like the terms of the license that was

19   offered under that patent.  There's been no

20   inappropriate attempts to tie settlement of the

21   Japanese case to some sort of worldwide license, so

22   that's just not true.  Neither is it true that Fujitsu

23   has demanded a billion dollars in connection with the

24   Japanese litigation.

25             But let me move on to the issue of this

1    particular motion.  Basically, Your Honor, this motion

2    is extremely premature, for a number of reasons.  First

3    of all, as Your Honor noted, we have not yet even filed

4    an answer in this case.  What's happening right now is

5    there is jurisdictional discovery going on.  Nanya has

6    not filed any interrogatories in connection with the

7    jurisdictional discovery, so apparently they don't feel

8    that they need interrogatories in order to resolve the

9    jurisdictional issues.

10             The motions to dismiss and transfer have been

11   set for hearing, we're moving forward with document

12   production, we have a stipulation between the parties

13   to sort of stage the discovery and the briefing on the

14   jurisdictional issues.  So we certainly think that the

15   jurisdictional issues should be resolved before the

16   court deals with sort of the proper scope of the merits

17   discovery that should go on in this case.

18             Second, Mr. Shore has really not given the

19   court a good reason for disregarding Rule 33.1.  Rule

20   33.1 sets forth a perfectly reasonable procedure for

21   obtaining additional interrogatories.  If they want

22   additional interrogatories, they should write the

23   interrogatories down, submit them.  First, of course,

24   have a meet and confer with us to discuss the

25   interrogatories.

1            The 25 interrogatories that Mr. Shore showed
2    the court this morning I saw for the first time about
3    ten minutes before this hearing.  So there's been
4    really an unfortunate reluctance on the part of
5    plaintiff in this case to meet and confer with us and
6    try to work through things.  What they should do is
7    follow the local rules.  They should serve the 25
8    interrogatories that they're entitled to serve, they
9    should then write any additional interrogatories that
10   they feel needed, sit down with us and discuss them, we
11   might be able to agree to the interrogatories.  If
12   there's some disagreement between the parties, the
13   interrogatories that we agree about should be presented
14   to Your Honor, under Rule 33.1, and if necessary, we
15   can have argument on those particular interrogatories.
16   But to just grant a blank check for 900 interrogatories
17   would just be extremely burdensome, especially this
18   early in the case when, as I said, we haven't filed an
19   answer yet, we really don't know exactly what the
20   posture of the case is going to be a few months from
21   now.
22            This same relief was requested, interestingly,
23   in the Northern District of California, as part of the
24   initial scheduling before Judge Wilkin; they asked for
25   25 interrogatories per patent, they got zero.  There

1   was no additional interrogatories granted in the

2   scheduling order that came out of the Northern District

3   of California.

4        Now, looking at the particular issues that

5   Mr. Shore talked about and the sample interrogatories,

6   as I mentioned, I had very little time to look at them,

7   really just as he was speaking, but a lot of these

8   issues really can be resolved through other ways.  The

9   way that a lot of the issues are settled in terms of

10  ownership of the patents and things like that is

11  through documents.  And they have in fact served 1500

12  document requests on us already.  They're going to get

13  documents beginning either this week or early next week

14  the documents will start coming, so Mr. Shore won't be

15  going into deposition blind.  He will have documents,

16  he'll see the assignments, for example, of rights in

17  the patents to Fujitsu, he'll have time to study them

18  and then he can go into a deposition and ask questions

19  about them.  Or if he feels at that time he has to do

20  it through interrogatories, he can follow the local

21  rules and request additional interrogatories.

22       The system that is set up in the Northern

23  District of California for claim construction is the

24  system that we think really is most appropriate here,

25  which is Local Rule 4-2 in the Northern District of

1    California.  Local Rule 4-2 sets forth a procedure for

2    resolving the claim construction differences, when

3    figuring out what are the terms that are really

4    important in the claims that need to be construed.

5    According to Rule 4-2, there is an exchange of

6    preliminary claims construction and extrinsic evidence,

7    the parties exchange lists of terms that they feel need

8    to be construed, the parties meet and confer to try to

9    narrow those issues.

10           Now the Northern District of California

11   implemented these local rules really as a result of

12   having parties go through claim construction through

13   this sort of interrogatory way that Mr. Shore is

14   proposing here by serving lots and lots of contention

15   interrogatories, and it's a big burden on the parties;

16   it costs a lot of money to answer all these

17   interrogatories.  With 900, Mr. Shore will ask us to

18   define virtually every word in these claims, which is

19   really going to be very burdensome and ultimately not

20   very useful for the case.

21           And the way that the Northern District of

22   California ultimately set up for parties to resolve

23   these things is through the local rules, which is a

24   nice, straightforward procedure, reduces the burden on

25   both sides, and through that procedure -- and we've

1    been through this many times -- the parties usually

2    come to some agreement on what they disagree about.

3    Okay.  There are these 20 terms at the end of this

4    process, maybe there are 20 terms that need to be

5    construed, and that forms the basis for going into the

6    so-called Markman claim construction hearing where the

7    court resolves the claim construction disputes.  It's

8    not through hundreds of interrogatories, that process

9    that Nanya suggested just doesn't make sense, it's very

10   burdensome, and we would suggest that when we get to

11   that point, that the procedures set forth in local

12   rule --

13          THE COURT:  The process that you're suggesting

14   does not exist here, though.

15          MR. MURRAY:  It does not exist here, but Nanya

16   has in fact suggested that the local rules be adopted

17   for this case.  We don't think that the court should or

18   needs to wholesale adopt the local rules, but the

19   parties can come to some agreement, I think, that Local

20   Rule 4-2 -- I don't think Nanya is suggesting that the

21   court adopt everything excepting Local Rule 4-2.  So

22   Nanya is suggesting, and we agree, that Rule 4 is an

23   appropriate way to resolve the claim construction

24   issues.  And once we go through that process, a lot

25   of this will shake out and it won't be necessary to