1  burden the parties with hundreds and hundreds of

2  interrogatories directed to the claim construction.

3        So what Mr. Shore is proposing here is really

4  going to be extremely burdensome, it's really not going

5  to move the case forward, it's going to cost a lot of

6  money, and I think that there's just a much more

7  efficient way to do it.  And there's been no good

8  argument made here today why the local rules should be

9  disregarded, which is what he's asking the court to do.

10  He's asking the court to set aside the local rule with

11  respect to interrogatories and adopt a completely

12  different procedure to just allow them to serve as many

13  interrogatories, you know, up to this 900 limit as they

14  want, without putting them forth in advance, without

15  meeting and conferring us, and it's really just going

16  to be a very burdensome process, Your Honor.

17        THE COURT:  Well, let's assume that they file

18  with you, and tomorrow all the interrogatories that

19  they want to ask the court to approve, what happens

20  then?

21        MR. MURRAY:  Well, I think that that would be

22  a good first step for them, because that would be in

23  accordance with the local rules, and we would sit down

24  and try to negotiate with them and work something out.

25  If the interrogatories are reasonable and we think will

| | |
|---|---|
| 1 | move discovery forward in this case, perhaps we would |
| 2 | agree to them.  If we think they're not and then -- |
| 3 | THE COURT:  The interrogatories that they file |
| 4 | today, you said you've looked at it briefly; are these |
| 5 | reasonable as far as the defendant is concerned? |
| 6 | MR. MURRAY:  I think some of them are clearly |
| 7 | not reasonable.  But I would, you know, I would request |
| 8 | time to study them and discuss them with my client and |
| 9 | find out what, what the burden would be on us to |
| 10 | respond to them.  I think a lot of these -- a lot of |
| 11 | the information they're looking for here can and should |
| 12 | be obtained through means less burdensome than |
| 13 | interrogatories, like documents.  I think they should |
| 14 | wait and get the documents that they've asked for and |
| 15 | see whether they still need this information after |
| 16 | getting the documents.  They want to know -- well, some |
| 17 | of them ask us to identify documents, identify |
| 18 | documents concerning -- |
| 19 | THE COURT:  But the documents won't be |
| 20 | received by them until sometime in April, I think. |
| 21 | I think the stipulation calls for providing these |
| 22 | documents in April. |
| 23 | MR. MURRAY:  Well, the parties have agreed |
| 24 | and stipulated to sort of staged discovery here, where |
| 25 | we're going to focus first on the jurisdictional |

1    discovery, which is what the parties really need to

2    focus on going into the hearing on the motion to

3    dismiss.  So they're getting the documents for the

4    jurisdictional discovery --

5              THE COURT:  In April.

6              MR. MURRAY:  No, now.  In fact, the April

7    cut-off I think is the end of document discovery, not

8    the beginning of it.  We're going to be producing

9    documents, if not today -- I was just in touch with my

10   office before I came in here to find out the status of

11   that.  I have five lawyers screening documents all week

12   trying to get them produced, and we'll certainly be

13   starting to produce documents next week.

14             So they will not have to wait long to start

15   getting that information, and they can evaluate that

16   information, and then see what they need reasonably

17   after that, and they can sit down and say, well, we

18   want to serve these 50 interrogatories directed to, you

19   know, whether or not Fujitsu owns the patents.  And

20   I'll say to them, well, look at these documents, here

21   are all the assignments, here are all the documents

22   relating to ownership, you have all that information,

23   you don't need an interrogatory.

24             Similarly, the proposed interrogatories on the

25   construction of the claims, we're going through the

```
 1    process in California right now where I'm about to give

 2    them our preliminary infringement contentions.  The

 3    preliminary infringement contentions go through all of

 4    the claims that we're asserting and explain exactly how

 5    they infringe, and we give them claim charts --

 6            THE COURT:  Those relate only to the seven

 7    claims that are at issue here?

 8            MR. MURRAY:  Right.  Well, we're doing that

 9    for the --

10            THE COURT:  For the seven claims?

11            MR. MURRAY:  Well, for the four.  There are

12    four patents that we have asserted in California.

13            THE COURT:  Because there's three that you say

14    you're not infringing.

15            MR. MURRAY:  Right.

16            THE COURT:  There are seven in total number.

17            MR. MURRAY:  That's correct, Your Honor.  So

18    they'll give us preliminary infringement contentions

19    for their three patents, we give them for our four, and

20    when we get to that stage in this case when we answer

21    and we see what patents are in this case, we would do

22    the same thing.  That's a very efficient way of moving

23    the ball forward on the infringement issues.

24            THE COURT:  But that leaves eight patents,

25    though, that are made an issue here, that's presumably
```

```
 1    not being exchanged there, in terms of infrangibility,
 2    claims of infringement.
 3             MR. MURRAY:  Yes, but those, they're not yet
 4    in California because it's really just isn't ripe yet.
 5    But they have now added the additional Fujitsu patents
 6    in their answer and counterclaims, they've asked for a
 7    declaratory judgment of non-infringement, et cetera,
 8    for those same patents.  Not all the same patents are
 9    in both cases.
10             THE COURT:  But they want discovery as to
11    these eight other patents now.  At least that's what
12    they're seeking.  At least.
13             MR. MURRAY:  Right, and I'm suggesting that
14    it's premature.  It's premature in Guam to demand that
15    discovery through interrogatories, certainly, or even
16    through preliminary infringement contentions, because
17    we have moved to dismiss for lack of jurisdiction.  We
18    don't believe that there is jurisdiction over the
19    Fujitsu defendants, and we think that issue should be
20    resolved first.
21             THE COURT:  But, you know, assuming that the
22    motion is denied, where does that leave the parties in
23    terms of discovery effort that has completely stalled
24    for months because we've awaited a decision on the
25    motion?
```

1        MR. MURRAY:  Well, the parties have

2   stipulated in --

3        THE COURT:  Other than what you stipulated to

4   mutually.

5        MR. MURRAY:  Well, yes.  I think that the

6   parties have agreed, Your Honor, and stipulated that we

7   would first finish the jurisdictional discovery,

8   because there's a lot to do, and we want to focus on

9   what's important right now, which is the jurisdictional

10  discovery.  The parties have agreed that the merits

11  based discovery would happen I think within 30 days of

12  the hearing on the motions to dismiss, we begin

13  answering merits based discovery, and at that time we

14  could proceed with let's say preliminary infringement

15  contentions, you know, if it's appropriate, you know,

16  et cetera.

17       THE COURT:  All right.  So what they've asked

18  here in terms of what the court has been presented to

19  date, is that jurisdictionally based or merit based?

20       MR. MURRAY:  That seems to be merit -- again,

21  I haven't studied them, but it seems to be merits based

22  discovery.

23       THE COURT:  So you're saying based on your

24  agreement with the other side, they're barred from

25  asking the court to move forward with this request,

```
1   based on your agreement for advancing certain

2   discovery?

3           MR. MURRAY:  No, Your Honor, I'm not saying

4   that.  I'm saying that I think that, first of all, this

5   is the wrong procedure for getting the information that

6   they want; that the more appropriate procedure is

7   what's happening -- like the procedure that's happening

8   in the Northern District of California where the

9   parties will give each other infringement contentions.

10  It's really the same information.  Mr. Shore showed you

11  those claims.  We will have a chart with those claims

12  and how they infringe, we'll give them that

13  information.

14          THE COURT:  When is that going to take place?

15          MR. MURRAY:  Well, the rules trigger the date

16  for preliminary infringement contentions based on

17  basically when the assertion is made.  I mean, we

18  haven't -- we have only asserted four patents against

19  them as of today.

20          THE COURT:  So when does that, when does the

21  exchange take place as to those four patents?

22          MR. MURRAY:  Oh.  I'm sorry, I don't know off

23  hand.  But it's very soon, it's within I think a week

24  or so.

25          THE COURT:  A week from today?
```

1    MR. MURRAY: I believe it's -- well, I'm

2  sorry, I don't know that date off hand because it's --

3  it's a due date in the Northern District of California

4  case, but it's very soon, it's --

5    THE COURT: So presumably a week from today

6  you give them your four claims and they'll give you

7  their three at the same time.

8    MR. MURRAY: That's right.

9    THE COURT: So at least there's information as

10  to seven of these 15 claims within a week.

11    MR. MURRAY: Right. And we will be giving

12  them preliminary infringement contentions on all the

13  patents that we have asserted. I mean, remember in the

14  Guam case, we have not asserted those other Fujitsu

15  patents against them. They've asked for declaratory

16  judgment that those patents are invalid and not

17  infringed. But until we actually assert those patents

18  against them, then we do not have under the Northern

19  District rules, and I would say that we shouldn't have

20  an obligation to show infringement evidence.

21    If we decide to assert them and ask for

22  damages, et cetera, for those patents, then we would of

23  course agree to provide the same type of infringement

24  contention information that we're providing very soon

25  for the four patents that we have asserted. We've only

1   asserted four patents.  And I say we, it's actually
2   Fujitsu Limited, one of the defendants here, Fujitsu
3   Limited has asserted four patents, and we're about to
4   give them the preliminary infringement contentions on
5   those four patents.
6           If we assert additional patents, some of the
7   additional 11 that they've asked for declaratory
8   relief, then of course we would provide them that same
9   level of information at the appropriate time.  And the
10  timing gets triggered off of when we actually make the
11  assertion, it's within a certain number of days of
12  making the assertion, and we would give them those
13  preliminary infringement contentions.  But that system,
14  Your Honor, really works very well, and it's been well
15  established and developed in the Northern District for
16  getting the right information to the parties, and doing
17  it in a way that's not unduly burdensome, and it's
18  exactly --
19          THE COURT:  So that takes care of Counts 39
20  through 50, but you still have 38 other counts
21  remaining, at least for that information.
22          MR. MURRAY:  Right.  But the -- similarly,
23  their preliminary invalidity contentions that would be
24  provided under the Northern District of California
25  rules, where the parties give all of the invalidity

1    evidence that they have --

2           THE COURT:  That would take care of another

3    three counts here, Counts 3, 4 and 5.

4           MR. MURRAY:  Right.  Well, my point is, Your

5    Honor, that it's kind of difficult to talk about the

6    merits of particular interrogatories when we don't have

7    them, and I think that's why the local rule is so good

8    on this point.  I mean, let's see the interrogatory

9    that they want to serve, once they serve their 25,

10   let's see interrogatory No. 26, and then we can talk

11   about whether it's a reasonable interrogatory or not.

12   And if they -- if we have some agreement, then we don't

13   have to disturb the court and we'll just agree to

14   answer it.  If there is some disagreement, then at that

15   time it would really be ripe.  But it's very difficult

16   in kind of a vacuum to talk about whether a particular

17   hypothetical interrogatory about a particular count is

18   reasonable or not, or whether that information really

19   should be obtained through some other way, through

20   documents or through deposition.  And, you know, that's

21   one of the reasons that we think that this motion is

22   just premature and inappropriate.

23          If they followed the local rule procedure, we

24   think that we can move this case forward and work with

25   them, and have a meet and confer.  I mean, they should

```
 1   have given me these 25 interrogatories before five

 2   minutes before the hearing. Maybe we could have sat

 3   down and talked about them and worked something out.

 4   They didn't even try to do that. And that's been kind

 5   of the pattern of plaintiffs in the case is to file

 6   motions and then sort of, after the fact, maybe try to

 7   make an approach to us and try to resolve something.

 8   And I just think it's an unfortunate way to proceed,

 9   and it places an undue burden on the court, and it

10   really doesn't move the ball forward.

11             THE COURT:  Anything else?

12             MR. MURRAY:  No, Your Honor.  Thank you.

13             THE COURT:  All right, thank you very much,

14   Mr. Murray.

15             Mr. Shore?  A couple of things I want to hear

16   from your side.  There have been arguments made to the

17   court that perhaps the exchange that presumably is

18   going to take place within a week's time might take

19   care of some of the concerns that you have in terms of

20   the interrogatories or other requests for admissions.

21   So I just want perhaps your feeling on that.

22             MR. SHORE:  I agree with him, Judge, that's a

23   very efficient way to do that.  And we have met and

24   conferred with them about using the Northern District

25   Local Rules as far as infringement contentions and
```

1  invalidity contentions, and we agree with that.  But

2  that, you know, if you listen --

3           THE COURT:  Let's assume that you received

4  these documents, though; would receipt of those

5  documents in a sense change the manner in which your

6  interrogatories are to be drafted or -- see, that's my

7  concern.

8           MR. SHORE:  (Overlapping/unintelligible.)

9           THE COURT:  Go ahead, I'm sorry.

10          MR. SHORE:  They will, Judge.  Once we get the

11  documents, we'll know what our interrogatories are

12  going to be.  We can't give you the interrogatories

13  now, a sample interrogatory.  We came up with a sample

14  what we thought they would be, but we have to look at

15  the documents.  Generally you have documents, discovery

16  of interrogatories, and you have depositions, and then

17  you have requests for admissions to narrow the issues.

18  Once we get the documents, we'll know what the

19  interrogatories are going to be.  Each step --

20          THE COURT:  All right.  The interrogatories

21  you gave me this morning is one of those patent claims

22  that's at issue in Northern California.

23          MR. SHORE:  One of the patents.  Those, what

24  we're just asking for, Judge, is 25 interrogatories

25  initially for each patent; that's not very many when

1    you think about that.  You know, counsel a minute ago

2    said that we're proposing that we give interrogatories

3    to construe the claims for every word in the claims.

4    You know, I would be asking you for 10,000

5    interrogatories if that's what I was intending to do.

6    I mean, when we put those independent claims up here --

7            THE COURT:  But wouldn't your time be better

8    put if you get those documents, then look at them, and

9    then perhaps your interrogatories might change in terms

10   of what you would want after having received those

11   documents?

12           MR. SHORE:  They will change, Judge.  We'll

13   have a different set of interrogatories for each one of

14   those patents, but to think that we wouldn't have --

15           THE COURT:  So why would I approve something

16   like this at this point, knowing that very well what

17   you might be seeking here may change once you get those

18   documents in a week's time?

19           MR. SHORE:  What the interrogatories ask, but

20   it won't change the number.  I mean, each one of those

21   patents is a complex case in and of itself.

22           THE COURT:  But you say 25 here.

23           MR. SHORE:  That's just for one patent.

24   That's just for one patent.

25           THE COURT:  Right.  So the information -- so

1    you're saying to me that regardless of the information

2    that you receive, you will still have 25

3    interrogatories per patent.

4          MR. SHORE:   I could probably ask a hundred

5    after what we receive.   What he's talking about, he's

6    saying that we will propose to do all our claims

7    construction through interrogatories.   We're not, we're

8    not doing that.

9          THE COURT:   But isn't it better attorney time

10   on your part, though, as opposed to giving them 25

11   interrogatories today, get the information and then

12   tailor your request so that it doesn't take into

13   consideration information you've already received?

14         MR. SHORE:   Exactly, Judge, that's why we

15   thought there was good cause --

16         THE COURT:   Isn't that what he's actually

17   saying, that the request is a little premature at this

18   time?

19         MR. SHORE:   It's not premature, because --

20   I agree with you, Judge, that once we get this

21   information, their initial infringement contentions,

22   we're going to have 25 interrogatories, and we'll be

23   able to tailor those interrogatories to the issues in

24   the case because each step in this discovery process

25   is going to narrow those claims.

1    So, yes, but that is our good cause for not

2    following Local Rule 33.1.  We don't know what those

3    interrogatories are going to be, but I guarantee you we

4    will have way more than 25 interrogatories we could ask

5    for each patent.  I mean, --

6    THE COURT:  But would it be fair to say that

7    you know what the 25 interrogatories would be as to

8    those patents that are not at issue here -- not at

9    issue there?

10    MR. SHORE:  Those, Judge, those -- let me --

11    THE COURT:  You didn't have any exchange of

12    documents regarding those patents.

13    MR. SHORE:  Those patents are at issue.  They

14    didn't call --

15    THE COURT:  That's what I'm saying.  Your

16    initial request -- assuming I give you 25 per patent,

17    your request for those patents not at issue there would

18    be the same because you won't be getting any

19    information regarding them in the exchange process.

20    MR. SHORE:  Well, he was wrong, Judge.  When

21    he said that the Northern District doesn't require him

22    to provide contentions for the patents that we raised

23    on declaratory judgment, he's just flat wrong about

24    that.  It does.  Those patents are at issue, every

25    patent, all 18 patents are at issue in both cases.

1  You know --

2       THE COURT: So next week you'll be getting the

3  same information regarding those other parents?

4       MR. SHORE: We're going to get information.

5  We should get information on all of the patents. If

6  they don't think those patents are really at issue,

7  Judge, they should file a motion to dismiss for lack of

8  jurisdiction, claiming there's not a, you know, a ripe

9  claim or controversy regarding those patents. You

10  know, they're not filing a motion to dismiss for lack

11  of subject matter jurisdiction. There is a declaratory

12  judgment jurisdiction over every one of those patents.

13       THE COURT: So you're telling me that, today,

14  next week you will receive from the defendants initial

15  infringement claims as to all the patents that you've

16  raised, including those you've raised in your

17  counterclaim?

18       MR. SHORE: (Turning to co-counsel.) Well,

19  what's the stipulation actually say?

20       MR. CHAN: Your Honor, with regard to the

21  Northern District of California rules, we will receive

22  the infringement contentions that pertain to the four

23  Fujitsu patents that are being asserted in this case

24  and in Northern District of California affirmatively

25  by Fujitsu.

1    Now, with regard to the remainder of the
2    Fujitsu patents that Nanya is seeking a declaratory
3    judgment of non-infringement, et cetera, patent local
4    rules set out a specific procedure upon which the
5    patentee provides those infringement contentions.  And
6    I don't have that date at my fingertips, but it is --
7         THE COURT:  It's not next week then?
8         MR. CHAN:  It's not next week, but it is in
9    the --
10        THE COURT:  It's forthcoming.
11        MR. CHAN:  It is forthcoming.
12        THE COURT:  Within 40 days, 45 days?
13        MR. CHAN:  I'd have to go look at the rules.
14   But there is a specific date.  I know it's less than
15   60 days.  But it's set out in Patent Local Rule 4, I
16   believe.
17        MR. SHORE:  I guess the point that we want to
18   emphasize, Judge, is all 18 of those patents are at
19   issue.  I mean, if they weren't at issue, then the
20   other side would be filing a motion to dismiss for lack
21   of subject matter jurisdiction.  In this case, all 18
22   of those patents are going to be litigated.  You know,
23   whether or not they've made affirmative assertions of
24   them that they want to sue us and seek damages, you
25   know, that's one thing, but they have raised a claim or

1   controversy regarding those patents, and those patents
2   are at issue.
3        But let me, getting back to the difference
4   it's going to make if we follow the local rules and
5   they provide infringement contentions, I mean, you
6   know, counsel said just a minute ago that, you know,
7   it may narrow it down in each patent where there's only
8   20 claims that are going to be at issue.  They'll give
9   us their initial claims construction, we'll sit down,
10  we'll meet and confer about it, and then after we meet
11  and confer, we may agree on some, you know, 20 may pop
12  out as being real contentious.  That was his example,
13  20.  Well, that's 20 for each patent, you know.  So you
14  can see already that even if we follow the local rules
15  as far as exchanging, you know, claims construction
16  contentions, we're still going to run into
17  controversies left over after that.
18       THE COURT:  But that process, though, would
19  allow me the opportunity to look at the merits of both
20  sides and make a decision.
21       MR. SHORE:  In that sense, Judge, we'd be
22  doing piecemeal just every time we would end up being
23  here time after time after time, you know, we would end
24  up having to meet and confer, meet and confer, because
25  we don't know what the interrogatories are going to be.

1   But I promise you, there definitely will be at least 25

2   to 50 questions we could ask on each patent; each one

3   of those patents is an individual case.

4           THE COURT:  Is the time frame the problem that

5   you foresee, the time frame?  Let's assume we ask you

6   to file these interrogatories tomorrow, all right, what

7   -- does that present a problem?

8           MR. SHORE:  Excuse me, Judge?

9           THE COURT:  Let's assume I ask you to, in

10  compliance with the rules, to file these requested

11  interrogatories tomorrow.

12          MR. SHORE:  That -- and that's the reason why

13  we didn't follow Local Rule 33.1, which is all matters

14  within your discretion.  We don't know what those

15  interrogatories are going to be yet, we have to look at

16  the document --

17          THE COURT:  That's why I asked you whether

18  you've drafted these interrogatories or not.

19          MR. SHORE:  We can't draft them now, Judge,

20  because we don't know what they're going to be.  What

21  I'm saying is it's very reasonable for us just to ask

22  25 for each of the patents, because standing alone,

23  each one of the patents is its own case.  We're going

24  to look at the documents and then, like opposing

25  counsel said, he may say, well, ownership, I could just

1  tell them, well, look at such and such documents and
2  you'll see what our ownership contentions are. That's
3  the answer to one of our interrogatories. He says
4  he'll just call us up and tell us. Well, we'd rather
5  have it in an interrogatory. That's the kind of thing
6  we're talking about. You look at the documents first,
7  the documents determine what your interrogatories are
8  going to be. The interrogatories narrow the claims.
9  You go to depositions, you take the depositions, and
10  you could take targeted, productive depositions, and
11  then you can narrow the issues even further with
12  requests for admission. But to say that we would need
13  at least 25 interrogatories for each patent, 25
14  interrogatories, you know, possibly for the antitrust
15  case, that is perfectly reasonable requests considering
16  the complexity of any patent case.
17       MR. RAZZANO: Judge, if I could just make one
18  small point. I think we're getting a little bit lost
19  in the minutiae here. I mean, the bottom line is,
20  first of all, the California case is completely
21  different than the Guam case. Okay. So regardless of
22  what they're going to produce in California --
23       THE COURT: But wouldn't they be the same,
24  though, the same issues will be raised?
25       MR. RAZZANO: I see what you're saying, but

1    let me come back to that.  In California, what we're

2    going to get is we're going to get some documents and

3    some claim construction regarding the patents that

4    they've asserted against us.  And you've correctly

5    pointed out, Judge, that doesn't cover all 18 of the

6    patents.  So you're absolutely right when you said to

7    Mr. Murray we're only going to get claim construction

8    on certain of the issues, certain of the claims

9    outlined in our complaint.  So, as to the ones that are

10   not at issue, we should at least get to serve

11   interrogatories on the claims not at issue.

12           THE COURT:  Well, see, that's where the

13   process -- that's why I'm asking these questions

14   because --

15           MR. RAZZANO:  And I completely agree.  And

16   outlined in our stipulation in paragraph 5, we are

17   allowed to serve the merits based discovery, we're

18   allowed to serve the merits based discovery at any

19   time.  They're not due until 30 days after the hearing.

20   However, Judge, if we wait, what Mr. Murray wants us to

21   do is, he wants to wait until there's a ruling on the

22   motion to dismiss and then start giving us the

23   information.  That's not what the stipulation says.  So

24   we're entitled, entitled to get the information at

25   least on the claims that are not at issue.

1          So that's the only point I wanted to make.

2     And I think we're getting lost a little bit in this

3     California case, this Guam case, and so I think we just

4     need to refocus on exactly what we're actually going to

5     get next week.

6          THE COURT:  Okay.

7          MR. RAZZANO:  Thank you, Your Honor.

8          MR. SHORE:  Anyway, Judge, I guess the point

9     I would really like to make is, yes, interrogatories

10    will change once we start getting documents and

11    reviewing the documents.  That's why we couldn't comply

12    with Rule 33.1, because we don't know exactly what

13    those interrogatories are going to be.  If we filed

14    cookie-cutter interrogatories in every case, we

15    wouldn't be very good lawyers.  Good lawyers file

16    targeted discovery based on what they already know and

17    what they learn through their informal review of other

18    discovery materials and through other discovery.

19         But my point I just want to emphasize is

20    18 different patents, they're at issue, 18 different

21    patents; it's 18 different controversies, 18 different

22    cases.  And I guarantee you we'll need 25

23    interrogatories, at least 25 interrogatories for each

24    one of those 18, regardless of whether we follow the

25    Northern District rules, you know, and use that to kind

```
1    of narrow the issues further.  I mean, every means to

2    narrow the issues in this case we need to take

3    advantage of, because as you can see from what I

4    presented to you earlier, the issues are huge.  I mean,

5    there are dozens of issues with each patent, there

6    could be dozens of issues with each claim in each

7    patent, there are dozens of issues to ferret out in the

8    antitrust case.  I mean, the number of issues is

9    immense.  And so the 25 interrogatories per patent is

10   perfectly reasonable.

11           I'm not trying to do all our claims

12   construction on claims, you know, invalidity and

13   infringement contentions through interrogatories, I'm

14   not trying to do that.  If I was trying to do that, I'd

15   be asking you for 10,000 interrogatories.  So, you

16   know, Judge, I think what we're asking for when you

17   look at the big picture here is extremely reasonable

18   and necessary, necessary to get to the issues in this

19   case.  Thank you.

20           THE COURT:  But let's assume I give you the

21   relief that you're asking, when do you anticipate

22   filing your interrogatories or your requests?

23           MR. SHORE:  30 days after the ruling on the

24   motion to dismiss they're supposed to deliver to us,

25   they're supposed to start producing documents related
```

```
 1    to the --
 2            MR. CHAN:  Your Honor, it would be soon after,
 3    seasonably after we receive the documents set out in
 4    the stipulation.
 5            MR. SHORE:  Which is 30 days after the ruling
 6    on the motion to dismiss.
 7            MR. CHAN:  In terms of the merits discovery
 8    documents, that's when that would be due.
 9            MR. SHORE:  Right.
10            MR. CHAN:  But there are disclosures that
11    would be due beforehand --
12            THE COURT:  But my question was --
13            MR. CHAN:  -- responsive to our requests for
14    production.  Those would be -- those are due by April
15    2nd, and then by April 16 for Fujitsu Limited.  And
16    seasonably after the April 2nd and that April 16th
17    dates, we would be in a better position --
18            MR. SHORE:  That's the jurisdictional
19    discovery.  Then there's the merits discovery later on.
20    I mean, each one of those are different.  Once we get
21    the documents on the jurisdictional discovery in April,
22    we'll have interrogatories based upon what we receive
23    in those documents.  Once we get the documents on the
24    merits discovery 30 days after the hearing on the
25    motion to dismiss, then we'll have the interrogatories,
```

1    start issuing interrogatories on the merits discovery
2    on each one of those patents.  That's the way, you
3    know, efficient discovery is done.  You look at the
4    documents that you get, you look at what you have, and
5    then you tailor your interrogatory response to the
6    documents you get.  So it wouldn't be tomorrow that we
7    would file these interrogatories, because like I said,
8    we don't know what these interrogatories are going to
9    say until we get a chance to look at these documents.
10            THE COURT:  All right.  So the earliest would
11   be sometime in April then?
12            MR. SHORE:  April for the jurisdictional
13   discovery interrogatories, and then it would be, once
14   we had a chance do review the documents that we receive
15   30 days after the hearing, it will probably be -- the
16   documents will probably be in the summer, June, July on
17   the merits discovery, after we get a chance to receive
18   and review the documents.
19            And we haven't even touched on the motion to
20   compel, Judge.  I mean, if you look at the objections
21   that they have in their -- the objections that they
22   filed to the original request for production, you know,
23   we're going to meet and confer on that and try to work
24   that over, work that out, that motion isn't really ripe
25   at this time, I don't think, since they've agreed to

1  produce documents.  But there's a lot of objections

2  that were made that shouldn't have been made.

3         THE COURT:  So basically -- let me see if

4  I understand this.  The motion today is in a sense

5  authorization to file interrogatories in excess of

6  25 in the future?

7         MR. SHORE:  For each one.

8         THE COURT:  On or about -- on or after April

9  as to each patent claim before the court, and the

10  antitrust claims.

11         MR. SHORE:  It would be 25 interrogatories

12  for each patent.  That's what we're asking for

13  initially is 25 interrogatories for each patent.

14         THE COURT:  Well, and also the -- also the

15  motion also dealt with the antitrust claims.

16         MR. SHORE:  And 25 interrogatories for the

17  antitrust claims, yes, Your Honor.  So, yes, Your

18  Honor, that's correct.  Initial interrogatories I think

19  is 475, initial interrogatories, which would be 19

20  times 25.  That's one set of 25 for each patent, and

21  one set for the antitrust, so I think that's 475.  And

22  it's 18 -- it's 19 different cases, Judge, it's 19

23  different controversies; you know, they just happen to

24  be joined in one lawsuit.

25         THE COURT:  All right, anything else?  I'm

1   sorry.

2           MR. SHORE:  No, Your Honor.

3           THE COURT:  All right, Mr. Benjamin, I think

4   you had your hand up.

5           MR. BENJAMIN:  Yes.  Your Honor, just to

6   clarify how scheduling works here, under the

7   stipulation that was filed by the parties on February

8   20th.  There is -- the only discovery that they've

9   served regarding jurisdiction has all been document

10  requests.  Those responses are due by April, based on

11  their own request, their opposition is then due on May

12  15.  So the intent in my discussions with Mr. Razzano,

13  as I understood it, was that they were going to get

14  through their jurisdictional document requests.  There

15  didn't appear to be any other discovery going on.

16          The only issue that we understood to exist

17  regarding interrogatories is regarding the merits.  If

18  they want to use their 25 existing interrogatories in

19  jurisdiction or some portion of it, that's fine.  But

20  the timing is such, Your Honor, they'll be getting

21  documents by April 16, 2007 on the jurisdiction issue,

22  their opposition is due on May 15, so it doesn't make

23  sense that they'd really be serving jurisdictional

24  interrogatories on, you know, April 16 because they

25  would get responses the same day their opposition was

1   due.  There wasn't that kind of --

2         THE COURT:  So you're saying whatever

3   interrogatories they file may be subsequent, may be

4   much more time after that.

5         MR. BENJAMIN:  Exactly, Your Honor, because

6   what paragraph 5 of the stipulation states is that all

7   of the responses on merits discovery will be 30 days

8   after the hearing on defendants' pending motions to

9   dismiss or transfer.  So if we -- if, assuming that the

10  court has not granted the motion to dismiss, assuming

11  we're responding to the pending requests that they've

12  served for documents on the merits, that would be 30

13  days after the, I believe it's June 22nd hearing, so

14  about July 22nd we would produce documents, they would

15  then look at those documents, and then really have the

16  chance to formulate whether or not they think this

17  extreme number of interrogatories is even necessary.

18  And I think, Your Honor, frankly, any motion at that

19  point would be a lot more ripe, because then they

20  could actually be providing us and the court with

21  specifically what interrogatories are actually

22  necessary in this case.

23        The related point on that, Your Honor, being

24  that we still haven't seen any authority from them,

25  even though we've talked about, well, this is a very

1    complex patent case, or there are lots out there, yet

2    they're not citing a single case for the fact that this

3    many interrogatories has been permitted by any court.

4    I'm sure, Your Honor, there are dozens of cases each

5    year with 18 patents in them, but yet not one of them

6    is being cited as authority for the idea that this is a

7    reasonable way to proceed in this case.  And I would

8    think that there'd be at least one example of that

9    occurring, if that was a normal procedure in a patent

10   case.

11        We do think, Your Honor, that the Northern

12   District procedures would be a lot more efficient;

13   they seem agreeable to using the Northern District

14   procedures, and so perhaps that might be the better

15   motion to make, is to adopt I believe it's Rule 4 of

16   the Northern District.  Thank you, Your Honor.

17        THE COURT:  Final word?

18        MR. RAZZANO:  Judge, just one point.  I mean,

19   that's exactly right, what Mr. Benjamin said.  So if

20   I serve 25 interrogatories tomorrow and you don't rule

21   that I can have any additional interrogatories, the

22   next thing they're going to say is, hey, you've used up

23   your 25 interrogatories on jurisdiction, so you don't

24   get any more interrogatories for the entire case.

25   That's exactly why this motion is ripe, it's exactly

1   why we need to get a ruling from the court saying

2   there's going to be additional interrogatories in the

3   case.  So I'll be standing here on May 14 on a motion

4   for continuance, telling you how I'm supposed to answer

5   these questions, I have to reserve my 25

6   interrogatories for the other 19 claims.  Thank you.

7         MR. MURRAY:  Your Honor, just to respond to

8   that point specifically.  We certainly wouldn't take

9   the position that we wouldn't consider additional

10  interrogatories.  All we're asking them to do is to

11  follow the local rules, to set forth the

12  interrogatories, additional interrogatories that they

13  would like to serve after their 25, and if they're

14  reasonable, then we would agree to them.  If they're

15  not reasonable, then we would try to negotiate perhaps

16  some middle ground with them.  And if the parties

17  ultimately can't come to some agreement, then

18  reluctantly we would have to come to court to ask

19  Your Honor to look at these interrogatories.

20        But what they're asking you to do -- and

21  Mr. Shore said several times, I don't know what these

22  interrogatories are going to look like -- what they're

23  asking you to do is to approve in advance the

24  interrogatories that they will write several months

25  from now, without having seen them, without knowing

1    whether they would be reasonable interrogatories or

2    unreasonable interrogatories.  And that's exactly what

3    the local rule is designed to prevent.

4          The interrogatories that they want to serve

5    should be set forth, the parties should discuss them,

6    and if a motion is necessary at that time, Your Honor

7    should have the benefit of being able to see the

8    interrogatory and make an informed decision about

9    whether or not it's reasonable, not, just as we said,

10   giving them a blank check to serve the interrogatories,

11   whether they're reasonable or unreasonable.

12         THE COURT:  All right.  So the objection is

13   not so much in numbers, but perhaps the reasonableness

14   of the purported request.

15         MR. MURRAY:  Well, certainly 900 seems

16   unreasonable just automatically, I mean --

17         THE COURT:  Well, you see, that's a position

18   that I don't think I share.

19         MR. MURRAY:  Well, it may or may not be.  I

20   mean, I only do patent infringement cases, I've worked

21   on many, many complex cases like this; I've never seen

22   anything approaching that number of interrogatories.

23   But maybe it's reasonable in this case.  But my point

24   is only that to approve them in advance without seeing

25   them seems to me to be directly contrary to the local

```
1    rules.
2             THE COURT:  But I think we misconstrue the
3    whole process of discovery, because assuming the court
4    authorizes them to file in excess of 25, you still
5    have -- are able to come back to court and object to
6    them based on its unreasonableness.  See, that's why
7    I asked you, is the objection based on numbers or the
8    reasonableness of the request.  So if I give them 50
9    and you come back and say, hey, 30 of these are
10   unreasonable, then we make a determination based on
11   the meritorious contention of those requests being
12   unreasonable, and to the extent that they're
13   unreasonable, of course, the court will not authorize
14   discovery.
15            MR. MURRAY:  I think the local rule puts the
16   burden on them to justify additional interrogatories,
17   not on us to sort of -- you know, it shouldn't be an
18   automatic thing.
19            THE COURT:  Well, you know, I've seen a lot of
20   civil cases where in just one cause of action, we've
21   granted requests over 25.  So, you know, it appears
22   reasonable to me at this point that going beyond 25 in
23   this particular type of case doesn't appear to be
24   unreasonable, going over 25.
25            MR. MURRAY:  I don't disagree with that at
```

1   all, Your Honor.  I'm merely suggesting that to approve

2   900 interrogatories in advance --

3          THE COURT:  Well, see, but I'm not approving

4   in the sense -- in that sense, I'm just saying, well,

5   you know, for discovery purposes maybe going over 25

6   might be reasonable, because you still have the

7   opportunity to come back on the merits of each request

8   and say they are unreasonable, not in numbers, but

9   because of the nature of the request.  And so you're

10  protected in that regard, in the manner the rules say

11  you should be protected.

12         MR. MURRAY:  Right, but I think again, that --

13         THE COURT:  I think here at this point we're

14  scared because of numbers, and that really shouldn't be

15  a reason for not allowing the request, because we're

16  scared of the numbers, as opposed to the reasonableness

17  of the request.  I mean, it could be all 900 would be

18  reasonable, all 900 could be unreasonable also at the

19  same time.

20         MR. MURRAY:  Okay.  But I think the better

21  procedure would be for them to come to us with their

22  proposed interrogatories and for us to discuss them,

23  and then if we have a problem, come to the court, not

24  that they get sort of advanced approval for so many

25  interrogatories.

1    THE COURT:  Well, I could always say to them

2    that ten days before you file, or five days, furnish

3    you a copy so you can have an advance copy of what it

4    is that they intend to file.  Would that be

5    unreasonable?

6    MR. MURRAY:  Well, that, specifically that

7    wouldn't be unreasonable.  Again depending on --

8    THE COURT:  I'm just trying to get some

9    reasonableness in terms of the resolution of the motion

10   before the court this morning really.

11   Mr. Benjamin?

12   MR. BENJAMIN:  If you imagine 900

13   interrogatories and the fact that what that's going to

14   require answering, that's going to require, I mean, we

15   already have five attorneys --

16   THE COURT:  But you're all extremely

17   intelligent.

18   MR. BENJAMIN:  Nonetheless 900 interrogatories

19   -- and by the way, there's also a request for

20   admissions too -- that each of those is going to have

21   to be broken down by attorney, objections set out, and

22   so on; I mean, that's what happens once interrogatories

23   are served on you, if the court has already given this

24   a blank check.  So our client would already be

25   incurring quite substantial cost simply responding to

1   all the objections and going to court for relief if

2   there's a blank check here, where it might then turn

3   out that the court determines that half of those, 450

4   of them were really excessive, and our client would

5   still be out extremely substantial cost when you look

6   at 450 highly technical interrogatories that we'd be

7   coming up with objections and answers, and applying to

8   the court for relief.

9          Again, if we start with the procedure that's

10  supposed to exist under the local rule, which is that

11  they would file -- submit these to the court first,

12  that would provide the opportunity to keep the burden

13  both on the court and the parties to the minimum, which

14  is to have them draft the interrogatories that they

15  specifically believe they need after they've looked at

16  the evidence, they submit them in to the court, we have

17  an opportunity at that point to explain why some or,

18  you know, whatever number of them we believe are

19  unreasonable; at that point, if the court determines

20  that, you know, whatever number specifically, if it

21  determines that 200 of them are reasonable requests,

22  then we go back and we actually draft the actual

23  answers, go through the specific objections on any

24  subject questions.  But we don't have this burden of

25  simply responding to this blank check of

1    interrogatories, which is going to take a lot more than
2    just five attorneys working on them when you've got 900
3    interrogatories and that many requests for admissions
4    potentially too.

5            And so, Your Honor, that's why we would again
6    urge the court to go back to the local rule and really
7    to take this request at the proper time which is not
8    premature, when we actually know what interrogatories
9    we're discussing and what interrogatories there's
10   actually disagreement about.

11           THE COURT:  Well, you know, when my wife goes
12   shopping she also has a blanket check, so there's a
13   precedence for blanket checks.

14           All right, so thank you very much.  I'm
15   certainly, of course, impressed with the arguments this
16   morning.  It's always a difficult decision to make
17   after hearing extremely fine arguments on both sides.
18   I can see plaintiffs' point of view and I can really
19   see the defendants point of view, really, I see both of
20   them, so it makes deciding harder.

21           And I believe that in light of the complexity
22   of the case before the court, that there must be a need
23   to grant discovery beyond the normal discovery provided
24   by Rule 33.1.  I'm disappointed with the plaintiffs in
25   that they did not file the interrogatories as the rule

1   requires, but I think I know the reason why; they don't

2   know what to ask at this point.  So that explains why

3   these interrogatories are not before the court.

4          Of course I'm a stickler for purposes of

5   complying with the rules; rules must be complied with

6   in order to get your request.  But, nevertheless, I

7   believe that the plaintiffs in this matter should

8   receive some relief in the sense that they should not

9   be limited to a total of 25 interrogatories for the

10  nature of their claims before the court.  And as the

11  court has reviewed the complaint, I see a complaint

12  with 50 causes of action, 18 in relation to patents,

13  15 of them belonging to -- 15 U.S. patents belonging to

14  the defendant, three to the plaintiffs, in addition do

15  that, two causes of action for antitrust violations are

16  made, violation of Sherman Antitrust Act and the

17  Clayton Act.  So it just doesn't seem reasonable to me,

18  to the court that 25 requests can encompass all that

19  could be sought in terms of the causes of action before

20  it.

21         So my problem really is to determine what to

22  allow at this point.  25 at this point might be too

23  much maybe as to each claim, in light of the fact that

24  we don't see it in front of us.  I'm thinking that

25  perhaps cutting it in half or giving you 15 might be a

1    stroke of just a draw perhaps on my part, and a number

2    that might seem to satisfy the other side in terms of

3    the numbers.   And then at the same time, if I do grant

4    this relief, I hope that the plaintiffs take into

5    consideration perhaps doing their best to limit the

6    number based on discovery that they will be receiving

7    in the future.

8         So what I'd like to do today is grant that

9    relief in part that the plaintiff is asking, and grant

10   them 20 interrogatories for each of the defendant's

11   patents that are at issue.   And the same number for

12   each of the plaintiff's patents that they've also

13   raised herein initially.   And I use these numbers

14   generally because the requests would be fashioned

15   appropriately once plaintiff receives documents through

16   these initial infringement claims exchange, and also

17   documents they'll be receiving in April, or may be

18   receiving at the present time.

19        I'm initially setting this number not so much

20   as a limitation on the case itself, but a limitation on

21   the numbers that can be initially served.   Of course,

22   discovery to the extent that it is required by any

23   party, the court can certainly look at it at another --

24   or at a time in the future.

25        And also, what I would like plaintiffs to do

1    is, to the extent that they have drafted these

2    interrogatories, 20 in number, that they serve a copy

3    of these to the defendant.  And they're going to

4    preserve to the defendant all their rights, or course,

5    to object to these interrogatories in the future, and

6    the court doesn't believe that their rights to do so

7    are jeopardized at this point.

8         So that would be the order of the court.  The

9    court will allow the plaintiffs initially to file 20

10   interrogatories as to each claim, and as to the

11   antitrust issue before the court.  That's 20 times 18,

12   that's 360, and another 20 as to the two counts, 20

13   each, so 400.  I think that's mathematically correct.

14        And with the proviso of furnishing the

15   defendants an advance copy, let me ask you how many

16   days can you do that before you file it with the court.

17        (Pause while plaintiffs' counsel conferred.)

18        MR. RAZZANO:  Judge, I think we'll give them

19   60 days in advance before they have to do anything,

20   with the exception, of course, if we serve some

21   jurisdictional interrogatories, we'll just serve them

22   in due course and expect them to answer in due course.

23        THE COURT:  Is that fine with the defendants,

24   60 days?  They'll give you a copy 60 days in advance to

25   look at it.

```
 1            MR. MURRAY:  That's certainly better than 30

 2   days, Your Honor.

 3            Can I also raise a point with Your Honor?

 4   Since we seem to be proceeding, doing a lot of this

 5   sorting out of issues through interrogatories, the

 6   defendants would ask for similar treatment.

 7            THE COURT:  Yes, certainly.  You know,

 8   whatever they're getting, that's what you'll be

 9   getting.

10            MR. MURRAY:  Thank you, Your Honor.

11            THE COURT:  It has to be equal to the parties.

12   I said that early in the beginning, whatever they get,

13   you get likewise.

14            Any other clarification in terms of the

15   court's order?

16            Well, thank you very much, counsel, for the

17   fine arguments.

18            Let's proceed further now with the scheduling

19   order, we still have to do that before, hopefully

20   before noon.  There's not that much there to talk about

21   other than just some dates that need to be changed, so

22   let me go to the proposed scheduling order as I have it

23   in front of me.

24            The first date that appears that needs to be

25   changed is on paragraph 5, and that's on Page 3 -- I'm
```

1   sorry, paragraph 4, motion to amend.  Let's change that

2   to the 4th because the 3rd actually is Labor Day, a

3   federal holiday.  All right.  So that will be September

4   4 instead of September 3rd.  Do you see that?

5               MR. UNPINGCO:  Yes, Your Honor.

6               MR. MURRAY:  Yes, Your Honor.

7               THE COURT:  All right.  And of course the

8   scheduling conference is today, March 2nd.  And let's

9   go to paragraph 10 and insert a time there.  So the

10  preliminary pretrial conference would be December 1,

11  2008 at 10:00 o'clock in the morning, again just to

12  insert a time.  Same thing with paragraph 13, final

13  pretrial conference will be December 22, 2008 at 10:00

14  o'clock in the morning.  And that would take us to the

15  jury trial that's to take place in paragraph 14, that

16  should be at 9:00 o'clock in the morning on the 14th --

17  or rather than the 12th, I'm sorry, January 12th, 2009

18  at 9:00 o'clock in the morning.

19               Now, the other issue concerns the discovery

20  plan.  The plaintiffs would like that initial

21  disclosures be no later than 30 days after the entry

22  of the scheduling order, and the defendants would like

23  it 30 days after a ruling on the pending motion to

24  dismiss or transfer.  My question here is, have initial

25  disclosures been made in the Northern District?

```
 1              MR. MURRAY:  They have, Your Honor.

 2              THE COURT:  Does that present a problem in

 3   this case with providing initial disclosures, inasmuch

 4   as it appears they have been provided in the other

 5   venue?

 6              MR. MURRAY:  Well, at the time the initial

 7   disclosures were prepared, the issues weren't exactly

 8   the same in both cases, so I don't know that that takes

 9   care of disclosures that would be required for this

10   case.

11              MR. CHAN:  Your Honor, for Nanya, our initial

12   disclosures will be the same in both cases, will cover

13   all of the patents at issue, both in the Guam court and

14   the Northern District of California.

15              THE COURT:  All right.  The defendants would

16   like theirs to be made no later than 30 days after the

17   ruling of the motions.  So you object to that?

18              MR. CHAN:  Well, Your Honor, we're already

19   serving our disclosures, we already have actually

20   served our disclosures.

21              THE COURT:  And I'm sure you've also received

22   some on their part that relates to those issues that

23   are the same in both courts; is that correct or am I --

24              MR. RAZZANO:  At this time, we've served our

25   initial disclosures in this case already.
```

```
 1          THE COURT:  To the other side?

 2          MR. RAZZANO:  We have received nothing from

 3   the other side.

 4          THE COURT:  But you've received something,

 5   though, that relates to the claims herein from the

 6   California case, right?

 7          MR. MURRAY:  Yes, they have.

 8          MR. CHAN:  I believe so.

 9          THE COURT:  At least to those claims, those

10   seven claims --

11          MR. CHAN:  Yes, I believe so.

12          THE COURT:  -- I would think; you've gotten

13   initial disclosures there?

14          MR. CHAN:  I'd have to verify, but I believe

15   so, Your Honor.  Yes.

16          THE COURT:  So as to the remaining claims,

17   they're still asking that be done after the ruling on

18   the motion to dismiss; is there strong objection there?

19          MR. CHAN:  Well, Your Honor, I think it would

20   just be more efficient to have those disclosures done

21   right now, because they're going to have to make those

22   disclosures anyway in the Northern District of

23   California --

24          MR. MURRAY:  Well, Your Honor, here we have

25   not answered yet, we have not filed counterclaims yet,
```

```
 1    so it's difficult to determine the proper scope of the

 2    initial disclosures for this case until the answer and

 3    the counterclaims are filed.  So, I think they're

 4    essentially getting the same information anyway, in the

 5    context of the Northern District of California case, so

 6    I don't think they can really complain that they don't

 7    have the information.

 8         But just procedurally in this case, it's

 9    difficult to make the formal disclosures because we

10    don't know exactly what the counterclaims are going to

11    be yet, or whether the parties are going to be in this

12    case yet.

13         MR. RAZZANO:  Judge, they can amend their

14    disclosures at any time.  I mean, the reason we have

15    Rule 26(a)(i) disclosures is to get some of these

16    discovery disputes out of the way.  So, and if they

17    admittedly are going to give us the information in

18    California anyway, so what's the problem with giving us

19    the information in this case.

20         Generally, the way we handle these in our

21    court is within 30 days after the time the scheduling

22    order is issued, and we would like for that same

23    procedure to be in place in this case.  There's no

24    reason for any other procedure to be adopted.  So we

25    would strenuously -- if you're asking if we're
```

1   strenuously objecting to them not serving their initial

2   disclosures and denying us the opportunity to see those

3   documents, the answer is, yes, Judge.

4           MR. MURRAY:  Well, again, they're getting the

5   document.

6           THE COURT:  They're getting the documents in

7   the California context as it relates to the same claims

8   in both cases.  Do you have any strenuous objection if

9   I ask you to do that in 60 days as to the other claims,

10  60 days from today?

11          MR. MURRAY:  No.  Again, I'm not sure how that

12  works with the counterclaims, with respect to --

13  because I don't know whether we're going to have

14  counterclaims or what they'll be exactly yet.

15          THE COURT:  But counsel has said you can

16  always amend these initial disclosures to take into

17  consideration what has occurred at a later point in

18  time.

19          MR. MURRAY:  Okay.  So anything relating to

20  counterclaims that we might file then we would file

21  after the counterclaims?

22          THE COURT:  To the extent that they occurred

23  at a later date from when you filed your initial

24  disclosures, certainly you can amend.

25          MR. MURRAY:  Okay.

1          THE COURT:  Let me give you 60 days from today
2     to file your initial disclosures.
3          MR. MURRAY:  Thank you.
4          THE COURT:  The only other matter is regarding
5     experts.  I don't see anything that provides when
6     experts need to be disclosed.  Do you want to keep it
7     as it is, or -- do you want to keep it the way it is
8     at the present time?
9          MR. UNPINGCO:  Please, Your Honor.
10         And there is another matter that we would like
11    to bring up, Your Honor, once this is done.
12         THE COURT:  All right.  Any objection to
13    keeping it the way it is, the expert testimony?
14         MR. MURRAY:  No objection, Your Honor.
15         THE COURT:  We'll keep it that way then.  So
16    let me go ahead and sign the --
17         MR. UNPINGCO:  Your Honor, if I may.
18         THE COURT:  I'm sorry.
19         MR. UNPINGCO:  There is one other thing I
20    would like to bring up, and that is paragraphs 18 and
21    19 of the scheduling order.  We have indicated in
22    paragraph 18 that the parties have been ordered to
23    participate in mediation in connection with the related
24    California case.  Unfortunately, what happens in that
25    case is that the mediation can settle the California

1    case, but we might still have the Guam case pending.

2    And so we think in the interest of judicial economy, if

3    that mediation in California can be applicable to both

4    the California case and this case.  In that way the

5    parties will be greatly motivated towards a global

6    settlement of the cases of the United States cases.

7         THE COURT:  Any objection to that?  Perhaps

8    the mediation process, assuming the parties agree, will

9    also maybe take care of the matter here.

10        MR. MURRAY:  Certainly the mediation process,

11   hopefully, will discuss global settlement issues.  I'm

12   not sure exactly what plaintiffs are proposing in terms

13   of --

14        MR. UNPINGCO:  What we're proposing, Your

15   Honor, if I may?

16        THE COURT:  Mr. Unpingco.

17        MR. UNPINGCO:  What we're proposing is that

18   the mediation -- the court has already, in California,

19   has already ordered that a mediation occur.  A mediator

20   has already been appointed, I think it was former Judge

21   Enfante, has been appointed.  And we would just like --

22   if necessary we'll file a motion to ask the court that

23   the court -- that that mediation is also applicable to

24   this case as well as the California case.  So that if

25   they reach a global settlement in that mediation,

1    assuming the best, then both cases are settled, instead

2    of trying to do it piecemeal, or there might be a

3    lingering issue --

4              THE COURT:  But wouldn't a settlement there,

5    though, in effect affect the case here?

6              MR. UNPINGCO:  It will affect it to a great

7    extent.  However, what we're concerned about is that

8    there may be some other issues in this case that are

9    still lingering, so we might as well have that

10   mediation applicable for both cases.

11             THE COURT:  Well, is there a question of

12   jurisdiction or no?

13             MR. UNPINGCO:  Well, I don't think there's a

14   question on jurisdiction.  I think if we can ask the

15   court --

16             THE COURT:  Have an order that appoints the

17   same, is that what you're seeking, an order that

18   appoints the same --

19             MR. UNPINGCO:  Yes, Your Honor, if we need to

20   make --

21             THE COURT:  -- mediator?

22             MR. UNPINGCO:  Yes, sir.  Yes, Your Honor, if

23   we need to make a motion to the court, if that same

24   mediation will be applicable to this case as well.

25             THE COURT:  And compensation is agreed to by

1    the parties?

2         MR. UNPINGCO:  The same parties are going to

3    be bearing the same burden of compensation.

4         THE COURT:  Well, is the mediator going to

5    agree to such an order coming from here?

6         MR. UNPINGCO:  Well, I think that if the

7    court, if we make a motion to the court and the court

8    grants it, then the mediator -- I don't see any reason

9    why he won't be amenable to that mediation counting for

10   both cases.

11        THE COURT:  All right, let me hear from

12   counsel.

13        MR. MURRAY:  We have no objection to that

14   mediation counting in terms of any requirements for

15   mediation in Guam; but I'm not really sure why it's

16   necessary for Your Honor to order that mediator in

17   California to take into account the Guam case.  I think

18   with the answer that they've filed, the issues are the

19   same, all the patents are the same in both cases, I

20   don't see how it's possible to settle the California

21   case and not settle the Guam case.

22        MR. UNPINGCO:  Your Honor, if I may.  The

23   problem here that I'm having is that my counsel,

24   opposing counsel has said he doesn't know yet what

25   their counterclaims are going to be.  He hasn't filed

1      an answer in this case, and so my problem is that I

2      don't know what his counterclaims are going to be.  So

3      if we make this mediation applicable to both cases, it

4      will dispose of the case entirely in both areas.  I can

5      foresee a situation where, for instance, he may come in

6      and file his counterclaims, because he may have had

7      buyer's regrets or seller's regrets about what the

8      mediation result was and file a counterclaim here, and

9      then we're back in litigation again.  So I'd just like

10     to have one dispositive, if at all possible, one

11     dispositive mediation.  Both parties are already going

12     to bear the cost, why not just make the mediation

13     applicable to both cases?

14          THE COURT:  Is this mandatory mediation in

15     California?

16          MR. UNPINGCO:  Yes, Your Honor.

17          THE COURT:  It's mandatory?

18          MR. UNPINGCO:  Yes, it's court ordered.

19          MR. MURRAY:  Your Honor, I'm having trouble

20     understanding the logic here.  It's not an arbitration

21     where we'd be bound by anything, it's just an

22     mediation.  So if we don't agree to settle the Guam

23     case as part of that mediation, then we don't agree to

24     settle it.  And the fact that this court has ordered

25     that mediator to take into account the Guam case, I

```
 1   don't see how it has any impact on that.  So, you know,
 2   what the parties make out of the mediation, and I hope
 3   that we both make the most out of it, is up to the
 4   parties.  And really, it's not like there's going to be
 5   a judgment or something that would apply to Guam.  So,
 6   I'm having trouble following the argument.
 7        MR. UNPINGCO:  The logic is clear, Your Honor,
 8   in the sense that we don't want -- we want just one
 9   mediation to occur.  And usually in a mediation both
10   sides do have to agree, but sometimes there's seller's
11   remorse or buyer's remorse after the agreements are
12   reached.  And in this case there's still an opening for
13   that remorse to be realized, in this case by the
14   opposing side, because they can still file a
15   counterclaim in this case.
16        MR. MURRAY:  Well --
17        THE COURT:  Wouldn't it be possible, though,
18   for let's say the plaintiff to agree to dismiss the
19   California case but not agree to dismiss the Guam case?
20        MR. UNPINGCO:  It is possible.  And what we'd
21   like do is rather than piecemeal have another mediation
22   for the Guam case, let's just do it all at one time.
23        THE COURT:  But the issues, though, that might
24   lead to a settlement in the Northern District might not
25   be the same issues that might lead to a settlement
```

1    here.

2              MR. UNPINGCO:  There is a possibility, but if

3    we're looking at a global settlement, what we're after,

4    what's at stake here is how the licensing, how the

5    market is going to be approached, and decided.  And so,

6    the global settlement is what we're trying to encourage

7    here as opposed to --

8              THE COURT:  But still, it leaves it to the

9    parties, though, to agree to settlement, so it just

10   seems logical that if the parties want to settle

11   globally in the Northern District, that would apply

12   here.

13             MR. UNPINGCO:  Not necessarily, Your Honor,

14   because as I said before, we do not know if after

15   having carefully considered the results of the

16   mediation or the negotiations or the agreement that

17   they reached, they do not then find that they might

18   have traded away something far more valuable than they

19   had anticipated, and then they'll try to find a way to

20   recoup whatever they have lost through a counterclaim

21   here in this court in this case.

22             MR. MURRAY:  Your Honor --

23             THE COURT:  But wouldn't those considerations

24   something that you would take into account also in

25   settling the case in the Northern District, those

1   possibilities here?

2          MR. UNPINGCO:  Yes, Your Honor.  But normally

3   -- well, the problem that we have here is that the

4   California mediator is going to be focused on settling

5   the California case.  Okay.  And what we're afraid of

6   is that there may well be other issues that may be

7   resurrected after that case is settled for here.  And

8   why can't we just get everything concluded at one point

9   in time.

10          MR. MURRAY:  Your Honor, I think the

11   appropriate way to deal with this is through the

12   settlement process and the mediation.  If the parties

13   come to some agreement, then there would be settlement

14   documents drawn up, those documents would of course

15   address all the cases that would be settled and there

16   would be an agreement to dismiss this case, you know,

17   et cetera, and that would just be dealt with in the

18   normal course of that mediation.  I don't see how it's

19   logical that we could go through that mediation

20   process, have a global settlement, and then come back

21   here and file some, some new counterclaim; that would

22   be taken into account in the settlement papers that

23   would come out of the mediation.  So, again, I don't

24   think it's necessary for this court to order the

25   California mediator to do anything.  I think these

1    issues can be dealt with by the parties in the context

2    of the mediation. Again, we have no problem with that

3    mediation sort of counting towards the mediation

4    requirements for Guam, but I don't know that it's

5    necessary or appropriate for this court to order the

6    mediator to take any specific action.

7         MR. UNPINGCO: Two points, Your Honor. First,

8    we would like to give the mediator as broad -- a broad

9    applicability of his mediation as possible to address

10   both cases. The second thing is that if they have

11   no -- if their intention that they're saying now before

12   Your Honor is they have no intention of coming here

13   once they have settled in California, then it should

14   not be a problem for the court, for Your Honor, this

15   honorable court to say, well, that mediation will have

16   applicability to both cases. And I don't see why

17   they're objecting so strenuously to this proposal. I

18   think it is a very efficient and logical proposal,

19   because it disposes -- the global settlement then truly

20   becomes global, there are no reservations to be made in

21   the settlement agreement, or words that can be

22   misinterpreted as not settling an aspect of the case

23   globally.

24        THE COURT: All right. Let me deny that

25   oral motion at the moment without prejudice to the

1    plaintiffs of renewing that motion, maybe after

2    ascertaining from the mediator whether this is an item

3    which that mediator wants to undertake.  Assuming the

4    mediator wants to take an additional responsibility,

5    then I think a more appropriate written motion might be

6    then desired for the court to take any action in light

7    of plaintiff's objection -- or defendant's objections

8    this morning.

9           MR. UNPINGCO:  So, Your Honor, if I'm clear,

10   you're giving us permission then to approach the

11   mediator about the possibility of his being a mediator

12   for both --

13          THE COURT:  Well, I don't have to tell you

14   that, I think you have the right to approach the

15   mediator and ask him whether he thinks having the Guam

16   matter be part of the mediation that he's undertaking

17   in the Northern District be part of his duties that he

18   might want to undertake.

19          MR. UNPINGCO:  And if he doesn't want to

20   undertake that responsibility or if he says, I need

21   something from the court of Guam to undertake that, to

22   give me that kind of authority, I would like to ask --

23          THE COURT:  Well, maybe he should also contact

24   the defendants and get the defendants --

25          MR. UNPINGCO:  The way I'm going to approach