FILED
DISTRICT COURT OF GUAM
JUN 26 2007
MARY L.M. MORAN
CLERK OF COURT

**TEKER TORRES & TEKER, P.C.**
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891/4
FACSIMILE: (671) 472-2601

**IN THE DISTRICT COURT OF GUAM**

NANYA TECHNOLOGY CORP. and NANYA TECHNOLOGY CORP. U.S.A.

Plaintiffs,

vs.

FUJITSU LTD. and FUJITSU LTD. MICROELECTRONICS AMERICA, INC.

Defendants.

CIVIL CASE NO. 06-CV-00025

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO FUJITSU MICROELECTRONICS AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

## I. FMA FAILS TO REBUT ASSERTION OF JURISDICTION UNDER THE CLAYTON ACT

FMA attempts to escape personal jurisdiction under Section 12 of the Clayton Act by claiming it was "not involved in any of the operative facts" even though FMA, along with Fujitsu Ltd. ("Fujitsu"), initiated the California Action seeking to enforce Fujitsu's patents. By joining in the enforcement of these patent rights—an enforcement that forms part of the basis of Nanya's antitrust allegations—FMA has clearly subjected itself to antitrust liability. As Fujitsu's sales and distribution subsidiary in the U.S., FMA is a direct U.S. beneficiary of Fujitsu's anticompetitive conduct. By suing Nanya for infringement of five patents in the California action, FMA fully participates in and seeks to benefit from Fujitsu's anticompetitive conduct. Thus, FMA cannot deny its involvement in enforcing the patents at issue.[1]

Further, the principal purported facts underlying FMA's and Fujitsu's state law claims in the California action are Nanya's alleged misuse of information disclosed to it during the parties' patent licensing negotiations. Again, it is Fujitsu's and FMA's conduct in these negotiations, including their improper attempts to coerce Nanya to pay for a worldwide license, that form part of the basis for Nanya's antitrust claims in this suit. For these reasons, FMA cannot be heard to argue that it is exempt from Nanya's Clayton Act claims and from the jurisdiction of this Court.

It is equally evident that Nanya's Amended Complaint relates back to its Original Complaint.

[1] If FMA has no involvement in enforcing Fujitsu Ltd.'s patents, then it appears that FMA was improperly added as a party to the California Action solely to fraudulently establish venue. If that is the case, then FMA's interests should not be considered in determining venue. Its status as a subsidiary to Fujitsu Ltd. should further buttress Fujitsu Ltd.'s status as the primary party whose Japanese headquarters makes Guam the more convenient and appropriate forum to litigate the cases.

ORIGINAL

The Federal Rules provide that a plaintiff may amend a complaint by adding a new party and the amended pleading will relate back to the original complaint if the new party is united in interest with the original party.[2] Here, the added party – Nanya USA -- is united in interest with Nanya and the patent infringement and antitrust claims of both Nanya and Nanya USA arise out of the same conduct. Both Nanya's Original Complaint and the Amended Complaint clearly assert that FMA has violated the Clayton Act. FMA's cited case is inapposite; that court admittedly never had jurisdiction because the original plaintiff's pleadings were not properly filed, and thus no relation back was possible for the new plaintiff.[3] In contrast, this Court has always enjoyed jurisdiction.

Because this Court has personal jurisdiction over FMA with respect to Nanya's Clayton Act claims, this Court also has pendent personal jurisdiction over FMA for both Nanya's Sherman Act claims and the patent claims.[4] When antitrust claims and patent claims "derive from a common nucleus of operative fact" then personal jurisdiction over both claims pursuant to the doctrine of pendent personal jurisdiction is proper.[5] Nanya's Sherman Act claims and patent claims all relate to the same common nucleus of operative facts. Pricing and competitive conduct are fundamentally related to manufacturing, sales, and marketing.[6] Moreover, the fact that Fujitsu's patents--the very same patents that FMA seeks to enforce – are invalid is the very basis of Nanya's claims regarding Fujitsu's and FMA's anticompetitive conduct. FMA cannot use mere conclusory statements to gloss over the interrelated nature of the Clayton Act, Sherman Act, and patent claims.

## II. NANYA'S EVIDENCE REQUIRES DENIAL OF THE MOTION TO DISMISS

In its Reply, FMA strategically ignores 35 U.S.C. § 271, which specifically provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the

[2] *See* Fed.R.Civ.P. 15(c)(3); *see also Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002); *Dow Corning Corp. v. Chemical Design, Inc.*, 3 F.Supp.2d 361, 364-365 (W.D.N.Y. 1998).

[3] *See Austin v. Trandell*, 207 F. Supp. 2d 616, 624 (E.D. Mich.2002). (In *Austin*, the relation back doctrine did not apply to save a completely new party's claim because under the union rules, each union member filing suit must seek leave of court and first request the union to take action. The court stated that "Rule 15 cannot be used to bootstrap an untimely claim to a claim filed by other plaintiffs, neither of whom satisfied these two prerequisites for filing a § 501 claim. Thus, Eugene Austin's claim must be dismissed.").

[4] *See Action Embroidery v. Atlantic Embroidery, Inc.*, 368 F.3d at 1180-81 (9th Cir. 2004) ("***Pendent personal jurisdiction is typically found where one or more federal claims*** for which there is nationwide personal jurisdiction are combined in the same suit with ***one*** or more state or ***federal claims*** for which there is not nationwide personal jurisdiction.") (emphasis added); *Miller Pipeline Corp. v. British Gas Plc*, 901 F.Supp. 1416, 1424 (S.D. Ind., 1995); U.S. v. Botefuhr, 309 F.3d 1263, 1272-1275 (10th Cir. 2002); *Robinson Eng'g. Co., Ltd. Pension Plan Trust v. George*, 223 F.3d 445, 449-450 (7th Cir. 2000); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628-629 (4th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-1057 (2d Cir. 1993); *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-556 (3d Cir. 1973).

[5] *See Miller Pipeline Corp. v. British Gas Plc*, 901 F.Supp. 1416, 1424 (S.D. Ind., 1995) ("This Court finds that personal jurisdiction exists over British Gas as to the antitrust claim pursuant to 15 U.S.C. § 22, and as to the patent claim pursuant to the doctrine of pendent personal jurisdiction.").

[6] The nature and extent of FMA's sales, pricing, and marketing activities relative to the entire market relate directly to whether its

United States, or imports into the United States any patented invention during the term of the patent therefore, infringes the patent."[7] As the marketer, seller, and distributor of the accused microcontroller and memory devices and as part of Fujitsu's global Electronic Devices Group ("EDG"), FMA actively imports, markets, offers for sale, and sells the accused MCU devices manufactured by Fujitsu Ltd. to customers with extensive national distribution networks that reach the entire U.S., including Guam.[8]

Contrary to FMA's claim that Fujitsu products – distributed in the U.S. by FMA – are not found "on the island of Guam," Nanya has obtained compelling evidence that the accused devices sold by FMA are regularly sold on Guam through customary distribution channels.[9] Game consoles such as the Nintendo DS Lite[10] (which even FMA admits to selling), and possibly the Sony Playstation Portable,[11] contain the accused memory devices and are commonly sold on Guam to Guam consumers. Other FMA-sold products, such as laptop computers, computer hard drives, and computer batteries are also available for direct purchase on Guam.[12] Fujitsu-manufactured computer hard-drives have been purchased by employees of the University of Guam;[13] Fujitsu computer laptops are commercially available in Guam[14] and a computer store in Tamuning sells Fujitsu computer batteries.[15] Such sales show FMA's regular and purposeful contacts with Guam.

---

conduct is anticompetitive.

[7] In a verbal sleight of hand, FMA characterizes the accused microcontroller and memory devices as an "FMA device" or "FMA product," and insists that no "actual FMA devices" were found on Guam. Obviously, no "FMA device" or "FMA product" exists as the devices are manufactured by Fujitsu Ltd. and marketed, imported, offered for sale, and sold by FMA.

[8] As part of Fujitsu's EDG, FMA's objective is to "to establish FMA as an integral 'value adding' part of a truly global Fujitsu Electronic Devices Group, interfacing seamlessly with the customer irrespective of geographic boundaries." *See* Exhibit A, Presentation, "A Global Business Model for Fujitsu's Electronic Devices Group (EDG), FMA_0267079.

[9] *See* Exhibits 29, 40-42, and 56 of Plaintiffs' Response and Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer, ("Response") [Dkt. No. 254].

[10] *See* Exhibit M, Declaration of Joseph C. Razzano in Support of Plaintiffs' Sur-Reply to Defendant's Motion to Dismiss ("Razzano Decl.") [Dkt. No. 297], ¶5; Exhibit N, Declaration of Santos Garza, Ph.D., P.E. ("Garza Decl."), ¶3; Exhibit P, Declaration of Peter Duane Cruz ("Cruz Decl.") [Dkt. No. 298], ¶¶3, 5-6; Exhibit O, Declaration of Andrew Huffstetler ("Huffstetler Decl."), ¶¶9-13; Exhibit C, Materials related to Fujitsu device MB82DBS02163C found in Nintendo DS Lite game console; Exhibit T, Materials related to business relationship between nVidia/Nintendo and Fujitsu.

[11] *See* Razzano Decl. at ¶8; Cruz Decl. at ¶¶4-6; Huffstetler Decl. at ¶¶14-17. *See* Exhibit B, Materials related to MCU device MB44C012 found in Sony PSP game console. The evidence demonstrates Fujitsu's business relationship with Sony. *See* Exhibit 25 of Response, spreadsheet records listing customers for Fujitsu devices (Sony); *See* Exhibit 28 of Response, order confirmation for Sony Ste Support Center; *see* Exhibit 28 of Response, Fujitsu Standard Analysis reports regarding sales of multiple devices to multiple entities ("Sony Elec." and "Sony Ste."). Neither Fujitsu Ltd. nor FMA produced documents regarding this device despite its clear relevance to Nanya's discovery requests. Because of Defendants' failure to produce documents related to this device, Nanya needs further documents from Defendants and investigation to be able to confirm whether this device infringes Nanya's patents. Nanya's discovery of this device and others found in products on Guam and Fujitsu Ltd.'s and FMA's failure to produce documents related to these devices clearly establishes that Defendants are withholding key documents on the sale and use of their accused products in the U.S.

[12] Contrary to Fujitsu's allegations, these were not "manufactured" sales for the purpose of establishing jurisdiction but ordinary sales made in the ordinary course of business that confirm the presence of infringing devices on Guam before suit was filed.

[13] *See* Exhibit 41 of Response, University of Guam invoice for a Fujitsu hard drive.

[14] *See* Exhibit 40 of Response, Purchase materials related to purchase of Fujitsu laptop computer.

[15] *See* Exhibit 42 of Response, Receipt for purchase of Fujitsu lithium ion computer battery.

In its Response, Nanya presented the Court with uncontroverted evidence[16] that: (1) actual sales of the accused devices regularly occur on Guam; (2) the accused devices are incorporated in products sold or offered for sale on Guam; and (3) FMA had offered to sell the accused devices to customers without restriction throughout the U.S., including Guam. Purposeful placement of infringing products in the stream of commerce is a well-recognized basis for jurisdiction; the fact that FMA did not restrict the distribution of these parts is enough to subject FMA to stream of commerce jurisdiction.[17]

The evidence also establishes that accused microcontroller devices – manufactured by Fujitsu and sold by FMA – are in many of the automobiles commercially available on Guam. Nanya has submitted indisputable evidence that the Toyota Prius automobile – sold on Guam for the past several years – contains at least one of the accused devices.[18] And Fujitsu's other numerous "design wins" demonstrate that it purposefully markets, designs, and manufactures the accused MCU devices for incorporation into BMW,[19] GM, Land Rover,[20] Toyota, and Ford[21] automobiles (all of which are offered for sale on Guam). Further, Fujitsu's marketing materials list numerous automotive parts suppliers[22] as conduits to ultimately distribute the accused devices in these companies' automotive applications. Finally, GE, Xerox, Source Medical,[23] and Whirlpool are all listed as marketing targets for consumer applications for the accused devices.[24] By targeting these companies – all of whom have nationwide distribution networks – it is beyond cavil that Fujitsu (with the assistance of FMA) knowingly distributes its accused devices throughout the U.S.

---

[16] As the Court is aware, Fujitsu has blocked Nanya's efforts at discovery, not only producing approximately 800,000 pages of documents after the depositions, but, equally important, refusing to provide designated corporate representatives to testify on behalf of Fujitsu or FMA. The deposed witnesses were not willing or able to testify on behalf of Fujitsu or FMA; they only testified to their own knowledge and hearsay "beliefs" garnered from others. *See* Exhibit E, Deposition transcript of Shigeru Kitano, pages 18-19, 26, 35-36, 38-39, and 46-48. If Defendants had not stonewalled, the jurisdictional issues would be simple – because the accused devices are awash in Guam.

[17] *Maxwell Chase Technologies, L.L.C. v. KMB Produce, Inc.*, 79 F.Supp.2d 1364, 1367 (N.D. Ga., 1999); *Motorola, Inc. v PC-Tel, Inc.*, 58 F.Supp.2d 349, 353 (D. Del., 1999).

[18] *See* Razzano Decl. at ¶10; Exhibit Q, Declaration of David Carey ("Carey Decl."), and attached Exhibit B, pp. 31 and 42; Huffstetler Decl. at ¶¶3-8; Exhibit F, Materials related to accused Fujitsu microcontroller device MB90583C found in the Toyota Prius automobile; Exhibit G, Documents demonstrating FMA's business relationship with Toyota both as a direct customer and as an end-customer. Exhibit U, Declaration of Steven L. Aguon.

[19] Despite representing at the June 20, 2007 Hearing that one of the accused devices would not be present in BMW automobiles until 2008, there is evidence demonstrating that Fujitsu has been selling various accused devices to parts suppliers to be incorporated into BMW automobiles in the past several years. *See* Exhibit H, Materials evidencing accused microcontroller devices being sold or offered for sale to be incorporated into BMW automobiles.

[20] *See* Exhibit S, Document stating Land Rover uses Fujitsu's Jade GDC and is supported by FMA. *See* FMA_0034212.

[21] *See* Exhibit I, Documents that describe North America Automotive Projects and list several accused devices incorporated into Ford automobiles through parts suppliers Denso and Delphi.

[22] *See* Exhibit D, Eastern Area MCU Update, FMA_0133637-644.

[23] *See* Exhibit J, press release showing that Fujitsu Ltd. provides computers and information management solutions to Source Medical, a provider of outpatient information solutions, with products installed in over 3500 ambulatory surgery centers, surgical hospitals and other health care practices throughout the U.S. The release ***specifically includes Guam.***

[24] *See* Exhibit D, Eastern Area MCU Update at FMA_0133640-641.

Contrary to FMA's unsubstantiated allegations and conclusory, boilerplate statements in its chart, Nanya has specifically identified the accused products as memory or microcontroller devices and provided an exemplary list of model and parts numbers.[25] FMA tries to ignore the evidence submitted in the hope the Court will do the same and further fails to rebut the evidence.[26] Specifically, FMA:

- ***does not deny*** that it sells and offers to sell the accused devices to customers with national distribution networks without restriction;
- ***does not deny*** that the accused devices sold by FMA are designed to be incorporated into a variety of applications, including automotive and consumer electronic applications.
- ***does not deny*** that the accused devices are incorporated into products such as Toyota and Ford automobiles; Olympus and Canon[27] digital cameras; Nintendo game consoles; and Lexar and SanDisk memory devices.
- ***does not deny*** that such products were purchased and are available for purchase on Guam from regular retail distribution channels.

*Donnelly Corp.* is both factually similar and instructive.[28] There, a foreign defendant sold infringing automotive mirrors through a worldwide distribution network to manufacturers who incorporated the infringing mirrors into products eventually sold in the U.S., including the forum. The *Donnelly* court imposed personal jurisdiction, stating that because the automotive mirrors "landed in Michigan through 'the regular and anticipated flow of products, Defendant had to expect suits in the U.S. arising out of its sale of the mirrors, given that it directed the mirrors to American markets."[29] Similarly, FMA directs its microcontrollers to U.S. markets by selling them to automotive parts suppliers with a nationwide distribution network to manufacturers who incorporate them into products sold in the U.S., including Guam. Because the accused devices land in Guam through the regular flow of products, FMA has to expect lawsuits anywhere the accused devices are

---

[25] *See* Chart, attached hereto as Exhibit K. Fujitsu's argument that the pleading is insufficient is entirely baseless. Case law and Federal Rule 8(a) expressly provide that a patent pleading is sufficient if it places the alleged infringer "on notice" and ensures that the accused infringer "has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *See Meridian Enterprises Corp. v. Bank of America Corp.*, No. 4:06CV01117 RWS, slip op. at 1. 2006 WL 3210497 (E.D.Mo. Nov. 3, 2006) ("[A] patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself"); *Nichia Corp. v. Seoul Semiconductor Ltd.*, No. C-06-0162-MMC, 2006 WL 1233148, 1 (N.D.Cal May 9, 2006).

[26] Ironically, one of the declarations disavows and "corrects" statements made in Fujitsu's own self-serving advertisements. The entire Declaration of Akio Nezu consists of "correcting" an alleged advertising mistake that marketed the accused device as compatible for blood glucose monitors. Fujitsu's argument stills fails as the advertisement represents an offer to sell the accused device, thus subjecting Fujitsu to liability.

[27] *See* Exhibit R, Document lists Canon as one of EDG's Top Ten Worldwide Customers of which FMA is part of EDG.

[28] *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F. Supp. 2d 696, 708 (W.D. Mich. 2002){ TA \l "*Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F. Supp. 2d 696, 708 (W.D. Mich. 2002)" \s "Donnelly" \c 1 }.

[29] *Id.*

found, including Guam.

## III. FUJITSU FAILS TO SHOW CALIFORNIA IS A MORE CONVENIENT VENUE THAN GUAM[30]

As set forth throughout Nanya's briefing, FMA has not met its high burden to demonstrate a "***strong showing of inconvenience***"[31] or to "establish that litigating this case in [the forum] will pose a 'unique or unusual burden' on [its] business operations"[32] to justify transfer under §1404(a).

Dated at Hagåtña, Guam on June 26, 2007.

**TEKER TORRES & TEKER, P.C.**

By: ______________________
**JOSEPH C. RAZZANO, ESQ.**

[30] Defendants' argument that the jurisdictional issues are complex is a red herring. What has been complex are Defendants' efforts to avoid jurisdictional discovery through the production of volumes of irrelevant documents and the non-production of the relatively few documents that they know demonstrate the Court's proper exercise of jurisdiction.

[31] *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986){ TA \l "*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)" \s "Decker" \c 1 }.

[32] *Intel Corp. v. Broadcom Corp.*, 167 F.Supp.2d 692, 706 (D.Del.2001).

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891/4
FACSIMILE: (671) 472-2601

**UNPINGCO & ASSOCIATES, LLC**
SUITE 12B, SINAJANA MALL
777 ROUTE 4, SINAJANA, GUAM
671.475.8545 TELEPHONE
671.475.8550 FACSIMILE

**SHORE CHAN BRAGALONE LLP**
SUITE 4450, REPUBLIC CENTER
325 N. ST. PAUL STREET
DALLAS, TEXAS 75201
TELEPHONE: (214) 593-9110
FACSIMILE: (214) 593-9111

***Attorneys for Plaintiffs.***

**IN THE DISTRICT COURT OF GUAM**

NANYA TECHNOLOGY CORP. AND NANYA TECHNOLOGY CORP. U.S.A.,

Plaintiffs,

v.

FUJITSU LIMITED AND FUJITSU MICROELECTRONICS AMERICA, INC.,

Defendants.

Case No. CV-06-00025

**APPENDIX IN SUPPORT OF PLAINTIFFS' SUR-REPLY IN OPPOSITION TO FUJITSU MICROELECTRONICS AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

**FILED UNDER SEAL**

ORIGINAL

**TABLE OF CONTENTS**

*** - All or portions of exhibit are filed under seal**

| EXH. NO. | DESCRIPTION |
|---|---|
| A | *Presentation, "A Global Business Model for Fujitsu's Electronic Devices Group, FMA267079 |
| B | Materials related to MCU device found in Sony PSP game console |
| C | *Materials related to MCU device found in Nintendo DS Lite game console |
| D | *Eastern Area MCU Update, FMA0133637-133644 |
| E | *Deposition excerpts from the April 25, 2007 deposition of Shigeru Kitano |
| F | Materials related to MCU device found in the Toyota Prius automobile |
| G | *Materials related to Toyota's business relationship with Fujitsu |
| H | *Materials evidencing various MCU devices pertaining to BMW automobiles |
| I | *Materials evidencing various MCU devices pertaining to Ford automobiles |
| J | Source Medical article, "Fujitsu and Source Medical showcase pen-based outpatient information system" |
| K | Chart summarizing Nanya's evidence rebutting FMA's claims |
| L | Declaration of Martin Pascual |
| M | Declaration of Joseph Razzano |
| N | Declaration of Santos Garza |
| O | Declaration of Andrew Huffstedler |
| P | Declaration of Peter Cruz |
| Q | Declaration of David Carey |
| R | *Materials related to MCU device found in Canon cameras |
| S | *Materials related to MCU device pertaining to Land Rover automobile |
| T | *Materials related to NVidia/Nintendo's business relationship with Fujitsu |
| U | Declaration of Steven L. Aguon |

Dated at Hagåtña, Guam on June 26, 2007 Respectfully submitted

**TEKER TORRES & TEKER, P.C.**

By: [signature]

**JOSEPH C. RAZZANO, ESQ.**